**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

MORGAN ART FOUNDATION LIMITED,

        Plaintiff,

    -against-

MICHAEL MCKENZIE, AMERICAN IMAGE ART,
JAMIE THOMAS, AND ROBERT INDIANA,

        Defendants.

-----------------------------------------------------------------X

MICHAEL MCKENZIE AND AMERICAN IMAGE
ART,

        Counter-Claimants,

    -against-

MORGAN ART FOUNDATION LIMITED,

        Counterclaim Defendant.

-----------------------------------------------------------------X

MICHAEL MCKENZIE AND AMERICAN IMAGE
ART,

        Cross-Claimants,

    -against-

JAMIE THOMAS AND JAMES BRANNAN AS THE
PERSONAL REPRESENTATIVE OF THE ESTATE
OF ROBERT INDIANA,

        Crossclaim-Defendants.

-----------------------------------------------------------------X

No.: 1:18-cv-4438-AT


**VERIFIED ANSWER,
COUNTERCLAIMS, AND
CROSSCLAIMS OF
MICHAEL MCKENZIE AND
AMERICAN IMAGE ART**


**JURY TRIAL DEMANDED**

       Defendants, Michael McKenzie ("McKenzie") and American Image Art (collectively

"American Image"), by and through the undersigned counsel, hereby respond to the First

unverified Complaint ("Complaint") of Morgan Art Foundation Limited ("Plaintiff"), as follows:

## PRELIMINARY STATEMENT

Michael McKenzie has paid Robert Indiana ("Indiana") approximately $10 million dollars in royalties since 2008 pursuant to multiple contacts and addenda for artworks created and approved by Indiana.  Because of McKenzie's long-held loyalty to Indiana, for the years prior to Indiana's death, McKenzie paid Indiana at least $1,000,000 per year to honor the contracts that he had with Indiana. McKenzie made these substantial payments to Indiana each year despite the fact that, according to the stated royalty payment rate in the contracts, Indiana's royalties for the sales of his works did not equal $1,000,000.  McKenzie still paid Indiana $1,000,000 per year.

McKenzie has been working with contemporary artists since the 1970s and founded American Image Art in 1979.  McKenzie's state-of-the-art and widely admired silk-screening techniques led to projects with major artists like Larry Rivers, Donald Sultan, Frank Stella, Andy Warhol, Tom Wesselmann, Claes Oldenburg, and Indiana.  McKenzie was Indiana's friend and art publisher from the 1990s until Indiana's death on May 19, 2018.  McKenzie helped reintroduce Indiana's artwork to an indifferent art world and an uninterested public in the 1990s.  McKenzie reignited *LOVE* for the public between 1993 to 1996 by (1) printing a series of 200 limited edition of twelve *LOVE* prints and twelve Indiana poems, (2) exhibiting *LOVE* at the 19th Annual New York ArtExpo, and (3) arranging the *Absolut Indiana* vodka print campaign that featured Indiana's *LOVE* image.  American Image and Indiana also agreed to produce an additional 100 deluxe set of prints with a metal cover.  American Image has curated museum shows since 1987.  McKenzie also served as the American curator for The São Paulo Museum of Modern Art and the Museum of Modern Art in Rio de Janeiro.  At these museums, McKenzie reintroduced Indiana to a global audience by including Indiana artworks, including *AMOR*, at the American Masters Exhibition that he curated in 1995.

In the last two decades, Indiana sought to create works that went beyond *LOVE*. He chose to work with American Image because McKenzie was a trusted friend, excellent printer, and able art publisher. The partnership was a such a success that Indiana invited American Image to create a studio near Indiana's Star of Hope Lodge on the island of Vinalhaven, ME. Their most successful collaboration was the *HOPE* image and sculpture that bookended Indiana's *LOVE* image. In 2008, American Image published prints of *HOPE* and created sculptures pursuant to a contract between American Image and Indiana ("Hope Contract"). American Image paid Indiana nearly $10 million dollars pursuant to the Hope Contract and addendums.

This egregiously frivolous action filed on May 18 by Morgan Art Foundation Limited and Simon and Marc Salama-Caro (collectively, "MART") against Indiana, Jamie Thomas ("Thomas"), and American Image falsely accusing McKenzie of forging Indiana's artworks shocked McKenzie. The death of Indiana the following day was tragic. McKenzie knew Indiana was afraid of MART and of its shadowy dealings with Indiana. However, McKenzie collaborated with Indiana to print new artworks that Indiana created authorized, and signed that American Image produced. This lawsuit placed American Image in the middle of a business divorce between an artist and a malevolent partner. Indiana, and later Thomas authorized McKenzie to produce Indiana's artworks including *LOVE*, *HOPE*, *Like a Rolling Stone*, *WINE*, *BRAT*, *EAT*, *Shout for Peace*, *ART*, *USA FUN* that are now the subject of MART's breach of contract claim against Indiana and Thomas. That contract claim has been contorted to include factually and legally frivolous copyright, trademark, tortious interference with contract, Visual Artists Rights Act, unfair competition, and defamation claims against McKenzie and his company, American Image Art.

Between 2015 and 2018, American Image paid Indiana at least $3,820,625 pursuant to the HOPE Contract and two addendums.  American Image also paid Indiana an additional $250,000 in 2010 as an advance for publishing works other than HOPE. By contrast, Indiana complained to McKenzie that MART was stealing his artworks, and that MART made infrequent payments to Indiana.  By late 2017, Thomas and Indiana decided to demand back royalties from MART and challenged its purported control over Indiana artworks.  Unlike MART and less than two months before Indiana's death, American Image paid Indiana a $500,000 royalty payment.

This lawsuit does not belong in federal court. It is a plain vanilla breach-of-contract claim that has been stretched to include attacks against American Image and Thomas to present salacious claims to divert attention from MART's failure to pay Indiana.  In late 2017, Thomas and Indiana became concerned about MART's purported control over Indiana artworks and in early 2018 sent a series of cease-and-desist letters to auction houses and websites.  The actions of Thomas and Indiana against MART triggered the instant lawsuit. Further, declaratory relief in this action is necessary because MART's false and defamatory statements included in this lawsuit have cast a cloud on the reputation of American Image and have slandered the title to the works it has produced in the last decades.

