# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

MORGAN ART FOUNDATION LIMITED,

Plaintiff,

v.

MICHAEL McKENZIE, AMERICAN IMAGE ART, JAMIE THOMAS, and JAMES W. BRANNAN, as Personal Representative of the Estate of Robert Indiana,

Defendants.

Case No. 1:18-cv-04438-AT (BM)

## DEFENDANT JAMIE L. THOMAS' ANSWER, DEFENSES, AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Jamie L. Thomas ("Thomas"), by and through his undersigned counsel, respectfully submits this Answer, Defenses, and Affirmative Defenses to the First Amended Complaint filed by Plaintiff Morgan Art Foundation Limited, as follows.  The paragraph numbers below correspond to the paragraph numbers in Plaintiff's First Amended Complaint.

## NATURE OF THE ACTION

1.      Thomas admits that Robert Indiana was a famous artist, that his iconic *LOVE* image is one of the most recognized artworks in the world, that the *LOVE* image graced a U.S. postage stamp in or about 1973, and that the *LOVE* sculpture has been displayed in museums and public spaces around the globe. Thomas otherwise denies the allegations contained in Paragraph 1.

2.      Thomas denies all of the allegations contained in Paragraph 2.

3.      Thomas admits the allegations of Paragraph 3.

4. Thomas admits the allegations of Paragraph 4, except denies knowledge or information sufficient to form a belief as to the truth of the allegations that the image called *LOVE* went "viral," that it was "plastered" on commercial products, and the precise number of U.S. postage stamps printed.

5. Thomas denies that Indiana's initial success was short-lived. Thomas admits that Indiana became deeply associated with *LOVE*, that the extensive commercialization and illegal reproductions of *LOVE*, without the artist's consent, damaged Indiana's brand, and that Indiana was associated with everything from novelty t-shirts to cheap gift store trinkets. Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations that the general public and the art world largely ignored Indiana's other works and that the statements in Paragraph 5 alleged to be in Indiana's own words, were Indiana's own words.

6. Thomas admits that in 1978 Indiana moved to Vinalhaven, Maine, that his home was reachable by ferry and small-engine plane, as well as other means of transportation, and that two decades passed. Except as so admitted, Thomas denies the remaining allegations of Paragraph 6.

7. Thomas denies that in the mid-1990s, Morgan Art Foundation Limited and its advisor, Simon Salama-Caro, salvaged or needed to salvage Indiana's career. Except as so denied, Thomas denies knowledge or information necessary to form a belief as to the truth of the remaining allegations in Paragraph 7.

8. Thomas admits that on April 9, 1999 and on December 22, 1999 Indiana purportedly signed two documents and refers to the text of those documents for the truth of their contents. Copies of those documents are attached hereto as Exhibits A and B, respectively. Except as so admitted, Thomas denies the allegations of Paragraph 8.

9.     Thomas admits that Artists Rights Society ("ARS") is a preeminent copyright, licensing, and monitoring organization for visual arts in the United States located in New York, and admits that ARS granted selective licenses in certain works. Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations that Morgan Art Foundation appointed ARS based on the advice of Simon Salama-Caro and that Morgan Art Foundation successfully removed cheap reproductions and products incorporating Indiana's images from the tchotchke market.  Except as so answered, Thomas denies all of the remaining allegations of Paragraph 9.

10.     Thomas admits that in 2013, the highly regarded Whitney Museum in New York City held a major retrospective exhibition of Indiana's works called "Robert Indiana: Beyond Love." Thomas further admits that the Whitney published a catalogue to accompany the exhibit and refers to that catalogue for the truth of the statements therein. Except as so admitted, Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10.

11.     Thomas admits that, as of September 26, 2018, five years will have passed since the Whitney Museum exhibition opened, that Indiana's works have continued to sell and art historical accounts have treated his works with respect, that leading institutions in the United States and Europe have acquired major examples of Indiana's artwork, and that on May 7, 2016, Indiana signed a Power of Attorney appointing Thomas as his attorney-in-fact. Thomas affirmatively states that he took direction from Indiana with respect to receiving visitors and responding to correspondence and other communications. Except as so answered, Thomas denies the remaining allegations of Paragraph 11.

