```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/28/20
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORGAN ART FOUNDATION LIMITED,

          Plaintiff,

  -against-

MICHAEL MCKENZIE, et al.,

          Defendants.

18-CV-4438 (AT) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

    By letter-motion dated August 26, 2019 (Ltr. Mot.) (Dkt. No. 193), counterclaimant James W. Brannan, as personal representative of the Estate of Robert Indiana (the Estate), seeks leave to file a Second Amended Answer and Counterclaims against counterclaim defendants Morgan Art Foundation Limited (MAF or Morgan), Simon Salama-Caro, Shearbrook (US) LLC (Shearbrook), Figure 5 Art LLC, and RI Catalogue Raisonné LLC (the Counterclaim Defendants). For the reasons set forth below, the Estate's letter-motion will be granted.[1]

## Background

    This case concerns the late artist Robert Indiana, the legal rights to his intellectual property, and related disputes. It is one of two actions pending in this district concerning those subjects. *See also Morgan Art Found. Ltd. v. Brannan*, No. 18-CV-08231 (AT) (BCM) (S.D.N.Y.) (*Morgan Art II*). MAF, a plaintiff in both, is a Bahamas limited liability company that claims to own the rights to much of Indiana's artistic output by virtue of a series of agreements it entered into with Indiana, including one dated April 9, 1999 (the April 1999 Agreement), which "conveyed to Morgan Art

---

[1] An order granting a party leave to amend its pleading is a non-dispositive matter within the scope of my authority pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) (referring to a motion to amend a complaint as a non-dispositive motion); *Kilcullen v. New York State Dep't of Transp.*, 55 F. App'x 583, 584 (2d Cir. 2003) (same); *Berrio v. City of New York*, 2018 WL 2388537, at *1 n.1 (S.D.N.Y. May 9, 2018) (same, and collecting cases).

Foundation all 'copyright, trademark, and other rights'" in a broad collection of Indiana artworks, and another dated December 22, 1999 (the Sculpture Agreement), which "conveyed to Morgan Art Foundation the exclusive right to 'produce and fabricate,' own, and sell" new reproductions of certain Indiana sculptures in specified materials and sizes. Compl. (Dkt. No. 1) ¶ 8. In exchange, MAF agreed to provide Indiana regular payments equal to a percentage of MAF's "net income" from its sales of Indiana artworks, after deduction of enumerated expenses. *Id.* ¶¶ 8, 48, 52.

On May 18, 2018, MAF commenced this action against American Image Art (AIA), which allegedly "marketed, exhibited, and sold" certain works that purported to be "authentic works by Robert Indiana" but in fact were "forgeries"; Michael McKenzie, AIA's founder; Jamie Thomas, "a fisherman from Maine with no art expertise that Indiana had employed to run errands and do work around the house," and to whom Indiana granted a power of attorney in 2016; and Robert Indiana himself. Compl. ¶¶ 1-2, 11-12, 20-23. Among other claims, MAF alleged that AIA and McKenzie infringed MAF's copyrights in certain Indiana artworks, and that Indiana (through the power of attorney he granted to Thomas) had "a financial interest in and the ability to supervise the infringing activity." *Id*. ¶¶ 107-12.

On May 19, 2018, Robert Indiana died. On July 23, 2018, the Estate was substituted for Indiana as a defendant. (Dkt. No. 35.)

On September 7, 2018, the Estate filed an answer and counterclaims against the Counterclaim Defendants, and on September 20, 2018, it filed its First Amended Answer and Counterclaims (FAAC) (Dkt. No. 78). The Estate asserted two breach of contract claims against MAF, alleging that it breached the April 1999 Agreement and the Sculpture Agreement by failing to pay amounts required under those contacts, by failing to provide required accountings, and by producing and selling unauthorized reproductions of certain Indiana sculptures (referred to as the

Unauthorized Semi-Precious Stone LOVE Sculptures), *id*. ¶¶ 210-20; an unjust enrichment claim against MAF, *id*. ¶¶ 221-25; a claim that MAF violated the Visual Artist's Rights Act (VARA) by applying Indiana's signature to the Unauthorized Semi-Precious Stone LOVE Sculptures, *id*. ¶¶ 226-33; and claims of unfair competition, trademark infringement, unjust enrichment, and unfair competition against the other Counterclaim Defendants, stemming from their allegedly unauthorized preparation of Indiana's catalogue raisonné and their allegedly unauthorized use of the artist's name on a website that they created using the domain name "robertindiana.com." *Id*. ¶¶ 234-64.

