UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MORGAN ART FOUNDATION LIMITED,<br><br>　　　　　Plaintiff,<br><br>　-against-<br><br>MICHAEL MCKENZIE, AMERICAN IMAGE ART, JAMIE THOMAS, AND JAMES W. BRANNAN AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ROBERT INDIANA,<br><br>　　　　　Defendant. | Case No.: 1:18-cv-04438-AT-BCM<br><br>[Related Case No.: 1:18-cv-08231-AT-BCM] |
| MICHAEL MCKENZIE AND AMERICAN IMAGE ART<br><br>　　　　　Counterclaim-Plaintiffs,<br><br>　-against-<br><br>MORGAN ART FOUNDATION LIMITED,<br><br>　　　　　Counterclaim-Defendant. | |
| JAMES W. BRANNAN AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ROBERT INDIANA,<br><br>　　　　　Counterclaim-Plaintiff,<br><br>　-against-<br><br>MORGAN ART FOUNDATION LIMITED, FIGURE 5 ART LLC, SHEARBROOK (US) LLC, RI CATALOGUE RAISONNÉ LLC, AND SIMON SALAMA-CARO,<br><br>　　　　　Counterclaim-Defendants. | |

### DECLARATION OF MELISSA HAMILTON

MELISSA HAMILTON, pursuant to 28 U.S.C. § 1746, hereby declares:

　　1.　　I am over the age of 18 years and am not a party to this action. I reside in Stamford, Connecticut.

1

2. I was an employee and friend of Robert Indiana for many years. I first met Indiana in 1996 on Vinalhaven Island, where he lived. I was on Vinalhaven for the summer staying with my uncle.

3. From approximately the summer of 1999 through late spring or early summer of 2000, I worked for Indiana as his full-time personal assistant and archivist. During that time, I lived in the archive room on the bottom floor of his home, the Star of Hope Lodge (the "Star of Hope"). After 2000, I worked for Indiana at the Star of Hope during various times in 2006 and 2008 through 2016. Indiana and I formed a very close personal relationship, and we stayed in contact when I was not on Vinalhaven. My last visit with Indiana was July 18, 2017.

4. During the times that I worked for Indiana, my job responsibilities included managing his incoming and outgoing correspondence, maintaining his files and archives, and assisting him when he hosted visitors. To carry out my responsibilities, I had to access Indiana's computer and his email account at robertoddfellow@aol.com (the "AOL Account").

**Indiana's Use of Technology**

5. Indiana was an "analog" person. When he wanted to communicate with someone, he preferred hand- or typewritten letters, or using the telephone.

6. Indiana had a desktop computer. He also had a fax machine at the Star of Hope, which I recall did not work for much of the time I worked for Indiana. I am not aware of Indiana having a laptop, tablet or cellphone. Generally speaking, Internet and cellular service on Vinalhaven is very limited. For many years, Indiana relied on dial-up in order to connect to the Internet. In later years, Indiana upgraded to a Digital Subscriber Line (or "DSL").

7. Indiana had one email account, the AOL Account. Over the many years I worked with Indiana, I never saw him sit at the computer to use his AOL Account. I never saw Indiana send an email, and I would be surprised if he knew how. I am not aware of any instance where

2

Indiana read or wrote emails at his computer.

8. It would have been difficult for Indiana to use his email account personally during much of the time I knew him, because his vision was deteriorating. I recall that, in or around 2007, Indiana was using a large magnifying glasses to help him read. After noticing this, my husband and I bought Indiana a reading machine from Lighthouse for the Blind, which Indiana used for several years.

**Others Working at the Star of Hope Had Access to Indiana's Computer and the AOL Account.**

9. While I worked at the Star of Hope, Indiana relied on me and other personal assistants—specifically, Webster Robinson and Valerie Morton—to manage his AOL Account. I knew the password for the AOL Account during that time, and I know that Robinson and Morton did as well.

10. From 1999 when I started working for Indiana, through August 2016 when I stopped working at Star of Hope, Robinson was the assistant who was primarily responsible for work relating to Indiana's computer. From about 2007 through about 2015, Morton worked on Indiana's household expenses and bookkeeping, and also assisted at times with correspondence and archiving.

11. During the years that I worked for Indiana, there were several people in addition to Morton, Robinson and me who were frequently at the Star of Hope providing assistance to Indiana. Those people included Stanley Stone, Ronald "Bo" Dodd, Sean Hillgrove, Wayne Flaherty, Jamie Thomas, John McDonald, and Keith Ballard. I recall seeing Hillgrove, Flaherty, Dodd, and Stone each access Indiana's computer at different times when they were working at the house. I am aware of some instances where Hillgrove and Flaherty used the AOL Account. I do not recall seeing Thomas use Indiana's computer.

