**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MORGAN ART FOUNDATION LIMITED,

        Plaintiff,

   -against-

MICHAEL MCKENZIE, AMERICAN IMAGE ART,
JAMIE THOMAS, AND JAMES W. BRANNAN AS
PERSONAL REPRESENTATIVE OF THE ESTATE
OF ROBERT INDIANA,

        Defendants.

---

JAMES W. BRANNAN AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF ROBERT
INDIANA,

        Counter-Claimant,

   -against-

MORGAN ART FOUNDATION LIMITED, FIGURE
5 ART LLC, SHEARBROOK (US), LLC, RI
CATALOGUE RAISONNÉ LLC, SIMON
SALAMA-CARO,

        Counterclaim-Defendants.

**Case No.:**
  **1:18-cv-04438-AT-BCM**

[Related Case No.:
  1:18-cv-08231-AT-BCM]

**SECOND AMENDED ANSWER AND COUNTERCLAIMS OF
DEFENDANT JAMES W. BRANNAN AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF ROBERT INDIANA TO THE FIRST
AMENDED COMPLAINT OF MORGAN ART FOUNDATION LIMITED**

Defendant James W. Brannan as Personal Representative of the Estate of Robert Indiana (the "Estate"), by and through undersigned counsel, respectfully submits this Second Amended Answer and Counterclaims in response to the First Amended Complaint of Morgan Art Foundation Limited ("Morgan") (ECF No. 47).

## NATURE OF THE ACTION

1.      The Estate admits that Robert Indiana is a famous American artist, that the *LOVE* image graced a U.S. postage stamp in 1973, and that the *LOVE* sculpture has been displayed in museums and public spaces around the globe.  The Estate otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1.

2.      The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2.

3.      The Estate admits the allegations of Paragraph 3.

4.      The Estate admits the allegations of Paragraph 4, except denies knowledge or information sufficient to form a belief as to the truth of precise number of U.S. postage stamps printed bearing the *LOVE* image.

5.      The Estate denies that Indiana's initial success was short-lived but otherwise admits the allegations of Paragraph 5.

6.      The Estate admits that, in 1978, Indiana moved to Vinalhaven, Maine, and that his home was reachable by ferry and small-engine plane.  The Estate otherwise denies the allegations of Paragraph 6.

7.      The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7.

8.      The Estate admits that on April 9, 1999, and on December 22, 1999, Indiana entered into agreements with Morgan, and refers to the text of those documents for their contents.   The Estate denies knowledge or information sufficient to form a belief as to any amendment allegedly made to the April 9, 1999 document in April 2004.

9.      The Estate admits that Artist Rights Society ("ARS") is a copyright, licensing, and monitoring organization for visual arts in the United States located in New York.  The Estate otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9.

10.     The Estate admits that in 2013 the Whitney Museum held a retrospective exhibition of Indiana's works called "Robert Indiana: Beyond Love."  The Estate otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10.

11.     The Estate admits that, as of September 26, 2018, five years will have passed since the Whitney Museum opened "Robert Indiana: Beyond Love," that Indiana's works have continued to sell, that art historical accounts have treated Indiana's work with respect, and that institutions in the United States and Europe have acquired major examples of Indiana's artwork. The Estate otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11.

12.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12.

13.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13.

14.     The Estate admits that Indiana appreciated *LOVE* and wanted it to be widely accepted and collected, but that he also wanted to be respected as an artist for all of his art, not just *LOVE*.  The Estate otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14.

15.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15.

16.      The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16.

17.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17.

18.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18.

## PARTIES

19.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19.

20.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20.

21.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21.

22.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22.

23.     The Estate admits the allegations of Paragraph 23.

## JURISDICTION AND VENUE

24.     The Estate admits that Morgan purports to bring this action under the copyright laws of the United States, 17 U.S.C. §§ 101 et seq.  The Estate neither admits nor denies the remaining allegations of Paragraph 24 as they state a legal conclusion to which no response is required.

25.     The Estate neither admits nor denies the allegations of Paragraph 25 as they state a legal conclusion to which no response is required.

26.     The Estate neither admits nor denies the allegations of Paragraph 26 as they state a legal conclusion to which no response is required.

27.     The Estate neither admits nor denies the allegations of Paragraph 27 because they state legal conclusions to which no response is required.

28.     The Estate neither admits nor denies the allegations of Paragraph 28 because they state legal conclusions to which no response is required.

29.     The Estate neither admits nor denies the allegations of Paragraph 29 because they state legal conclusions to which no response is required.

30.     The Estate neither admits nor denies the allegations of Paragraph 30 because they state legal conclusions to which no response is required.

## FACTUAL ALLEGATIONS

31.     The Estate admits that Robert Indiana, born Robert Earl Clark, was an American artist born on September 13, 1928 in New Castle, Indiana.

32.     The Estate admits the allegations of Paragraph 32.

33.     The Estate admits the allegations of Paragraph 33.

34.     The Estate admits the allegations of Paragraph 34, except denies knowledge or information sufficient to form a belief as to the truth of how many *LOVE* stamps the U.S. Postal Service printed.

35.     The Estate admits people have used the *LOVE* image without Indiana's consent and that Indiana has negatively commented on the frivolous use of the *LOVE* image in popular culture.  The Estate denies the remaining allegations of Paragraph 35.

36.     The Estate admits that, in 1978, Indiana moved to Vinalhaven, Maine.  The Estate denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36.

37.     The Estate denies the allegations of Paragraph 37.

38.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 38.

39.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 39.

40.     The Estate admits that Simon Salama-Caro has represented Indiana.  The Estate denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 40.

41.     The Estate admits that an art gallery in London exhibited some of Indiana's work.  The Estate denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 41.

42.     The Estate denies the allegations of Paragraph 42.

43.     With respect to Paragraph 43, the Estate admits that in 1999 Indiana and Morgan entered into two agreements and that on April 9, 1999, Indiana entered into an agreement with

Morgan Consolidated Ltd., now known as Morgan Art Foundation Limited, and refers to the text of the agreement for its content. The Estate denies that any "amendments" were made to such agreement.

44.     With respect to the allegations of Paragraph 44, the Estate refers to the April 9, 1999 agreement for its content.

45.     With respect to the allegations of Paragraph 45, the Estate refers to the April 9, 1999 agreement for its content.

46.     With respect to the allegations of Paragraph 46, the Estate refers to the April 9, 1999 agreement for its content.

47.     With respect to the allegations of Paragraph 47, the Estate refers to the April 9, 1999 agreement for its content.

48.     With respect to the allegations of Paragraph 48, the Estate refers to the April 9, 1999 agreement for its content.

49.     The Estate admits that on December 22, 1999, Indiana entered into an agreement with Morgan Consolidated Ltd., now known as Morgan Art Foundation Limited, and refers to the text of that agreement for its content.

50.     The Estate admits that on April 9, 1999, Indiana entered into an agreement with Morgan Consolidated Ltd., now known as Morgan Art Foundation Limited, and that on December 22, 1999, Indiana entered into an agreement with Morgan Art Foundation Limited, formerly known as Morgan Consolidated Ltd., and refers to the text of those agreements for their content.

51.     With respect to the allegations of Paragraph 51, the Estate refers to the text of the December 22, 1999 agreement for its content.

52.     With respect to the allegations of Paragraph 52, the Estate refers to the text of the December 22, 1999 agreement for its content.

53.     With respect to the allegations in Paragraph 53, the Estate refers to the Bills of Sale dated December 22, 1999 for their content.

54.     With respect to the allegations in Paragraph 54, the Estate refers to the September 2000 writing for its content.

55.     With respect to the allegations in Paragraph 55, the Estate refers to the July 12, 2001 writing for its content.

56.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 56.

57.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 57.

58.     With respect to the allegations of Paragraph 58, the Estate refers to the communications dated August 2003 and December 2006 for their contents.

59.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 59, except admits that a retrospective of Indiana's works took place in 1998 at the Museum of Modern and Contemporary Art in Nice, France.

60.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 60, except admits that there were two gallery exhibitions in 2002 of Indiana's *NUMBERS* sculptures and that three catalogues were published.

61.     The Estate denies the allegations of Paragraph 61.

62.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 62.

63.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegation concerning the art market for Indiana's work.  The Estate otherwise denies the remaining allegations of Paragraph 63.

64.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 64.

65.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 65.

66.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 66.

67.     The Estate denies knowledge or information sufficient to form a belief as to the allegations of Paragraph 67, except refers to the communication dated April 19, 1999 for its content.

68.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 68.

69.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 69.

70.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 70.

71.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 71.

72.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 72.

73.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 73.

74.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 74.

75.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 75.

76.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 76.

77.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 77, except admits that, in 2013, the Whitney Museum in New York City held a retrospective of Indiana's work called "Robert Indiana: Beyond Love."

78.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 78, except admits that that the Whitney Museum had a retrospective of Indiana's work in 2013, that Indiana was interviewed by the New York Times and that the exhibit was positively received.

79.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 79.

80.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 80.

81.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 81.

82.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 82.

83.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 83.  To the extent Paragraph 83 purports to quote from a document, the document itself is the best evidence for its contents.

84.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 84.

85.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 85.  To the extent Paragraph 85 purports to quote from documents, the documents themselves are the best evidence for their contents.

86.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 86.  To the extent Paragraph 86 purports to quote from a document, the document itself is the best evidence for its contents.

87.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 87.  To the extent Paragraph 87 purports to quote from a document, the document itself is the best evidence for its contents.

88.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 88.  To the extent Paragraph 88 purports to quote from a document, the document itself is the best evidence for its contents.

89.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 89.

90.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 90.

91.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 91.

92.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 92.

93.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 93.

94.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 94.

95.     The Estate admits there was an exhibition of Indiana's work at Bates College Museum of Art but otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 95.

96.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 96.

97.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 97.

98.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 98.

99.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 99.

100.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 100.

101.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 101.

102.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 102.

103.   The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 103, except admits that under written contracts, Morgan Art Foundation was granted exclusive rights with respect to several Indiana artworks, and refers to such contracts for their contents.

104.   The Estate denies knowledge or information sufficient to form a belief as to the allegations of Paragraph 104, except admits that in March 2018 Thomas's counsel sent a letter to Cyber City, Inc., the host of the "robertindiana.com" website, and refers to the March 2018 letter for its contents; and denies that Salama-Caro has any right to maintain any website using the domain name "robertindiana.com".

105.   The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 105.

106.   The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 106.

107.   The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 107.

108.   The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 108.

### COUNT I
### Copyright Infringement
### Against All Defendants

109.   The Estate repeats and realleges each and every answer to the allegations contained in the paragraphs above as if fully set forth here.

110.   With respect to the allegations of Paragraph 110, the Estate admits that "The Ninth American Dream" (2001) is an original, creative work first published in the United States,

and neither admits nor denies the remaining allegations of Paragraph 110, as they state a legal conclusion to which no response is required.

111.     With respect to the allegations of Paragraph 111, the Estate admits that "USA FUN" (1965) is an original, creative work first published in the United States, and neither admits nor denies the remaining allegations of Paragraph 111, as they state a legal conclusion to which no response is required.

112.     The Estate neither admits nor denies the allegations of Paragraph 112, as they state a legal conclusion to which no response is required.

113.     The Estate neither admits nor denies the allegation of Paragraph 113, as it states a legal conclusion to which no response is required.

114.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 114 and, in any event, neither admits nor denies the allegations of Paragraph 114 as they are directed to Defendants other than the Estate.

115.     The Estate denies the allegations of Paragraph 115.

116.     The Estate denies the allegations of Paragraph 116.

## COUNT IV
### Breach of Contract
**Against Jamie Thomas, as Power of Attorney, and Robert Indiana**

131.     The Estate repeats and realleges each and every answer to the allegations contained in the paragraphs above as if fully set forth here.

132.     The Estate neither admits nor denies the allegations of Paragraph 132, as they state legal conclusions to which no response is required.

133.     The Estate denies the allegations of Paragraph 133.

134.     The Estate denies the allegations of Paragraph 134.

135.     The Estate denies the allegations of Paragraph 135.

14

## DEFENSES AND AFFIRMATIVE DEFENSES

### FIRST DEFENSE

164.    Morgan's claims are barred, in whole or in part, because they fail to state a claim upon which relief can be granted.

### SECOND DEFENSE

165.    Morgan's claims are barred, in whole or in part, for lack of standing.

### THIRD DEFENSE

166.    Morgan's claims are barred, in whole or in part, for lack of subject matter jurisdiction.

### FOURTH DEFENSE

167.    Morgan's claims are barred, in whole or in part, by the relevant statutes of limitations.

### FIFTH DEFENSE

168.    Morgan's claims are barred, in whole or in part, because the copyrights Morgan alleges to own are invalid.

### SIXTH DEFENSE

169.    Morgan's claims are barred, in whole or in part, because Morgan is bound to arbitrate any such claims.

### SEVENTH DEFENSE

170.    Morgan's claims are barred, in whole or in part, under the doctrine of copyright misuse because Morgan exploited Indiana's works without adequately compensating Indiana.

**EIGHTH DEFENSE**

171.    Morgan's claims are barred, in whole or in part, under the doctrine of innocent infringement because Morgan did not timely file its copyright registrations.

**NINTH DEFENSE**

172.    Morgan's claims are barred, in whole or in part, because Morgan failed to comply with its contractual obligations to Robert Indiana.

**TENTH DEFENSE**

173.    Morgan's claims are barred, in whole or in part, because Morgan suffered no damages.

**ELEVENTH DEFENSE**

174.    Morgan's claims are barred, in whole or in part, because Morgan failed to mitigate damages.

**TWELFTH DEFENSE**

175.    Morgan's claims are barred, in whole or in part, by the doctrine of unclean hands.

**THIRTEENTH DEFENSE**

176.    Morgan's claims are barred, in whole or in part, by the doctrine of laches.

**FOURTEENTH DEFENSE**

177.    Morgan's claims are barred, in whole or in part, by the doctrine of equitable estoppel.

**FIFTEENTH DEFENSE**

178.    Morgan's claims for injunctive relief are barred, in whole or in part, because Morgan suffered no irreparable harm.

## SIXTEENTH DEFENSE

179.     Morgan's claims for injunctive relief are barred, in whole or in part, because

Morgan has an adequate remedy at law.

## SEVENTEENTH DEFENSE

180.     The Estate reserves the right to assert additional defenses upon further discovery

of Morgan's claims, upon discovery of the provisions, terms, conditions, and exclusions of any

purported agreement between Indiana or the Estate and Morgan, Michael McKenzie, American

Image Art, or Jamie Thomas, and upon the development of other pertinent information.

