UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORGAN ART FOUNDATION LIMITED,

    Plaintiff,

-against-

MICHAEL MCKENZIE, et al.,

    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/6/20

18-CV-4438 (AT) (BCM)

**ORDER RE SEALING REQUEST**

**BARBARA MOSES, United States Magistrate Judge.**

By Order dated February 28, 2020 (Feb. 28 Order) (Dkt. No. 224), the Court granted the motion of counterclaimant James W. Brannan, as personal representative of the Estate of Robert Indiana (the Estate), for leave to file its Second Amended Answer and Counterclaims (SAAC) against counterclaim defendants Morgan Art Foundation Limited (MAF or Morgan), Simon Salama-Caro, Shearbrook (US) LLC (Shearbrook), Figure 5 Art LLC, and RI Catalogue Raisonné LLC (collectively the Counterclaim Defendants). On March 2, 2020, the Estate filed the SAAC under seal (Dkt. No. 226), together with a protective letter-motion (Estate Ltr.) (Dkt. No. 225), explaining that while it did not believe sealing was warranted, the Counterclaim Defendants had requested that certain information be redacted from any publicly-available version of the pleading.

On March 5, 2020, the Counterclaim Defendants filed their own letter-motion (MAF Ltr.) (Dkt. No. 237), seeking leave to redact "sensitive business information" from the SAAC, including "the sale prices of artworks, the dollar amounts of joint venture fees, the dollar amounts of the cost of insuring certain artworks, and other sensitive information the disclosure of which would cause harm to the Counterclaim-Defendants." MAF Ltr. at 1-2. Simultaneously, the Counterclaim Defendants filed a redacted version of the SAAC on the public docket (Dkt. No. 238), and another

unredacted version (this one highlighting the portions that were redacted from the public filing) under seal. (Dkt. No. 239.)[1] For the reasons that follow, the sealing application will be denied.

This case concerns the late American artist Robert Indiana. MAF is a Bahamas limited liability company that claims to own the rights to much of Indiana's artistic output through a series of agreements (the Agreements) executed by the artist during his lifetime, including two 1999 contracts giving MAF the right to make and sell new versions or reproductions of numerous Indiana images and sculptures in exchange for royalties calculated as a percentage of MAF's "net income" from its sales. *See* SAAC ¶¶ 186-92 & Exs. A-B. Salama-Caro is a resident of New York who describes himself as both an "advisor" to MAF and as Indiana's "exclusive agent." *See* Amend. Compl. (Dkt. No. 47) ¶¶ 7, 54, 57, 60, 79.

In the SAAC, the Estate accuses the Counterclaim Defendants of breaching the Agreements by, *inter alia*, selling Indiana artworks without making any royalty payments, *see* SAAC ¶ 183(a), 228-29, 256(f), 261(d), and in other instances "underpaying Indiana as a result of failure to count all relevant sales revenues, and deductions of improper, inflated, and artificial expenses in order to calculate the payment amount." *Id*. ¶¶ 183(c), 184, 256(e), 261(c). The allegedly improper expenses include consulting fees paid to a business owned by a son of Salama-Caro and unexplained "joint venture fees." *Id*. ¶¶ 183(c), 207, 212-13.

The Estate further alleges that MAF breached the covenant of good faith and fair dealing (and that Salama-Caro and Shearbrook induced Morgan to breach its contracts with Indiana) by, *inter alia*, engaging in "sham sales" of Indiana artworks at below-market prices to Shearbrook, which the Estate describes "Salama-Caro's company," so that Shearbrook could resell the works

---

[1] Both currently-sealed versions of the SAAC (Dkt. Nos. 225 and 235) are redacted to conceal bank account numbers in accordance with Fed. R. Civ. P. 5.2(a).

to the "genuine buyer" at a "substantial markup," on which no royalty was paid to the artist. SAAC ¶¶ 183(d), 215-22, 268, 309. In addition, the Estate alleges, MAF and Salama-Caro offered certain Indiana works for sale at auction, where they bid on those works themselves, "to increase the market price of Indiana's works," and then improperly deducted the "inflated" acquisition costs from royalties otherwise due to the artist. *Id*. ¶ 183(e), 222-27. As a result of this and other misconduct, MAF has allegedly diverted "millions of dollars from Indiana" while earning "millions of dollars" for itself by selling Indiana artworks without compensation to the artist. *Id*. ¶¶ 203-04, 228.