## ANSWER TO PLAINTIFF'S COMPLAINT

### NATURE OF ACTION

1.    The allegations of Paragraph 1 are denied as to American Image, except that American Image admits that Robert Indiana is a famous American Artist who created the ***LOVE*** Image that has graced postage stamps and appeared as a sculpture.

2.    The allegations of Paragraph 2 are denied.

3.      The allegations of Paragraph 3 are admitted.

4.      The allegations of Paragraph 4 are admitted.

5.      American Image lacks information sufficient to admit or deny the allegations of Paragraph 5.

6.      American Image lacks information sufficient to admit or deny the allegations of Paragraph 6.

7.      American Image lacks information sufficient to admit or deny the allegations of Paragraph 7.

8.      American Image lacks information sufficient to admit or deny the allegations of Paragraph 8.

9.      American Image lacks information sufficient to admit or deny the allegations of Paragraph 9, except to aver that a Whitney Exhibition was held in 2013.

10.     The allegations of Paragraph 10 are admitted.

11.     The allegations of Paragraph 11 are denied, except that American Image admits that five years have passed since the Whitney Exhibition.

12.     The allegations of Paragraph 12 are denied.

13.     The allegations of Paragraph 13 are denied.

14.     The allegations of Paragraph 14 are denied, except to quotations attributed to McKenzie that he lacks information sufficient to admit or deny.

15.     The allegations of Paragraph 15 are denied.

16.     The allegations of Paragraph 16 are denied.

17.     The allegations of Paragraph 17 are denied.

18.     The allegations of Paragraph 18 are denied.

## **PARTIES**

19.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 19.

20.     The allegations of Paragraph 20 are admitted.

21.     The allegations of Paragraph 21 are denied, except that American Image admits that American Image has offices in New York, NY and Katonah, NY.

22.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 22.

23.     The allegations of Paragraph 23 are denied, except to aver that Robert Indiana died on May 19, 2018.

## **JURISDICTION AND VENUE**

24.     The allegations of Paragraph 24 are denied.

25.     American Image does not dispute that it is subject to personal jurisdiction in New York.

26.     McKenzie does not dispute that he is subject to personal jurisdiction in New York.

27.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 27.

28.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 28.

29.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 29.

30.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 30, except that American Image admits that American Image regularly transacts business in this District.

## PLAINTIFF'S FACTUAL ALLEGATIONS

31.    The allegations of Paragraph 31 are admitted, except to aver that Robert Indiana was born Robert Earl Clark.

32.    The allegations of Paragraph 32 are admitted.

33.    The allegations of Paragraph 33 are admitted, except to aver that McKenzie was responsible for translating *LOVE* into Portuguese in 1995 for the American Masters exhibitions he curated in Brazil.

34.    The allegations of Paragraph 34 are admitted.

35.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 35.

36.    The allegations of Paragraph 36 are denied, except that American Image admits that Vinalhaven, ME is only accessible by ferry and small-engine plane.

37.    The allegations of Paragraph 37 are denied.

38.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 38.

39.    The allegations of Paragraph 39 are denied.

40.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 40.

41.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 41.

42.    The allegations of Paragraph 42 are denied.

43.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 43.

44.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 44.

45.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 45.

46.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 46.

47.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 47.

48.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 48.

49.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 49.

50.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 50.

51.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 51.

52.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 52.

53.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 53.

54.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 54.

55.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 55.

56.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 56.

57.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 57.

58.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 58.

59.     The allegations of Paragraph 59 are denied.

60.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 60.

61.     The allegations of Paragraph 61 are denied.

62.     The allegations of Paragraph 62 are denied.

63.     The allegations of Paragraph 63 are denied.

64.     The allegations of Paragraph 64 are denied.

65.     The allegations of Paragraph 65 are denied.

66.     The allegations of Paragraph 66 are denied.

67.     The allegations of Paragraph 67 are denied, except to aver that McKenzie lacks information sufficient to admit or deny whether Indiana instructed Salama-Caro to meet with McKenzie.

68.     The allegations of Paragraph 68 are denied.

69.     The allegations of Paragraph 69 are denied.

70.     The allegations of Paragraph 70 are denied.

71.     The allegations of Paragraph 71 are denied.

72.     The allegations of Paragraph 72 are denied.

73.     The allegations of Paragraph 73 are denied.

74.     The allegations of Paragraph 74 are denied, except to aver that McKenzie lacks information sufficient to admit or deny whether Indiana requested the Salama-Caros to meet with McKenzie.

75.     The allegations of Paragraph 75 are denied.

76.     The allegations of Paragraph 76 are denied.

77.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 77.

78.     The allegations of Paragraph 78 are denied, except that American Image lacks information sufficient to admit or deny the opinions of the unnamed Whitney Museum benefactor and curator.

79.     The allegations of Paragraph 79 are denied.

80.     The allegations of Paragraph 80 are denied.

81.     The allegations of Paragraph 81 are denied.

82.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 82.

83.     The allegations of Paragraph 83 are denied.

84.     The allegations of Paragraph 84 are denied, except to aver that American Image lacks information sufficient to admit or deny the content of emails sent from Indiana's email account to Marc Salama-Caro.

85.     The allegations of Paragraph 85 are denied, except to aver that American Image lacks information sufficient to admit or deny the content of emails sent from Indiana's email account.

86.     The allegations of Paragraph 86 are denied, except that American Image admits that Valerie Morton was Indiana's assistant.  American Image lacks information sufficient to admit or deny the content of emails sent from Indiana's email account.

87.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 87.

88.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 88.

89.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 89.