12.     Thomas admits that in or about 2016, American Image Art published an edition of artworks by Indiana. Thomas also admits there was an exhibition of Indiana's works at Bates College Museum of Art. Except as so admitted, Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12.

13.     Thomas denies knowledge and information sufficient to form a belief as to the allegations of Paragraph 13.

14.     Thomas admits that Indiana sought to distance his legacy from the relentless focus on *LOVE*, and that  Indiana appreciated the work and wanted it to be widely accepted and collected, but he wanted to be respected as an artist for all of his art, not just *LOVE*.  Thomas further admits that Indiana also disliked the Pop Art label, and repeatedly identified his artistic style in interviews as "Hard-Edge" and "not Pop." Thomas denies knowledge or information sufficient to form a belief as to the truth of the quoted statements by Indiana and the allegations that Michael McKenzie has fed the media a contrary narrative that Indiana never would have approved and that McKenzie recently told one newspaper, "On the strength of 'LOVE,'" Indiana survives as "the crown prince of pop in the living genre." Except as so answered, Thomas denies the remaining allegations of Paragraph 14.

15.     Thomas denies the allegations of Paragraph 15.

16.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16.

17.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations that notwithstanding Simon Salama-Caro's resistance, McKenzie's plan has become a reality, that McKenzie and American Image Art have lined their pockets with millions of dollars by peddling fraudulent Indiana works and that McKenzie and American Image Art have

violated Morgan Art Foundation's copyrights and trademark in Indiana's works. Except as so answered, Thomas denies the remaining allegations of Paragraph 17.

18.     Thomas denies the allegations of Paragraph 18.

## PARTIES

19.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19.

20.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20.

21.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21, except admits that American Image Art uses 171 Goldens Bridge Road, Katonah, New York 10536 as a mailing address for its business.

22.     Thomas admits that he is a Maine resident and affirmatively states that he resides at 8 Pleasant Street, Vinalhaven, Maine 04863.

23.     Thomas admits the allegations of Paragraph 23.

## JURISDICTION AND VENUE

24.     Thomas admits that Plaintiff purports to bring this action under the copyright laws of the United States, 17 U.S.C. §§ 101, *et seq.*  Thomas neither admits nor denies the remaining allegations of Paragraph 24 as they state a legal conclusion to which no response is required.

25.     Thomas neither admits nor denies Paragraph 25, as it states legal conclusions to which no response is required.

26.     Thomas neither admits nor denies Paragraph 26, as it states a legal conclusion to which no response is required.

27.     Thomas neither admits nor denies Paragraph 27, as it states legal conclusions to which no response is required.

28.     Thomas neither admits nor denies the allegations of Paragraph 28 as they are directed to a Defendant other than Thomas and they, in any event, state legal conclusions to which no response is required.

29.     Thomas neither admits nor denies Paragraph 29, as it states a legal conclusion to which no response is required.

30.     Thomas neither admits nor denies Paragraph 30, as it states a legal conclusion to which no response is required.

## FACTUAL ALLEGATIONS

31.     Thomas admits that Robert Indiana was an American artist born on September 13, 1928 in New Castle, Indiana.

32.     Thomas admits the allegations of Paragraph 32.

33.     Thomas admits the allegations of Paragraph 33.

34.     Thomas admits the allegations of Paragraph 34, except denies knowledge or information sufficient to form a belief as to the truth of the allegation that more than 330 million stamps were printed.

35.     Thomas admits that people used the *LOVE* image without Indiana's consent, and Indiana negatively commented on the frivolous use of the *LOVE* image in popular culture. Except as so admitted, Thomas denies the remaining allegations of Paragraph 35.

36.     Thomas admits that, in 1978, Indiana moved to Vinalhaven, Maine, a small island that is accessible by ferry and small-engine plane, as well as other means of transportation.  Except as so admitted, Thomas denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36.

37.     Thomas denies the allegations of Paragraph 37.

38.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 38.

39.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 39.

40.     Thomas admits that Simon Salama-Caro has represented Indiana and except as so admitted, denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40.