On November 6, 2018, the Counterclaim Defendants moved to dismiss the Estate's counterclaims in their entirety. (Dkt. No. 105.) The Estate stood on its pleading.[2]

By Order dated July 1, 2019 (July 1 Order) (Dkt. No. 175), Judge Torres granted in part and denied in part the Counterclaim Defendants' motion to dismiss. Judge Torres dismissed the Estate's First Counterclaim, for breach of the April 1999 Agreement, as insufficiently specific and (as to MAF's alleged failure to provide accountings in 1995 and between 1999 and 2008) as barred by New York's six-year statute of limitations. July 1 Order at 16-17. She similarly dismissed the Second Counterclaim, for breach of the Sculpture Agreement, *id*. at 18, except with respect to "that portion of the Second Counterclaim that asserts a claim for breach of the Sculpture Agreement with respect to the [Unauthorized] Semi-Precious Stone Sculptures." *Id*. at 19. Judge Torres also dismissed the Estate's unjust enrichment claim against MAF, *id.* at 20-21, its VARA claim against

---

[2] Under the Individual Practices in Civil Cases of the Hon. Analisa Torres, United States District Judge, a party against which a motion to dismiss is filed has a right to amend its pleading within 21 days, pursuant to Fed. R. Civ. P. 15(a)(1)(B), to "address the deficiencies identified by the motion to dismiss." Torres Indiv. Prac. § III(B)(iv). If it elects not to do so, "no further opportunities to amend to address" those deficiencies "will ordinarily be granted absent good cause." *Id.* The Court addresses the existence of "good cause" below.

3

MAF – except insofar as that claim was predicated on the Unauthorized Semi-Precious Stone LOVE Sculptures, *id.* at 21-22 – and its unjust enrichment claim against the other Counterclaim Defendants based on their preparation of the catalogue raisonné and their use of the robertindiana.com domain (due to the Estate's failure to allege that they received anything of value belonging to the Estate), but denied the motion as to the Estate's other claims concerning the catalogue raisonné and the website. *Id.* at 22-25.

On August 26, 2019, the Estate filed the instant letter-motion seeking leave to amend. The Estate seeks to amend its two breach of contract claims (the First and Second Counterclaims) to allege new facts, occurring "within the statutory limitations period," in support of those claims. Ltr. Mot. at 3; Prop. Second Am. Ans. and Counterclaims (SAAC) ¶¶ 183-213, 228-30, 253-63.[3] The Estate also seeks leave to amend its unjust enrichment claim against MAF (formerly the Third Counterclaim; now the Fourth Counterclaim) to assert that claim "expressly in the alternative to the Estate's breach of contract claims" and to allege "additional facts demonstrating that Morgan has collected revenues from licensing certain of Indiana's works to which Morgan had no contractual rights." Ltr. Mot. at 3; SAAC ¶¶ 272-80.

The Estate also seeks to add two new counterclaims. The first (the Third Counterclaim) alleges that MAF breached its duty of good faith and fair dealing to Indiana by selling Indiana artworks to Shearbrook "at below-market prices," in "commercially unreasonable, wasteful, and bad faith transactions," to "deprive Indiana of his rights and benefits" under the parties' agreements. SAAC ¶¶ 264-71. The Estate alleges that "[s]ince 1990," MAF "has sold every single Robert Indiana sculpture it produced to one – and only one – buyer: Shearbrook (US) LLC, a company

---

[3] The Estate did not file the SAAC on the public docket, "in order to permit" the Counterclaim Defendants and the Court "to assess whether any portions" of it "should be filed under seal." Ltr. Mot. at 1 n.1. The Court will address that issue in its Conclusion below.