12. Anyone using Indiana's computer at the Star of Hope could access the AOL Account. You did not need a login or password to access Indiana's computer, and the computer was frequently turned on with the AOL Account already open. The AOL Account password was always at the computer terminal, on a post-it or under the mousepad.

**Indiana's Assistants Printed Emails, Read Them to Him, Kept Most of the Printed Emails, and Regularly Deleted the AOL Account Inbox.**

13. During the times I worked for Indiana, he relied on me to read his emails and letters to him. On a typical morning, Robinson or I looked at the email inbox on Indiana's AOL account, and printed all emails to Indiana (except spam). I then read those printed emails to Indiana at his kitchen table.

14. After reading the printed emails to Indiana, I discarded those of little importance (for example daily horoscope) and kept the rest. The emails were either placed in binders or kept in piles.

15. The binders we kept were organized by person, by topic, and by date range. In addition to emails, the binders included letters, photographs, and other documents or items. The binders were not otherwise maintained in a systematic fashion. Documents were piled up on the table and under the table in Indiana's office area on the second floor, with the intention of eventually placing them in binders. The piles would leak out to other rooms. These piles included more than just emails; there were also photographs, incoming mail, newspapers, magazines, books, loan and consignment forms, and other documents. I recall instances where Indiana removed documents from the binders and added them to the document piles. Often, before the piles could be sorted, they were swept by hand into storage boxes and moved into other rooms, to get them out of the way because Indiana was expecting guests. Once that happened, we seldom returned to those boxes of documents in order to organize their contents.

4

16. It was common practice to delete the emails in the AOL Account inbox after they were printed. The emails were deleted by me, Robinson, Morton, Hillgrove and Flaherty, by the end of each day. As I recall, we deleted the emails in order to make it easier to identify the messages that had not yet been read to Indiana.

17. By the summer of 2016, the number of incoming emails to Indiana on the AOL Account had decreased substantially.

**Indiana Never Sent an Email Himself, and Very Rarely Asked An Assistant to Send One For Him.**

18. To my knowledge, Indiana never sent an email himself. If Indiana wanted to communicate personally with someone, he would typically call them by phone or, on occasion, write a letter. I do not recall instances where Indiana wanted to initiate a communication with anyone by email. Indiana's general practice was not to respond to incoming emails. On the rare times he wanted to reply to an email, he would ask me or Morton or Robinson to do it.

19. To my recollection, the typical situation where Indiana wanted to reply to an email concerned messages regarding upcoming visits to the Star of Hope. In those instances, Indiana would ask us to reply by email, either confirming that he was expecting the visit or, more often, saying that the visitor should not come. There were also times where Indiana asked me to provide information to someone in response to an email. We would print these responses for Indiana when he requested.

20. I do not recall whether we routinely deleted messages in the AOL Account sent box.

**Email Correspondence with the Salama-Caros**

21. I recall that Indiana occasionally received emails from Simon, Marc, Emeline, and Gillian Salama-Caro. Generally, those emails were limited to lighter and upbeat topics such as

travel, photos of sculpture fabrication, and museum exhibitions. I do not recall any of the Salama-Caros ever emailing formal proposals or contracts to Indiana. From what I saw, the Salama-Caros' practice was to bring proposals and contracts to Indiana when they met with him in person at his home.

22. I recall Indiana asking me to respond to emails from Marc Salama-Caro regarding planned visits to the Star of Hope, including instances where he wanted to bring guests. I also recall Indiana asking me to reply to emails from Emeline Salama-Caro while she worked at Christie's, responding to her requests for information concerning works that were coming up for auction. In one instance, Indiana dictated to me what to say in the email, and we signed it "Bob". I do not recall other instances where I was involved in sending emails to the Salama-Caros from the AOL Account.

**The AOL Account Was Used to Contact Robinson and Other Assistants at the Star of Hope.**

23. Not all emails sent to the AOL Account were intended for Indiana. The AOL Account was an expedient way for Indiana's assistants to communicate with each other, without calling the house telephone and disturbing Indiana. (Because there was poor cellular service on Vinalhaven at the time, texting was not an option.) In particular, it was common for Indiana's assistants to communicate with Robinson by emailing the AOL Account, since he was glued to Indiana's computer. There were also instances where messages intended for Hillgrove, Flaherty, Stone or me were sent to the AOL Account. Those emails were not printed for Indiana, and were instead deleted in the regular course.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated this 28 day of February, 2020

_____
MELISSA HAMILTON