## COUNTERCLAIMS OF THE ESTATE

The Estate, by and through its attorneys, brings the following Counterclaims against

Morgan, Figure 5 Art LLC, Shearbrook (US), LLC, RI Catalogue Raisonné, LLC, and Simon

Salama-Caro, and states as follows:

## FACTS

181.     Morgan filed its original Complaint in this action on May 18, 2018.  Robert

Indiana died one day later.  Morgan filed its First Amended Complaint on August 3, 2018 and

the Estate answered and counterclaimed against Morgan, Figure 5 Art LLC, Shearbrook (US),

LLC and Simon Salama-Caro (the "Domain Name Counterclaim-Defendants") on September 20,

2018.  The Estate had only limited documentation from Morgan in its possession at that time,

and almost no sales or accounting records.  The Estate asserted the following counterclaims

based on that limited information:

> a.   Its First Counterclaim against Morgan for Breach of the April 1999 Agreement
>      (for failure to provide accountings and royalties);

b. Its Second Counterclaim against Morgan for Breach of the Sculpture Agreement (for failure to provide accountings and royalties);

c. Its Third Counterclaim against Morgan for Unjust Enrichment;

d. Its Fourth Counterclaim against Morgan for Violation of the Visual Artist's Rights Act;

e. Its Fifth Counterclaim against the Domain Name Counterclaim-Defendants for Unfair Competition under the Lanham Act;

f. Its Sixth Counterclaim against the Domain Name Counterclaim-Defendants for Trademark Infringement;

g. Its Seventh Counterclaim against the Domain Name Counterclaim-Defendants for Unjust Enrichment; and

h. Its Eighth Counterclaim against Salama-Caro and certain affiliated persons and/or entities, including RI Catalogue Raisonné LLC (the "Catalogue Raisonné Counterclaim-Defendants") for Unfair Competition.

182.   On November 20, 2018, Morgan moved to dismiss the Estate's counterclaims.  In April and May of 2019, after that motion was fully submitted, Morgan turned over more than 50,000 pages of documents to the Estate (the "Morgan Production").

183.   The Morgan Production contained many documents the Estate had never seen before.  Among other things, these documents established that:

a. Morgan and Salama-Caro fabricated and sold numerous works pursuant to the April 1999 Agreement and the Sculpture Agreement without accounting to Indiana or the Estate at all, and without making royalty payments on those sales. As alleged more specifically in ¶¶ 228-230 below, the Estate now has evidence

18

that since December of 2016, Morgan has sold more than ████████ dollars'
worth of Indiana's sculptures, and has not made any payment to Indiana or the
Estate for these works.

b.  Morgan has been using funds that would be due to Indiana under the agreements
to pay legal fees owed to Counterclaim-Defendants' counsel, Quinn Emanuel
Urquhart and Sullivan, LLP, for this and other litigation.  In other words, Morgan
is using the Estate's own money to sue the Estate.  This was not permitted in any
of the contracts between Morgan and Indiana.

c.  Morgan made improper deductions from the sales proceeds it received in order to
calculate Indiana's portion of the "net income," and as a result underpaid Indiana
for the sales of certain works between 2012 and the present, as alleged more
specifically in ¶¶ 205-227 below.  Among these impermissible deductions were
████████ dollars that Morgan supposedly paid for "consulting" work by "PSC
Consulting," which, upon information and belief, is a business name used by
Simon Salama-Caro's son Paul.  Morgan also deducted ████████████
dollars for "joint venture fees."  There is no contractual basis for Morgan to
deduct these amounts from the payments owed to Robert Indiana.  Similarly,
without contractual authority, Morgan has used amounts payable to Robert
Indiana to fund its own general corporate expenses.  Again, this was not permitted
under the contracts between Morgan and Indiana.

d.  As alleged more specifically in ¶¶ 214-227 below, in every single instance where
Morgan found a buyer for an Indiana work, rather than sell the work to the buyer
directly it engaged in a sham sale of the work to Salama-Caro's company,

19

Shearbrook (US) LLC.  Shearbrook then immediately "resold" the work to the

genuine buyer at a substantial markup.  No proceeds were remitted to Indiana as a

result of the second sale.  This structure allowed Morgan to account to Indiana

and pay him only for the first sham sale, and not the actual sale.

e.  Morgan and Salama-Caro offered certain Indiana works for sale through auctions,

then bid on those works themselves or through third parties, in order to increase

the market price of Indiana's works.  When they were the successful bidders,

Morgan deducted these inflated "acquisition" costs from the amounts due to

Indiana.

184.    In sum, the Morgan Production shows that, among other things, between 2012

and the present, Morgan routinely breached its contracts with Indiana by failing to make timely

payments to Indiana.  When Morgan did pay Indiana, it underpaid him by ████████

████████—and sometimes even ████████—of dollars by falsely understating the revenue and

inflating the expenses on sales of Indiana's works.  And, Morgan concealed its underpayments

by failing to provide the required periodic accountings, which was a further breach of those

agreements.

185.    The Estate has filed this Second Amended Counterclaim in order to add to this

action these recently-discovered breaches of contract, Morgan's unjust enrichment and Salama-

Caro and Shearbrook's tortious interference with the contracts between Indiana and Morgan.

**Morgan Has Breached Its Contractual Obligations by
Failing to Provide Accountings and Make Payments
That Were Owed to Robert Indiana.**

186.    On April 9, 1999, Robert Indiana and Morgan entered into a written agreement

(the "April 1999 Agreement") under which Morgan was authorized to reproduce certain specific

artworks created by Robert Indiana, including Indiana's LOVE, AHAVA, AMOR, YALE and NUMBERS works, defined in that agreement as "the Images."  A copy of the 1999 Agreement is attached as **Exhibit A**.

187.    The terms of the April 1999 Agreement required Morgan to pay to Indiana "a sum equal to fifty (50%) percent of net income derived from and received by Morgan pursuant to each Agreement by and between Morgan and third parties" for the sale or reproduction of any of the Images.  The April 1999 Agreement expressly incorporated a "Schedule of Permissible Deductible Expenses," which enumerated certain specific costs that Morgan was permitted to deduct from the revenue it received from selling or licensing any of Images when calculating the net revenue to be shared evenly with Indiana.  The only expenses Morgan was permitted to deduct when calculating "net income" were costs of sales of those works (such as commissions to salespeople and promotional expenses); postage, fax and telephone costs; and professional, attorney, and accountant fees related to the sale of Indiana works.  A copy of the Schedule of Permissible Deductible Expenses is attached as **Exhibit B**.

188.    The April 1999 Agreement required that "Morgan shall furnish an accounting to [Indiana], on a quarterannual basis, which accounting shall itemize the income received, the expenses incurred, and the payments made to [Indiana] in connection with the sale or sales" of the Images.

189.    Months after executing the April 1999 Agreement, on December 22, 1999, Robert Indiana and Morgan entered into an agreement (referred to in the First Amended Complaint and in this pleading as the "Sculpture Agreement") that permitted Morgan Art to fabricate and sell certain limited edition sculptures by Robert Indiana, as listed in a "Schedule of Sculptures Authorized by Robert Indiana" incorporated into that agreement.

21

190.    More specifically, the Sculpture Agreement gave to Morgan the exclusive right "to produce and fabricate the LOVE sculptures, the AHAVA sculptures, the AMOR sculptures, the Numbers sculptures (One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Zero) the ART sculptures and the 2000 sculptures (the "Sculptures") in specified colors, dimensions and edition sizes" as listed in the agreed-upon schedules

191.    The Sculpture Agreement required Morgan to pay a sum equal to 20% of the receipts by Morgan from the sale of the sculptures produced under that agreement.  A document dated January 5, 2000 modified the Sculpture Agreement to reduce this to "20% of the net income received by Morgan from the sale of the sculptures after deduction of Permissible Expenses as listed in the April 9, 1999 Agreement."

192.    Like the April 1999 Agreement, the Sculpture Agreement required Morgan to provide Indiana with accountings of the receipts and permissible deductions related to the sale of the sculptures, but permitted Morgan to provide those accounting on an annual, rather than quarterly, basis.

**Morgan Has Breached Its Obligations to Provide Accountings**

193.    Between January 1, 1999, and December 31, 2008, Morgan failed to provide Robert Indiana with any accountings whatsoever.  Instead, Morgan simply sent bank checks to Indiana, (or made wire transfers to his account) without any more information or explanation than the notation "for royalties from Morgan Art" on the memo line of the check.

194.    In 2009, Morgan retroactively provided Indiana with nearly a decade's worth of statements—but still not proper accountings.  These statements purported to list, in a summary fashion, the gross receipts from Morgan's sale and licensing of Indiana's artwork, the total expenses deducted from the gross, and the net amount payable to Indiana.

195.    Not only were these statements tardy by years, but they did not provide the information required under the April 1999 Agreement or the Sculpture Agreement:  They did not "itemize the income received, the expenses incurred, and the payments made" by Morgan. These statements provided no information about what sculptures Morgan had fabricated, what sculptures it had sold, or the price at which Morgan had sold those statutes.  The summaries contained no information about the gross revenue Morgan had realized under the 1999 Agreement or the Sculpture Agreement.  And, they contained no information whatsoever to detail, explain or itemize the expenses allegedly incurred that Morgan was netting off against that gross revenue.

196.    From 2010 through 2017, Morgan sporadically sent similarly deficient summary statements to Indiana, but never provided proper itemized accountings of the receipts, expenses and payments related to either the April 1999 Agreement or the Sculpture Agreement.  And, not only were these statements devoid of the substantive accounting details that Morgan was obligated to provide, but they were never sent on a quarterly basis as required by the April 1999 Agreement, and were not even sent on a regular annual basis as required by Sculpture Agreement.

197.    For example, on or about June 15, 2016, Morgan sent Indiana a so-called "statement of account" a copy of which is attached as **Exhibit C**.  This "statement" was nothing more than two line items summarizing all of Morgan's activities related to Indiana's works for 2015 calendar year:

      Payable to Robert Indiana on ARS     $██████
              and
      Payable to Robert Indiana on Sculptures     $████████

198.     Along with this statement of account, Morgan forwarded to Indiana statements from the Artists Rights Society ("ARS"), a third party copyright licensing organization engaged by Morgan, listing Indiana artworks that ARS had licensed to others for reproduction.

199.     Morgan provided no information whatsoever about the related expenses it supposedly incurred and deducted from the amounts due to Robert Indiana.

200.     The statement of account also contained no information whatsoever about what or how many sculptures Morgan created or sold, who those sculptures were sold to, how much it received in gross revenue for those sales, the related expenses incurred, or how Morgan derived the amount that was owed to Indiana for his portion of the proceeds.

201.     After the June 15, 2016 statement, Morgan did not provide another statement of account to Indiana until on or about November 3, 2017, seventeen months later. The November 2017 statement, a copy of which is attached as **Exhibit D**, purported to summarize the amounts owed to Indiana for the entire calendar year of 2016.  This statement, like all the other statements Morgan provided from 2009 forward, contained no information whatsoever about expenses deducted from amounts due to Indiana, and no information whatsoever about any sculpture created or sold by Morgan or the gross revenue realized from those sales.

202.     The November 2017 statement, which summarized activity from 2016, was the last such statement Morgan ever provided.  Morgan has never provided Indiana or the Estate with any accounting—not even the inadequate statements it previously provided—for any quarterly or annual period of time during 2017, 2018, or 2019.

**Morgan Has Breached Its Payment Obligations to Indiana and the Estate.**

203.     Morgan's consistent failure to account to Indiana for revenues and allowable expenses related to the April 1999 Agreement and the Sculpture Agreement was a deliberate act

24

of concealment intended to hide from Indiana the fact that Morgan was diverting ████████

dollars from Indiana through sham transactions and inflated and improper expense accounting.

204.     Not only has Morgan grossly underpaid Indiana for every transaction since at

least 2011, but in 2017, 2018 and (upon information and belief) 2019, Morgan has made █████

█ dollars selling Robert Indiana's works, without paying any money to Indiana or his Estate.

**Morgan has Underpaid Indiana by ██████ Dollars**
**By Improperly Deducting and Inflating Expenses.**

205.     The Schedule of Permissible Deductible Expenses, which is expressly

incorporated into the April 1999 Agreement and the Sculpture Agreement, permits Morgan to

deduct only specific, enumerated expenses incurred as a result of the production and sale of

works under those agreements, in order to calculate the net income that is to be divided between

Morgan and Indiana.

206.     Morgan has repeatedly breached the April 1999 Agreement and the Sculpture

Agreement by deducting amounts that are not permitted by the Schedule of Permissible

Deductible Expenses.

207.     For example, from 2012 to 2017, Morgan deducted a total of more than $█████

from sales revenues for payments to "PSC Consulting," a business that is, upon information and

belief, operated by defendant Simon Salama-Caro's son, Paul Salama-Caro.  These expenses are

not permissible deductions.

208.     From 2012 to 2017, Morgan deducted more than $██████ from sales revenues

for professional fees paid to lawyers and director-for-hire services, to assist Morgan in

maintaining a labyrinth of offshore companies and anonymizing intermediaries that had nothing

to do with the fabrication, marketing or sale of Indiana's works; in no way benefitted Indiana;

and thus were not permitted by the Agreements to be deducted from payments due to Indiana.  In

many instances, these expenses were not even incurred by Morgan, but were incurred by other corporate entities.

209.    From 2012 to at least 2017, Morgan also deducted general business expenses that are unrelated to its Agreements with Indiana and that are not included in the Schedule of Permissible Deductible Expenses, such as rent and travel costs not directly related to the sale of Indiana works.

210.    To the extent that the April 1999 Agreement and the Sculpture Agreement allowed Morgan discretion and control over the production and sales of Robert Indiana's works under those agreements, Morgan owed Indiana an implied duty to exercise that discretion in a good faith, commercially reasonable manner.  Morgan instead engaged in senseless and unreasonable business practices that exponentially increased its expenses.

211.    For example, in 2017 alone, Morgan allegedly spent more than $███████ storing and insuring unsold inventory of Robert Indiana sculptures.  And yet, during that same calendar year, Morgan spent another $███████ fabricating additional works despite the backlog in inventory.

212.    As another example, from at least 2012 through 2017, Morgan deducted ███████ ███ dollars in "joint venture fees" that are not authorized by the Schedule of Permissible Deductible Expenses and upon information and belief are not expenses directly related to the fabrication or sale of any Robert Indiana works under the April 1999 Agreement or the Sculpture Agreement.

213.    These impermissible joint venture fees totaled $██████ in 2012, $███████ in 2013, $██████ in 2014, $██████ in 2015, $███████ in 2016, and $███████ in 2017, amounting to a total of $█████████ over that six year period.

**Morgan Sold all of Indiana's Works Through Sham**
**Transactions Intended to Reduce the Payments to Indiana.**

214.    Morgan also engaged in sham sales of all of Indiana's works in order to falsely

understate the gross proceeds of its sales of Indiana works, and to reap additional profits for itself

and its affiliates.

215.    Since 1990, Morgan Art has sold every single Robert Indiana sculpture it

produced to one—and only one—buyer:  Shearbrook (US) LLC, a company that is controlled

and (upon information and belief) wholly-owned by defendant Simon Salama-Caro.

216.    By selling all of the works it produced under its agreement with Indiana to

Shearbrook, Morgan was able to falsely reduce the "gross" revenue from those sales and the

amounts it paid to Indiana.