Both the body of the SAAC and its numerous exhibits disclose the precise dollar amount of many of the transactions that the Estate alleges to be improper, including the royalties paid to Indiana in certain years, the prices for certain private and auction sales of Indiana works, the challenged consulting and joint venture fees, and other deductions that the Estate characterizes as inappropriate. The Counterclaim Defendants seek to redact all of those figures – as well as all general references to the magnitude of the alleged financial misconduct[2] – because MAF and its affiliates are "wholly owned private companies that do not otherwise publish their financial information," MAF Ltr. at 2, and because disclosure of the dollar figures at issue would cause them "competitive harm." *Id*. Nowhere in their letter-motion, however, do the Counterclaim Defendants explain the nature of that competitive harm.

Pleadings – including counterclaims – are core "judicial documents" subject to a strong presumption of public access under the First Amendment and common law. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016). *See also Accent Delight*

---

[2] For example, the Counterclaim Defendants propose to redact the word "millions" (or the phrase "millions of") wherever it appears in the SAAC, including ¶¶ 203 and 204.

*Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399, 416 (S.D.N.Y. 2019) (denying Sotheby's motion to seal the unredacted version of a complaint in which plaintiffs alleged that the auction house aided and abetted a fraudulent scheme by an art dealer to dupe them into paying inflated prices for their art collection). Moreover, in this case, as in *Accent Delight*, the allegedly sensitive information, including the prices at which art changed hands both privately and publicly, lies "at the very heart of the litigation." *Accent Delight*, 394 F. Supp. 3d at 417 (quoting *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 472 (S.D.N.Y. 2017)). Disclosure of the figures is essential "[i]f the public is to understand the nature of the dispute" and "the reasons for the court's rulings," *Under Seal*, 273 F. Supp. 3d at 472, including this Court's recent decision to permit the Estate to file the SAAC over MAF's opposition, including its contention that the Estate failed to plead a cognizable claim for breach of the covenant of good faith and fair dealing. *See* Feb. 28 Order at 9.

It is the Counterclaim Defendants' burden, as the proponent of an order sealing the unredacted SAAC, to "demonstrate that redaction is 'essential to preserve higher values.'" *Accent Delight*, 394 F. Supp. 3d at 416 (quoting *Bernstein*, 814 F.3d at 144-45). It is not enough, in such a case, for the proponent to make general claims, or for the court to make general findings, that the information at issue is "sensitive" or that a party will be "harmed" by its disclosure. *See Bernstein*, 84 F.3d at 144-45 (quoting *In re N.Y. Times Co.,* 828 F.2d 110, 116 (2d Cir. 1987)) ("'Broad and general findings' and 'conclusory assertion[s]' are insufficient to justify deprivation of public access to the record.") Rather, "the presumption of access here can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006).

I cannot make those findings in this case. As noted above, the Counterclaim Defendants provide no support for their conclusory assertion that the disclosure of the dollar figures in the

4

SAAC would cause them "competitive harm." MAF Ltr. at 2. They make no showing that the prices at which they bought and sold Indiana artworks, the royalties they paid the artist, or the expenses they deducted when calculating those royalties are could be used to depress the market for Indiana's art in the future or cause them other competitive harm. Nor, for that matter, do they demonstrate that the prices discussed in the SAAC are presently unknown to the public.[3] Moreover, the Estate – which has an equally strong interest in preventing any damage to the market for Indiana artwork – does not share the Counterclaim Defendants' concerns about disclosure and "does not believe" that any information in the SAAC, other than bank account information, requires sealing. Estate Ltr. at 1. I note as well that the information that MAF seeks to conceal from the public is all specific to the Indiana artworks at issue in this case. The SAAC does not disclose the Counterclaim Defendants' internal financial information, business strategies, or the like. Thus, the fact that MAF and its affiliates are privately owned cannot justify the sealing order they seek.

For these reasons, the sealing motions at Dkt. Nos. 225 and 237 are DENIED. The Clerk of Court is respectfully directed to unseal and remove all restrictions from Dkt. No. 226.

Dated: New York, New York  
      March 6, 2020

SO ORDERED.

_____  
**BARBARA MOSES**  
**United States Magistrate Judge**

---

[3] It appears that at least some of those prices were publicly disclosed at the time of the transaction. For example, the Estate alleges that a certain Indiana sculpture was purchased by MAF's chairman for $1,706,500, through an auction at Sotheby's, one day after MAF sold "the exact same sculpture" to Shearbrook for a lower price. SAAC ¶ 219-23. The $1,706,500 auction price was disclosed on the Sotheby's website, a printout from which is attached to the SAAC – unredacted – as Exhibit G. Yet the Counterclaim Defendants seek to redact the same dollar figure from ¶¶ 220 and 221 of the SAAC and from the Sotheby's invoice attached as Exhibit F.

5