90.     The allegations of Paragraph 90 are denied.

91.     The allegations of Paragraph 91 are denied.

92.     The allegations of Paragraph 92 are denied, except to aver that American Image published the artworks referenced.

93.     The allegations of Paragraph 93 are denied as to infringements by American Image, except to aver that American Image lacks information sufficient to admit or deny the alleged rights granted to the Morgan Art Foundation Limited or referenced in a purported April 1999 contract.

94.    The allegations of Paragraph 94 are denied, except that American Image admits that Indiana works were exhibited at the Bates College Museum of Art and The Baker Museum in Naples.

95.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 95.

96.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 96.

97.    The allegations of Paragraph 97 are denied, except to aver that American Image lacks information sufficient to admit or deny the Salama-Caros June 2017 travels.

98.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 98.

99.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 99.

100.    The allegations of Paragraph 100 are denied.

101.    The allegations of Paragraph 101 are denied.

102.    The allegations of Paragraph 102 are denied.

103.    The allegations of Paragraph 103 are denied.

104.    The allegations of Paragraph 104 are denied, except that American Image admits that American Image curated the "Robert Indiana: Love and Hope" exhibition.

105.    The allegations of Paragraph 105 are denied.

## CAUSES OF ACTION

### AS FOR AN ANSWER TO COUNT I
### Copyright Infringement

106.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

107.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 107.

108.    The allegations of Paragraph 108 are denied.

109.    The allegations of Paragraph 109 are denied.

110.    The allegations of Paragraph 110 are denied.

111.    The allegations of Paragraph 111 are denied.

112.    The allegations of Paragraph 112 are denied.

### AS FOR AN ANSWER TO COUNT II
### Trademark Infringement (Lanham Act)

113.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

114.    The allegations contained in Paragraph 114 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, the allegations of Paragraph 114 are denied.

115.    The allegations of Paragraph 115 are denied.

116.    The allegations of Paragraph 116 are denied.

117.    The allegations of Paragraph 117 are denied.

118.    The allegations of Paragraph 118 are denied.

119.    The allegations of Paragraph 119 are denied.

## AS FOR AN ANSWER TO COUNT III
## Trademark Infringement (Common Law)

120.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

121.    The allegations contained in Paragraph 121 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, the allegations of Paragraph 121 are denied.

122.    The allegations of Paragraph 122 are denied.

123.    The allegations of Paragraph 123 are denied.

124.    The allegation contained in Paragraph 124 of the Complaint is a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 124 are denied.

125.    The allegations of Paragraph 125 are denied.

126.    The allegations of Paragraph 126 are denied.

## AS FOR AN ANSWER TO COUNT IV
## BREACH OF CONTRACT

127.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

128.    The allegations contained in Paragraph 128 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, American Image lacks information sufficient to admit or deny the allegations of Paragraph 128.

129.    The allegations contained in Paragraph 129 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, the allegations of Paragraph 129 are denied.

130.    The allegations contained in Paragraph 130 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, the allegations of Paragraph 130 are denied.

131.    The allegations of Paragraph 131 are denied.

## AS FOR AN ANSWER TO COUNT V
### Tortious Interference with Contract

132.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

133.    The allegations contained in Paragraph 133 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, American Image lacks information sufficient to admit or deny the allegations of Paragraph 133.

134.    The allegations contained in Paragraph 134 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, the allegations of Paragraph 134 are denied.

135.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 135.

136.    The allegations of Paragraph 136 are denied as to American Image.

137.    The allegations in Paragraph 137 are denied, except that American Image admits that Thomas sent letters to auction houses.

138.    The allegations of Paragraph 138 are denied.

## AS FOR AN ANSWER TO COUNT VI
### Visual Artist Rights Act

139.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

140.    The allegations of Paragraph 140 are admitted.

141.    The allegations of Paragraph 141 are admitted.

142.    The allegations contained in Paragraph 142 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, American Image denies the allegations contained in Paragraph 142 of the Complaint.

143.    The allegations of Paragraph 143 are denied.

144.    The allegations of Paragraph 144 are denied.

145.    The allegations of Paragraph 145 are denied.


## AS FOR AN ANSWER TO COUNT VII
### Unfair Competition

146.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

147.    The allegations of Paragraph 147 are denied.

148.    The allegations of Paragraph 148 are denied.

149.    The allegations of Paragraph 149 are denied.

150.    The allegations of Paragraph 150 are denied.

151.    The allegations of Paragraph 151 are denied.

## AS FOR AN ANSWER TO COUNT VIII
### Defamation

152.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

153.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 153.

16

154.    The allegations of Paragraph 154 are denied.

155.    The allegations of Paragraph 155 are denied as to McKenzie.

156.    The allegations of Paragraph 156 are denied as to McKenzie.

157.    The allegations of Paragraph 155 are denied.

158.    The allegations of Paragraph 158 are denied as to McKenzie.

159.    The allegations of Paragraph 159 are denied as to McKenzie.

## ANSWER TO PRAYER FOR RELIEF

Plaintiff is not entitled to any relief from this court.

## AFFIRMATIVE DEFENSES

## FOR A FIRST DEFENSE
### Fed. R. Civ. P. Rule 12(b)(1) – Lack of Jurisdiction

160.    The Court lacks subject matter jurisdiction because Plaintiff's core claim is for breach of contract against the Estate of Robert Indiana and his former power of attorney Jamie Thomas.

161.    Morgan Art Foundation Limited, upon information and belief, has members that are citizens of New York, accordingly, there is no diversity jurisdiction and no supplemental jurisdiction.

## FOR A SECOND DEFENSE
### Fed. R. Civ. P. Rule 12(b)(6)

162.    Plaintiff fails to state facts sufficient to constitute a cause of action against American Image and therefore the Complaint must be dismissed.

**FOR A THIRD DEFENSE**
**Master-Servant/Agency**

163.    Indiana approved and signed all the original limited edition artworks produced for

him by American Image. All artworks produced by American Image for Indiana were authorized

by Indiana and his power of attorney, Thomas.