41.     Thomas admits that an art gallery in London exhibited certain of Indiana's works and except as so admitted, denies knowledge or information sufficient to form a belief as to the truth of the allegation of Paragraph 41.

42.     Thomas denies the allegations of Paragraph 42.

43.     Thomas admits that on April 9, 1999, Indiana purportedly entered into an agreement with Morgan Consolidated Ltd., now purportedly known as Morgan Art Foundation Limited, and that on December 22, 1999, Indiana purportedly entered into an agreement with Morgan Art Foundation Limited, purportedly formerly known as Morgan Consolidated Ltd. Copies of those purported agreements are attached hereto as Exhibits A and B, respectively, and Thomas refers to the text of those purported agreements for the truth of the contents thereof. Thomas denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

44.     Thomas admits that on April 9, 1999, Indiana purportedly entered into an agreement with Morgan Consolidated Ltd., now purportedly known as Morgan Art Foundation

Limited, and that on December 22, 1999, Indiana purportedly entered into an agreement with Morgan Art Foundation Limited, purportedly formerly known as Morgan Consolidated Ltd. Copies of those purported agreements are attached hereto as Exhibits A and B, respectively, and Thomas refers to the text of those purported agreements for the truth of the contents thereof. Thomas denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

45.     Thomas admits that on April 9, 1999, Indiana purportedly entered into an agreement with Morgan Consolidated Ltd., now purportedly known as Morgan Art Foundation Limited, and that on December 22, 1999, Indiana purportedly entered into an agreement with Morgan Art Foundation Limited, purportedly formerly known as Morgan Consolidated Ltd. Copies of those purported agreements are attached hereto as Exhibits A and B, respectively, and Thomas refers to the text of those purported agreements for the truth of the contents thereof.

46.     Thomas admits that on April 9, 1999, Indiana purportedly entered into an agreement with Morgan Consolidated Ltd., now purportedly known as Morgan Art Foundation Limited, and that on December 22, 1999, Indiana purportedly entered into an agreement with Morgan Art Foundation Limited, purportedly formerly known as Morgan Consolidated Ltd. Copies of those purported agreements are attached hereto as Exhibits A and B, respectively, and Thomas refers to the text of those purported agreements for the truth of the contents thereof.

47.     Thomas admits that on April 9, 1999, Indiana purportedly entered into an agreement with Morgan Consolidated Ltd., now purportedly known as Morgan Art Foundation Limited, and that on December 22, 1999, Indiana purportedly entered into an agreement with

Morgan Art Foundation Limited, purportedly formerly known as Morgan Consolidated Ltd. Copies of those purported agreements are attached hereto as Exhibits A and B, respectively, and Thomas refers to the text of those purported agreements for the truth of the contents thereof. Thomas denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

48.     Thomas admits that on April 9, 1999, Indiana purportedly entered into an agreement with Morgan Consolidated Ltd., now purportedly known as Morgan Art Foundation Limited, and that on December 22, 1999, Indiana purportedly entered into an agreement with Morgan Art Foundation Limited, purportedly formerly known as Morgan Consolidated Ltd. Copies of those purported agreements are attached hereto as Exhibits A and B, respectively, and Thomas refers to the text of those purported agreements for the truth of the contents thereof. Thomas denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

49.     Thomas admits that on April 9, 1999, Indiana purportedly entered into an agreement with Morgan Consolidated Ltd., now purportedly known as Morgan Art Foundation Limited, and that on December 22, 1999, Indiana purportedly entered into an agreement with Morgan Art Foundation Limited, purportedly formerly known as Morgan Consolidated Ltd. Copies of those purported agreements are attached hereto as Exhibits A and B, respectively, and Thomas refers to the text of those purported agreements for the truth of the contents thereof.

50.     Thomas admits that on April 9, 1999, Indiana purportedly entered into an agreement with Morgan Consolidated Ltd., now purportedly known as Morgan Art Foundation Limited, and that on December 22, 1999, Indiana purportedly entered into an agreement with Morgan Art Foundation Limited, purportedly formerly known as Morgan Consolidated Ltd. Copies of those purported agreements are attached hereto as Exhibits A and B, respectively, and Thomas refers to the text of those purported agreements for the truth of the contents thereof.