4

that is controlled and (upon information and belief) wholly-owned by defendant Simon Salama-Caro," *id.* ¶ 215, who personally served as Indiana's longtime agent in the global art market. Compl. ¶¶ 54, 57, 60, 78. In one instance, the Estate alleges, MAF sold a sculpture to Shearbrook only to repurchase "the exact same sculpture" at auction the next day for nearly $300,000 more, using the "sale to itself through auction" as an "opportunity to reduce the payments" owed to Indiana. SAAC ¶¶ 217-20. The Estate explains that MAF accounted for the sale to Shearbrook as if it were "genuine," deducting associated expenses before paying Indiana his royalty. *Id.* ¶ 220. However, MAF also treated the more expensive purchase price the following day as an "'acquisition' expense," which it "deducted" to "further reduce the amount it paid to Indiana" that year. *Id*. In the same vein, the second new claim (the Eighth Counterclaim) alleges that Salama-Caro and Shearbrook tortiously interfered with MAF's contracts with Indiana "by, among other things: inducing Morgan to enter into below-market sales, wash sales, and fraudulent auction sales; and inducing Morgan to make excessive and impermissible transfer payments and expense deduction[s] so as to divert money to themselves rather than Indiana." *Id.* ¶¶ 306-10.[4]

Since the Estate's August 26, 2019 letter-motion, the parties have been engaging in discovery, albeit at a tepid pace. The fact discovery deadline, originally set for December 21, 2018

---

[4] In *Morgan Art II*, the Estate is asserting claims against Salama-Caro for breach of the fiduciary duty that he personally owed to Indiana, and against the other Counterclaim Defendants for aiding and abetting breach of that duty, based on Salama-Caro having allegedly "allow[ed] himself and [other of the Counterclaim Defendants] to purchase Indiana's works from Morgan, and/or receive such works from Morgan for free, thereby preventing those works from being sold for the highest possible price and depressing the amounts due and payable to Indiana under the Agreements," and resold "some of those Indiana works at market value and retain[ed] the profits . . . without paying any portion of those sales proceeds to Indiana." Am. Ans. and Counterclaims, *Morgan Art II*, ECF No. 52, ¶¶ 278(c), (d). In an Opinion and Order dated January 28, 2020, the Court denied the Counterclaim Defendants' motion to dismiss those claims "to the extent" they are "based on the Estate's self-dealing allegations." *Morgan Art Found. Ltd. v. Brannan*, 2020 WL 469982, at *25 (S.D.N.Y. Jan. 28, 2020).

(Dkt. No. 34) has been extended six times. (Dkt. Nos. 118, 139, 169, 174, 198, 211.) Most recently, in a joint letter dated January 6, 2020 (Dkt. No. 205), the parties requested a three-month extension of the fact discovery deadline, from January 30, 2020, to April 30, 2020, on the basis that they had all agreed (without informing this Court) to "an informal litigation standstill" on October 31, 2019, while they engaged in "a mediation process" at the request of the Office of the Attorney General of the State of Maine, where Indiana's will was probated. That mediation process did not resolve any of the claims or counterclaims between the Estate and the Counterclaim Defendants, either in *Morgan Art II* or this action. (*Id.*) On January 15, 2020, the Court granted the extension request and extended the fact discovery deadline to April 30, 2020. (Dkt. No. 211.)

## **Legal Standard**

Fed. R. Civ. P. 15(a)(2) provides that a party "may amend its pleading only with the opposing party's written consent or the court's leave," which is to be "freely give[n] [] when justice so requires." The standard is intended to be liberal. As the Supreme Court has explained: "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). "This permissive standard is consistent with our 'strong preference for resolving disputes on the merits.'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (quoting *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005)).

Notwithstanding the liberality of Rule 15(a)(2), a court may also deny a motion for leave to amend a pleading pursuant to Fed. R. Civ. P. 16(b)(4) if the motion was made "after the deadline set in the scheduling order" and "the moving party has failed to establish good cause." *Parker v.*

6

*Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir. 2000); *accord Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 582 F.3d 244, 267 (2d Cir. 2009); *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").[5] Where, as here, "a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,'" must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Const.,* 318 F.3d 80, 86 (2d Cir. 2003).

The Court has broad discretion in deciding a motion for leave to amend. *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 126 (2d Cir. 2014) (noting "the wide discretion we accord district courts in choosing to grant or deny leave to amend"); *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000) ("A district court has broad discretion in determining whether to grant leave to amend[.]"); *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 174-76 (S.D.N.Y. 2014) (the decision to grant or deny leave to amend a pleading, whether made under Rule 15(a) or Rule 16(b), is within the trial court's discretion).

## Analysis

Under the circumstances of this case, I will not deny the Estate's letter-motion on Rule 16 grounds. The Estate proffers "good cause" for its delay in seeking leave to amend: MAF's production of "over 55,000 pages of documents" in May 2019, from which the Estate claims that it learned the facts forming the basis of the new allegations in the SAAC. Ltr. Mot. at 2; SAAC ¶ 183. Counterclaim Defendants do not dispute the timing of that production, Opp. Ltr. (Dkt. No. 197) at 3 n.4, and do not assert (either generally or on an allegation-by-allegation basis) that the

---

[5] The Court's original deadline to file a motion to amend was August 22, 2018. (Dkt. No. 34.)

7

Estate knew or should have known those facts before the May 2019 production. *Id.* Nor is the Estate's three-month delay after that production prohibitive of a finding of "good cause," especially where the Estate received the July 1 Order (dismissing certain of its counterclaims as originally pleaded) almost halfway through that time period. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling [on a motion to dismiss], many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").