217.    For example, an invoice dated September 29, 2016 (attached as **Exhibit H**) shows

that Morgan purportedly sold to Shearbrook a 72-inch Red/Red polychrome aluminum LOVE

sculpture, edition number 1 of 6, for $██████  That same day, on September 29, 2016,

Shearbrook resold that same sculpture to an art gallery for $██████  A copy of the invoice for

that sale is attached as **Exhibit I**.

218.    When calculating the payments to be made to Indiana for this sale, Morgan

reported the gross receipts from this sale as $█████, not the $█████ actual sale price received

from the gallery.  Morgan then further reduced this $█████ revenue by netting off commissions

and other expenses that were incurred by Shearbrook—not Morgan—related to the sales of these

works.

219.    In another instance, on November 14, 2012, Morgan sold a 96-inch polychrome

aluminum Blue/Red LOVE sculpture, edition number 2 of 5 to Shearbrook for $██████,

attached as **Exhibit E**.

220.    The very next day, November 15, 2012, Morgan's Chairman Robert Gore purchased through an auction at Sotheby's the exact same sculpture, a 96-inch polychrome aluminum Blue/Red LOVE sculpture, edition number 2 of 5, for $██████.  Attached as **Exhibit F** is the invoice for this sale.

221.    The online Sotheby's catalog for this auction lists the provenance of the sculpture as having come from a private collector in Europe, who acquired it from the Morgan Art Foundation.  Sotheby's website confirms that the purchase price for this lot was $██████.  A printout from Sotheby's website reflecting this information is attached as **Exhibit G**.

222.    When calculating payments due to Indiana under its Agreements, Morgan accounted for the November 14, 2012 "sale" to Shearbrook as if it were a genuine purchase, and deducted expenses from the $██████ it allegedly received for the sculpture.  However, Morgan then also deducted the entire $██████ that Gore paid to repurchase the same sculpture at auction as an "acquisition" expense, and used that expense to further reduce the amount it paid to Indiana in 2012.  In other words, at the end of the day, Morgan continued to own the same sculpture, but upon information and belief, had created more than $██████ in imaginary costs that it used to reduce payments owed to Indiana for genuine sales of Indiana works.

223.    Moreover, upon information and belief, Morgan engaged in this particular transaction in order to artificially raise the prices for Indiana works in the global art market. Public auctions through reputable auction houses, such as Sotheby's, serve a critically important price-discovery function in the art market.  When the prices achieved at auction for a work by a particular artist rise, prices for that artist's works in private transactions tend to follow.

224.    Morgan, Salama-Caro and Shearbrook sold this sculpture through Sotheby's so that they could use this and other auction prices as benchmarks when setting prices for sales of other Indiana works.

225.    Upon information and belief, on other occasions, Morgan and Salama-Caro enlisted third parties to participate as straw buyers in order to disguise the fact that the same party was acting as both buyer and seller in these auctions.

226.    Upon information and belief, Morgan, Shearbrook, and Salama-Caro induced these third parties' complicity in this scheme by selling them Indiana artworks at below-market prices with promises that they would be able to sell the artwork in a rising market as a result of the high auction prices their scheme would establish.

227.    In sum, Morgan and Simon Salama-Caro reported artificially low sales prices, deducted from those revenues overstated or improper "acquisitions" and other expenses, and then kept 80% of that artificially low net income for themselves.

**Morgan Has Sold ▇▇▇▇▇ Dollars' Worth of Indiana's Works Since 2016 Without Paying Indiana or the Estate Anything.**

228.    Morgan made its last payment to Indiana in December 2017, for the year ended on December 31, 2016.  Since then, Morgan has made no payments to Indiana, or the Estate, but it has continued to fabricate and sell ▇▇▇▇▇ dollars' worth of Indiana works.

229.    According to records from the Morgan Production, since December 31, 2016, Morgan has sold at least nine sculptures.  Invoices reflecting those sales are attached as **Exhibits J though R.**  Neither Indiana nor the Estate have received any payments whatsoever for these nine works.  Upon information and belief, Morgan has sold additional Indiana works since December 31, 2016 beyond those identified in Exhibits J-R, but has not disclosed to the Estate information about those additional sales.

29

230.    Morgan has also admitted that money it received from the sale of Indiana works is being used to pay its legal fees in this lawsuit and other legal proceedings involving Indiana (and now the Estate).[1]  While the Schedule of Permissible Deductible Expenses permitted Morgan to deduct legal expenses incurred related to the production or sales of works under its agreements with Indiana, nothing in those agreements permits Morgan to use money due to Indiana under the agreements to sue him and others for alleged breaches of those very same agreements.

**Morgan Has Unjustly Profited From Reproductions of Robert Indiana Works
that are Outside the Scope of any Agreements with Indiana.**

231.    Morgan has licensed, sold, or otherwise received income from the unauthorized reproductions of Indiana works that are outside the scope of any agreement.

232.    The April 1999 Agreement only permits Morgan to reproduce and sell certain "Images," a term defined by that agreement to mean Indiana's LOVE, AHAVA, AMOR, Numbers, and YALE works, as well as images of works appearing in the catalog prepared for a 1998 retrospective exhibition at the Museum of Modern and Contemporary Art in Nice, France, or a catalog created by the Susan Sheehan Gallery.

233.    Morgan has breached the April 1999 Agreement by purporting to license to third parties, through ARS, works that are not included within the definition of "Images" under that agreement.

234.    For example, in 1977, Robert Indiana created *MECCA*, an iconic design for the hardwood basketball floor in the arena where the NBA's Milwaukee Bucks played (an arena which later became known as the "MECCA Center").  Robert Indiana's *MECCA* is not among "Images" Morgan was permitted to reproduce under the April 1999 Agreement, and yet, in 2016

---

[1] Memorandum of Law in Support of Plaintiffs' Motion to Dismiss the Amended Counterclaims, Dkt. No. 18-cv-08231, ECF. No. 55 at p. 23, stating "all of MAF's legal fees—including all the fees incurred in connection with litigation—will be charged against Indiana's account."

and again in 2017, Morgan purported to authorized third parties to reproduce this work and has collected ███████████ dollars in fees for those unauthorized reproductions.  In 2017, Morgan also purportedly licensed a third party to reproduce Indiana's *HOPE*, which, like *MECCA*, was not among the "Images" Morgan was permitted to reproduce.

235.    Between 2012 and 2017, Morgan has purported to license to third parties other works that are not within the scope of the April 1999 Agreement, including *New Easel*, *Royal Tide*, *Terra Nova*, *Nonending Nonagon*, *Comet*, and *Remember*.  No agreement permitted Morgan to reproduce these works or license others to do so.  By purporting to license the reproduction of these works, Morgan has breached the April 1999 Agreement and has been unjustly enriched.

**Morgan Used the "Robert Indiana" Name Without Authorization
 On Works Not Created by Indiana.**

236.    Morgan has further breached its agreements with Mr. Indiana, and has violated the copyright laws, the Lanham Act and the Visual Artist's Rights Act, by engaging in the production, fabrication, exhibition and/or sale of works not authorized by Mr. Indiana, and by affixing his signature to such works in violation of his legal rights.

237.    Under the April 1999 Agreement and the Sculpture Agreement, Morgan has the right to fabricate and reproduce the work of art referred to therein as the "LOVE" sculpture.  As Morgan knows, Robert Indiana had strong opinions about the design elements and specifications for his "LOVE" sculpture, and took great pains to preserve the artistic integrity of the work in any form in which it was created.  During his lifetime, Indiana designed and/or authorized numerous variations on the "LOVE" sculpture, each of which met his requirements for design elements and specifications (the "Approved LOVE Designs").

238.    However, Morgan and Simon Salama-Caro have not limited their activity to
Approved Love Designs, and have created new LOVE sculptures that were never approved (and,
upon information and belief, never would have been approved) by Robert Indiana.

239.    Specifically, and without limitation, Morgan and Simon Salama-Caro have
authorized the production of certain LOVE Sculptures fabricated from semi-precious stones (the
"Unauthorized Semi-Precious Stone LOVE Sculptures").  Each of the works has an inscription
that purports to be Indiana's signature, but it is in fact neither his signature nor an authorized
facsimile thereof.

240.    Morgan and Simon Salama-Caro have not only created the Unauthorized Semi-
Precious Stone LOVE Sculptures, but have entered into agreements with galleries and museums
to exhibit these unauthorized works.  These Unauthorized Semi-Precious Stone LOVE
Sculptures were included in an exhibition of Indiana's works by the Albright-Knox Art Gallery
in Buffalo, New York, entitled: "Robert Indiana: A Sculpture Retrospective. "  Wall signs
accompanying the Unauthorized Semi-Precious Stone LOVE works in that show falsely stated
that Indiana authorized the creation of the sculptures when, in fact, he did not.

241.    The creation and exhibition of sculptures that purport to be created by Robert
Indiana, but which were not authorized and are inconsistent with Indiana's design requirements,
is a breach of contract and a violation of Indiana's statutory and common law rights.

242.    Additionally, upon information and belief, Morgan has sold both authorized
marble LOVE sculptures and unauthorized Semi-Precious Stone LOVE sculptures, but has not
paid either Indiana or the Estate one penny for the sale of those works.

243.    Morgan has breached the Sculpture Agreement and the Marble Sculpture
Agreement by failing to account to Indiana or the Estate, and by failing to pay Indiana for the

sale of authorized works.  Morgan has further been unjustly enriched by the sale of unauthorized Semi-Precious Stone LOVE sculptures, to Indiana's direct financial detriment.

**Improper Use of the "robertindiana.com" Domain Name**

244.     Counterclaim-Defendants Simon Salama-Caro, Morgan, Figure 5 Art LLC, and Shearbrook (US), LLC (collectively, the "Domain Name Counterclaim-Defendants") registered and are currently utilizing the domain name "robertindiana.com" for a website that purports to represent the rights, interests, trademarks, and intellectually property of Robert Indiana.

245.     By registering and operating the website "robertindiana.com", the Domain Name Counterclaim-Defendants claim to represent Robert Indiana and/or to have his approval or sponsorship for their commercial activities, but, in reality, the Domain Name Counterclaim-Defendants have no right to represent Robert Indiana, or to misappropriate his name and reputation.  To the contrary, the Domain Name Counterclaim-Defendants are, at best, contractual counterparties to agreements providing defined and specified rights to certain of Mr. Indiana's works.  By pretending to be, or to represent, the artist himself, the Domain Name Counterclaim-Defendants have caused, and will continue to cause, confusion as to the source and sponsorship of the website, and confusion in the market.

246.     The Domain Name Counterclaim-Defendants have no right to the use of the "robertindiana.com" domain name and no right to use, on any website, the copyrighted material, trademarks, trade names, and rights of publicity reserved to the Estate.

**Wrongful Publication of a Catalogue Raisonné of Robert Indiana's
Works in Violation of the Estate's Copyright and Trademark Rights**

247.     On December 2, 2006, Robert Indiana granted Simon Salama-Caro limited authority to be "responsible for the preparation of the Catalogue Raisonne" of Indiana's

complete oeuvre (the "Catalogue Raisonné Preparation Agreement").  A copy of the Catalogue

Raisonné Preparation Agreement is attached hereto as **Exhibit S**.

248.    The Catalogue Raisonné Preparation Agreement did not grant Simon Salama-

Caro any copyright or trademark in any of Indiana's artworks, nor did it grant Simon Salama-

Caro the right to reproduce or publish all of Indiana's works.  Rather, the purpose of the

Catalogue Raisonné Preparation Agreement was to allow Simon Salama-Caro to prepare a

Catalogue Raisonné to be published by a third party with the supervision and consent of Robert

Indiana.  Indeed, because Mr. Indiana has the copyright rights to the vast majority of his works,

without the consent of Mr. Indiana (now the Estate) the Catalogue Raisonné cannot include

Indiana's "complete oeuvre."

249.    Simon Salama-Caro and certain affiliated persons and/or entities, including

RI Catalogue Raisonné LLC (collectively, the "Catalogue Raisonné Counterclaim-Defendants"),

are currently operating the domain "ricatalogueraisonne.org" and, according to that website,

intend to publish the Catalogue Raisonné in association with the Albright-Knox Art Gallery.

250.    The unauthorized website "robertindiana.com," maintained by the Domain Name

Counterclaim-Defendants, also includes a landing page for a "Catalogue Raisonné," which the

webpage advertises as "Coming Soon."

251.    Neither Robert Indiana, nor the Estate, have consented to the publication of the

Catalogue Raisonné by the Catalogue Raisonné Counterclaim-Defendants.

252.    Any reproduction or publication of any work of Robert Indiana by the Catalogue

Raisonné Counterclaim-Defendants is a violation of the copyright, trademark, and other rights of

the Estate in such works.

**FOR A FIRST COUNTERCLAIM**
**Breach of Contract: the April 1999 Agreement**
**Against Morgan**

253.    The Estate repeats and realleges each and every allegation contained in the

paragraphs above as if fully set forth here.

254.    Until its termination, as documented by the Estate's May 9, 2019 notice of

termination to Morgan Art, the April 1999 Agreement was a valid and binding contract between

Morgan and Robert Indiana.

255.    Until its termination, Robert Indiana complied in all material respects with the

April 1999 Agreement.

256.    Morgan has breached the April 1999 Agreement by:

a)   failing to provide timely accountings on a quarterly basis as required;

b)   failing to provided accounting that itemize the revenue, expenses and payments
     as required;

c)   failing to provide any accountings for any quarter in 2017, 2018, or 2019 to date;

d)   failing to timely make payments  to Indiana or the Estate within 30 days of each
     sale pursuant to the agreement;

e)   underpaying Indiana as a result of failure to count all relevant sales revenues, and
     deductions of  improper, inflated, and artificial expenses in order to calculate the
     payment amount;

f)   failing to make any payments whatsoever to Indiana or the Estate for works sold
     since December 2016; and

g)   reproducing or authorizing the reproduction of Robert Indiana works not
     authorized by the April 1999 Agreement.

257.     As a direct and proximate result of Morgan's breach, Robert Indiana, now the

Estate, suffered damages in an amount to be determined at trial.

### FOR A SECOND COUNTERCLAIM
### Breach of Contract: the Sculpture Agreement
### Against Morgan

258.     The Estate repeats and realleges each and every allegation contained in the

paragraphs above as if fully set forth here.

259.     Until its termination, documented in the Estate's May 9, 2019 notice of

termination to Morgan Art, the Sculpture Agreement was a valid and binding contract between

Morgan and Robert Indiana.

260.     Until its termination, Robert Indiana complied with the Sculpture Agreement.

261.     Morgan has breached the Sculpture Agreement by:

   a)   failing to provide annual accountings as required by that contract, including but
        not limited to failure to provide any accountings in 2017, 2018 or 2019 (to date);

   b)   failing to provide sufficiently itemized accountings;

   c)   underpaying Indiana as a result of failure to count all relevant sales revenues, and
        deductions of  improper, inflated, and fraudulent expenses in order to calculate
        the payment amount; and

   d)   failing to make any payments whatsoever to Indiana or the Estate for works sold
        since December 2016.