**FOR A FOURTH DEFENSE**
**Acquiescence/Implied In Fact License**

164.    In the event that Indiana did not have the right to authorize American Image to

produce the artworks at issue, and American Image produced artworks that Indiana assigned to

Plaintiff, Plaintiff granted an implied license and acquiesced to the production.

**FOR A FIFTH DEFENSE**
**Laches and Acquiescence**

165.    Plaintiff has been aware of American Image's allegedly infringing activities since

2008 and did nothing until May 19, 2018, the day Indiana died. By waiting 10 years without

asserting the rights it claims to have in the Complaint, Plaintiff consented to American Image's

creation and production of the artworks at issue in the Complaint.

**FOR A SIXTH DEFENSE**
**Standing Under the Visual Artists Rights Act**

166.    Plaintiff lacks standing under the Visual Artists Rights Act to bring a claim

because an alleged assignee may not bring a Visual Artists Rights Act claim.

**FOR A SEVENTH DEFENSE**
**Unclean Hands, Waiver, and Estoppel**

167.    The Complaint is barred in whole or in part by the doctrine of unclean hands,

waiver, and estoppel.

## FOR AN EIGHTH DEFENSE
## Statute of Limitations

168.    Plaintiff's claims are barred in whole or in part by the applicable statutes of limitations.

## FOR A NINTH DEFENSE
## Failure to Mitigate Damages

169.    Plaintiff's claims should be barred by their failure to mitigate damages.

## ADDITIONAL DEFENSES

170.    American Image reserves the right to supplement or amend this answer, including through the addition of further affirmative defenses, based upon the course of discovery and pleadings in this action.

## COUNTERCLAIMS AND CROSSCLAIMS OF AMERICAN IMAGE

American Image, by and through its attorneys, bring the following Counterclaims against Morgan Art Foundation Limited and Crossclaims against Jamie Thomas and the Estate of Robert Indiana (collectively, "Indiana"), and states as follows:

## FACTS

**Michael McKenzie Has Four Decades of Experience in the Art World**

171.    McKenzie took multiple degrees in creative writing, including his MFA under renowned art critic John Ashbery.  McKenzie co-authored *New, Used & Improved*: *Art for the 80*s, a key text concerning the artworks of his generation.

172.    Between 1992 and 1998, McKenzie curated the American Masters series at the Museum of Modern Art in São Paulo and the Museum of Modern Art in Rio de Janeiro.

"American Masters" included works of Indiana, Andy Warhol, Tom Wesselmann, Alex Katz, Frank Stella, Larry Rivers, Ed Pasche, and Claes Oldenburg.

173.    McKenzie included Indiana in the American Masters series because he believed Indiana was an underappreciated master.

**Beyond MART: Indiana, like Most Artists, Created Multiple Artworks**

174.    The Susan Sheehan Gallery published an Indiana catalogue raisonné in 1992.  The gallery spent approximately eight months preparing the catalogue raisonné and consulted McKenzie during the drafting of the catalogue.

175.    MART claims Indiana agreed to two contracts with it in 1999 in which Indiana conveyed rights to Indiana's artworks.

176.    Though MART has tried to exploit LOVE and stifle Indiana's creativity, Indiana created much more artwork.

177.    Like most artists, Indiana has a long history of varied projects.  For example, in 1977, the city of Milwaukee commissioned Indiana to design the basketball floor of the MECCA Arena, home of the Milwaukee Bucks basketball team.  The MECCA's floor was the subject of an ESPN *30 for 30* documentary.

178.    Between *LOVE* and *HOPE*, was MART, a shadowy Bahamian group that now claims it obtained certain rights to a collection of Indiana artworks through two 1999 agreements.  Indiana repeatedly told McKenzie that the situation with *LOVE* was "complicated" and confided in McKenzie that "Simon just wants to control me."

179.    Upon information and belief, MART rarely compensated Indiana for the sale of his artworks or made regular royalty payments but instead attempted to wrest control of Indiana's artworks through intimidation and lies.  Indiana was so fearful of MART stealing his

artworks that he told McKenzie that he was afraid to loan MART artworks for an exhibition at the Grand Palais in Paris.  Indiana confided to McKenzie that he believed MART had stolen multiple artworks that Indiana had provided for galleries and exhibitions.

180.    With the two agreements cited in MART's complaint, MART managed to organize a mere four exhibitions of Indiana's artworks in 20 years.  Indiana's peers were exhibited in more renowned galleries and often in multiple exhibitions per year.

181.    MART went so far as to invent an unpublished catalogue raisonné that excluded all of Indiana's artwork not included in its ill-gotten intellectual property.  MART used the unpublished catalogue raisonné to stifle Indiana's ability to produce artworks independently of MART, to unfairly increase the value of its limited collection of Indiana artworks, and to keep him in economic servitude.

182.    However, MART could not extinguish Indiana's flame of creativity.

**Since 1976, Indiana Isolated Himself in Vinalhaven of His Own Free Will**

183.    Since 1976, Indiana chose to isolate himself by moving to Vinalhaven, ME – often ignoring phone calls, faxes, and visits from close friends, celebrities, and important career opportunities.

184.    Indiana was a poet and artist from the Midwest.  His time in New York wore him out and he wanted to be left alone.  Vinalhaven rejuvenated Indiana.

**American Image Aids Indiana's Revival in the Early 1990s**

185.    McKenzie met Indiana at the 1964 World's Fair in Queens, New York.  The two reconnected in the 1970s at the urging of John Hollander, an authority on shape poetry and word art.  Hollander told McKenzie that Indiana was the best of these artists.  McKenzie then visited

Indiana frequently at his loft on Spring Street from 1974 until Indiana moved to Maine. McKenzie also photographed Indiana for various exhibitions and publications.

186.    American Image revitalized Indiana's *LOVE* at the 19th Annual ArtExpo New York.  American Image published "The Book of Love Art & Poetry" by Robert Indiana in 1996.