51.     Thomas admits that on April 9, 1999, Indiana purportedly entered into an agreement with Morgan Consolidated Ltd., now purportedly known as Morgan Art Foundation Limited, and that on December 22, 1999, Indiana purportedly entered into an agreement with Morgan Art Foundation Limited, purportedly formerly known as Morgan Consolidated Ltd. Copies of those purported agreements are attached hereto as Exhibits A and B, respectively, and Thomas refers to the text of those purported agreements for the truth of the contents thereof.

52.     Thomas admits that on April 9, 1999, Indiana purportedly entered into an agreement with Morgan Consolidated Ltd., now purportedly known as Morgan Art Foundation Limited, and that on December 22, 1999, Indiana purportedly entered into an agreement with Morgan Art Foundation Limited, purportedly formerly known as Morgan Consolidated Ltd. Copies of those purported agreements are attached hereto as Exhibits A and B, respectively, and Thomas refers to the text of those purported agreements for the truth of the contents thereof.

53.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 53.  Thomas further denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

54.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 54.

55.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegation of Paragraph 55.  To the extent Paragraph 55 purports to quote from a document, the document itself is the best evidence for the truth of the contents thereof.

56.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 56.

57.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 57.  To the extent Paragraph 57 purports to quote from a document, the document itself is the best evidence for the truth of the contents thereof.

58.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 58.  To the extent Paragraph 58 purports to quote from a document, the document itself is the best evidence for the truth of the contents thereof.

59.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 59.

60.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 60.

61.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 61.  Thomas further denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

62.     Thomas admits that from 2002 to 2008 Morgan Art Foundation and Simon Salama-Caro continued to exploit the works of Robert Indiana and except as so admitted, Thomas denies the allegations of Paragraph 62.

63.     Thomas denies knowledge or information sufficient to form a belief as to the allegation concerning the art market for Indiana's work and otherwise denies the allegations of Paragraph 63.

64.     Thomas denies knowledge or information sufficient to form a belief as to whether, around 2008, "everything" was going "smoothly" for Indiana, the market for his art was "rejuvenated," and the "art world" was "again recognizing" his works.  Thomas otherwise denies the allegations of Paragraph 64, including the allegation that McKenzie "arrived on the scene" around 2008.

65.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 65.

66.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 66.

67.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 67.

68.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 68.

69.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 69.

70.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 70.

71.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 71.

72.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 72.

73.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 73.

74.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 74.

75.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 75.

76.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 76.  To the extent Paragraph 76 purports to describe or quote from a video, the video itself is the best evidence for the truth of the contents thereof.

77.     Thomas admits that in 2013, the Whitney Museum in New York City held a major retrospective of Indiana's works called "Robert Indiana: Beyond Love." Except as so admitted, Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 77.

78.     Thomas denies that Indiana "had been waiting for this moment his entire career," admits that Indiana was interviewed by the New York Times and that the exhibit was reviewed by many media publications, and otherwise refers to the published interview and reviews for the truth of the contents thereof.

79.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 79.  To the extent Paragraph 79 purports to quote from a document, the document itself is the best evidence for the truth of the contents thereof.

80.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 80.

81.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 81.

82.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 82.

83.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 83.  To the extent Paragraph 83 purports to quote from a document, the document itself is the best evidence for the truth of the contents thereof.

84.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 84.

85.     Thomas denies the allegations contained in the first sentence of Paragraph 85 and otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 85.

86.     Thomas admits that he advised all persons wishing to visit Indiana to check before visiting because Indiana often chose not to have any visitors, and except as so admitted, denies the allegations of Paragraph 86.

87.     Thomas denies the first four sentences of Paragraph 87, and except as so denied, admits the remaining allegations of Paragraph 87. Thomas affirmatively states that Indiana

executed a durable Power of Attorney appointing Thomas as Indiana's attorney-in-fact on May 7, 2016.

88.     Thomas admits that at Indiana's request, Thomas denied Marc Salama-Caro access to Indiana, and that, also at Indiana's request, he sent the July 2016 email.  To the extent Paragraph 88 purports to quote from that email, the document itself is the best evidence for the truth of the contents thereof.  Except as so admitted, Thomas denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 88.