      I also conclude that amendment should be permitted under Rule 15. Counterclaim Defendants will not suffer undue prejudice from the Estate's amendment. First, though discovery has been underway in this action since 2018, no depositions had been taken as of the date of the Estate's letter-motion. Ltr. Mot. at 4. *See Powell v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc.*, 2013 WL 3956377, at *5 (S.D.N.Y. July 26, 2013) (permitting amendment in part because "as of the date of Plaintiff's motion, no depositions had yet been taken by either party"). Moreover, most of the parties' requested extensions of the discovery period have been granted with the Counterclaim Defendants' consent (*see* Dkt. Nos. 118, 139, 169, 174, 198, 211), including the parties' most recent joint request (Dkt. No. 205) – more than four months after the Estate's letter-motion. Second, I credit the Estate's argument that the proposed SAAC will not "materially change the scope of the litigation or the issues in dispute." Reply Ltr. (Dkt. No. 199) at 3. For instance, MAF's sales of Indiana artworks to the other Counterclaim Defendants are already the subjects of discovery both here and in *Morgan Art II*, where the Estate is claiming that Salama-Caro breached his fiduciary duty to Indiana in connection with those sales. *See Morgan Art*, 2020 WL 469982, at *19-25.

In a single paragraph, the Counterclaim Defendants also argue that the Estate's revised unjust enrichment claim, as well as its new claims for breach of the covenant of good faith and fair dealing and tortious interference, are substantively futile. Opp. Ltr. at 4. I disagree. The Estate's unjust enrichment claim is pled "in the alternative to its breach of contract claim" and concerns MAF's alleged sales of Indiana artworks "without authorization or contractual right to do so." SAAC ¶¶ 272-80. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (Sotomayor, J.) (quoting *Curtis Props. Corp. v. Greif Cos.,* 236 A.D.2d 237, 239, 653 N.Y.S.2d 569, 571 (1st Dep't 1997)) ("[A] party is not precluded from proceeding on both breach of contract and quasi-contract theories where . . . the contract does not cover the dispute in issue."); *Tropical Sails Corp. v. Yext, Inc.*, 2015 WL 2359098, at *7 (S.D.N.Y. May 18, 2015) ("[A] quasi-contract claim may be asserted, notwithstanding the existence of a contract between the parties, where the complained-of conduct falls outside the scope of that contract.").

The Estate's claim for breach of the covenant of good faith and fair dealing asserts that MAF's sales of Indiana's artworks were so self-interested, "unreasonable, wasteful, and [in] bad faith," SAAC ¶ 269, that even if MAF had "sole discretion" to set the prices of those sales, Opp. Ltr. at 4, it violated its implicit promises not to "act arbitrarily or irrationally in exercising that discretion" or to "'do anything which [has] the effect of destroying or injuring the right of the other party to receive the fruits of the contract,'" in this case, Indiana's right to receive royalties, at the contractual rate, on MAF's true "net income." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, 663 N.E.2d 289, 291 (1995) (quoting *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163, 167 (1933)). *See also Legend Autorama, Ltd. v. Audi of Am., Inc.*, 100 A.D.3d 714, 716, 954 N.Y.S.2d 141, 143-44 (2d Dep't 2012) ("even an explicitly discretionary contract right

may not be exercised in bad faith so as to frustrate the other party's right to the benefit under the agreement") (citation omitted). The Court cannot determine whether MAF's conduct crossed that threshold on a motion for leave to amend. *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007) ("whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact") (citation omitted).

Finally, the Estate's tortious interference claim against Salama-Caro and Shearbrook does not fail for the lack of "a third-party's breach of contract," Opp. Ltr. at 4, because the SAAC includes new allegations – which the Counterclaim Defendants do not challenge as futile – that MAF breached the parties' agreements. SAAC ¶¶ 253-63. Whether some or all of the allegations of breach that form the basis of the Estate's tortious interference claim were "not a breach at all," Opp. Ltr. at 4, is a question better decided at a later stage and on a fuller record.

## Conclusion

For the reasons set forth above, the Estate's letter-motion seeking leave to file a Second Amended Answer and Counterclaims (Dkt. No. 193) is GRANTED.

The Estate shall file its SAAC no later than **March 2, 2020**. If any party requests that any portion of the SAAC be filed under seal or in redacted form, the parties shall follow the procedures set out in this Court's ECF Rules & Instructions § 6 (available at https://nysd.uscourts.gov/rules/ecf-related-instructions), and Moses Indiv. Prac. § 3, in order to request permission for that sealing and/or redaction.

Dated: New York, New York  
       February 28, 2020

**SO ORDERED**.

_____  
**BARBARA MOSES**  
**United States Magistrate Judge**