262.     Morgan has also breached the Sculpture Agreement by fabricating, displaying,

licensing, and/or selling reproductions of Indiana's artworks in colors, dimensions and/or sizes

not authorized by the Sculpture Agreement, including without limitation, the Unauthorized

Semi-Precious Stone LOVE Sculptures.

263.    As a direct and proximate result of Morgan's breach, Robert Indiana, now the Estate, suffered damages in an amount to be determined at trial.

## FOR A THIRD COUNTERCLAIM
### Breach of the Covenant of Good Faith and Fair Dealing
### Against Morgan

264.    The Estate repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth here.

265.    Until their termination, documented in the Estate's May 9, 2019 notice of termination to Morgan Art, the April 1999 Agreement, the Sculpture Agreement, and the Marble Sculpture Agreement were all valid binding contracts between Robert Indiana and Morgan.

266.    Under New York law, there is an implied covenant of good faith and fair dealing inherent in every contract or agreement.

267.    Until their termination, Robert Indiana fully performed under all of his agreements with Morgan.

268.    Instead of selling works produced pursuant to these agreement in arm's-length purchases at market value, Morgan instead sold works it produced to defendant Shearbrook for below-market prices.

269.    Morgan engaged in commercially unreasonable, wasteful, and bad faith transactions and business practices, which reduced the proceeds payable to Indiana under those agreements.

270.    These transactions were fundamentally unfair and were undertaken in bad faith, in order to deprive Indiana of his rights and benefits under those agreements.

271.    As a direct and proximate result of Morgan's breach of the covenant of good faith and fair dealing, Robert Indiana, now the Estate, suffered damages in an amount to be determined at trial.

## FOR A FOURTH COUNTERCLAIM
### Unjust Enrichment
### Against Morgan

272.     The Estate repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth here.

273.     This Counterclaim is pled in the alternative to its breach of contract claim.

274.     Morgan has reproduced, or caused other third parties to reproduce, numerous works by Robert Indiana, without authorization or contractual right to do so; including but not limited to *HOPE*, *MECCA*, *Remember*, *Comet*, *Nonending Nonagon*, *Terra Nova*, *Royal Tide*, *New Easel,* and the Semi-Precious *LOVE* Sculptures.

275.     Morgan has unjustly profited by receiving and retaining royalties and licensing fees for those works, which rightfully should have been paid to Indiana.

276.     Since the termination of the agreements between Indiana and Morgan, Morgan has continued to reproduce and sell works based on Indiana's designs without contractual authority or right to do so.

277.     Morgan has unjustly profited by receiving payments for the sale of these works, which rightfully should have been paid to Indiana.

278.     Indiana has been directly and proximately harmed by Morgan's wrongful receipt and retention of royalties and proceeds for the reproduction and sale of his works.

279.     It would be unjust for Morgan to retain amounts received as a result of its wrongful conduct.

280.     As a direct and proximate result of Morgan's conduct, Robert Indiana, and now the Estate, suffered damages in an amount to be determined at trial.

**FOR A FIFTH COUNTERCLAIM**
**<u>Visual Artist's Rights Act</u>**
**Against Morgan**

281.   The Estate repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth here.

282.   Robert Indiana is the author of multiple works of visual art.

283.   Morgan has applied Robert Indiana's signature to a number of works of visual art, including the Unauthorized Semi-Precious Stone *LOVE* Sculptures derived from the original *LOVE* sculpture.

284.   Robert Indiana did not create the Unauthorized Semi-Precious Stone *LOVE* Sculptures.

285.   The Estate has the right to prevent the use of Robert Indiana's name as the author of any work of visual art which he did not create.

286.   This right can be waived only by express agreement to a waiver in a written instrument that specifically identifies the work for which the waiver applies and the uses of that work, and the waiver shall apply only to the work and uses so identified.  Neither Robert Indiana nor the Estate has signed such a waiver for the Unauthorized Semi-Precious Stone *LOVE* Sculptures.

287.   Morgan's unauthorized application of Robert Indiana's signature has caused and is causing irreparable harm to the Estate, for which there is no adequate remedy at law.  Unless enjoined, Morgan's unauthorized application of Indiana's signature will continue to harm the Estate.

288.   Based on the foregoing, the Estate seeks injunctive relief prohibiting the sale or public display of the Unauthorized Semi-Precious Stone *LOVE* Sculptures and prohibiting the

use of Robert Indiana's name as the author of any other works of visual art which he did not

create.

### FOR A SIXTH COUNTERCLAIM
#### Unfair Competition (Lanham Act)
#### Against the Domain Name Counterclaim-Defendants

289.    The Estate repeats and realleges each and every allegation contained in the

paragraphs above as if fully set forth here.

290.    The Domain Name Counterclaim-Defendants operate the domain name

"robertindiana.com", which they use as a licensing vehicle for artwork and to generate interest in

artwork in which the Domain Name Counterclaim-Defendants have a commercial interest.

291.    The name "Robert Indiana" is distinctive and is used to identify Robert Indiana's

art and commercial activities.  Robert Indiana's birth name was Robert Clark.  Since at least

1958, he has used the name "Robert Indiana" to identify his art and to sponsor or endorse

products.   He began using the name "Robert Indiana" in part because of its distinctiveness.

Robert Indiana was widely recognized as an artist under the name "Robert Indiana."

292.    The domain name "robertindiana.com" is virtually identical to "Robert Indiana."

293.    The Domain Name Counterclaim-Defendants' use of Robert Indiana's name in

their domain name is likely to confuse consumers or deceive them as to the affiliation of Indiana

or the Estate with the Domain Name Counterclaim-Defendants.  The Domain Name

Counterclaim-Defendants' use of the Robert Indiana's name is also likely to confuse or deceive

consumers into believing that Robert Indiana sponsored or approved of the commercial activities

of the Domain Name Counterclaim-Defendants.

294.    The Domain Name Counterclaim-Defendants' use of the "Robert Indiana" mark

in their domain name has caused and is causing irreparable harm to the Estate, for which there is

no adequate remedy at law.  Unless enjoined, the Domain Name Counterclaim-Defendants' use of the "Robert Indiana" mark in their domain name will continue to confuse the public.

295.    The Estate requests the Domain Name Counterclaim-Defendants' profits from use of the domain name, including any licensing revenue; the Estate's damages from such use; and all costs for prosecution of this count.

296.    The Estate further requests an injunction preventing the Domain Name Counterclaim-Defendants' use of the "robertindiana.com" domain name.

**FOR A SEVENTH COUNTERCLAIM**
**<u>Trademark Infringement (Common Law)</u>**
**Against the Domain Name Counterclaim-Defendants**

297.    The Estate repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth here.

298.    The Estate owns all right, title, and interest in and to all common-law rights in the "Robert Indiana" mark.

299.    The "Robert Indiana" mark is inherently distinctive and is used to identify Robert. Indiana's art and commercial activities.  Robert Indiana's birth name was Robert Clark.  Since at least 1958, he has used the name "Robert Indiana" to identify his art and to sponsor or endorse products.  He began using the name "Robert Indiana" in part because of its distinctiveness. Robert Indiana has used the name and mark "Robert Indiana" in New York and other states continuously for decades to identify his artwork.

300.    The Domain Name Counterclaim-Defendants operate the domain name "robertindiana.com", which they use as a licensing vehicle for artwork and to generate interest in artwork in which the Domain Name Counterclaim-Defendants have a commercial interest.

301.    The domain name "robertindiana.com" is virtually identical to "Robert Indiana."

302. The Domain Name Counterclaim-Defendants' use of the "Robert Indiana" mark in their domain name is unauthorized and likely to confuse consumers or deceive them as to the affiliation of Robert Indiana or the Estate with the Domain Name Counterclaim-Defendants. The Domain Name Counterclaim-Defendants' use of the Robert Indiana's name is also likely to confuse or deceive consumers into believing that Indiana sponsored or approved of the commercial activities of the Domain Name Counterclaim-Defendants.

303. The Domain Name Counterclaim-Defendants' use of the "Robert Indiana" mark in their domain name has caused and is causing irreparable harm to the Estate, for which there is no adequate remedy at law. Unless enjoined, the Domain Name Counterclaim-Defendants' use of the "Robert Indiana" mark in their domain name will continue to confuse the public.

304. The Court may award declaratory relief under 28 U.S.C. §§ 2201, 2202.

305. Based on the foregoing, the Estate is entitled to a declaratory judgment that the Domain Name Counterclaim-Defendants are not authorized to use the "robertindiana.com" domain name without the Estate's consent, and the Estate is entitled to an injunction on the continued unauthorized use of that domain.

### FOR AN EIGHTH COUNTERCLAIM
#### Tortious Interference with Contract
#### Against Salama-Caro and Shearbrook

306. The Estate repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth here.

307. Until their termination, documented in the Estate's May 9, 2019 notice of termination to Morgan Art, the April 1999 Agreement, the Sculpture Agreement, and the Marble Sculpture Agreement were all valid binding contracts between Robert Indiana and Morgan.

308.   Simon Salama-Caro and Shearbrook were each aware of these binding contracts between Morgan and Robert Indiana.

309.   Simon Salama-Caro and Shearbrook intentionally, and without justification, induced Morgan to breach its contracts with Indiana by, among other things:

     a)  inducing Morgan to enter into below-market sales and other transactions that had the impact of decreasing payments to Indiana; and

     b)  inducing Morgan to make excessive and impermissible transfer payments and expense deduction so as to divert money to themselves rather than Indiana.

310.   As a direct and proximate result of the tortious conduct by Shearbrook and Simon Salama-Caro, Robert Indiana, now the Estate, suffered damages in an amount to be determined at trial.

**FOR A NINTH COUNTERCLAIM**
**<u>Unfair Competition</u>**
**Against the Catalogue Raisonné Counterclaim-Defendants**

311.   The Estate repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth here.

312.   The name "Robert Indiana" is distinctive and is used to identify Robert Indiana's art and commercial activities.  Robert Indiana's birth name was Robert Clark.  Since at least 1958, he has used the name "Robert Indiana" to identify his art and to sponsor or endorse products.  He began using the name "Robert Indiana" in part because of its distinctiveness.  Indiana was widely recognized as an artist under the name "Robert Indiana."

313.   The Catalogue Raisonné Counterclaim-Defendants are preparing to publish various works of Robert Indiana without authorization as part of the Robert Indiana Catalogue Raisonné, which is currently being advertised.  This publication will include "full-color reproductions" of works for which the intellectual property rights belong to the Estate.  The

43

Catalogue Raisonné Counterclaim-Defendants seek to include "all known paintings and sculptures in public and private collections," which comprises a significant body of work for which the Estate owns the intellectual property rights.

314.    The Catalogue Raisonné Counterclaim-Defendants seek to publish a Catalogue Raisonné as a commercial activity.  They have a commercial interest in various Robert Indiana works that will be included in the Catalogue Raisonné.  Upon information and belief, they will also charge a fee for admission to the Albright Knox Gallery, which will publicly display the Catalogue Raisonné, including the improperly copied works.

315.    The Catalogue Raisonné Counterclaim-Defendants have used and are using Robert Indiana's name to compile documentation for the Catalogue Raisonné and to aid in the unauthorized reproduction of Robert Indiana's works.  The Catalogue Raisonné Counterclaim-Defendants advertise on their website that "[o]wners of paintings and sculptures are encouraged to contact . . . info@robertindiana.com."

316.    The use of Robert Indiana's name is likely to confuse or deceive the public into believing that Robert Indiana or the Estate have sponsored or approved of the commercial activities of the Catalogue Raisonné Counterclaim-Defendants.  Owners of paintings and sculptures are more likely to aid in these commercial activities if they perceive Robert Indiana has sponsored or approved them.

317.    The unauthorized reproduction of Robert Indiana's works will negatively impact the market for these works and deprive the Estate of revenue that could be earned from its publication of these works.

318.    The unauthorized reproduction of Robert Indiana's works has caused and is causing irreparable harm to the Estate, for which there is no adequate remedy at law.  Unless

enjoined, the Catalogue Raisonné Counterclaim-Defendants' reproduction of Robert Indiana's works will continue to confuse the public.

## PRAYER FOR RELIEF

WHEREFORE, the Estate respectfully prays that the Court:

A.     Enter judgment in favor of the Estate on Plaintiff's First Amended Complaint and each and every count therein relating to the Estate;

B.     On the First Counterclaim, order an accounting, and award the Estate general and/or compensatory damages in an amount to be determined at trial for all injuries suffered as a result of Morgan Consolidated Ltd. and Morgan's breach of the April 1999 Agreement;

C.     On the Second Counterclaim, order an accounting, and award the Estate general and/or compensatory damages in an amount to be determined at trial for all injuries suffered as a result of Morgan Consolidated Ltd. and Morgan's breach of the Sculpture Agreement;

D.     On the Third Counterclaim, order an accounting, and award the Estate general and/or compensatory damages in an amount to be determined at trial for all injuries suffered as a result of Morgan Consolidated Ltd. and Morgan's breach of the covenant of good faith and fair dealing.

E.     On the Fourth Counterclaim, award the Estate restitution in an amount to be determined at trial for all injuries suffered as a result of Morgan's unauthorized use, reproduction, licensing, and/or sale of Indiana artworks;

F.     On the Fifth Counterclaim, enjoin Morgan's use, fabrication, public display, or sale of the Unauthorized Semi-Precious Stone LOVE Sculptures and enjoin the use of Robert Indiana's name as the author of any other works of visual art which he did not create;

45

# Exhibit A

**Robert Indiana**
**No. 25 Star of Hope Lodge**
**Vinalhaven, Maine 04863**

Morgan Consolidated Ltd.
7 Avenue Pictet de Rochemont
1207 Geneva, Switzerland

Gentlemen:

In consideration of the mutual undertakings hereinafter set forth and other good and valuable consideration, the receipt whereof is hereby acknowledged, I hereby transfer and assign unto Morgan Consolidated Ltd. ("Morgan"), now known as Morgan Art Foundation Limited, all of my trademarks, copyrights and other rights that I now have or may hereafter acquire, including the right to sue for past infringement, in and to the *LOVE*, *AHAVA* (in Hebrew letters), *AMOR*, *Numbers* and *YALE* Images and in and to any and all paintings, sculptures, constructions and other art work, (hereinafter collectively called the "Images"), copies of which Images appear in the 1998 Catalogue of my art work prepared for my 1958-1998 Retrospective Exhibition at Museum of Modern and Contemporary Art in Nice, France and/or in the Catalogue Raisonne, 1951-1991, of my prints published by the Susan Sheehan Gallery, New York, except for the image of the *LOVE* postage stamp as illustrated on page 50.

The foregoing transfer and assignment to Morgan includes the exclusive right throughout the world in perpetuity to reproduce, promote and sell the Images in such forms and sizes, singularly or in any combination, in such manner, at such time, for such price and subject to such terms and conditions as Morgan in its sole discretion shall determine. Morgan shall have the right to select, appoint and employ attorneys, agents, representatives, successors and assigns to further the purposes of this Agreement.