187.    In the mid-1990s, McKenzie worked with Indiana and one of the top international advertising agencies in the world, TBWA, to develop the *Absolut Indiana* advertising campaign:



188.    The advertisement was on the back cover of auction catalogues for Christie's and Sotheby's for several years.  The advertisement reminded collectors, curators, and the general public of Indiana's brilliance.

189.    In the mid-1990s, American Image subsequently created a portfolio of 200 sets of twelve high-quality *LOVE* prints with twelve original Indiana poems.



190.    Indiana also authorized American Image to create 100 fabricated metal covers with a silk-screened *LOVE* image to house the prints.

191.     Indiana resumed work with American Image in the mid-2000s.  He travelled to American Image's studio in Katonah, New York to supervise the printing of his artworks.

192.     In 2011 Indiana told McKenzie that travelling to American Image Art in Katonah was burdensome at his age.  Indiana then asked McKenzie to create a studio in Vinalhaven, right down the street from the Star of Hope, so Indiana could work more closely with McKenzie and American Image Art.  Indiana directed McKenzie to buy the old Vinalhaven movie house where Indiana screened the Andy Warhol film *Eat* that featured Indiana.

193.     McKenzie retained James Brannan, the Indiana Estate's personal representative, to manage the closing of the purchase.  At the Vinalhaven studio, Indiana and McKenzie frequently worked together, dined, and discussed potential Indiana projects.

**Simon Salama-Caro, an Inexperienced Art-Dealer, Cons Indiana**

194.     The Salama-Caros and MART do not deal in artwork from any other artist other than Indiana.

195.     The Salama-Caros were inexperienced in selling art. MART is a mystery in the art world. No one seems to know what MART does or where they are located.

196.     Simon Salama-Caro observed the reemergence of Indiana created by the ArtExpo exhibit and the *Absolut Indiana* ad campaign and pounced.

197.     The Salama-Caros duped Indiana into allegedly turning over the rights to his earlier work after McKenzie's actions revitalized it.

198.     MART's early partner was Brian Ramnarine, an art forger convicted of creating fake artworks by Indiana and Jasper Johns.

24

199.     Upon information and belief, MART and Ramnarine made 100 bronze sculptures cast from original large Indiana sculptures. MART never returned Indiana's original sculptures to him.

200.     MART overtook Indiana's 2013 retrospective at the Whitney and only allowed artworks created before 2007 to be featured in the show.

201.     MART exploited Indiana's self-imposed physical exile to disparage his Post-"contract" artworks from an appreciative audience.  MART tried to put Indiana in amber, so that MART's IP had more value.  This was a mere market decision to diminish the creative spirit of Indiana.

**Indiana Finds *HOPE* with American Image**

202.     In 2006, Indiana and McKenzie discussed a follow-up project to *LOVE* that would become Indiana's *HOPE* sculpture.  Indiana's *HOPE* originally referenced his home and studio in Vinalhaven, The Star of Hope Lodge.

203.     The timing was perfect because the 2008 Obama presidential campaign used the idea of "hope" as part of its messaging to voters.  Indiana told McKenzie that that the Museum of Modern Art's showing of *LOVE* was the catalyst for its success and that the Obama campaign's "hope" message could be the catalyst for *HOPE*. Through his personal contacts, McKenzie was able to connect Indiana and *HOPE* with the Obama campaign.

204.     Indiana contracted with American Image to produce the *HOPE* sculptures and prints in 2008 (the "*HOPE* Contract"). The *HOPE* Contract is attached hereto as **Exhibit B**.

205.     The highly successful *HOPE* sculpture was featured at the entrance to the 2008 Democratic convention in Denver.

206.     With *HOPE* bookended to *LOVE*, Indiana began to work with McKenzie to publish new projects.

207.     The *HOPE* project was so successful that Indiana and American Image agreed to two addenda to the *HOPE* Contract in 2010 and 2011. The addenda are attached hereto as **Exhibits C and D**, respectively.

208.     American Image worked with hundreds of galleries worldwide to sell Indiana works on his behalf.

209.     Since 2008, American Image has worked closely with Rosenbaum Contemporary, a long-established art gallery in Miami, FL, to sell Indiana artworks.

210.     American Image has also organized Indiana shows at the Woodward Gallery and the Four Seasons Restaurant.

211.     In October 2013, American Image curated an exhibition of 75 Indiana artworks, entitled Robert Indiana from A to Z at the Munson Williams Proctor Arts Institute in Utica, NY. This exhibition later travelled to numerous other museums and introduced the public to Indiana's works that were not as famous as *LOVE* and *HOPE*.

**Robert Indiana and his Power of Attorney, Jamie Thomas Authorize the Publication of *EAT*, *WINE*, *BRAT*, and the *Like a Rolling Stone* Series**

212.     Indiana travelled to American Image's Studio in Katonah, NY to supervise productions of his works.  Indiana would personally examine the prints and sign them if he approved.

213.     Thomas had been Indiana's most trusted studio manager before he took on a care-taker role as Indiana's health declined.  Indiana appointed Thomas as his power of attorney in 2016.

214.    Throughout the 1960s, Indiana enjoyed listening to the music of Bob Dylan while painting.  Around 2014, Indiana created and American Image published *Like a Rolling Stone* to express his admiration for Dylan and to connect his new works to the music he listened to while painting in the 1960s.  Indiana spent months perfecting the Dylan series. Indiana was so pleased with the results of the Dylan series that he displayed the works prominently in the window at the Star of Hope.

215.    Around 2010, Indiana developed *EAT* with American Image in a style evoking Indiana's *EAT* at the 1964 World's Fair.

216.    Around 2011, Indiana began to publish *WINE* with American Image. Indiana and American Image entered into a signed written agreement for American Image's production of Indiana's *WINE* in 2011 (the "*WINE* Contract") (attached as **Exhibit D**).  In 2012, Indiana and American Image executed an addendum to the WINE Contract in 2012 (attached as **Exhibit E**). The work was released in 2018, before Indiana's death.