89.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 89.

90.     Thomas admits that in connection with responding to all callers and visitors, Thomas responded in accordance with Indiana's instructions and directives, and except as so admitted, denies the allegations of Paragraph 90.

91.     Thomas denies that he "isolated and manipulated Indiana" and otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 91.

92.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 92.

93.     Thomas admits that American Image Art published a group of works in or about 2016, and except as so admitted, denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 93.  Thomas further denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

94.     Thomas neither admits nor denies Paragraph 94, as it states legal conclusions to which no response is required, and to the extent the images are drawn from published catalogues, Thomas refers to those catalogues for the truth of the contents thereof.

95.     Thomas admits there was an exhibition of Indiana's works at Bates College Museum of Art but otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 95.

96.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 96.

97.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 97.

98.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 98, except that Thomas neither admits nor denies the allegation that Indiana "could not lawfully authorize" the production of certain works, as that allegation states a legal conclusion to which no response is required.

99.     Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations surrounding any trip to Portland and/or Vinalhaven, Maine on or about June 6, 2017 by Simon and Marc Salama-Caro, any meetings with the Chief Curator of The Farnsworth or with one of Indiana's assistants, and except as so answered, denies the remaining allegations of Paragraph 99.

100.    Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 100.

101.    Thomas admits that he received from Indiana's personal attorney, James Brannan, information about a request from Simon Salama-Caro to visit Indiana, that Thomas discussed the

16

request with Indiana and Brannan, and that Salama-Caro was advised that Indiana was not in a position to meet with him. Except as so admitted, Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 101.

102.    Thomas admits that upon uncovering numerous instances of the Morgan Art Foundation, and Simon  Salama-Caro,  as its agent, breaching their obligations to Indiana,  and uncovering various unauthorized acts by members of the Salama-Caro family and affiliated companies with respect to the works of Indiana, Thomas—in his capacity as Indiana's Power of Attorney and with the actual knowledge and authorization of Indiana and Indiana's independent counsel—authorized his counsel to send cease and desist letters to Christie's, Phillips, and Sotheby's and direct all inquiries to be made to Thomas' counsel.  True and correct copies of the letters sent by Thomas' counsel are attached hereto as Exhibits C, D, and E, and Thomas refers to the letters for the truth of the contents thereof. Except as so admitted, Thomas denies the allegations of Paragraph 102.

103.    Thomas admits that—in his capacity as Indiana's Power of Attorney and with the actual knowledge and authorization of Indiana and Indiana's independent counsel—he authorized his counsel to send cease and desist letters to Christie's, Phillips, and Sotheby's and direct all inquiries to be made to Thomas' counsel.  True and correct copies of the letters sent by Thomas' counsel are attached hereto as Exhibits C, D, and E, and Thomas refers to the letters for the truth of the contents thereof.  Thomas further admits that on April 9, 1999, Indiana purportedly entered into an agreement with Morgan Consolidated Ltd., now purportedly known as Morgan Art Foundation Limited, and that on December 22, 1999, Indiana purportedly entered into an agreement with Morgan Art Foundation Limited, purportedly formerly known as Morgan Consolidated Ltd.  Copies of those purported agreements are attached hereto as Exhibits A and B,

respectively, and Thomas refers to the text of those purported agreements for the truth of the contents thereof.  Except as so admitted, Thomas denies the allegations of Paragraph 103.

104.    Thomas admits that—in his capacity as Indiana's Power of Attorney and with the actual knowledge and authorization of Indiana and Indiana's independent counsel—he authorized his counsel to send a cease and desist letter to Cyber City, Inc., the host of the Robertindiana.com website.  A true and correct copy of the letter sent by Thomas' counsel is attached hereto as Exhibit F, and Thomas refers to the letter for the truth of the contents thereof.  Except as so admitted, Thomas denies the allegations of Paragraph 104.

105.    Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 105.

106.    Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 106.  To the extent Paragraph 106 purports to quote from a document, the document itself is the best evidence for the truth of the contents thereof.