In consideration of the foregoing transfer and assignment to Morgan, Morgan hereby covenants and agrees to pay me, within thirty days of receipt, a sum equal to fifty (50%) percent of the net income, as such term is defined in the attached Schedule of Permissible Deductible Expenses, derived from and received by Morgan pursuant to each Agreement by and between Morgan and third parties for the sale of an Image or Images. In addition to the foregoing, Morgan shall furnish an accounting to me, on a quarterannual basis, which accounting shall itemize the income received, the expenses incurred and the payments made to me in connection with the sale or sales of the Images.

During my lifetime, each proposed project involving the Images which shall be addressed directly to me, shall be forwarded promptly by me to Simon Salama-Caro ("Salama-Caro"), for review, discussion, and recommendation. Thereafter, Morgan shall negotiate and, enter into an agreement with respect to each such project on such terms and conditions as Morgan shall determine. It is understood and agreed that Salama-Caro is

MAF0000001

Page 2 - Agreement Robert Indiana/Morgan Consolidated Ltd.

acting on behalf of and as representative for Morgan. If Salama-Caro can no longer act as such representative or shall resign, his designated successor shall be appointed by Morgan and such successor shall act in his place and stead, and I shall be duly advised of such appointment.

I hereby warrant and represent that each of the Images is my sole, exclusive and original work and that I have full power to make this Agreement. I hereby further warrant and represent that none of the rights hereby transferred and assigned to Morgan have heretofore been transferred and assigned to any third party. If a dispute shall arise by and between Morgan and any third party concerning the foregoing warranties and representations or concerning the rights hereby transferred and assigned to Morgan, or if an infringement or a violation of the foregoing shall occur, then in that event, Morgan shall have the right, power and authority to prosecute a law suit to resolve such dispute and/or terminate such infringement, and to collect and retain damages therefore. I hereby agree to render any and all assistance that shall be necessary to protect and defend the rights transferred and assigned to Morgan hereunder.

This Agreement shall be binding upon and shall inure to the benefit of the undersigned, and their respective successors, assigns, heirs, next of kin and representatives. This Agreement shall be effective as at June 28, 1998.

This Agreement is subject to and shall be construed in accordance with the laws of the State of New York. Any claim, dispute or controversy related to or arising under or involving the terms and provisions of this Agreement shall be resolved by arbitration in the City of New York subject to the rules and regulations then in effect of the American Arbitration Association.

DATED: _9 APRIL 1999_

_Robert Indiana_

MORGAN CONSOLIDATED LTD., now known as MORGAN ART FOUNDATION LIMITED

Myles Stott

MAF0000002

# Exhibit B

**Robert Indiana**
**No. 25 Star of Hope Lodge**
**Vinalhaven, Maine 04863**

SCHEDULE OF PERMISSIBLE DEDUCTIBLE EXPENSES

For the purposes of the annexed Agreement by and between Robert Indiana and Morgan Consolidated Ltd., now known as Morgan Art Foundation Limited, the following items are the Permissible Deductible Expenses to determine the net income derived from the sale of the Images and received by Morgan, which net income shall be payable to Robert Indiana pursuant to the above described Agreement, namely:

Cost of Sales
Packing, Storing, Shipping and Insurance
Reproduction/Manufacturing Expenses
Promotional Expenses
Photography Expenses
Sales Expenses
Commissions and Fees
Travel and Entertainment
Finance Charges and Expenses

Administrative Expenses
Postage
Fax
Telephone

Professional Expenses
Attorney's Fees and Disbursements
Accounting

_APRIC 1955_

Dated

Robert Indiana

# Exhibit C

## Morgan Art Foundation

Rue du Four 23, 1470 Estavayer-le-Lac, Switzerland
Email: pg@morganart.ch

June 15, 2016

Robert Indiana
Star of Hope
Vinalhaven
Maine 04863
USA

Dear Robert,

I have pleasure in attaching a copy of your account with Morgan Art Foundation for the period 1 January 2015 – 31 December 2015. Enclosed are the following documents:

1. Artists Rights Society Statements for the Period 1 January 2015 – 31 December 2015
2. Statement of Account for ARS for the Period 1 January 2015 – 31 December 2015
3. Statement of Account for Milgo Sculptures for the Period 1 January 2015 – 31 December 2015

For the Period 1 January 2015 – 31 December 2015 royalties due from Morgan Art Foundation to you total $⬛⬛⬛⬛⬛. The outstanding balance of the advance royalty payments is reduced to $⬛⬛⬛⬛

Best wishes,

Philippe Grossglauser
Director
Morgan Art Foundation

Morgan Art Foundation

**Confidential - Disclosure Prohibited**

**MAF0000141**

Morgan Art Foundation
Rue du Four 23
1470 Estavayer-le-Lac
Switzerland


ROBERT INDIANA

STATEMENT OF ACCOUNT FOR ARS


**SUMMARY ANALYSIS**

PERIOD: 1st JANUARY 2015 - 31st DECEMBER 2015

USD$

PAYABLE TO ROBERT INDIANA ON ARS

PAID TO ROBERT INDIANA ON ARS

*DUE TO ROBERT INDIANA*


PHILIPPE GROSSGLAUSER
DIRECTOR
MORGAN ART FOUNDATION
DATE:   June 15, 2016


Morgan Art Foundation

Morgan Art Foundation
Rue du Four 23
1470 Estavayer-le-Lac
Switzerland

ROBERT INDIANA

STATEMENT OF ACCOUNT FOR MILGO SCULPTURES

**SUMMARY ANALYSIS**

PERIOD: 1st JANUARY 2015 - 31st DECEMBER 2015

_USD$_

PAYABLE TO ROBERT INDIANA ON SCULPTURES

PAID TO ROBERT INDIANA ON SCULPTURES

_ADVANCE TO ROBERT INDIANA_

PHILIPPE GROSSGLAUSER
DIRECTOR
MORGAN ART FOUNDATION
DATE:  June 15, 2016

Morgan Art Foundation

**Confidential - Disclosure Prohibited**

**MAF0000143**

# Exhibit D

# Morgan Art Foundation

Rue du Four 23, 1470 Estavayer-le-Lac, Switzerland
Email: pg@morganart.ch

November 3, 2017

Robert Indiana
Star of Hope
Vinalhaven
Maine 04863
USA

Dear Robert,

I have pleasure in attaching a copy of your account with Morgan Art Foundation for the period 1 January 2016 – 31 December 2016. Enclosed are the following documents:

1.  Artists Rights Society Statements for the Period 1 January 2016 – 31 December 2016
2.  Statement of Account for ARS for the Period 1 January 2016 – 31 December 2016
3.  Statement of Account for Milgo Sculptures for the Period 1 January 2016 – 31 December 2016

For the Period 1 January 2016 – 31 December 2016 royalties due from Morgan Art Foundation to you total $ ███████

Please can you reconfirm your bank details in order to arrange a payment by wire transfer?

Best wishes,

Philippe Grossglauser
Director
Morgan Art Foundation

Morgan Art Foundation

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

# Exhibit E

# Morgan Art Foundation SA

**Champ de la Vigne 7  –  1470 Estavayer-le-Lac  -  Switzerland**
**Tel : +41 26 663 94 10  -  Fax : +41 26 663 94 18**

Shearbrook (US) LLC
45 East 80th Street
New York, NY 10075

## Invoice 121114L8BR25

Estavayer-le-Lac, 14. November, 2012

| Description | | US$ |
|---|---|---|
| **Artist** | **Robert Indiana** | |
| **Sculpture** | LOVE | |
| **Year** | 1966 - 1999 | |
| **Color** | BLUE / RED | |
| **Material** | Poly Alu | |
| **Size** | 8 ft | |
| **Edition** | 2/5 | ▮ |
| **Total** | | ▮ |

Banking details for wire transfers:

To: Pictet & Cie, Geneva, Switzerland
Swift: ▮

In favor of: Selvi & Cie SA, Geneva, Switzerland
Account: ▮ 0.001

In favor of: Morgan Art Foundation SA, Estavayer-le-Lac, Switzerland
US$ IBAN: ▮ 2000 1

**Confidential - Disclosure Prohibited**                    **MAF0051276**

2012 - B 022 .pdf

# Morgan Art Foundation SA

Champ de la Vigne 7  –  1470 Estavayer-le-Lac  -  Switzerland
Tel : +41 26 663 94 10  -  Fax : +41 26 663 94 18

### MORGAN ART FOUNDATION

#### TERMS AND CONDITIONS OF SALE

PRICES.  All prices shall at Seller's option be adjusted to prices in affect at the time of shipment. Clerical errors are subject to correction. Unless specified, prices do not include shipping, crating, packaging, storage charges, sales and other taxes, local delivery, uncrating and installation, all of which will be the responsibility of the Buyer.

SHIPMENT • RISK OF LOSS • STORAGE. Unless otherwise agreed to in writing by Seller, all shipments of artworks are in accordance with Seller's standard shipping policies.  Buyer agrees to assume all risk of loss of or damage to the artworks from the time of it is made available for pick up by a carrier at Seller's premises and a clean condition report provided to Buyer.

BUYER'S DEFAULT. If Buyer refuses to make any payment provided in this or any other contract with Seller, or if Buyer becomes insolvent, the total amount payable under this and/or any other contract with Seller shall become immediately due and payable and Seller shall, in addition, have the right to withhold any further shipments to Buyer until such full payment has been made and/or treat this and all other contracts made with Buyer as breached and exercise such other rights as applicable laws permit.

TERMS OF PAYMENT. The terms of payment shall be as set forth on this acknowledgment.  In the event that no reference is made to the terms of payment, Buyer shall remit to Seller, in cleared funds, the net amount hereof in full within 18 calendar months of the date of invoice.

LEGAL FEES. In the event that Seller is compelled to resort to a collection agency or similar organization or to the services of a lawyer, either to collect the amount in arrears or enforce any rights it may have hereunder, Buyer agrees to pay Seller, in addition to the above mentioned charge on overdue sums, the cost of collection, legal fees and other expenses incurred in connection therewith by the Seller.

RETURN OF MATERIAL. Buyer agrees not to return any artworks for any reason except upon the written consent of Seller, obtained in advance of such return, which consent, if given, shall specify- the terms and conditions upon which any such return may be made.

INDEMNIFICATION.  Buyer shall indemnify and hold Seller harmless, against all losses, claims, liabilities and expenses, including reasonable attorneys' fees, arising out of any act or omission of Buyer, its agents, employees or customers.

ASSIGNMENT. Buyer shall not delegate any duties, nor assign any rights or claims hereunder, without prior written consent of Seller and any such attempted delegation or assignment shall be void.

GOVERNING LAW.  Buyer agrees that, any dispute of any kind, nature or description, between the parties  hereto with respect to, relating to or arising out of the provisions  of this Agreement, shall at Seller's election, which election may be made at any time prior to the commencement of a judicial proceeding by Seller, or in the event instituted by Buyer, at any time prior to the last day to answer and/or respond to a summons and/or complaint made by the Buyer, be submitted to arbitration.  Any such arbitration shall be conducted in Switzerland.

ENTIRE AGREEMENT • SEVERABILITY • NO WAIVER. The terms and conditions herein constitute the entire agreement between the parties and supercede all previous or simultaneous verbal or written representations of any sort.

**Confidential - Disclosure Prohibited**                    **MAF0051277**

# Exhibit F

2012 - P 001 .pdf

## Sotheby's

1334 York Avenue
New York NY 10021
+1 212 606 7000
www.sothebys.com

Robert Gore Esq
14 Keats Grove
LONDON
NW3 2RS
UNITED KINGDOM

| Account number | 30912419 |
| Date | 15 November 2012 |

**Your successful purchase in the Contemporary
Art Day Sale auction**
Sale N08901 - 14 November 2012

Congratulations on your recent purchase. We are pleased to provide
the information necessary for finalising your transaction.

- **Invoice for $**

  Your payment is now due. Your invoice gives instructions on
  how to pay.

- **Shipping Quote**

  We will provide you with a quote for the cost of shipping your
  property within the next ten days.

  If you would prefer to collect your property or arrange your own
  shipping, please contact Post Sale Services who will assist you.

▶ **Register on Sothebys.com
today**

Activate your online account to
view invoices, manage bids, bid
online and check payment statuses.

To activate your account, email
enquiries@sothebys.com.

For assistance, please contact
**Ms Alexandria Olszewski
Post Sale Manager**
**T** +1 212 606 7444
**F** +1 212 606 7355
**E** uspostsaleservices@sothebys.com

**Confidential - Disclosure Prohibited**

**MAF0052103**

# Exhibit G



**Estimate** ⊓ 1,000,000 — 1,500,000   USD ▼   **LOT SOLD.** 1,706,500 USD

---

## DETAILS & CATALOGUING

---

Robert Indiana
B.1928
*LOVE (BLUE/RED)*

    

stamped with the artist's name, date *© 1966-1999* and number *2/5* on the side of the letter "E"
polychrome aluminum
96 by 96 by 48 in. 243.8 by 243.8 by 121.9 cm.
Executed in 1966-1999, this work is number 2 from an edition of 5 plus 2 artist's proofs.

# CONTEMPORARY ART DAY AUCTION

14 NOVEMBER 2012 | 9:30 AM EST
NEW YORK

### PROVENANCE

Morgan Art Foundation, Geneva (acquired directly from the artist)
Private Collection, Europe

### CATALOGUE NOTE

"I n a sense, I got down to the subject matter of my work ... the subject is defined by its expression in the word itself ... *LOVE* is purely a skeleton of all that word has meant in all the erotic and religious aspects of the theme, and to bring it down to the actual structure of calligraphy [is to reduce it] to the bare bone." (Robert Indiana in Theresa Brakeley, ed., *Robert Indiana*, New York 1990, p. 168).