217.    American Image was instrumental in helping Indiana publish *Alphabet* – the work that Indiana had been trying to show the world for 15 years that the two first discussed in 1995.

218.    Indiana, Johnsonville, LLC, and American Image developed *BRAT*, which became Indiana's largest four letter sculpture. Indiana received several hundred thousand dollars in royalties for *BRAT*.

219.    Despite his new artworks receiving much acclaim, the specter of MART hung over the Star of Hope Lodge.  Indiana worried that anything he created would be snatched by MART.

**American Image Has Paid Indiana Royalty Payments for Indiana's Published Works**

220.    Since 1996, American Image has paid Indiana substantial royalty payments for the sale of Indiana's artworks and other projects.

221.    Attached as **Exhibits G** through **N** are cancelled checks showing royalty payments American Image made to Indiana in 2010 and from 2015-2018 totaling $4,070,625. Since American Image has not had the opportunity to search all of its records, these are only a sample of the payments that American Image made to Indiana.

222.    The following table outlines the royalty payments shown in Exhibits G through N:

| Date | Amount | Check # |
|------|--------|---------|
| 7/27/2010 | $250,000 | 5322 |
| 7/7/2015 | $395,100 | 8244 |
| 10/13/2015 | $604,900 | 8377 |
| 9/13/2016 | $1,000,000 | 8847 |
| 5/31/2017 | $853,035 | 9311 |
| 11/7/2017 | $153,965 | 9615 |
| 11/10/2017 | $313,625 | 9627 |
| 4/3/2018 | $500,000 | 9857 |

**MART Defames McKenzie and American Image By Claiming Indiana's New Artworks Were Inauthentic**

223.    MART could not stifle Indiana's creativity, so it tried to stifle the sale of new works he published with McKenzie.

224.    MART tried to confiscate and denounced any artwork that Indiana created and that MART did not authorize or purportedly control the rights to.

225.    The Salama-Caros attempted to convince art galleries and art dealers not to work with American Image claiming that MART had the sole right to deal in Indiana artworks.

226.    The Salama-Caros attended openings and visited galleries where Indiana's new works were being shown and told the patrons that MART had the right to authenticate Indiana's artworks and that the new works on display were not authentic Indiana works.

227.    MART claims that its purported contracts gave it authority to authenticate Indiana artworks.  The Salama-Caros told art galleries that *HOPE* and other non-MART controlled artworks were not an authentic Indiana artworks.  As a key publisher of post-MART works, MART's claims that these works were not authentic hurt American Image's standing in the art world.  Potential buyers of artworks like *HOPE*, lost interest when MART claimed the artworks were forgeries.

**Jamie Thomas and Robert Indiana Authorize Cease-and Desist Letters and the Estate of Robert Indiana Refuses to Indemnify American Image**

228.    In 2017, Thomas and Indiana decided to act because MART had not sent regular royalty reports to Indiana for 20 years, the few payments it did make were erratic, and then it completely ceased payments to Indiana.

229.    Thomas and his attorney asked McKenzie to aid their investigation of MART.

230.    McKenzie shared his concerns about MART with Thomas and confirmed Indiana's fears of MART.

231.    Thomas sent cease-and-desist letters to auction houses and websites in 2018. (attached as **Exhibit A**).  McKenzie did not review these letters before they were sent, but he cooperated with John Frumer, Thomas' legal counsel in the investigation of MART.

232.    On May 18, 2018 Morgan Art Foundation Limited filed the instant litigation.

233.    American Image sought a joint-defense and indemnification agreement with the Indiana Estate short after the instant action commenced.

234.    The Indiana Estate refused to indemnify and forced American Image to defend itself.

## FOR A FIRST COUNTERCLAIM
### Declaratory Judgment

235.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

236.    Plaintiff has alleged that American Image willfully infringed Plaintiff's exclusive rights under 17 U.S.C. § 106.

237.    American Image had full authority from Indiana to produce, market, and sell all of the artworks at issue.

238.    American Image has not engaged in any act of copyright infringement or any infringement of Plaintiff's rights under the statute.

239.    The Court may award declaratory relief under 28 U.S.C. §§ 2201, 2202.

240.    The Court may issue any writ necessary in aid of its jurisdiction under 28 U.S.C. § 1651, the All Writs Act.

241.    The Court is authorized to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

242.    A justiciable controversy exists concerning the infringement of Plaintiff's alleged copyright that only the District Court may determine.

243.    Based on the foregoing, American Image is entitled to a declaratory judgment that American Image has not infringed Plaintiff's alleged copyrights.

## FOR A SECOND COUNTERCLAIM
### Declaratory Judgment

244.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

245.    That Plaintiff's purported License/IP Agreement and Sculpture Agreement do not govern the artworks Indiana created and American Image published, and that such artworks are not forgeries.

246.    The Court may award declaratory relief under 28 U.S.C. §§ 2201, 2202.

247.    The Court may issue any writ necessary in aid of its jurisdiction under 28 U.S.C. § 1651, the All Writs Act.

248.    The Court is authorized to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

249.    A justiciable controversy exists concerning the applicability of Plaintiff's alleged contracts to the original works published by Indiana.

250.    A justiciable controversy exists concerning the infringement of Plaintiff's alleged copyright that only the District Court may determine.

251.    Based on the foregoing, American Image is entitled to a declaratory judgment that the forgoing artworks are not forgeries.

## FOR A THIRD COUNTERCLAIM
### Defamation

252.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

253.    Under New York law, making a false statement to a third party accusing someone of a crime or dishonesty in their profession is defamation *per se*.   *See* CPLR 3016.

254.    Plaintiff made false statements to the press of and concerning McKenzie and his profession including a statement made to Reuters which was published in its May 18, 2018 article, *Legacy of "LOVE" Artist Robert Indiana is Subject of New Lawsuit*, that American Image was involved in a "rogue and brazenly unlawful forgery scheme."