107.    Thomas denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 107.

108.    Thomas denies the allegations of Paragraph 108.

**COUNT I**
**COPYRIGHT INFRINGEMENT**
**Against All Defendants**

109.    Thomas repeats and realleges each and every answer to the allegations contained in the paragraphs above as if fully set forth here.

110.    Thomas admits that "The Ninth American Dream" (2001) is an original, creative work first published in the United States. Thomas neither admits nor denies the remaining allegations of Paragraph 110, as they state a legal conclusion to which no response is required.

111.    Thomas admits that "USA FUN" (1965) is an original, creative work first published in the United States.  Thomas neither admits nor denies the remaining allegations of Paragraph 111, as they state a legal conclusion to which no response is required.

112.    Thomas neither admits nor denies the allegations of Paragraph 112, as they state a legal conclusion to which no response is required.

113.    Thomas neither admits nor denies the allegations of Paragraph 113, as they state a legal conclusion to which no response is required.

114.    Thomas neither admits nor denies the allegations of Paragraph 114, as the paragraph contains allegations directed to Defendants other than Thomas.

115.    Thomas neither admits nor denies the allegations in Paragraph 115 as they relate to him, as they state legal conclusions to which no response is required.

116.    Thomas denies the allegations of Paragraph 116.

**COUNT II**
**TRADEMARK INFRINGEMENT (LANHAM ACT)**
**Against Michael McKenzie and American Image Art**

117.    Thomas repeats and realleges each and every answer to the allegations contained in the paragraphs above as if fully set forth here.

118.    Thomas neither admits nor denies the allegations of Paragraph 118, as they state legal conclusions to which no response is required, and except as so answered, neither admits nor denies the allegations of Paragraph 118, as the paragraph contains allegations directed to Defendants other than Thomas.

119.    Thomas neither admits nor denies the allegations that Morgan Art Foundation's trademark in *LOVE* is inherently distinctive and has acquired secondary meaning in the minds of the public, as they state legal conclusions to which no response is required, and except as so

answered, neither admits nor denies the allegations of Paragraph 119, as the paragraph contains allegations directed to Defendants other than Thomas.

120.    Thomas neither admits nor denies the allegations of Paragraph 120, as the paragraph contains allegations directed to Defendants other than Thomas.

121.    Thomas neither admits nor denies the allegations of Paragraph 121, as the paragraph contains allegations directed to Defendants other than Thomas.

122.    Thomas neither admits nor denies the allegations of Paragraph 122, as the paragraph contains allegations directed to Defendants other than Thomas.

123.    Thomas neither admits nor denies the allegations of Paragraph 123, as the paragraph contains allegations directed to Defendants other than Thomas.

### COUNT III
### TRADEMARK INFRINGEMENT (COMMON LAW)
### Against Michael McKenzie and American Image Art

124.    Thomas repeats and realleges each and every answer to the allegations contained in the paragraphs above as if fully set forth here.

125.    Thomas neither admits nor denies the allegations of Paragraph 125, as they state legal conclusions to which no response is required, and except as so answered, neither admits nor denies the allegations of Paragraph 125, as the paragraph contains allegations directed to Defendants other than Thomas.

126.    Thomas neither admits nor denies the allegations that Morgan Art Foundation's trademark in *LOVE* is inherently distinctive and has acquired secondary meaning in the minds of the public, as they state legal conclusions to which no response is required, and except as so answered, neither admits nor denies the allegations of Paragraph 126, as the paragraph contains allegations directed to Defendants other than Thomas.

127.    Thomas neither admits nor denies the allegations of Paragraph 127, as the paragraph contains allegations directed to Defendants other than Thomas.

128.    Thomas neither admits nor denies the allegations of Paragraph 128, as the paragraph contains allegations directed to Defendants other than Thomas.

129.    Thomas neither admits nor denies the allegations of Paragraph 129, as the paragraph contains allegations directed to Defendants other than Thomas.

130.    Thomas neither admits nor denies the allegations of Paragraph 130, as the paragraph contains allegations directed to Defendants other than Thomas.