One of the most iconic images of Pop Art and Contemporary American culture, Robert Indiana's *LOVE* sculpture was first conceived in 1966 when the artist carved the 4 letters in a block of aluminum for the Stable Gallery. *LOVE* was his first single-word sculpture and from this point on, this image pervaded the artistic visual culture as well as the public sphere. Subsequently, Indiana was commissioned around the world to create



**FIG. 1**
Bruce Nauman *Eat War*, 1986
Private Collection © 2012 Bruce
Nauman / Artists Rights Society

READ MORE

Bauman / Artists Rights Society (ARS), New York



**FIG. 2**

Robert Indiana *Green Diamond EAT and ♂Red Diamond DIE*, 1963 Collection of Walker Art Center, ♂Minneapolis; gift of T. B. Walker ♂Foundation, 1963, © 2012 Morgan Art Foundation Ltd. / Artists Rights Society (ARS), New York



**FIG. 3**

The artist with his first monumental Love sculpture (144 x 144 x 72 inches) at Lippincott Metalworks, North Haven, Connecticut Photo: © Tom Rummler © 2012 Morgan Art Foundation Ltd. / Artists Rights Society (ARS), New York




# CONTEMPORARY ART DAY AUCTION

14 NOVEMBER 2012 | 9:30 AM EST

NEW YORK

# Exhibit H

2016 - B 014 .pdf

# Morgan Art Foundation SA

Rue du Four 23  -  P.O. Box 626  -  1470 Estavayer-le-Lac  -  Switzerland
Tel : +41 26 667 00 10  -  Fax : +41 26 667 00 18

Shearbrook (US) LLC
420 Lexington Avenue, Suite 2450
New York, NY 10170
USA

## Invoice 201609001

Estavayer-le-Lac, 29. September 2016

| Description | US$ |
|---|---|
| **Artist**   **Robert Indiana** | |
| **Title** LOVE<br>**Finish** Red / Red<br>**Material** Polychrome Aluminium<br>**Dimensions** 72x72x36 inches<br>**Edition No.** 1/6 | ██████ |
| **Total** | ██████ |

Banking details for wire transfers:

| | |
|---|---|
| To: | Pictet & Cie, Geneva<br>Switch: ████████ |
| In favor of: | Selvi & Cie SA, Geneva, Switzerland<br>Account: ████████ 0.001 |
| For further credit: | Morgan Art Foundation SA, Estavayer-le-Lac, Switzerland<br>IBAN: ████████ 2000 1 |

2016 - B 014 .pdf

## TERMS AND CONDITIONS OF SALE

**PRICES**
All prices shall at Seller's option be adjusted to prices in affect at the time of shipment. Clerical errors are subject to correction. Unless specified, prices do not include shipping, crating, packaging, storage charges, sales and other taxes, local delivery, uncrating and installation, all of which will be the responsibility of the Buyer.

**SHIPMENT - RISK OF LOSS - STORAGE**
Unless otherwise agreed to in writing by Seller, all shipments of artworks are in accordance with Seller's standard shipping policies. Buyer agrees to assume all risk of loss of or damage to the artworks from the time of it is made available for pick up by a carrier at Seller's premises and a clean condition report provided to Buyer.

**BUYER'S DEFAULT**
If Buyer refuses to make any payment provided in this or any other contract with Seller, or if Buyer becomes insolvent, the total amount payable under this and/or any other contract with Seller shall become immediately due and payable and Seller shall, in addition, have the right to withhold any further shipments to Buyer until such full payment has been made and/or treat this and all other contracts made with Buyer as breached and exercise such other rights as applicable laws permit.

**TERMS OF PAYMENT**
The terms of payment shall be as set forth on this acknowledgment. In the event that no reference is made to the terms of payment, Buyer shall remit to Seller, in cleared funds, the net amount hereof in full within 24 calendar months of the date of invoice.

**LEGAL FEES**
In the event that Seller is compelled to resort to a collection agency or similar organization or to the services of a lawyer, either to collect the amount in arrears or enforce any rights it may have hereunder, Buyer agrees to pay Seller, in addition to the above mentioned charge on overdue sums, the cost of collection, legal fees and other expenses incurred in connection therewith by the Seller.

**RETURN OF MATERIAL**
Buyer agrees not to return any artworks for any reason except upon the written consent of Seller, obtained in advance of such return, which consent, if given, shall specify- the terms and conditions upon which any such return may be made.

**INDEMNIFICATION**
Buyer shall indemnify and hold Seller harmless, against all losses, claims, liabilities and expenses, including reasonable attorneys' fees, arising out of any act or omission of Buyer, its agents, employees or customers.

**ASSIGNMENT**
Buyer shall not delegate any duties, nor assign any rights or claims hereunder, without prior written consent of Seller and any such attempted delegation or assignment shall be void.

**GOVERNING LAW**
Buyer agrees that, any dispute of any kind, nature or description, between the parties hereto with respect to, relating to or arising out of the provisions of this agreement, shall at Seller's election, which election may be made at any time prior to the commencement of a judicial proceeding by Seller, or in the event instituted by Buyer, at any time prior to the last day to answer and/or respond to a summons and/or complaint made by the Buyer, be submitted to arbitration. Any such arbitration shall be conducted in Switzerland.

**ENTIRE AGREEMENT - SEVERABILITY - NO WAIVER.**
The terms and conditions herein constitute the entire agreement between the parties and supersede all previous or simultaneous verbal or written representations of any sort.

**Confidential - Disclosure Prohibited**          **MAF0054317**

# Exhibit I

Shearbrook (US) LLC
420 Lexington Avenue, Suite 2450
New York, NY 10170

Paul Kasmin Gallery
293 Tenth Gallery
New York, NY 10001

September 29th 2016

**Invoice  PKG 2016-6**

Robert Indiana
*LOVE*
Red Red
1966-2000
Polychrome Aluminum
72 x 72 x 36 in
Edition 1/6
(From an edition of 6 plus 4 artist proofs)

USD$  ▌

Provenance:
Morgan Art Foundation (acquired directly from the Artist)

Location:
Zurich

Title will pass upon receipt of full payment in cleared funds for the above work

Packing, shipping and insurance costs are the responsibility of the buyer

Banking details for wire transfer to:
Citibank
785 Fifth Avenue
New York, NY  10022
ABA No.▌1486
A/C No.▌6405
Swift ▌
Account name: Shearbrook (US) L.L.C.
**Reference: PKG 2016-6**

**Confidential - Disclosure Prohibited**

MAF0037360

# Exhibit J

2017 – B 001 .pdf

# Morgan Art Foundation SA

Rue du Four 23  -  P.O. Box 626  -  1470 Estavayer-le-Lac  -  Switzerland
Tel : +41 26 667 00 10  -  Fax : +41 26 667 00 18

Shearbrook (US) LLC
420 Lexington Avenue, Suite 2450
New York, NY 10170
USA

## Invoice 201703001

Estavayer-le-Lac, 15. mars 2017

| Description | | US$ |
|---|---|---|
| **Description** | | |
| Artist | **Robert Indiana** | |
| Title | LOVE | |
| Finish | Red | |
| Material | Polychrome Aluminium | |
| Dimensions | 144x144x72 inches | |
| Edition No. | 3/3 | ▮ |
| **Total** | | ▮ |

Banking details for wire transfers:

| | |
|---|---|
| To: | Pictet & Cie, Geneva |
| | Switch: ▮ |
| In favor of: | Selvi & Cie SA, Geneva, Switzerland |
| | Account: ▮ 0.001 |
| For further credit: | Morgan Art Foundation SA, Estavayer-le-Lac, Switzerland |
| | IBAN: ▮ 2000 1 |

**Confidential - Disclosure Prohibited**

MAF0054853

2017 - B 001 .pdf

## TERMS AND CONDITIONS OF SALE

**PRICES**
All prices shall at Seller's option be adjusted to prices in affect at the time of shipment. Clerical errors are subject to correction. Unless specified, prices do not include shipping, crating, packaging, storage charges, sales and other taxes, local delivery, uncrating and installation, all of which will be the responsibility of the Buyer.

**SHIPMENT • RISK OF LOSS • STORAGE**
Unless otherwise agreed to in writing by Seller, all shipments of artworks are in accordance with Seller's standard shipping policies. Buyer agrees to assume all risk of loss of or damage to the artworks from the time of it is made available for pick up by a carrier at Seller's premises and a clean condition report provided to Buyer.

**BUYER'S DEFAULT**
If Buyer refuses to make any payment provided in this or any other contract with Seller, or if Buyer becomes insolvent, the total amount payable under this and/or any other contract with Seller shall become immediately due and payable and Seller shall, in addition, have the right to withhold any further shipments to Buyer until such full payment has been made and/or treat this and all other contracts made with Buyer as breached and exercise such other rights as applicable laws permit.

**TERMS OF PAYMENT**
The terms of payment shall be as set forth on this acknowledgment. In the event that no reference is made to the terms of payment, Buyer shall remit to Seller, in cleared funds, the net amount hereof in full within 24 calendar months of the date of invoice.

**LEGAL FEES**
In the event that Seller is compelled to resort to a collection agency or similar organization or to the services of a lawyer, either to collect the amount in arrears or enforce any rights it may have hereunder, Buyer agrees to pay Seller, in addition to the above mentioned charge on overdue sums, the cost of collection, legal fees and other expenses incurred in connection therewith by the Seller.

**RETURN OF MATERIAL**
Buyer agrees not to return any artworks for any reason except upon the written consent of Seller, obtained in advance of such return, which consent, if given, shall specify- the terms and conditions upon which any such return may be made.

**INDEMNIFICATION**
Buyer shall indemnify and hold Seller harmless, against all losses, claims, liabilities and expenses, including reasonable attorneys' fees, arising out of any act or omission of Buyer, its agents, employees or customers.

**ASSIGNMENT**
Buyer shall not delegate any duties, nor assign any rights or claims hereunder, without prior written consent of Seller and any such attempted delegation or assignment shall be void.

**GOVERNING LAW**
Buyer agrees that, any dispute of any kind, nature or description, between the parties hereto with respect to, relating to or arising out of the provisions of this agreement, shall at Seller's election, which election may be made at any time prior to the commencement of a judicial proceeding by Seller, or in the event instituted by Buyer, at any time prior to the last day to answer and/or respond to a summons and/or complaint made by the Buyer, be submitted to arbitration. Any such arbitration shall be conducted in Switzerland.

**ENTIRE AGREEMENT • SEVERABILITY • NO WAIVER.**
The terms and conditions herein constitute the entire agreement between the parties and supersede all previous or simultaneous verbal or written representations of any sort.

**Confidential - Disclosure Prohibited**                    **MAF0054854**

# Exhibit K

2017 – B 002 .pdf

# Morgan Art Foundation SA

Rue du Four 23  -  P.O. Box 626  -  1470 Estavayer-le-Lac  -  Switzerland
Tel : +41 26 667 00 10  -  Fax : +41 26 667 00 18

Shearbrook (US) LLC
420 Lexington Avenue, Suite 2450
New York, NY 10170
USA

## Invoice 201703002

Estavayer-le-Lac, 15. mars 2017

| Description | | US$ |
|---|---|---|
| **Description** | | |
| Artist | **Robert Indiana** | |
| Title | LOVE | |
| Finish | Red / Violet | |
| Material | Polychrome Aluminium | |
| Dimensions | 72x72x36 inches | |
| Edition No. | AP 4/4 | ▇▇▇ |
| **Total** | | ▇▇▇ |

Banking details for wire transfers:

| | |
|---|---|
| To: | Pictet & Cie, Geneva |
| | Switch: ▇▇▇ |
| In favor of: | Selvi & Cie SA, Geneva, Switzerland |
| | Account: ▇▇▇ 0.001 |
| For further credit: | Morgan Art Foundation SA, Estavayer-le-Lac, Switzerland |
| | IBAN: ▇▇▇ 2000 1 |

**Confidential – Disclosure Prohibited**

**MAF0054855**

2017 - B 002 .pdf

## TERMS AND CONDITIONS OF SALE

**PRICES**
All prices shall at Seller's option be adjusted to prices in affect at the time of shipment. Clerical errors are subject to correction. Unless specified, prices do not include shipping, crating, packaging, storage charges, sales and other taxes, local delivery, uncrating and installation, all of which will be the responsibility of the Buyer.

**SHIPMENT • RISK OF LOSS • STORAGE**
Unless otherwise agreed to in writing by Seller, all shipments of artworks are in accordance with Seller's standard shipping policies. Buyer agrees to assume all risk of loss of or damage to the artworks from the time of it is made available for pick up by a carrier at Seller's premises and a clean condition report provided to Buyer.

**BUYER'S DEFAULT**
If Buyer refuses to make any payment provided in this or any other contract with Seller, or if Buyer becomes insolvent, the total amount payable under this and/or any other contract with Seller shall become immediately due and payable and Seller shall, in addition, have the right to withhold any further shipments to Buyer until such full payment has been made and/or treat this and all other contracts made with Buyer as breached and exercise such other rights as applicable laws permit.

**TERMS OF PAYMENT**
The terms of payment shall be as set forth on this acknowledgment. In the event that no reference is made to the terms of payment, Buyer shall remit to Seller, in cleared funds, the net amount hereof in full within 24 calendar months of the date of invoice.

**LEGAL FEES**
In the event that Seller is compelled to resort to a collection agency or similar organization or to the services of a lawyer, either to collect the amount in arrears or enforce any rights it may have hereunder, Buyer agrees to pay Seller, in addition to the above mentioned charge on overdue sums, the cost of collection, legal fees and other expenses incurred in connection therewith by the Seller.

**RETURN OF MATERIAL**
Buyer agrees not to return any artworks for any reason except upon the written consent of Seller, obtained in advance of such return, which consent, if given, shall specify- the terms and conditions upon which any such return may be made.

**INDEMNIFICATION**
Buyer shall indemnify and hold Seller harmless, against all losses, claims, liabilities and expenses, including reasonable attorneys' fees, arising out of any act or omission of Buyer, its agents, employees or customers.

**ASSIGNMENT**
Buyer shall not delegate any duties, nor assign any rights or claims hereunder, without prior written consent of Seller and any such attempted delegation or assignment shall be void.

**GOVERNING LAW**
Buyer agrees that, any dispute of any kind, nature or description, between the parties hereto with respect to, relating to or arising out of the provisions of this agreement, shall at Seller's election, which election may be made at any time prior to the commencement of a judicial proceeding by Seller, or in the event instituted by Buyer, at any time prior to the last day to answer and/or respond to a summons and/or complaint made by the Buyer, be submitted to arbitration. Any such arbitration shall be conducted in Switzerland.

**ENTIRE AGREEMENT • SEVERABILITY • NO WAIVER.**
The terms and conditions herein constitute the entire agreement between the parties and supersede all previous or simultaneous verbal or written representations of any sort.

**Confidential - Disclosure Prohibited**                    **MAF0054856**

# Exhibit L

2017 – B 003 .pdf

# Morgan Art Foundation SA

Rue du Four 23  -  P.O. Box 626  -  1470 Estavayer-le-Lac  -  Switzerland
Tel : +41 26 667 00 10  -  Fax : +41 26 667 00 18

Shearbrook (US) LLC
420 Lexington Avenue, Suite 2450
New York, NY 10170
USA

## Invoice 201703003

Estavayer-le-Lac, 15. mars 2017

| Description | US$ |
|---|---|
| **Artist**   **Robert Indiana** | |
| Title   LOVE<br>Finish   Blue / Red<br>Material   Polychrome Aluminium<br>Dimensions   96x96x48 inches<br>Edition No.   4/5 | ▇▇▇ |
| **Total** | ▇▇▇ |

Banking details for wire transfers:

| | |
|---|---|
| To: | Pictet & Cie, Geneva<br>Switch: ▇▇▇ |
| In favor of: | Selvi & Cie SA, Geneva, Switzerland<br>Account: ▇▇▇0.001 |
| For further credit: | Morgan Art Foundation SA, Estavayer-le-Lac, Switzerland<br>IBAN: ▇▇▇2000 1 |

**Confidential - Disclosure Prohibited**

**MAF0054857**

2017 - B 003 .pdf

## TERMS AND CONDITIONS OF SALE

**PRICES**
All prices shall at Seller's option be adjusted to prices in affect at the time of shipment. Clerical errors are subject to correction. Unless specified, prices do not include shipping, crating, packaging, storage charges, sales and other taxes, local delivery, uncrating and installation, all of which will be the responsibility of the Buyer.