255.    Plaintiff made a false statement to the Portland Press Herald of and concerning McKenzie and his profession which was published in its May 23, 2018 article, *Lawsuit Paints Sad Image of Exploitation in Robert Indiana's Final Years on Maine Island,* that "the first and most important thing is protecting (Indiana's) legacy to stop proliferation of inauthentic works."

256.    These statements accusing McKenzie in his business and profession were false when made.

257.    Under New York law, American Image is not required to plead special damages for a claim for defamation *per se*.

258.    As a direct and proximate result of the acts of Plaintiff, American Image has suffered damages in an amount to be determined at trial.

259.    Based on the foregoing, American Image is entitled to a declaration that Plaintiff's statements were false, malicious, and defamatory as well as associated damages.

### FOR A FOURTH COUNTERCLAIM
### Tortious Interference with Contract

260.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

261.    Under New York Law, to prove tortious interference with contract, a valid contract must existent between the parties; the defendant must have knowledge of the contract; the interference must have caused the breach; the interference must be intentional; and the interference caused the plaintiff to suffer damages.

262.    There was a contract between Indiana and American Image.

263.    Plaintiff knew of the valid contract between Indiana and American Image.

264.    Plaintiff interfered with the contract when it made false statements to galleries and the press claiming the works American Image produced for Indiana were forgeries.

265.    Plaintiff's interference with the contract was intentionally designed to disrupt the valid contracts between American Image and Indiana.

266.    As a direct and proximate result of the acts of Plaintiff, American Image has suffered damages in an amount to be determined at trial.

## FOR A FIFTH COUNTERCLAIM
### Tortious Interference with Actual and Prospective Contractual Relations

267.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

268.    Under New York law, a party may claim tortious interference with actual and prospective contractual relations when the defendant knew about plaintiff's business opportunity with another party; the defendant intentionally interfered with that opportunity; defendant used wrongful means for the sole purpose of inflicting harm; the contract or prospective business relationship would have been entered into but for defendant's interference; and this resulted in damages.

269.    Plaintiff was aware of American Image's actual prospective business relationships with third parties, including Rosenbaum Contemporary and the buyers to which Rosenbaum Contemporary marketed Indiana artworks.

270.    Plaintiff knew and intentionally interfered with those actual and prospective when it made false statements to galleries and the press claiming that the works American Image produced for Indiana were forgeries.

33

271.    Plaintiff used wrongful means for the sole purpose of inflicting harm when it brought this lawsuit.

272.    Prospective business relationships would have been entered into but for Plaintiff's interference.

273.    As a direct and proximate result of the acts of Plaintiff, American Image has suffered damages in an amount to be determined at trial.

## FOR A SIXTH COUNTERCLAIM
### Unfair Competition

274.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

275.    Under New York law, a claim for unfair competition is based on a bad faith misappropriation of labors and expenditures of another.

276.    Plaintiff has committed unfair and deceptive practices by falsely and in bad faith stating that American Image does not have the rights to create and produce the artworks at issue.

277.    Plaintiff's statements are likely to deceive a substantial segment of the intended audience because Indiana authorized the creation of the artworks sold by American Image.

278.    Plaintiff's deception was likely to influence purchasing decisions because collectors in the art world will likely be deterred from purchasing artworks from American Image based on Plaintiff's deceptive statements.

279.    As a direct and proximate result of the acts of Plaintiff, American Image has suffered damages in an amount to be determined at trial.

## FOR A SEVENTH COUNTERCLAIM
### Slander Of Title

280.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

281.    American Image acquired good title to the original Indiana artworks pursuant to the Hope Contract and addendums.

282.    The statements made by Morgan Art Foundation Limited and/or their representatives to the press and in this action claiming that McKenzie is not the true owner of the Indiana artworks were false and have cast doubt on American Image's good title.

283.    The statements made by Morgan Art Foundation Limited and/or its representatives to the press and in this action disparaging McKenzie's title to the Indiana artworks were made under circumstances such that Morgan Art Foundation Limited and/or its representatives reasonably could have foreseen that the actions of potential purchasers of the Artworks might be affected by their conduct.

284.    The statements made by Morgan Art Foundation Limited. and/or their representatives were made with reckless disregard of their truth or falsity, and were not covered by any applicable privilege.

285.    As a direct result of Morgan Art Foundation Limited's false statements, American Image is virtually unable to sell the Indiana artworks for anything approaching their true value, given the legal uncertainty that now wrongfully clouds title to the Indiana artworks.

286.    As a direct and proximate result of the acts of Plaintiff, American Image has suffered damages in an amount to be determined at trial.

**FOR A FIRST CROSSCLAIM**
<u>Declaratory Judgment</u>
**Against James Brannan as The Personal Representative of The Estate of Robert Indiana**

287.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

288.    The Court may award declaratory relief under 28 U.S.C. §§ 2201, 2202.

289.    The Court may issue any writ necessary in aid of its jurisdiction under 28 U.S.C. § 1651, the All Writs Act.

290.    The Court is authorized to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

291.    A justiciable controversy exists concerning the enforceability of the contracts Indiana signed with American Image.

292.    That the HOPE Contract and addendums are enforceable because American Image has paid Indiana millions of dollars in royalty payments pursuant to those agreements and American Image is entitled to a declaration to this effect.

**FOR A SECOND CROSSCLAIM**
<u>Breach of Contract</u>
**Against James Brannan as The Personal Representative of The Estate of Robert Indiana and Jamie Thomas**

293.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

294.    Under New York law, a contract is breached when a valid contract exists between the parties, one of the parties performs under the contract, the other party fails to perform under the contract, and damages result from such failure to perform.

295.    American Image and Indiana agreed to a series of valid contracts.

296.    American Image fully performed under the contracts as directed by Indiana and Thomas.

297.    The contracts were based on Indiana's representations and warranties that Indiana had the right to enter into the contracts and grant American Image a license to create, market, and sell the artworks at issue.