## COUNT IV
## BREACH OF CONTRACT
### Against Jamie Thomas, as Power of Attorney, and Robert Indiana

131.    Thomas repeats and realleges each and every answer to the allegations contained in the paragraphs above as if fully set forth here.

132.    Thomas denies the allegations of Paragraph 132.  Thomas denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

133.    Thomas denies the allegations of Paragraph 133.  Thomas denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

134.    Thomas denies the allegations of Paragraph 134.  Thomas denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

21

135.     Thomas denies the allegations of Paragraph 135.

**COUNT V**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**Against Michael McKenzie, American Image Art, and Jamie Thomas**

136.     Thomas repeats and realleges each and every answer to the allegations contained in the paragraphs above as if fully set forth here.

137.     Thomas denies the allegations of Paragraph 137.  Thomas denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

138.     Thomas denies the allegations of Paragraph 138.  Thomas denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

139.     Thomas admits the existence of the agreements executed by Indiana on April 9, 1999 and December 22, 1999 and denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

140.     Thomas denies the allegations of Paragraph 140 to the extent it relates to him. Thomas denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

141.     Thomas admits that—in his capacity as Indiana's Power of Attorney and with the actual knowledge and authorization of Indiana and Indiana's independent counsel—he authorized his counsel to send cease and desist letters to Christie's, Phillips, and Sotheby's and direct all inquiries to be made to Thomas' counsel.  Except as so admitted, Thomas denies the allegations of Paragraph 141.

142.     Thomas denies the allegations of Paragraph 142 to the extent they relate to him.

**COUNT VI**
**VISUAL ARTIST'S RIGHTS ACT**
**Against Michael McKenzie, American Image Art, and Jamie Thomas**

143.     Thomas repeats and realleges each and every answer to the allegations contained in the paragraphs above as if fully set forth here.

144.     Thomas neither admits nor denies the allegations of Paragraph 144, as they state a legal conclusion to which no response is required.

145.     Thomas admits that Robert Indiana was a world-renowned and widely-recognized visual artist. Except as so admitted, Thomas neither admits nor denies the remaining allegations of Paragraph 145, as they state a legal conclusion to which no response is required.

146.     Thomas denies the allegations of Paragraph 146.  Thomas denies knowledge or information sufficient to form a belief as to what "amendments" were made, if any, to the April 9, 1999 agreement, and therefore affirmatively states that Plaintiff's use of "License/IP Agreement" as a defined term that includes any such amendments is vague and misleading.

147.     Thomas denies the allegations of Paragraph 147 to the extent they relate to him.

148.     Thomas denies the allegations of Paragraph 148 to the extent they relate to him.

149.     Thomas denies the allegations of Paragraph 149 to the extent they relate to him.

## COUNT VII
## UNFAIR COMPETITION
**Against Michael McKenzie, American Image Art, and Jamie Thomas**

150.     Thomas repeats and realleges each and every answer to the allegations contained in the paragraphs above as if fully set forth here.

151.     Thomas denies the allegations of Paragraph 151 to the extent they relate to him.

152.     Thomas denies the allegations of Paragraph 152 to the extent they relate to him.

153.     Thomas denies the allegations of Paragraph 153 to the extent they relate to him.

154.     Thomas denies the allegations of Paragraph 154 to the extent they relate to him.

155.     Thomas denies the allegations of Paragraph 155 to the extent they relate to him.

## COUNT VIII
## DEFAMATION
**Against Jamie Thomas and Michael McKenzie**

156.     Thomas repeats and realleges each and every answer to the allegations contained in the paragraphs above as if fully set forth here.

157.     Thomas denies the allegations of Paragraph 157.

158.     Thomas neither admits nor denies the allegations of Paragraph 158, as the paragraph contains allegations directed to Defendants other than Thomas.

159.     Thomas denies the allegations of Paragraph 159 to the extent they relate to him.

160.     Thomas denies the allegations of Paragraph 160 to the extent they relate to him.

161.     Thomas denies the allegations of Paragraph 161 to the extent they relate to him.

162.     Thomas denies the allegations of Paragraph 162 to the extent they relate to him.

163.     Thomas denies the allegations of Paragraph 163 to the extent they relate to him.

## DEFENSES AND AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, because they fail to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, for lack of standing.

### THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the relevant statutes of limitations.

### FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because all of Thomas' relevant actions were taken on Indiana's behalf and were within the scope of authority designated to Thomas by Indiana.

### FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Court has personal jurisdiction over Thomas only in his capacity as Indiana's attorney-in-fact and not in his personal capacity.

### SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the copyrights Plaintiff alleges it owns are invalid.

### SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because any use of any copyrighted material was authorized.

### EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff waived or released them.

**NINTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because any use of any copyrighted material was expressly or impliedly licensed and/or the alleged activity was done with Plaintiff's consent or acquiescence.

**TENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, under the doctrine of copyright misuse because Plaintiff exploited Indiana's works without adequately compensating Indiana.

**ELEVENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, under the doctrine of innocent infringement because Plaintiff did not timely file its copyright registrations.

**TWELFTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, under the doctrine of fair use.

**THIRTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because the contracts purportedly granting Plaintiff rights in Indiana's works are invalid.

**FOURTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to comply with its contractual obligations.

**FIFTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Thomas was responsible and authorized for those aspects of Indiana's welfare set forth in the Power of Attorney and incorporated by reference therein.

**SIXTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Thomas did not take any relevant action oriented toward consumers.

**SEVENTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Thomas did not take any relevant action that was likely to mislead consumers.

**EIGHTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Thomas' relevant actions were protected by the First Amendment.

**NINETEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Thomas at all times acted in good faith and with non-willful intent.

**TWENTIETH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Plaintiff suffered no damages.

**TWENTY-FIRST DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate its damages.

**TWENTY-SECOND DEFENSE**

Plaintiff's claims for injunctive relief are barred, in whole or in part, because Plaintiff suffered no irreparable harm.

**TWENTY-THIRD DEFENSE**

Plaintiff's claims for injunctive relief are barred, in whole or in part, because Plaintiff has an adequate remedy at law.

## TWENTY-FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## TWENTY-FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## TWENTY-SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of equitable estoppel.

## RESERVATION OF RIGHTS

Thomas reserves the right to amend and/or supplement this Answer, Defenses, and Affirmative Defenses, including, without limitation, to assert additional defenses.

## PRAYER FOR RELIEF

WHEREFORE, having fully answered Plaintiff's First Amended Complaint, Thomas respectfully prays that the Court:

A.      Enter an order dismissing Plaintiff's First Amended Complaint and each and every count therein relating to Thomas with prejudice;

B.      Enter judgment in favor of Thomas on Plaintiff's First Amended Complaint and each and every count therein relating to Thomas;

C.      Award Thomas his reasonable costs and attorneys' fees incurred in having to defend against this action, pursuant to 17 U.S.C. § 505; and

D.      Grant Thomas such other and further relief as the Court deems just and proper.

Dated: September 7, 2018
      New York, New York

Respectfully submitted,

JENNER & BLOCK LLP

By:  __/s/ Susan J. Kohlmann_____

    Susan J. Kohlmann (SK1855)
    Jacob L. Tracer (JT1307)
    Ava U. McAlpin (AM4645)
    919 Third Avenue, 38th Floor
    New York, NY 10022
    Phone: 212-891-1600
    Fax: 212-891-1699
    skohlmann@jenner.com
    jtracer@jenner.com
    amcalpin@jenner.com

    John D. Frumer (*Pro Hac Vice*)
    CHRISTIE & YOUNG PC
    199 Wells Avenue
    Suite 301
    Newton, MA 02459
    Phone: 617-854-8315
    Fax: 617-854-8311
    jdfrumer@christieyoung.com

    *Attorneys for Jamie Thomas*

## <u>CERTIFICATE OF SERVICE</u>

I, Susan J. Kohlmann, an attorney at the law firm of Jenner & Block LLP, certify that on September 7, 2018, Defendant Jamie L. Thomas' Answer, Defenses, and Affirmative Defenses to Plaintiff's First Amended Complaint was electronically served on counsel of record via the Court's CM/ECF system.


_____/s/ Susan J. Kohlmann_____
Susan J. Kohlmann