**SHIPMENT • RISK OF LOSS • STORAGE**
Unless otherwise agreed to in writing by Seller, all shipments of artworks are in accordance with Seller's standard shipping policies. Buyer agrees to assume all risk of loss of or damage to the artworks from the time of it is made available for pick up by a carrier at Seller's premises and a clean condition report provided to Buyer.

**BUYER'S DEFAULT**
If Buyer refuses to make any payment provided in this or any other contract with Seller, or if Buyer becomes insolvent, the total amount payable under this and/or any other contract with Seller shall become immediately due and payable and Seller shall, in addition, have the right to withhold any further shipments to Buyer until such full payment has been made and/or treat this and all other contracts made with Buyer as breached and exercise such other rights as applicable laws permit.

**TERMS OF PAYMENT**
The terms of payment shall be as set forth on this acknowledgment. In the event that no reference is made to the terms of payment, Buyer shall remit to Seller, in cleared funds, the net amount hereof in full within 24 calendar months of the date of invoice.

**LEGAL FEES**
In the event that Seller is compelled to resort to a collection agency or similar organization or to the services of a lawyer, either to collect the amount in arrears or enforce any rights it may have hereunder, Buyer agrees to pay Seller, in addition to the above mentioned charge on overdue sums, the cost of collection, legal fees and other expenses incurred in connection therewith by the Seller.

**RETURN OF MATERIAL**
Buyer agrees not to return any artworks for any reason except upon the written consent of Seller, obtained in advance of such return, which consent, if given, shall specify- the terms and conditions upon which any such return may be made.

**INDEMNIFICATION**
Buyer shall indemnify and hold Seller harmless, against all losses, claims, liabilities and expenses, including reasonable attorneys' fees, arising out of any act or omission of Buyer, its agents, employees or customers.

**ASSIGNMENT**
Buyer shall not delegate any duties, nor assign any rights or claims hereunder, without prior written consent of Seller and any such attempted delegation or assignment shall be void.

**GOVERNING LAW**
Buyer agrees that, any dispute of any kind, nature or description, between the parties hereto with respect to, relating to or arising out of the provisions of this agreement, shall at Seller's election, which election may be made at any time prior to the commencement of a judicial proceeding by Seller, or in the event instituted by Buyer, at any time prior to the last day to answer and/or respond to a summons and/or complaint made by the Buyer, be submitted to arbitration. Any such arbitration shall be conducted in Switzerland.

**ENTIRE AGREEMENT • SEVERABILITY • NO WAIVER.**
The terms and conditions herein constitute the entire agreement between the parties and supersede all previous or simultaneous verbal or written representations of any sort.

# Exhibit M

2017 - B 004 .pdf

# Morgan Art Foundation SA

Rue du Four 23  -  P.O. Box 626  -  1470 Estavayer-le-Lac  -  Switzerland
Tel : +41 26 667 00 10  -  Fax : +41 26 667 00 18

Shearbrook (US) LLC
420 Lexington Avenue, Suite 2450
New York, NY 10170
USA

## Invoice 201704001

Estavayer-le-Lac, 22. avril 2017

| Description | US$ |
|---|---|
| **Artist**      **Robert Indiana** | |
| Title          LOVE<br>Finish         White / Blue / Red<br>Material       Polychrome Aluminium<br>Dimensions     18x18x9 inches<br>Edition No.    AP 3/4 | ▮ |
| **Total** | ▮ |

Banking details for wire transfers:

| | |
|---|---|
| To: | Pictet & Cie, Geneva<br>Switch: ▮ |
| In favor of: | Selvi & Cie SA, Geneva, Switzerland<br>Account: ▮0.001 |
| For further credit: | Morgan Art Foundation SA, Estavayer-le-Lac, Switzerland<br>IBAN: ▮2000 1 |

**Confidential - Disclosure Prohibited**

**MAF0054859**

2017 - B 004 .pdf

## TERMS AND CONDITIONS OF SALE

**PRICES**
All prices shall at Seller's option be adjusted to prices in affect at the time of shipment. Clerical errors are subject to correction. Unless specified, prices do not include shipping, crating, packaging, storage charges, sales and other taxes, local delivery, uncrating and installation, all of which will be the responsibility of the Buyer.

**SHIPMENT • RISK OF LOSS • STORAGE**
Unless otherwise agreed to in writing by Seller, all shipments of artworks are in accordance with Seller's standard shipping policies. Buyer agrees to assume all risk of loss of or damage to the artworks from the time of it is made available for pick up by a carrier at Seller's premises and a clean condition report provided to Buyer.

**BUYER'S DEFAULT**
If Buyer refuses to make any payment provided in this or any other contract with Seller, or if Buyer becomes insolvent, the total amount payable under this and/or any other contract with Seller shall become immediately due and payable and Seller shall, in addition, have the right to withhold any further shipments to Buyer until such full payment has been made and/or treat this and all other contracts made with Buyer as breached and exercise such other rights as applicable laws permit.

**TERMS OF PAYMENT**
The terms of payment shall be as set forth on this acknowledgment. In the event that no reference is made to the terms of payment, Buyer shall remit to Seller, in cleared funds, the net amount hereof in full within 24 calendar months of the date of invoice.

**LEGAL FEES**
In the event that Seller is compelled to resort to a collection agency or similar organization or to the services of a lawyer, either to collect the amount in arrears or enforce any rights it may have hereunder, Buyer agrees to pay Seller, in addition to the above mentioned charge on overdue sums, the cost of collection, legal fees and other expenses incurred in connection therewith by the Seller.

**RETURN OF MATERIAL**
Buyer agrees not to return any artworks for any reason except upon the written consent of Seller, obtained in advance of such return, which consent, if given, shall specify- the terms and conditions upon which any such return may be made.

**INDEMNIFICATION**
Buyer shall indemnify and hold Seller harmless, against all losses, claims, liabilities and expenses, including reasonable attorneys' fees, arising out of any act or omission of Buyer, its agents, employees or customers.

**ASSIGNMENT**
Buyer shall not delegate any duties, nor assign any rights or claims hereunder, without prior written consent of Seller and any such attempted delegation or assignment shall be void.

**GOVERNING LAW**
Buyer agrees that, any dispute of any kind, nature or description, between the parties hereto with respect to, relating to or arising out of the provisions of this agreement, shall at Seller's election, which election may be made at any time prior to the commencement of a judicial proceeding by Seller, or in the event instituted by Buyer, at any time prior to the last day to answer and/or respond to a summons and/or complaint made by the Buyer, be submitted to arbitration. Any such arbitration shall be conducted in Switzerland.

**ENTIRE AGREEMENT • SEVERABILITY • NO WAIVER.**
The terms and conditions herein constitute the entire agreement between the parties and supersede all previous or simultaneous verbal or written representations of any sort.

**Confidential - Disclosure Prohibited**                    **MAF0054860**

# Exhibit N

2017 - B 005 .pdf

# Morgan Art Foundation SA

Rue du Four 23  -  P.O. Box 626  -  1470 Estavayer-le-Lac  -  Switzerland
Tel : +41 26 667 00 10  -  Fax : +41 26 667 00 18

Shearbrook (US) LLC
420 Lexington Avenue, Suite 2450
New York, NY 10170
USA

## Invoice 201704002

Estavayer-le-Lac, 22. avril 2017

| Description | | US$ |
|---|---|---|
| Artist | **Robert Indiana** | |
| Title | LOVE | |
| Finish | Red / Violet FS | |
| Material | Polychrome Aluminium | |
| Dimensions | 36x36x18 inches | |
| Edition No. | AP 1/4 | ██████ |
| **Total** | | ██████ |

Banking details for wire transfers:

| | |
|---|---|
| To: | Pictet & Cie, Geneva |
| | Switch: ███████ |
| In favor of: | Selvi & Cie SA, Geneva, Switzerland |
| | Account: ██████ 0.001 |
| For further credit: | Morgan Art Foundation SA, Estavayer-le-Lac, Switzerland |
| | IBAN: ████████ 2000 1 |

**Confidential - Disclosure Prohibited**

MAF0054861

2017 - B 005 .pdf

## TERMS AND CONDITIONS OF SALE

**PRICES**
All prices shall at Seller's option be adjusted to prices in affect at the time of shipment. Clerical errors are subject to correction. Unless specified, prices do not include shipping, crating, packaging, storage charges, sales and other taxes, local delivery, uncrating and installation, all of which will be the responsibility of the Buyer.

**SHIPMENT • RISK OF LOSS • STORAGE**
Unless otherwise agreed to in writing by Seller, all shipments of artworks are in accordance with Seller's standard shipping policies. Buyer agrees to assume all risk of loss of or damage to the artworks from the time of it is made available for pick up by a carrier at Seller's premises and a clean condition report provided to Buyer.

**BUYER'S DEFAULT**
If Buyer refuses to make any payment provided in this or any other contract with Seller, or if Buyer becomes insolvent, the total amount payable under this and/or any other contract with Seller shall become immediately due and payable and Seller shall, in addition, have the right to withhold any further shipments to Buyer until such full payment has been made and/or treat this and all other contracts made with Buyer as breached and exercise such other rights as applicable laws permit.

**TERMS OF PAYMENT**
The terms of payment shall be as set forth on this acknowledgment. In the event that no reference is made to the terms of payment, Buyer shall remit to Seller, in cleared funds, the net amount hereof in full within 24 calendar months of the date of invoice.

**LEGAL FEES**
In the event that Seller is compelled to resort to a collection agency or similar organization or to the services of a lawyer, either to collect the amount in arrears or enforce any rights it may have hereunder, Buyer agrees to pay Seller, in addition to the above mentioned charge on overdue sums, the cost of collection, legal fees and other expenses incurred in connection therewith by the Seller.

**RETURN OF MATERIAL**
Buyer agrees not to return any artworks for any reason except upon the written consent of Seller, obtained in advance of such return, which consent, if given, shall specify- the terms and conditions upon which any such return may be made.

**INDEMNIFICATION**
Buyer shall indemnify and hold Seller harmless, against all losses, claims, liabilities and expenses, including reasonable attorneys' fees, arising out of any act or omission of Buyer, its agents, employees or customers.

**ASSIGNMENT**
Buyer shall not delegate any duties, nor assign any rights or claims hereunder, without prior written consent of Seller and any such attempted delegation or assignment shall be void.

**GOVERNING LAW**
Buyer agrees that, any dispute of any kind, nature or description, between the parties hereto with respect to, relating to or arising out of the provisions of this agreement, shall at Seller's election, which election may be made at any time prior to the commencement of a judicial proceeding by Seller, or in the event instituted by Buyer, at any time prior to the last day to answer and/or respond to a summons and/or complaint made by the Buyer, be submitted to arbitration. Any such arbitration shall be conducted in Switzerland.

**ENTIRE AGREEMENT • SEVERABILITY • NO WAIVER.**
The terms and conditions herein constitute the entire agreement between the parties and supersede all previous or simultaneous verbal or written representations of any sort.

**Confidential - Disclosure Prohibited**                    **MAF0054862**

# Exhibit O

2017 – B 006 .pdf

# Morgan Art Foundation SA

Rue du Four 23  -  P.O. Box 626  -  1470 Estavayer-le-Lac  -  Switzerland
Tel : +41 26 667 00 10  -  Fax : +41 26 667 00 18

Shearbrook (US) LLC
420 Lexington Avenue, Suite 2450
New York, NY 10170
USA

## Invoice 201704003
Estavayer-le-Lac, 22. avril 2017

| Description | US$ |
|---|---|
| **Artist**  **Robert Indiana** | |
| Title  LOVE<br>Finish  Gold / Blue FS<br>Material  Polychrome Aluminium<br>Dimensions  18x18x9 inches<br>Edition No.  4/8 | ███ |
| **Total** | ███ |

Banking details for wire transfers:

| | |
|---|---|
| To: | Pictet & Cie, Geneva<br>Switch: ███ |
| In favor of: | Selvi & Cie SA, Geneva, Switzerland<br>Account: ███ 0.001 |
| For further credit: | Morgan Art Foundation SA, Estavayer-le-Lac, Switzerland<br>IBAN: ███ 2000 1 |

**Confidential – Disclosure Prohibited**

**MAF0054863**

2017 - B 006 .pdf

## TERMS AND CONDITIONS OF SALE

**PRICES**
All prices shall at Seller's option be adjusted to prices in affect at the time of shipment. Clerical errors are subject to correction. Unless specified, prices do not include shipping, crating, packaging, storage charges, sales and other taxes, local delivery, uncrating and installation, all of which will be the responsibility of the Buyer.

**SHIPMENT • RISK OF LOSS • STORAGE**
Unless otherwise agreed to in writing by Seller, all shipments of artworks are in accordance with Seller's standard shipping policies. Buyer agrees to assume all risk of loss of or damage to the artworks from the time of it is made available for pick up by a carrier at Seller's premises and a clean condition report provided to Buyer.

**BUYER'S DEFAULT**
If Buyer refuses to make any payment provided in this or any other contract with Seller, or if Buyer becomes insolvent, the total amount payable under this and/or any other contract with Seller shall become immediately due and payable and Seller shall, in addition, have the right to withhold any further shipments to Buyer until such full payment has been made and/or treat this and all other contracts made with Buyer as breached and exercise such other rights as applicable laws permit.

**TERMS OF PAYMENT**
The terms of payment shall be as set forth on this acknowledgment. In the event that no reference is made to the terms of payment, Buyer shall remit to Seller, in cleared funds, the net amount hereof in full within 24 calendar months of the date of invoice.

**LEGAL FEES**
In the event that Seller is compelled to resort to a collection agency or similar organization or to the services of a lawyer, either to collect the amount in arrears or enforce any rights it may have hereunder, Buyer agrees to pay Seller, in addition to the above mentioned charge on overdue sums, the cost of collection, legal fees and other expenses incurred in connection therewith by the Seller.

**RETURN OF MATERIAL**
Buyer agrees not to return any artworks for any reason except upon the written consent of Seller, obtained in advance of such return, which consent, if given, shall specify- the terms and conditions upon which any such return may be made.

**INDEMNIFICATION**
Buyer shall indemnify and hold Seller harmless, against all losses, claims, liabilities and expenses, including reasonable attorneys' fees, arising out of any act or omission of Buyer, its agents, employees or customers.

**ASSIGNMENT**
Buyer shall not delegate any duties, nor assign any rights or claims hereunder, without prior written consent of Seller and any such attempted delegation or assignment shall be void.

**GOVERNING LAW**
Buyer agrees that, any dispute of any kind, nature or description, between the parties hereto with respect to, relating to or arising out of the provisions of this agreement, shall at Seller's election, which election may be made at any time prior to the commencement of a judicial proceeding by Seller, or in the event instituted by Buyer, at any time prior to the last day to answer and/or respond to a summons and/or complaint made by the Buyer, be submitted to arbitration. Any such arbitration shall be conducted in Switzerland.