298.    If Plaintiff has rights in artworks published by American Image, then Indiana breached the contract when neither Indiana nor Thomas disclosed Plaintiff's rights to American Image.

299.    Based on the foregoing, if indeed Indiana breached, American Image suffered damages, and American Image is entitled to a judgment of damages in an amount to be determined at trial.

### FOR A THIRD CROSSCLAIM
### <u>Contractual Indemnification</u>
### Against James Brannan as The Personal Representative of The Estate of Robert Indiana and Jamie Thomas

300.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

301.    In the HOPE Contract and subsequent addendums, Indiana indemnified American Image and its agents for the damages sought against them by Plaintiff.

302.    American Image has committed none of the wrongful acts asserted by Plaintiff because Indiana created all the original artworks and he and his power of attorney Thomas authorized the production of the artworks as detailed in the HOPE Contract, addendums, and various communications.

303.    Indiana and Thomas are at fault for any of the wrongful acts asserted against American Image because Indiana and Thomas allegedly breached the so-called License/IP Agreement and Sculpture Agreement.

304.    Indiana and Thomas sent cease-and-desist letter to various auction houses and MART entities that caused Morgan Art Foundation Limited to sue American Image and forcing American Image to defend itself in this action.

305.    The Indiana Estate refused to indemnify American Image though American Image requested indemnification.

306.    Based on the foregoing, if it is determined that American Image is liable to Plaintiff in any respect on account of Indiana and Thomas' material breaches of the HOPE Contract and addendums, then American Image is entitled to contractual indemnification, including attorneys' fees, costs and disbursements.

### FOR A FOURTH CROSSCLAIM
#### Common Law Indemnification
**Against James Brannan as The Personal Representative of The Estate of Robert Indiana and Jamie Thomas**

307.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

308.    American Image has committed none of the wrongful acts asserted by Plaintiff because Indiana created all the original artworks and he and his power of attorney Thomas authorized the production of the artworks by American Image.

309.    Indiana and Thomas are at fault for any of the wrongful acts asserted against American Image because Indiana and Thomas allegedly breached the so-called License/IP Agreement and Sculpture Agreement.

310.    Indiana and Thomas sent cease-and-desist letter to various auction houses and MART entities that caused Morgan Art Foundation Limited to sue American Image.

311.    The Indiana Estate refused to indemnify American Image though American Image requested indemnification.

312.    It would be unfair to hold American Image liable for Indiana and Thomas' breach of the so-called License/IP Agreement and Sculpture Agreement and for causing American Image to defend itself in this action.

313.    Based on the foregoing, if it is determined that American Image is liable to Plaintiff in any respect, the Indiana Estate and Thomas must indemnify American Image for any damages, including costs and attorneys' fees, awarded against it and in favor of Plaintiff.

### FOR A FIFTH CROSSCLAIM
#### Unjust Enrichment
**Against James Brannan as The Personal Representative of The Estate of Robert Indiana and Jamie Thomas**

314.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

315.    Indiana, by entering into a contract with American Image for American Image to create, produce, and market the artworks at issue, received a benefit in the form of royalty payments and continued artistic success.

316.    Once Thomas became Indiana's power of attorney he conveyed Indiana's approval of projects printed by American Image.

317.    Indiana and Thomas had an appreciation of said benefit and received millions of dollars pursuant to that HOPE Contract and addendums.

318.    If the sale of original Indiana artworks violated the terms of the License/IP Agreement and Sculpture Agreement, then Indiana and Thomas have been unjustly enriched.

319.     It would be unjust for Indiana to retain the benefit without compensating American Image.

320.     As a direct and proximate result of the acts of Plaintiff, American Image has suffered damages in an amount to be determined at trial.

321.     Based on the foregoing, American Image is entitled to a judgment of damages in an amount to be determined at trial.

## ADDITIONAL COUNTERCLAIMS AND CROSS-CLAIMS

322.     American Image reserves the right to supplement or amend this answer, including through the addition of further counterclaims and cross-claims, based upon the course of discovery and pleadings in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendants/Counterclaim Plaintiffs/Crossclaim Plaintiffs American Image Art and Michael McKenzie respectfully request that the Court:

A.     declare American Image did not violate Plaintiff's copyright of Indiana's *Ninth American Dream*;

B.     declare the License/IP Agreement and Sculpture Agreement, if enforceable, do not concern the original artworks Indiana created and American Image produced;

C.     declare the Hope Contract and addendums valid;

D.     enjoin Plaintiff from falsely claiming McKenzie has forged Indiana artworks;

E.     order the James Brannan as The Personal Representative of The Estate and Jamie Thomas to indemnify American Image for any damages to Plaintiff caused by the actions of Indiana or his power of attorney, Thomas;

F.      order the James Brannan as The Personal Representative of The Estate and Jamie Thomas to indemnify American Image for any fees and costs paid to defend this action;

G.      award American Image general and/or compensatory damages in an amount to be determined at trial for all injuries suffered as a result of Plaintiff's wrongdoing;

H.      award American Image general and/or compensatory damages in an amount to be determined at trial for all injuries suffered as a result of Indiana and Thomas's wrongdoing;

I.      award American Image nominal damages;

J.      award American Image punitive damages;

K.      award American Image pre-judgment and post-judgment interest at the maximum rate allowable by law;

L.      award American Image the costs of defending the suit as incurred in this action and attorney's fees;

M.      all other just and proper relief;


Dated: New York, New York
        July 13, 2018

                        DUNNINGTON, BARTHOLOW & MILLER LLP
                        *Attorneys for Michael McKenzie and American Image Art*


                        By:  /s Raymond J. Dowd_____
                             Raymond J. Dowd
                             Hardin P. Rowley
                             L. Elizabeth Dale
                             250 Park Avenue, Suite 1103
                             New York, New York 10177
                             (212) 682-8811
                             rdowd@dunnington.com
                             hrowley@dunnington.com
                             ldale@dunnington.com