**ENTIRE AGREEMENT • SEVERABILITY • NO WAIVER.**
The terms and conditions herein constitute the entire agreement between the parties and supersede all previous or simultaneous verbal or written representations of any sort.

# Exhibit P

2017 – B 007 .pdf

# Morgan Art Foundation SA

Rue du Four 23   -   P.O. Box 626  -   1470 Estavayer-le-Lac   -   Switzerland
Tel : +41 26 667 00 10   -   Fax : +41 26 667 00 18

Shearbrook (US) LLC
420 Lexington Avenue, Suite 2450
New York, NY 10170
USA

## Invoice 201704004

Estavayer-le-Lac, 22. avril 2017

| Description | US$ |
|---|---|
| **Artist**  **Robert Indiana** | |
| Title  LOVE<br>Finish  Blue / Red<br>Material  Polychrome Aluminium<br>Dimensions  18x18x9 inches<br>Edition No.  AP 1/4 | ▮▮▮ |
| **Total** | ▮▮▮ |

Banking details for wire transfers:

| | |
|---|---|
| To: | Pictet & Cie, Geneva<br>Switch: ▮▮▮ |
| In favor of: | Selvi & Cie SA, Geneva, Switzerland<br>Account: ▮▮▮ 0.001 |
| For further credit: | Morgan Art Foundation SA, Estavayer-le-Lac, Switzerland<br>IBAN: ▮▮▮ 2000 1 |

**Confidential - Disclosure Prohibited**

**MAF0054865**

2017 - B 007 .pdf

## TERMS AND CONDITIONS OF SALE

**PRICES**
All prices shall at Seller's option be adjusted to prices in affect at the time of shipment. Clerical errors are subject to correction. Unless specified, prices do not include shipping, crating, packaging, storage charges, sales and other taxes, local delivery, uncrating and installation, all of which will be the responsibility of the Buyer.

**SHIPMENT • RISK OF LOSS • STORAGE**
Unless otherwise agreed to in writing by Seller, all shipments of artworks are in accordance with Seller's standard shipping policies. Buyer agrees to assume all risk of loss of or damage to the artworks from the time of it is made available for pick up by a carrier at Seller's premises and a clean condition report provided to Buyer.

**BUYER'S DEFAULT**
If Buyer refuses to make any payment provided in this or any other contract with Seller, or if Buyer becomes insolvent, the total amount payable under this and/or any other contract with Seller shall become immediately due and payable and Seller shall, in addition, have the right to withhold any further shipments to Buyer until such full payment has been made and/or treat this and all other contracts made with Buyer as breached and exercise such other rights as applicable laws permit.

**TERMS OF PAYMENT**
The terms of payment shall be as set forth on this acknowledgment. In the event that no reference is made to the terms of payment, Buyer shall remit to Seller, in cleared funds, the net amount hereof in full within 24 calendar months of the date of invoice.

**LEGAL FEES**
In the event that Seller is compelled to resort to a collection agency or similar organization or to the services of a lawyer, either to collect the amount in arrears or enforce any rights it may have hereunder, Buyer agrees to pay Seller, in addition to the above mentioned charge on overdue sums, the cost of collection, legal fees and other expenses incurred in connection therewith by the Seller.

**RETURN OF MATERIAL**
Buyer agrees not to return any artworks for any reason except upon the written consent of Seller, obtained in advance of such return, which consent, if given, shall specify- the terms and conditions upon which any such return may be made.

**INDEMNIFICATION**
Buyer shall indemnify and hold Seller harmless, against all losses, claims, liabilities and expenses, including reasonable attorneys' fees, arising out of any act or omission of Buyer, its agents, employees or customers.

**ASSIGNMENT**
Buyer shall not delegate any duties, nor assign any rights or claims hereunder, without prior written consent of Seller and any such attempted delegation or assignment shall be void.

**GOVERNING LAW**
Buyer agrees that, any dispute of any kind, nature or description, between the parties hereto with respect to, relating to or arising out of the provisions of this agreement, shall at Seller's election, which election may be made at any time prior to the commencement of a judicial proceeding by Seller, or in the event instituted by Buyer, at any time prior to the last day to answer and/or respond to a summons and/or complaint made by the Buyer, be submitted to arbitration. Any such arbitration shall be conducted in Switzerland.

**ENTIRE AGREEMENT • SEVERABILITY • NO WAIVER.**
The terms and conditions herein constitute the entire agreement between the parties and supersede all previous or simultaneous verbal or written representations of any sort.

**Confidential - Disclosure Prohibited**                                **MAF0054866**

# Exhibit Q

2017 – B 008 .pdf

# Morgan Art Foundation SA

Rue du Four 23  -  P.O. Box 626  -  1470 Estavayer-le-Lac  -  Switzerland
Tel : +41 26 667 00 10  -  Fax : +41 26 667 00 18

Shearbrook (US) LLC
420 Lexington Avenue, Suite 2450
New York, NY 10170
USA

## Invoice 201710001          Estavayer-le-Lac, 3. octobre 2017

| Description | | US$ |
|---|---|---|
| **Artist** | **Robert Indiana** | |
| Title | LOVE | |
| Finish | White / Blue / Red | |
| Material | Polychrome Aluminium | |
| Dimensions | 24x24x12 inches | |
| Edition No. | 4/8 | ▉ |
| **Total** | | ▉ |

Banking details for wire transfers:

| | |
|---|---|
| To: | Pictet & Cie, Geneva |
| | Switch: ▉ |
| In favor of: | Selvi & Cie SA, Geneva, Switzerland |
| | Account: ▉0.001 |
| For further credit: | Morgan Art Foundation SA, Estavayer-le-Lac, Switzerland |
| | IBAN: ▉2000 1 |

**Confidential – Disclosure Prohibited**                    **MAF0054867**

2017 - B 008 .pdf

## TERMS AND CONDITIONS OF SALE

**PRICES**
All prices shall at Seller's option be adjusted to prices in affect at the time of shipment. Clerical errors are subject to correction. Unless specified, prices do not include shipping, crating, packaging, storage charges, sales and other taxes, local delivery, uncrating and installation, all of which will be the responsibility of the Buyer.

**SHIPMENT • RISK OF LOSS • STORAGE**
Unless otherwise agreed to in writing by Seller, all shipments of artworks are in accordance with Seller's standard shipping policies. Buyer agrees to assume all risk of loss of or damage to the artworks from the time of it is made available for pick up by a carrier at Seller's premises and a clean condition report provided to Buyer.

**BUYER'S DEFAULT**
If Buyer refuses to make any payment provided in this or any other contract with Seller, or if Buyer becomes insolvent, the total amount payable under this and/or any other contract with Seller shall become immediately due and payable and Seller shall, in addition, have the right to withhold any further shipments to Buyer until such full payment has been made and/or treat this and all other contracts made with Buyer as breached and exercise such other rights as applicable laws permit.

**TERMS OF PAYMENT**
The terms of payment shall be as set forth on this acknowledgment. In the event that no reference is made to the terms of payment, Buyer shall remit to Seller, in cleared funds, the net amount hereof in full within 24 calendar months of the date of invoice.

**LEGAL FEES**
In the event that Seller is compelled to resort to a collection agency or similar organization or to the services of a lawyer, either to collect the amount in arrears or enforce any rights it may have hereunder, Buyer agrees to pay Seller, in addition to the above mentioned charge on overdue sums, the cost of collection, legal fees and other expenses incurred in connection therewith by the Seller.

**RETURN OF MATERIAL**
Buyer agrees not to return any artworks for any reason except upon the written consent of Seller, obtained in advance of such return, which consent, if given, shall specify- the terms and conditions upon which any such return may be made.

**INDEMNIFICATION**
Buyer shall indemnify and hold Seller harmless, against all losses, claims, liabilities and expenses, including reasonable attorneys' fees, arising out of any act or omission of Buyer, its agents, employees or customers.

**ASSIGNMENT**
Buyer shall not delegate any duties, nor assign any rights or claims hereunder, without prior written consent of Seller and any such attempted delegation or assignment shall be void.

**GOVERNING LAW**
Buyer agrees that, any dispute of any kind, nature or description, between the parties hereto with respect to, relating to or arising out of the provisions of this agreement, shall at Seller's election, which election may be made at any time prior to the commencement of a judicial proceeding by Seller, or in the event instituted by Buyer, at any time prior to the last day to answer and/or respond to a summons and/or complaint made by the Buyer, be submitted to arbitration. Any such arbitration shall be conducted in Switzerland.

**ENTIRE AGREEMENT • SEVERABILITY • NO WAIVER.**
The terms and conditions herein constitute the entire agreement between the parties and supersede all previous or simultaneous verbal or written representations of any sort.

**Confidential - Disclosure Prohibited**                    **MAF0054868**

# Exhibit R

2017 – B 009 .pdf

# Morgan Art Foundation SA

Rue du Four 23  -  P.O. Box 626  -  1470 Estavayer-le-Lac  -  Switzerland
Tel : +41 26 667 00 10  -  Fax : +41 26 667 00 18

Shearbrook (US) LLC
420 Lexington Avenue, Suite 2450
New York, NY 10170
USA

## Invoice 201710002

Estavayer-le-Lac, 3. octobre 2017

| Description | US$ |
|---|---|
| **Artist**          **Robert Indiana** | |
| Title          LOVE | |
| Finish          Red / Blue FS | |
| Material          Polychrome Aluminium | |
| Dimensions          96x96x48 inches | |
| Edition No.          2/5 | ███████ |
| **Total** | ███████ |

Banking details for wire transfers:

| | |
|---|---|
| To: | Pictet & Cie, Geneva |
| | Switch: ███████ |
| In favor of: | Selvi & Cie SA, Geneva, Switzerland |
| | Account: ████ 0.001 |
| For further credit: | Morgan Art Foundation SA, Estavayer-le-Lac, Switzerland |
| | IBAN: ███████ 2000 1 |

**Confidential - Disclosure Prohibited**

**MAF0054869**

2017 - B 009 .pdf

## TERMS AND CONDITIONS OF SALE

**PRICES**
All prices shall at Seller's option be adjusted to prices in affect at the time of shipment. Clerical errors are subject to correction. Unless specified, prices do not include shipping, crating, packaging, storage charges, sales and other taxes, local delivery, uncrating and installation, all of which will be the responsibility of the Buyer.

**SHIPMENT • RISK OF LOSS • STORAGE**
Unless otherwise agreed to in writing by Seller, all shipments of artworks are in accordance with Seller's standard shipping policies. Buyer agrees to assume all risk of loss of or damage to the artworks from the time of it is made available for pick up by a carrier at Seller's premises and a clean condition report provided to Buyer.

**BUYER'S DEFAULT**
If Buyer refuses to make any payment provided in this or any other contract with Seller, or if Buyer becomes insolvent, the total amount payable under this and/or any other contract with Seller shall become immediately due and payable and Seller shall, in addition, have the right to withhold any further shipments to Buyer until such full payment has been made and/or treat this and all other contracts made with Buyer as breached and exercise such other rights as applicable laws permit.

**TERMS OF PAYMENT**
The terms of payment shall be as set forth on this acknowledgment. In the event that no reference is made to the terms of payment, Buyer shall remit to Seller, in cleared funds, the net amount hereof in full within 24 calendar months of the date of invoice.

**LEGAL FEES**
In the event that Seller is compelled to resort to a collection agency or similar organization or to the services of a lawyer, either to collect the amount in arrears or enforce any rights it may have hereunder, Buyer agrees to pay Seller, in addition to the above mentioned charge on overdue sums, the cost of collection, legal fees and other expenses incurred in connection therewith by the Seller.

**RETURN OF MATERIAL**
Buyer agrees not to return any artworks for any reason except upon the written consent of Seller, obtained in advance of such return, which consent, if given, shall specify- the terms and conditions upon which any such return may be made.

**INDEMNIFICATION**
Buyer shall indemnify and hold Seller harmless, against all losses, claims, liabilities and expenses, including reasonable attorneys' fees, arising out of any act or omission of Buyer, its agents, employees or customers.

**ASSIGNMENT**
Buyer shall not delegate any duties, nor assign any rights or claims hereunder, without prior written consent of Seller and any such attempted delegation or assignment shall be void.

**GOVERNING LAW**
Buyer agrees that, any dispute of any kind, nature or description, between the parties hereto with respect to, relating to or arising out of the provisions of this agreement, shall at Seller's election, which election may be made at any time prior to the commencement of a judicial proceeding by Seller, or in the event instituted by Buyer, at any time prior to the last day to answer and/or respond to a summons and/or complaint made by the Buyer, be submitted to arbitration. Any such arbitration shall be conducted in Switzerland.

**ENTIRE AGREEMENT • SEVERABILITY • NO WAIVER.**
The terms and conditions herein constitute the entire agreement between the parties and supersede all previous or simultaneous verbal or written representations of any sort.

# Exhibit S

ROBERT INDIANA
Star of Hope
Vinalhaven
Maine 04863

2 December 2006

Simon Salama-Caro
45 East 80th Street
New York, N.Y.10021

Dear Simon,

This is to confirm that we have agreed that you are responsible for the preparation
of the Catalogue Raisonne of my complete oeuvre.

Sincerely,

Robert Indiana

Simon Salama-Caro

G.      On the Sixth Counterclaim, award the Estate damages in an amount to be determined at trial based on the Domain Name Counterclaim-Defendants' use of the "robertindiana.com" domain name and enjoin the Domain Name Counterclaim-Defendants' use of the "robertindiana.com" domain name;

H.      On the Seventh Counterclaim, declare that the Domain Name Counterclaim-Defendants are not authorized to use the "robertindiana.com" domain name without the Estate's consent and that the Estate is entitled to an injunction on the continued unauthorized use of that domain name, and further require the Domain Name Counterclaim-Defendants immediately assign the ownership rights of the "robertindiana.com" domain name to the Estate, and award the Estate damages, in an amount to be determined at trial, for any profits the Domain Name Counterclaim-Defendants received from their infringing use of the "Robert Indiana" mark;

I.      On the Eighth Counterclaim, order an accounting, and award the Estate general and/or compensatory damages in an amount to be determined at trial for all injuries suffered as a result of Morgan's breaches of the April 1999 Agreement and/or the Sculpture Agreement;

J.      On the Ninth Counterclaim, enjoin the Catalogue Raisonné Counterclaim-Defendants from the unauthorized publication of Robert Indiana works for which the Estate owns the intellectual property rights, and enjoin the Catalogue Raisonné Counterclaim-Defendants from the unauthorized use of the "Robert Indiana" mark in connection with the Catalogue Raisonné;

K.      Award the Estate reasonable costs and attorneys' fees incurred in having to defend against this action, pursuant to 17 U.S.C. § 505; and

L.      Grant the Estate such other and further relief as the Court deems just and proper

46

Dated: New York, New York
      March 2, 2020

**VENABLE LLP**

By:    <u>/s/ Edward P. Boyle</u>

Edward P. Boyle
Jessie F. Beeber
Kan M. Nawaday
John C. Vazquez
Rockefeller Center
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 307-5500

*Attorneys for James W. Brannan as Personal Representative of the Estate of Robert Indiana*