**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

MORGAN ART FOUNDATION LIMITED,

        Plaintiff,

    -against-

MICHAEL MCKENZIE, AMERICAN IMAGE ART,
JAMIE THOMAS, AND ROBERT INDIANA,

        Defendants.

---------------------------------------------------------------X

MICHAEL MCKENZIE AND AMERICAN IMAGE
ART,

        Counter-Claimants,

    -against-

MORGAN ART FOUNDATION LIMITED,

        Counterclaim Defendant.

---------------------------------------------------------------X

MICHAEL MCKENZIE AND AMERICAN IMAGE
ART,

        Cross-Claimants,

    -against-

JAMIE THOMAS AND JAMES BRANNAN AS THE
PERSONAL REPRESENTATIVE OF THE ESTATE
OF ROBERT INDIANA,

        Crossclaim-Defendants.

---------------------------------------------------------------X

**No.: 1:18-cv-4438-AT**

**(PROPOSED) VERIFIED
FOURTH
AMENDED ANSWER,
COUNTER-CLAIMS, AND
CROSS- CLAIMS OF
MICHAEL MCKENZIE AND
AMERICAN IMAGE ART**

**JURY TRIAL DEMANDED**

        Defendants/Counterclaim Plaintiffs/Cross-Claimants, Michael McKenzie ("McKenzie")

and American Image Art (together with McKenzie, "American Image"), by and through the

undersigned counsel Goetz Fitzpatrick LLP, hereby submit the following fourth amended answer, counterclaims, and cross-claims as follows:

## PRELIMINARY STATEMENT

Michael McKenzie has paid Robert Indiana ("Indiana") approximately $10 million dollars in royalties since 2008 pursuant to a contract and multiple addenda for artworks created and approved by Indiana.  Because of McKenzie's long-held loyalty to Indiana, for the years prior to Indiana's death, McKenzie paid Indiana at least $1,000,000 per year to honor the contract that he had with Indiana. McKenzie made these substantial payments to Indiana each year despite the fact that, according to the stated royalty payment rate in the contract, Indiana's royalties for the sales of his works did not equal $1,000,000.  This contract contains an enforceable arbitration clause, so any disputes between the Estate of Robert Indiana and American Image must be arbitrated.

McKenzie has been working with contemporary artists since the 1970s and founded American Image Art in 1979.  McKenzie's state-of-the-art and widely admired silk-screening techniques led to projects with major artists like Larry Rivers, Donald Sultan, Frank Stella, Andy Warhol, Tom Wesselmann, Claes Oldenburg, and Indiana.  McKenzie was Indiana's friend and art publisher from the 1990s until Indiana's death on May 19, 2018.  McKenzie helped reintroduce Indiana's artwork to an indifferent art world and an uninterested public in the 1990s.  McKenzie reignited *LOVE* for the public between 1993 to 1996 by (1) printing a series of 200 limited edition of twelve *LOVE* prints and twelve Indiana poems, (2) exhibiting *LOVE* in 1995 at the 19th Annual New York ArtExpo at the Javits Convention Center, in New York, New York attended by tens of thousands and covered by the TODAY Show and the New York Times, and (3) arranging the *Absolut Indiana* vodka print campaign that featured Indiana's *LOVE* image.  American Image and Indiana also agreed to produce an additional 100 deluxe set of prints with a metal cover.  American

Image has curated museum shows since 1987.  McKenzie also served as the American curator for The São Paulo Museum of Modern Art and the Museum of Modern Art in Rio de Janeiro.  At these museums, McKenzie reintroduced Indiana to a global audience by including Indiana artworks, including *AMOR*, at the American Masters Exhibition that he curated in 1995.

In the last two decades, Indiana sought to create works that went beyond *LOVE*.  He chose to work with American Image because McKenzie was a trusted friend, excellent printer, and able art publisher.  The partnership was a such a success that Indiana invited American Image to create a studio near Indiana's Star of Hope Lodge on the island of Vinalhaven, ME.  Their most successful collaboration was the *HOPE* image and sculpture that bookended Indiana's *LOVE* image.  In 2008, American Image began to publish prints and sculptures of *HOPE* pursuant to a contract between American Image and Indiana ("HOPE Contract").  American Image paid Indiana nearly $10 million dollars pursuant to the HOPE Contract and addenda.

This egregiously frivolous action filed on May 18 by Morgan Art Foundation Limited ("MART") against Indiana, Jamie Thomas ("Thomas"), and American Image falsely accusing McKenzie of forging Indiana's artworks shocked McKenzie.  The death of Indiana the following day was tragic.  McKenzie knew Indiana was afraid of MART and of its shadowy dealings with Indiana.  However, McKenzie collaborated with Indiana to print new artworks that Indiana created and authorized to keep Indiana's studio going as Indiana claimed Morgan did not pay him.  This lawsuit placed American Image in the middle of a business divorce between an artist and a malevolent partner.  Indiana, and later Thomas authorized McKenzie to produce Indiana's artworks including *LOVE*, *HOPE*, *Like a Rolling Stone*, *WINE*, *BRAT*, *EAT*, *Shout for Peace*, *ART*, and *USA FUN* that are now the subject of MART's breach of contract claim against Indiana and Thomas.  That contract claim has been contorted to include factually and legally frivolous copyright,

3

trademark, tortious interference with contract, Visual Artists Rights Act, unfair competition, and defamation claims against McKenzie and his company, American Image Art.

Between 2015 and 2018, American Image paid Indiana at least $3,820,625 pursuant to the HOPE Contract and four addenda.  American Image also paid Indiana an additional $250,000 in 2010 as an advance for publishing works other than *HOPE*. By contrast, Indiana complained to McKenzie that MART was stealing his artworks, and that MART made infrequent payments to Indiana.  By late 2017, Thomas and Indiana decided to demand back royalties from MART and challenged its purported control over Indiana artworks.  Unlike MART and less than two months before Indiana's death, American Image paid Indiana a $500,000 royalty payment.

This lawsuit does not belong in federal court. MART's so-called License/IP Agreement with Indiana contains a mandatory arbitration clause.  Further, its claim is a plain vanilla breach of contract claim that has been stretched to include attacks against American Image and Thomas to present salacious claims to divert attention from MART's failure to pay Indiana.  In late 2017, Thomas and Indiana became concerned about MART's purported control over Indiana artworks and in early 2018 sent a series of cease-and-desist letters to MART, Simon Salama-Caro, auction houses and websites.  The actions of Thomas and Indiana against MART triggered the instant lawsuit.  Further, declaratory relief in this action is necessary because MART's false and defamatory statements included in this lawsuit have cast a cloud on the reputation of American Image and have slandered the title to the works it has produced in the last decades. In fact, one artist, Donald Sultan, with whom American Image has done a museum show, procured a high profile painting commission for, procured a book for and paid $100,000 to went so far as to say he would love to work with AIA again but not again after what the NY Times wrote.

Finally, on May 24, 2018, the Estate of Robert Indiana initiated a probate proceeding in Maine.  The Estate is using the probate proceeding to obtain broad discovery that may be used against American Image in the instant action and an arbitration filed by American Image on June 26, 2018.  Both the Maine probate and the instant action should be stayed because of arbitration provisions in the contracts Indiana signed with American Image and Plaintiff.

## ANSWERING THE PLAINTIFF'S COMPLAINT

## NATURE OF ACTION

1.      The allegations of Paragraph 1 are denied as to American Image, except that American Image admits that Robert Indiana is anAmerican Artist who created the LOVE Image that has graced postage stamps and appeared as a sculpture.

2.      The allegations of Paragraph 2 are denied.

3.      The allegations of Paragraph 3 are admitted.

4.      The allegations of Paragraph 4 are admitted.

5.      American Image lacks information sufficient to admit or deny the allegations of Paragraph 5.

6.      American Image lacks information sufficient to admit or deny the allegations of Paragraph 6.

7.      American Image lacks information sufficient to admit or deny the allegations of Paragraph 7.

8.      American Image lacks information sufficient to admit or deny the allegations of Paragraph 8.

9.      American Image lacks information sufficient to admit or deny the allegations of Paragraph 9, except to aver that a Whitney Exhibition was held in 2013.

10.     The allegations of Paragraph 10 are admitted.

11.     The allegations of Paragraph 11 are denied, except that American Image admits that five years have passed since the Whitney Exhibition.

12.     The allegations of Paragraph 12 are denied.

13.     The allegations of Paragraph 13 are denied.

14.     The allegations of Paragraph 14 are denied, except to quotations attributed to McKenzie that he lacks information sufficient to admit or deny.

15.     The allegations of Paragraph 15 are denied.

16.     The allegations of Paragraph 16 are denied.

17.     The allegations of Paragraph 17 are denied.

18.     The allegations of Paragraph 18 are denied.

## PARTIES

19.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 19.

20.     The allegations of Paragraph 20 are admitted.

21.     The allegations of Paragraph 21 are denied, except that American Image admits that it has offices in New York, NY and Katonah, NY.

22.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 22.

23.     The allegations of Paragraph 23 are denied, except to aver that Robert Indiana died on May 19, 2018.

## JURISDICTION AND VENUE

24.     The allegations of Paragraph 24 are denied.

25.     American Image does not dispute that it is subject to personal jurisdiction in New York.

26.     McKenzie does not dispute that he is subject to personal jurisdiction in New York.

27.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 27.

28.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 28.

29.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 29.

30.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 30, except that American Image admits that American Image regularly transacts business in this District.

## PLAINTIFF'S FACTUAL ALLEGATIONS

31.     The allegations of Paragraph 31 are admitted, except to aver that Robert Indiana was born Robert Earl Clark.

32.     The allegations of Paragraph 32 are admitted.

33.     The allegations of Paragraph 33 are admitted, except to aver that McKenzie was responsible for translating *LOVE* into Portuguese in 1995 for the American Masters exhibitions he curated in Brazil.

34.     The allegations of Paragraph 34 are admitted.

35.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 35.

36.     The allegations of Paragraph 36 are denied, except that American Image admits that Vinalhaven, ME is only accessible by ferry and small-engine plane.

37.     The allegations of Paragraph 37 are denied.

38.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 38.

39.     The allegations of Paragraph 39 are denied.

40.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 40.

41.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 41.

42.     The allegations of Paragraph 42 are denied.

43.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 43.

44.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 44.

45.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 45.

46.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 46.

47.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 47.

48.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 48.

49.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 49.

50.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 50.

51.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 51.

52.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 52.

53.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 53.

54.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 54.

55.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 55.

56.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 56.

57.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 57.

58.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 58.

59.     The allegations of Paragraph 59 are denied.

60.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 60.

61.     The allegations of Paragraph 61 are denied.

62.     The allegations of Paragraph 62 are denied.

63.     The allegations of Paragraph 63 are denied.

64.     The allegations of Paragraph 64 are denied.

65.     The allegations of Paragraph 65 are denied.

66.     The allegations of Paragraph 66 are denied.

67.     The allegations of Paragraph 67 are denied, except to aver that McKenzie lacks information sufficient to admit or deny whether Indiana instructed Salama-Caro to meet with McKenzie.

68.     The allegations of Paragraph 68 are denied.

69.     The allegations of Paragraph 69 are denied.

70.     The allegations of Paragraph 70 are denied.

71.     The allegations of Paragraph 71 are denied.

72.     The allegations of Paragraph 72 are denied.

73.     The allegations of Paragraph 73 are denied.

74.     The allegations of Paragraph 74 are denied, except to aver that McKenzie lacks information sufficient to admit or deny whether Indiana requested the Salama-Caros to meet with McKenzie.

75.     The allegations of Paragraph 75 are denied.

76.     The allegations of Paragraph 76 are denied.

77.     The allegations of Paragraph 77 are denied.

78.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 78.

79.     The allegations of Paragraph 79 are denied, except that American Image lacks information sufficient to admit or deny the opinions of the unnamed Whitney Museum benefactor and curator.

80.     The allegations of Paragraph 80 are denied.

81.     The allegations of Paragraph 81 are denied.

82.     The allegations of Paragraph 82 are denied.

83.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 83.

84.     The allegations of Paragraph 84 are denied.

85.     The allegations of Paragraph 85 are denied, except to aver that American Image lacks information sufficient to admit or deny the content of emails sent from Indiana's email account to Marc Salama-Caro.

86.     The allegations of Paragraph 86 are denied, except to aver that American Image lacks information sufficient to admit or deny the content of emails sent from Indiana's email account.

87.     The allegations of Paragraph 87 are denied, except that American Image admits that Valerie Morton was Indiana's assistant.  American Image lacks information sufficient to admit or deny the content of emails sent from Indiana's email account.

88.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 88.

89.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 89.

90.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 90.

91.     The allegations of Paragraph 91 are denied.

92.     The allegations of Paragraph 92 are denied.

93.     The allegations of Paragraph 93 are denied, except to aver that American Image published the artworks referenced.

94.     The allegations of Paragraph 94 are denied as to infringements by American Image, except to aver that American Image lacks information sufficient to admit or deny the alleged rights granted to the Morgan Art Foundation Limited or referenced in a purported April 1999 contract.

95.     The allegations of Paragraph 95 are denied, except that American Image admits that Indiana works were exhibited at the Bates College Museum of Art and The Baker Museum in Naples.

96.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 96.

97.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 97.

98.     The allegations of Paragraph 98 are denied.

99.     The allegations of Paragraph 99 are denied, except to aver that American Image lacks information sufficient to admit or deny the Salama-Caros' June 2017 travels.

100.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 100.

101.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 101.

102.    The allegations of Paragraph 102 are denied.

103.    The allegations of Paragraph 103 are denied.

104.    The allegations of Paragraph 104 are denied.

105.    The allegations of Paragraph 105 are denied.

106.    The allegations of Paragraph 106 are denied to the extent they contain legal conclusions.

107.    The allegations of Paragraph 107 are denied, except that American Image admits that American Image curated the "Robert Indiana: Love and Hope" exhibition.

108.    The allegations of Paragraph 108 are denied.

<u>**CAUSES OF ACTION**</u>

<u>**AS FOR AN ANSWER TO COUNT I**</u>
<u>**COPYRIGHT INFRINGEMENT**</u>

109.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

110.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 110.

111.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 111.

112.    The allegations of Paragraph 112 are denied.

113.    The allegations of Paragraph 113 are denied.

114.    The allegations of Paragraph 114 are denied.

115.    The allegations of Paragraph 115 are denied.

116.    The allegations of Paragraph 116 are denied.

## AS FOR AN ANSWER TO COUNT II

## TRADEMARK INFRINGEMENT (LANHAM ACT)

117.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

118.    The allegations contained in Paragraph 118 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, the allegations of Paragraph 118 are denied.

119.    The allegations of Paragraph 119 are denied.

120.    The allegations of Paragraph 120 are denied.

121.    The allegations of Paragraph 121 are denied.

122.    The allegations of Paragraph 122 are denied.

123.    The allegations of Paragraph 123 are denied.

## AS FOR AN ANSWER TO COUNT III

## TRADEMARK INFRINGEMENT (COMMON LAW)

124.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

125.    The allegations contained in Paragraph 125 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, the allegations of Paragraph 125 are denied.

126.    The allegations of Paragraph 126 are denied.

127.    The allegations of Paragraph 127 are denied.

128.    The allegation contained in Paragraph 128 of the Complaint is a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 124 are denied.

129.    The allegations of Paragraph 129 are denied.

130.    The allegations of Paragraph 130 are denied.

## AS FOR AN ANSWER TO COUNT IV

## BREACH OF CONTRACT

131.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

132.    The allegations contained in Paragraph 132 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, American Image lacks information sufficient to admit or deny the allegations of Paragraph 132.

133.    The allegations contained in Paragraph 133 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, the allegations of Paragraph 133 are denied.

134.    The allegations contained in Paragraph 134 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, the allegations of Paragraph 134 are denied.

135.    The allegations of Paragraph 135 are denied.

## AS FOR AN ANSWER TO COUNT V

## TORTIOUS INTERFERENCE WITH CONTRACT

136.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

137.    The allegations contained in Paragraph 137 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, American Image lacks information sufficient to admit or deny the allegations of Paragraph 137.

138.     The allegations contained in Paragraph 138 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, the allegations of Paragraph 134 are denied.

139.     American Image lacks information sufficient to admit or deny the allegations of Paragraph 139.

140.     The allegations of Paragraph 140 are denied as to American Image.

141.     The allegations in Paragraph 141 are denied, except that American Image admits that Thomas sent letters to auction houses.

142.     The allegations of Paragraph 142 are denied.

### AS FOR AN ANSWER TO COUNT VI
### VISUAL ARTIST RIGHTS ACT

143.     American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

144.     The allegations of Paragraph 144 are admitted.

145.     The allegations of Paragraph 145 are admitted.

146.     The allegations contained in Paragraph 146 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, American Image denies the allegations contained in Paragraph 146 of the Complaint.

147.     The allegations of Paragraph 147 are denied.

148.     The allegations of Paragraph 148 are denied.

149.     The allegations of Paragraph 149 are denied.

### AS FOR AN ANSWER TO COUNT VII
### UNFAIR COMPETITION

150.     American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

151.    The allegations of Paragraph 151 are denied.

152.    The allegations of Paragraph 152 are denied.

153.    The allegations of Paragraph 153 are denied.

154.    The allegations of Paragraph 154 are denied.

155.    The allegations of Paragraph 155 are denied.

## AS FOR AN ANSWER TO COUNT VIII

## DEFAMATION

156.    American Image repeats its answers to all of the prior paragraphs of the Answer and makes same part hereof, as if repeated herein.

157.    American Image lacks information sufficient to admit or deny the allegations of Paragraph 157.

158.    The allegations of Paragraph 158 are denied.

159.    The allegations of Paragraph 159 are denied as to McKenzie.

160.    The allegations of Paragraph 160 are denied as to McKenzie.

161.    The allegations of Paragraph 161 are denied as to McKenzie.

162.    The allegations of Paragraph 162 are denied.

163.    The allegations of Paragraph 163 are denied as to McKenzie.

164.    The allegations of Paragraph 164 are denied as to McKenzie.

## ANSWER TO PRAYER FOR RELIEF

Plaintiff is not entitled to any relief from this court.

## AFFIRMATIVE DEFENSES

### FOR A FIRST DEFENSE
### Arbitration Agreement Bars Bringing Suit

165.   Plaintiff's April 9, 1999 License/IP Agreement with Indiana states: "Any claim dispute or controversy related to or arising under or involving the terms and provisions of this Agreement shall be resolved by arbitration in the City of New York subject to the rules and regulations then in effect of the American Arbitration Association."  (ECF No. 30-1).

166.   Plaintiff's purported claims against Defendants arise under the License/IP Agreement.

167.   To the extent that Plaintiff and Indiana have agreed to arbitrate any or all of the purported claims asserted in the Complaint, the Complaint violates such agreement to arbitrate and the Complaint should be dismissed and/or stayed and Plaintiff should be compelled to arbitrate against the Estate of Robert Indiana.

### FOR A SECOND DEFENSE
### Fed. R. Civ. P. Rule 12(b)(1) – Lack of Jurisdiction

168.   The Court lacks subject matter jurisdiction because Plaintiff's core claim is for breach of contract against the Estate of Robert Indiana and his former power of attorney Jamie Thomas.

169.   Morgan Art Foundation Limited, upon information and belief, has members that are citizens of New York, accordingly, there is no diversity jurisdiction and no supplemental jurisdiction.

## FOR A THIRD DEFENSE
### Fed. R. Civ. P. Rule 12(b)(6)

170.    Plaintiff fails to state facts sufficient to constitute a cause of action against American Image and therefore the Complaint must be dismissed.

## FOR A FOURTH DEFENSE
### Master-Servant/Agency

171.    Indiana approved all the original limited edition artworks produced for him by American Image. All artworks produced by American Image for Indiana were authorized by Indiana and his power of attorney, Thomas.

## FOR A FIFTH DEFENSE
### Acquiescence/Implied In Fact License

172.    In the event that Indiana did not have the right to authorize American Image to produce the artworks at issue, and American Image produced artworks that Indiana assigned to Plaintiff, Plaintiff granted an implied license and acquiesced to the production.

## FOR A SIXTH DEFENSE
### Laches and Acquiescence

173.    Plaintiff has been aware of American Image's allegedly infringing activities since 2008 and did nothing until May 18, 2018, the day before Indiana died. By waiting 10 years without asserting the rights it claims to have in the Complaint, Plaintiff consented to American Image's creation and production of the artworks at issue in the Complaint.

## FOR A SEVENTH DEFENSE
### Standing Under the Visual Artists Rights Act

174.    Plaintiff lacks standing under the Visual Artists Rights Act to bring a claim because an alleged assignee may not bring a Visual Artists Rights Act claim.

**FOR AN EIGHTH DEFENSE**
**Unclean Hands, Waiver, and Estoppel**

175.     The Complaint is barred in whole or in part by the doctrine of unclean hands, waiver, and estoppel.

**FOR A NINTH DEFENSE**
**Statute of Limitations**

176.     Plaintiff's claims are barred in whole or in part by the applicable statutes of limitations.

**FOR A TENTH DEFENSE**
**No Damages**

177.     Plaintiff's claims are barred, in whole or in part, because Plaintiff suffered no damages.

**FOR AN ELEVENTH DEFENSE**
**Failure to Mitigate Damages**

178.     Plaintiff's claims should be barred by their failure to mitigate damages.

**FOR A TWELFTH  DEFENSE**
**Invalid Copyrights**

179.     Plaintiff's claims are barred, in whole or in part, because the copyrights Plaintiff alleges it owns are invalid.

**FOR A THIRTEENTH  DEFENSE**

**Plaintiff Authorized Use of Its Alleged Copyrights**

180.     Plaintiff's claims are barred, in whole or in part, because any use of any purported copyrighted material was authorized.

**FOR A FOURTEENTH DEFENSE**
**<u>Innocent Infringement</u>**

181.    Plaintiff's claims are barred, in whole or in part, under the doctrine of innocent

infringement because Plaintiff did not timely file its purported copyright registrations.

**FOR A FIFTEENTH DEFENSE**
**<u>Fair Use</u>**

182.    Plaintiff's claims, including without limit as to Ninth American Dream, are barred,

in whole or in part, under the doctrine of fair use.

**FOR A SIXTEENTH DEFENSE**
**<u>Invalid Contracts</u>**

183.    Plaintiff's claims are barred, in whole or in part, because the so-called IP/License

and Sculpture Agreements purportedly granting Plaintiff rights in Indiana's works are invalid.

**FOR A SEVENTEENTH DEFENSE**
**<u>Failure to Comply With Contractual Obligations</u>**

184.    Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to comply

with its contractual obligations.

**FOR AN EIGHTEENTH DEFENSE**
**<u>No Irreparable Harm</u>**

185.    Plaintiff's claims for injunctive relief are barred, in whole or in part, because

Plaintiff suffered no irreparable harm.

**FOR AN NINETEENTH DEFENSE**
**<u>Adequate Remedy at Law</u>**

186.    Plaintiff's claims for injunctive relief are barred, in whole or in part, because

Plaintiff has an adequate remedy at law.

## FOR A TWENTIETH DEFENSE
### Public Domain

187.     Plaintiff's claims are barred, in whole or in part, because the alleged infringed upon art, namely *LOVE*, in all its alleged forms, and USA FUN, as referred to in Paragraph 111 of the First Amended Complaint, are in the public domain and when published at various times before 1979, were not properly protected as prescribed under the 1909 Copyright Act, and thus not protected by copyright law.

## FOR A TWENTY-FIRST DEFENSE
### Invalid Trademark

188.     Plaintiff's trademark claims are barred, in whole or in part, because the trademarks Plaintiff alleges it owns for LOVE were obtained by fraud, including without limit the misrepresentations to the USPTO, and the drafting and execution of the 1999 IP/License Agreement effective June 28, 1998, and are thus invalid and should be cancelled.

## FOR A TWENTY-SECOND DEFENSE
### Failure to Police Alleged Trademark

189.     Plaintiff's trademark claims are barred, in whole or in part, because Plaintiff failed to police the trademark it alleges it owns, and admits to "extensive commercialization", including as set forth in Paragraphs 321 – 330 and other unpoliced reproductions of LOVE by third-parties going back to the 1970s.

## FOR A TWENTY-THIRD DEFENSE
### Common Symbol

190.     Plaintiff's trademark claims are barred, in whole or in part, because LOVE has become a ubiquitous common symbol thereby losing any protections as a trademark.

## FOR A TWENTY-FOURTH DEFENSE
### Failure to Function

191.    Plaintiff's trademark claims are barred, in whole or in part, because LOVE is merely a decorative feature, is not inherently distinctive, and does not function as a trademark.

## FOR A TWENTY-FIFTH DEFENSE
### Non-Use

192.    Upon information and belief, Plaintiff has not used LOVE as a trademark in connection with the goods and services covered by its registrations and has thus forfeited protection as a trademark.

## ADDITIONAL DEFENSES

193.    American Image reserves the right to supplement or amend this answer, including through the addition of further affirmative defenses, based upon the course of discovery and pleadings in this action.

## COUNTERCLAIMS AND CROSSCLAIMS OF AMERICAN IMAGE

American Image, by and through its attorneys, brings the following Counterclaims against Morgan and Simon Salama-Caro and Cross-claims against Jamie Thomas and James Brannan as the Personal Representative of the Estate of Robert Indiana, and states as follows:

## FACTS

### Michael McKenzie Has Four Decades of Experience in the Art World

194.    McKenzie took multiple degrees in creative writing, including his MFA under renowned art critic John Ashbery.  McKenzie co-authored *New, Used & Improved*: *Art for the 80s*, a key text concerning the artworks of his generation.

195.    Between 1992 and 1998, McKenzie curated the American Masters series at the Museum of Modern Art in São Paulo and the Museum of Modern Art in Rio de Janeiro.  "American

Masters" included works of Indiana, Andy Warhol, Tom Wesselmann, Alex Katz, Frank Stella, Larry Rivers, Ed Paschke, and Claes Oldenburg.

196.    McKenzie included Indiana in the American Masters series because he believed Indiana was an underappreciated master.   For this series, Indiana created and included, at McKenzie's urging, *AMOR*, which is *LOVE* in Portuguese.

### Beyond MART: Indiana, like Most Artists, Created Multiple Artworks

197.    The Susan Sheehan Gallery published an Indiana catalogue raisonné in 1992.   The gallery spent approximately eight months preparing the catalogue raisonné and consulted McKenzie during the drafting of the catalogue.

198.    MART claims Indiana agreed to two contracts with it in 1999 in which Indiana conveyed rights to Indiana's artworks.

199.    Though MART has tried to exploit *LOVE* and stifle Indiana's creativity, Indiana created much more artwork.

200.    Like most artists, Indiana has a long history of varied projects.   For example, in 1977, the city of Milwaukee commissioned Indiana to design the basketball floor of the MECCA Arena, home of the Milwaukee Bucks basketball team.   The MECCA's floor was the subject of an ESPN *30 for 30* documentary.

201.    Between *LOVE* and *HOPE*, was MART, a shadowy Bahamian group that now claims it obtained certain rights to a collection of Indiana artworks through two 1999 agreements. Indiana repeatedly told McKenzie that the situation with *LOVE* was "complicated" and confided in McKenzie that "Simon just wants to control me."

202.    Upon information and belief, MART rarely compensated Indiana for the sale of his artworks or made regular royalty payments but instead attempted to wrest control of Indiana's artworks through intimidation and lies.   Indiana was so fearful of MART stealing his artworks that

he told McKenzie that he was afraid to loan MART artworks for an exhibition at the Grand Palais in Paris for fear they would never return the artworks. Indiana confided to McKenzie that he believed MART had stolen multiple artworks that Indiana had provided for galleries and exhibitions.

203.    With the two agreements cited in MART's complaint, MART managed to organize a mere four exhibitions of Indiana's artworks in 20 years.  Indiana's peers were often exhibited in multiple exhibitions per year, and in more renowned galleries such as Marlborough Gallery, Pace Gallery, and Gagosian Gallery. Indiana's artwork were exhibited in galleries that showed mainly upcoming artists.

204.    MART went so far as to invent an unpublished catalogue raisonné that excluded all of Indiana's artwork not included in its ill-gotten intellectual property.  MART used the unpublished catalogue raisonné to stifle Indiana's ability to produce artworks independently of MART, and to unfairly increase the value of its limited collection of Indiana artworks while dismissing all other works that Indiana created, which kept him in economic servitude.

205.    However, MART could not extinguish Indiana's flame of creativity.

**American Image Aids Indiana's Revival in the Early 1990s**

206.    McKenzie met Indiana at the 1964 World's Fair in Queens, New York.  The two reconnected in the 1970s at the urging of John Hollander, an authority on shape poetry and word art.  Hollander told McKenzie that Indiana was the best of these artists.  McKenzie then visited Indiana frequently at his loft on Spring Street from 1974 until Indiana moved to Maine.  McKenzie also photographed Indiana on various occasions.

207.    Since 1976, Indiana chose to isolate himself by moving to Vinalhaven, ME – often ignoring phone calls, faxes, and visits from close friends, celebrities, and important career opportunities.

208.    Indiana was a poet and artist from the Midwest.  His time in New York wore him out and he wanted to be left alone.  Vinalhaven rejuvenated Indiana.

209.    American Image revitalized Indiana's *LOVE* at the 19th Annual ArtExpo New York. American Image published "The Book of Love Art & Poetry" by Robert Indiana in 1996, a project which took over two years.

210.    In the mid-1990s, McKenzie worked with Indiana and one of the top international advertising agencies in the world, TBWA, to develop the *Absolut Indiana* advertising campaign:



211.    The advertisement was on the back cover of auction catalogues for Christie's and Sotheby's.  The advertisement reminded collectors, curators, and the general public of Indiana's brilliance.

212.    In the mid-1990s, American Image subsequently created a portfolio of 200 sets of twelve high-quality *LOVE* prints with twelve original Indiana poems.



MART has, since the time of this publication, wrongfully asserted copyright control over The Book of Love, and has improperly collected licensing fees for same as evidenced by the DACS bill alleged in Paragraph 418 herein.

213.    Indiana also authorized American Image to create  a deluxe edition fabricated metal covers with a silk-screened *LOVE* image to house the deluxe edition of these prints.

214.    Indiana resumed work with American Image in the mid-2000s.  He travelled to American Image's studio in Katonah, New York to discuss editions and supervise the printing of his artworks.  McKenzie also travelled to Vinalhaven to review proofs, prototypes and editions with Indiana frequently, often with one or more members of his staff.

215.    In 2011 Indiana told McKenzie that travelling to American Image Art in Katonah was burdensome at his age.  Indiana then asked McKenzie to create a studio in Vinalhaven, near the Star of Hope, so Indiana could work more closely with McKenzie and American Image Art.  Indiana directed McKenzie to buy the old Vinalhaven movie house where Indiana screened the Andy Warhol film *Eat* that featured Indiana.

216.    McKenzie retained James Brannan, the Indiana Estate's Personal Representative, to manage the closing of the purchase.  At the Vinalhaven studio, Indiana and McKenzie frequently worked together, dined, and discussed potential Indiana projects.

## MART, a Mysterious Bahamian Limited Liability Company and Its Agent, Simon SalamaCaro, an Inexperienced Art-Dealer, Con Indiana

217.     MART is a mystery in the art world.  No one seems to know what MART does or where they are located.

218.    Upon information and belief, MART is ultimately controlled by Robert Gore, Philippe Grossglauer, Myles Stott, and Alain Esseiva.

219.    Upon information and belief, MART was founded by Guy Naggar.

220.    Simon Salama-Caro has been an agent of MART since at least April 9, 1999.

221.    The so-called April 1999 IP Agreement states: "It is understood and agreed that [Simon] Salama-Caro is acting on behalf of and as representative for Morgan.  (ECF 60-1 at 2–3).

28

222.     The so-called December 1999 Sculpture Agreement states "It is understood and agreed that Simon Salama-Caro has and shall continue to act on behalf of and as representative of Morgan." (ECF 60-2 at 3).

223.     Upon information and belief Marc Salama-Caro has been an agent of MART since at least 2008.

224.     Before meeting Indiana, the Salama-Caros were inexperienced in selling art.

225.     Simon Salama-Caro observed the reemergence of Indiana created by the ArtExpo exhibit and the *Absolut Indiana* ad campaign and pounced.

226.     Simon Salama-Caro duped Indiana into allegedly turning over intellectual property rights to his earlier work to MART after McKenzie's actions revitalized it.

227.     MART does not appear to deal in artwork from any artist other than Indiana.

228.     Simon Salama-Caro's early partner was Brian Ramnarine, an art forger convicted of creating fake artworks by Indiana and Jasper Johns.

229.     Upon information and belief, Simon Salama-Caro and Ramnarine made 100 bronze sculptures cast from original large Indiana sculptures. Simon Salama-Caro never returned Indiana's original sculptures to him, and Simon Salama-Caro claimed they disappeared.

230.     MART overtook Indiana's 2013 retrospective at the Whitney and flooded the exhibit with artworks it purportedly controlled to be featured in the show.

231.     MART exploited Indiana's self-imposed physical exile to disparage his post MART agreement artworks from an appreciative audience. This scheme was an attempt to put Indiana in amber, diminish his creative spirit and increase the value of MART's purported intellectual property.

232.   MART maximized the value of *LOVE* not through fine art productions but the fraudulent copyright licensing of the *LOVE* image for various trinkets.

233.   In a January 2014 interview, Indiana told NPR: "*LOVE* bit me. It was a marvelous idea, but it was also a terrible mistake. It became too popular; it became too popular."

234.   On March 21, 2014, MART filed a trademark application, Registration No. 5094914, with the U.S.P.T.O. for the *LOVE* image to be used for, among other things umbrellas, infant carriers, animal carriers, sports bags, leather and imitation leather bags, and gym bags.

235.   Also on March 21, 2014, MART filed another trademark application with the U.S.P.T.O, Registration No. 4879320, for clothing, including headwear, belts, lingerie, swimwear, and ties.

236.   On August 24, 2017, MART filed a trademark application with the U.S.P.T.O, Serial No. 87581790, to use the *LOVE* image for among other things, animal housing and furniture.

237.   American Image is a fine art publisher and has not published *LOVE* artworks in any of the mediums covered by the two MART fraudulently procured 2014 trademark registrations and the 2017 trademark application.

### Indiana Finds *HOPE* with American Image

238.   In 2006, Indiana and McKenzie discussed a follow-up project to *LOVE* that would become Indiana's *HOPE* sculpture.  McKenzie came up with the idea for stacked HOPE when he saw a poster of the Dalai Lama, who he knew and photographed, coupled with the word HOPE. McKenzie drew, designed, computerized and made a 3D version of HOPE which he later showed to Indiana to get the HOPE publishing deal going.

239.   The 2008 Obama presidential campaign used the idea of "Change" as part of its messaging to voters, yet Obama was known for his book, The Audacity of Hope.  Indiana told McKenzie that that the Museum of Modern Art's showing of *LOVE* was the catalyst for its success

30

and that the Obama campaign could be the catalyst for *HOPE*. Through his personal contacts, McKenzie was able to connect Indiana and *HOPE* with the Obama campaign. Indiana's monumental *HOPE* sculpture was installed at the entrance to the Democratic convention in Denver, and Indiana's *HOPE* image was used for campaign fundraising nationally.

240.    On August 11, 2008, Indiana and American Image signed the HOPE Contract to produce the *HOPE* sculptures and prints.  *See* **Exhibit B** attached hereto.

241.    Indiana's counsel drafted the HOPE Contract and addenda.

242.    The HOPE Contract states: "The duties and responsibilities set forth in this agreement and the benefits thereof shall be borne and inure to the benefit of the parties hereto and their responsive heirs, administrators, successors, and permitted assigns."  Exhibit B.

243.    The *HOPE* Contract requires the "Artist [Indiana], for his part, will cooperate with the Publisher in maintaining, for both Artist's and Publisher's benefit, the exclusivity of the artwork and all intellectual property rights associated with it the best of his ability."  Exhibit B.

244.    The highly successful *HOPE* sculpture was featured at the entrance to the 2008 Democratic convention in Denver.

245.    With *HOPE* bookended to *LOVE*, Indiana began to work with McKenzie to publish new projects.

246.    The *HOPE* project was so successful that Indiana and American Image agreed to four addenda to the *HOPE* Contract in 2010, 2011, and 2012. The addenda are attached hereto as **Exhibits C, D, E, and F**, respectively.

247.    The September 1, 2011 addendum to the HOPE Contract automatically renewed the contract upon an annual payment of $1,000,000.  *See* Exhibit C.  American Image has made all annual payments.

248.    American Image worked with galleries worldwide to sell Indiana works on his behalf.

249.    Since 2008, American Image has worked closely with Rosenbaum Contemporary, a long-established art distributor in Boca Raton, FL, to sell Indiana artworks.

250.    American Image has also organized Indiana shows at the Woodward Gallery and the Four Seasons Restaurant.

251.    In October 2013, American Image curated an exhibition of 75 Indiana artworks, entitled Robert Indiana from A to Z at the Munson Williams Proctor Arts Institute in Utica, NY. This exhibition later travelled to numerous other museums and introduced the public to Indiana's works that were not as famous as *LOVE* and *HOPE*.  Indiana received numerous copies of this book and proudly gave it to many people.

### Jamie Thomas is Appointed Robert Indiana's Power of Attorney

252.    Thomas worked as a studio assistant to Indiana for several years in the 1990s.

253.    In 2013, Thomas resumed working for Indiana as his assistant and caretaker. Indiana paid Thomas approximately $1,500 per week, later changed to $2,500 per week, to serve in these roles..

254.    On May 7, 2016, Thomas became Indiana's power of attorney under a duly executed instrument.

255.    Thomas's duties expanded from physical caretaker to financial management.  His compensation also increased for $2,500 /week to $5,000/week.

256.    The power of attorney granted Thomas control of multiple Indiana bank accounts in Maine and New York.  One of the accounts controlled by Thomas as attorney in fact was Camden National Bank.

257.    On May 30, 2017, Thomas formed James Maine, LLC as a Maine limited liability company.  James Maine, LLC provided storage facilities for artists, including Indiana.

258.    During his tenure as attorney in fact, Thomas authorized the payment of $190,000 to James Maine, LLC for work performed by Thomas.

259.    Thomas authorized payments of $490,000 to himself from Indiana's accounts between April 2016 and May 2018.

260.    Thomas testified on September 12, 2018 that he received gifts from Indiana, including at least 118 artworks and money for a car.

261.    During Thomas' service as attorney in fact, American Image paid Indiana HOPE Contract royalties of $2,320,625.  *See* **Ex. M–J**.  Upon information and belief, Thomas deposited American Image royalty payments into Indiana's Camden National Bank account.  *Id*.

262.    The HOPE Contract obligated Thomas, as attorney in fact, to fulfill the "duties and responsibilities set forth in this agreement."  **Exhibit B**.  Thomas's duties included "maintaining, for both Artist's and Publisher's benefit, the exclusivity of the artwork and all intellectual property rights associated with it the best of his ability."  **Exhibit B**.

263.    MART's purported IP Agreement and Sculpture Agreement—if enforceable— placed limits on the artworks Indiana could produce.  As attorney in fact for Indiana, Thomas was obligated to fulfill these agreements.

264.    Thomas had actual knowledge of the *HOPE* Contract and MART agreements.

265.    Thomas challenged the enforceability of the MART agreements in a series of winter 2018 cease-and-desist letters sent by his attorney.

266.    During his two years as power of attorney, Thomas made $615,000 in cash withdrawals from accounts controlled by Indiana.

**Robert Indiana and his Power of Attorney, Jamie Thomas, Authorize the Publication of the** *Like a Rolling Stone* **Series,** *EAT, WINE,* **and** *BRAT*

267.    Indiana travelled to American Image's Studio in Katonah, NY to supervise productions of his works, and McKenzie travelled to Vinalhaven, ME with proofs to get approvals from Indiana on prints and paintings.  Indiana would personally examine the works and approve them.

268.    Indiana had a series of studio assistants and managers who worked with him in Vinalhaven during Indiana's partnership with American Image.  Some of these studio assistants took advantage of Indiana's generosity and did little work for generous pay.

269.    Thomas stopped that opportunistic behavior of Indiana's studio assistants.  Thomas had been Indiana's most trusted studio manager before he took on both a studio manager and care-taker role as Indiana's health declined.  Indiana appointed Thomas as his power of attorney in 2016.

270.    Though *HOPE* was a great success, sales of sculptures, canvases, and prints declined during the Obama administration as excitement from the campaign declined and the Great Recession battered the art market.

271.    Sales of the *HOPE* artworks never met the $1,000,000 annual royalty, so American Image and Indiana agreed to expand the artworks American Image could publish pursuant to the terms of the *HOPE* Contract.  Indiana and later Thomas authorized the publication of more original artworks by American Image.  Indiana took inspiration from his catalogue of published and unpublished works to develop these original artworks.  The addenda were both written and verbal. Indiana and later Thomas authorized American Image to publish these artworks.

272.     American Image continued to pay Indiana the guaranteed $1,000,000 annual royalty despite the sales of Indiana artworks published by American Image never meeting the royalty threshold.

273.     Throughout the 1960s, Indiana enjoyed listening to the music of Bob Dylan while painting.  Around 2014, after seeing works created with words by Jack Kerouac and art by Ed Ruscha, a word artist Indiana admired, Indiana created and American Image published *Like a Rolling Stone* to express Indiana's admiration for Dylan and to connect his new works to the music he listened to while painting in the 1960s.  Indiana spent months perfecting the Dylan series. Indiana was so pleased with the results of the Dylan series that he displayed the works prominently in the window at the Star of Hope.

274.     Around 2010, Indiana developed *EAT* with American Image in a style evoking Indiana's *EAT* at the 1964 World's Fair.

275.     Around 2011, Indiana began to explore how to enter the wine market with American Image as they agreed that wine and art were a perfect crossover because galleries and museums often serve wine at openings.  Indiana and American Image entered into a signed addendum to the HOPE Contract for American Image's production of Indiana's *WINE* in 2011. *See* Exhibit D.  In 2012, Indiana and American Image executed another addendum to the HOPE Contract.  *See* Exhibit E. For several years McKenzie took meetings and invested in creating prototype bottles including *EAT*, *ART*, *HOPE* and *WINE*. After six years of working with Indiana to develop *WINE*, American Image published the work before Indiana's death in 2018.

276.     American Image was instrumental in helping Indiana publish *Alphabet* – the work that Indiana had been trying to show the world for more than 20 years and that the two first discussed in 1995.

277.    Indiana, Johnsonville, LLC, and American Image developed *BRAT*, which became Indiana's largest four letter sculpture. Indiana received several hundred thousand dollars in royalties for *BRAT*.  Indiana hoped the mass market exposure would come with this project given that Johnsonville is a major food company and, like him, from the Midwest. Indiana was excited about this project because of its monumental size—and actually greenlighted the project when he found Johnsonville products were sold in the supermarket 50 feet from his house. Indiana hoped that Johnsonville would come to be a sponsor of Star of Hope and that his BRAT would be on their products and licensed as t-shirts, hats and other products.

278.    When Thomas became attorney in fact in May 2016, American Image often communicated with Indiana through Thomas as Indiana directed.

279.    Thomas communicated Indiana's final approval of American Image publishing projects pursuant to the *HOPE* Contract and addenda, including *WINE* and *BRAT* to American Image. Indiana himself changed the design of BRAT on several occasions, including changing his mind of using a tilted 'R' to reverting to a conventional standing 'R' just before the fabrication of this monumental work was set to begin.

280.    Despite his new artworks receiving much acclaim, the specter of MART hung over the Star of Hope Lodge.  Indiana worried that anything he created would be snatched by MART.

**American Image Has Paid Indiana Royalty Payments for Indiana's Published Works**

281.    Since 1996, American Image has paid Indiana substantial royalty payments for the sale of Indiana's artworks and other projects.

282.    Attached as **Exhibits G** through **N** are cancelled checks showing royalty payments American Image made to Indiana in 2010 and from 2015-2018 totaling $4,070,625. Since American Image has not had the opportunity to search all of its records, these are only a sample of

the payments that American Image made to Indiana.  Further, upon Indiana's request, American

Image stored its records at the Star of Hope Lodge.

283.    The following table outlines the royalty payments shown in Exhibits G through N:

| Date | Amount | Check # |
|---|---|---|
| 7/27/2010 | $250,000 | 5322 |
| 7/7/2015 | $395,100 | 8244 |
| 10/13/2015 | $604,900 | 8377 |
| 9/13/2016 | $1,000,000 | 8847 |
| 5/31/2017 | $853,035 | 9311 |
| 11/7/2017 | $153,965 | 9615 |
| 11/10/2017 | $313,625 | 9627 |
| 4/3/2018 | $500,000 | 9857 |

## MART Defames McKenzie and American Image By Claiming Indiana's Artworks Purportedly Not Controlled by MART Were Inauthentic

284.    MART could not stifle Indiana's creativity, so it tried to stifle the sale of new works

he published with McKenzie.

285.    MART tried to confiscate and denounced any artwork that Indiana created and that

MART did not authorize or purportedly control the rights to.

286.    The Salama-Caros attempted to convince art galleries and art dealers not to work

with American Image by claiming that MART had the sole right to deal in Indiana artworks.

287.    The Salama-Caros attended openings and visited galleries where Indiana's new

works were being shown and told the patrons that MART had the right to authenticate Indiana's

artworks and that the new works on display were not authentic Indiana works.

288.    MART claims that its purported contracts gave it authority to authenticate Indiana

artworks.  The Salama-Caros told art galleries that *HOPE* and other non-MART controlled

artworks were not authentic Indiana artworks.  As a key publisher of post-MART agreement

works, MART's claims that these works were not authentic hurt American Image's standing and

37

sales in the art world.  Potential buyers of artworks like *HOPE*, lost interest when MART claimed the artworks were forgeries.

289.    MART told Reuters in a May 18, 2018 that American Image was involved in a "rogue and brazenly unlawful forgery scheme." *See Legacy of "LOVE" Artist Robert Indiana is Subject of New Lawsuit*.  ("Reuters Article")

290.    On May 23, 2018, MART told the Portland Press Herald that "the first and most important thing is protecting (Indiana's) legacy [is] to stop proliferation of inauthentic works" in reference to artworks published by American Image.  *See Lawsuit Paints Sad Image of Exploitation in Robert Indiana's Final Years on Maine Island* ("Portland Press Article")

291.    MART has fed false statements to the New York Times concerning American Image.  For example, MART caused the publication of false claims that use of the Ghostwriter machine was not authorized by Indiana.  *See How Robert Indiana's Caretaker Came to Control His Artistic Legacy*, N.Y. Times August 1, 2018 ("8/1 NYT Article")

292.    MART also planted at false story that the BRAT sculpture was not authorized by Indiana.  *See Was This Homage to Bratwurst Really Designed by Robert Indiana?* N.Y. Times September 21, 2018. ("9/21 NYT Article")

**MART and its Agents Interfere With American Image's Business Relationship with Robert Indiana**

293.    MART, Simon Salama-Caro, and Marc Salama-Caro knew of the *HOPE* Sculpture and the HOPE Contract.

294.    MART, Simon Salama-Caro, and Marc Salama-Caro knew American Image published original artworks authorized by Indiana pursuant to the HOPE Contract.

295.    As MART's agent, Marc Salama-Caro travelled to the Star of HOPE to make false statements to Indiana suggesting that American Image was publishing unauthorized HOPE Artworks.

296.    MART interfered with the HOPE Contract by attempting to affix a MART copyright notice to a *HOPE* Sculpture loaned to the Farnsworth Museum in Rockland, ME.

297.    MART told representatives of the German Galerie Thomas that certain HOPE Contract artworks were not part of Indiana's catalogue raisonné during art fairs in Basil and Miami and that Indiana had never heard of the *HOPE* Sculpture. Simon Salama-Caro told other dealers that Indiana had never heard of the HOPE Sculpture, which became ridiculous when Indiana on the Today Show told 23,000,000 people he wanted to bring Hope to the world.

298.    MART told art dealers that the *HOPE* Sculpture was of poor quality, which also became ridiculous when we told people works were made by TALLIX, considered the world's premiere sculpture foundry, whereas LOVE was produced at Milgo, known more for architectural design and furniture fabrications, describing itself as working in 'Building Materials', not what Indiana did.

299.    MART made false statements to galleries that Indiana had disavowed American Image and no longer worked with American Image.

300.    MART falsely told Contini Art Gallery and other art galleries that American Image was forging HOPE Artworks that Indiana had not authorized.

301.    MART falsely informed an owner of a damaged *HOPE* sculpture that only MART, not American Image, could authenticate the sculpture and repair it.

302.    MART made false statements that it was head of the Star of Hope Foundation and could authenticate HOPE Contract artworks.

**Jamie Thomas and Robert Indiana Authorize Cease-and Desist Letters and the Estate of
Robert Indiana Refuses to Indemnify American Image**

303.   In 2017, Thomas and Indiana decided to act because MART had not sent regular royalty reports to Indiana for 20 years, the few payments it did make were erratic, and then it completely ceased payments to Indiana.

304.   Thomas and his attorney asked McKenzie to aid their investigation of MART.

305.   McKenzie shared his concerns about MART with Thomas and confirmed Indiana's fears of MART.

306.   In February and March 2018, Thomas sent cease-and-desist letters to auction houses and websites.  *See* Exhibit A and ECF Nos. 30-3 to 30-6.  McKenzie did not review these letters before they were sent, but he cooperated with John Frumer, Thomas' legal counsel in the investigation of MART.  James Brannan, the Personal Representative of the Estate, is copied on every letter.  *Id.*

307.   On May 18, 2018, MART filed the instant litigation.

308.   On June 6, 2018, American Image offered to negotiate a joint-defense and indemnification agreement with the Estate of Robert Indiana.  *See* **Exhibit O** attached hereto.

309.   During a teleconference on June 7, American Image explained its willingness to aid the Estate with the MART lawsuit.  The Estate refused to indemnify American Image and forced it to defend itself in the MART lawsuit.

310.   On June 18, 2018, the Estate filed a Petition in Maine Probate Court ("Maine Petition") that attached a photocopy of the MART lawsuit.  *See* **Exhibit P** attached hereto.

311.   Based on the assertions made in the MART lawsuit, the Estate demanded American Image produce certain documents and testify before a Maine Probate Court.  (*See* Exhibit P ¶¶ 21–22).

312.     The Maine Petition demands four categories of documents from American Image: (1) documents providing an inventory of Indiana artworks; (2) documents authorizing American Image to publish Indiana artworks; (3) documents concerning the sale of Indiana artworks; and (4) statements of account. (*See* Schedule A to Exhibit P).

313.     The business divorce between MART and Indiana has forced American Image to defend itself in two forums based on salacious claims made by MART in New York.  However, both MART's and the Estate of Robert Indiana's claims are governed by arbitration clauses.

314.     As detailed below, the Estate of Robert Indiana, rather than arbitrate or follow prescribed procedures for ancillary probate of assets in New York, simply created a second ring in what has now become a three ring circus that should have been in arbitration if the Estate believes it has any claims against purported assets American Image has in New York or wishes to question the contractual relationship between Indiana and American Image.

### The HOPE Contract's Arbitration Provision Governs The Estate of Robert Indiana's Claims in Maine and American Image's Crossclaims in New York

315.     On July 13, 2018 American Image attached to its Answer the only copy of the HOPE Contract that it has (ECF 29-2).  This copy is also attached herein and is only partially legible.  *See* **Exhibit B** attached hereto.

316.     After filing its Answer, American Image discovered a legible draft of the HOPE Contract ("Draft Contract").  *See* **Exhibit Q** attached hereto.  Page 6 of the HOPE Contract states and Page 4 of the Draft Contract confirms: "Any disputes will be settled by arbitration through the American Arbitration Association, governed by laws of the State of New York."  (*Cf.* Exhibit B at 6, Exhibit Q at 4). Therefore, disputes regarding the performance of the HOPE Contract must be arbitrated.

317.     None of the subsequent addenda to the HOPE Contract eliminated the arbitration provision.  (*See* Exs. C–F).

318.     On July 26, American Image filed an arbitration claim based on the HOPE Contract and addenda with the American Arbitration Association.  *See* **Exhibit R** attached hereto.

### Robert Indiana Fails to Affix Required Copyright Notices on LOVE and other Artworks, Thus Allowing Artworks to Fall Into Public Domain; MART Illicitly Attempts to Recapture Abandoned Intellectual Property Rights By Surreptitiously Affixing Retroactive Copyright Notices

319.     Robert Indiana first created the LOVE image as a Christmas card for MoMA. Indiana failed to affix a copyright notice on the image, as required by the Copyright Act of 1909. From that point on, Indiana repeatedly issued LOVE paintings, third-dimensional objects, prints and even an unsigned print issued for $25 used as a prop in the production of the highly successful play HAIR and all of which did not serve copyright as required.

320.     Several such instances where Indiana published LOVE artwork without the requisite copyright notice are below[1]:

321.     1967 LOVE image, without copyright notice (as displayed on the MoMA website, https://www.moma.org/collection/works/68726):

---

[1] Images in the pleading are either from internet or a reprint from images within the biography "Robert Indiana, Figures of Speech", by Susan Elizabeth Ryan, 2000 Yale University. *See* 17 USC § 107, *Bond v. Blum*, 317 F.3d 385 (4th Cir. 2003).



Robert Indiana
*LOVE*
1967

322.    1972 LOVE lithograph, without copyright notice (as reprinted in 2018):



323.    LOVE, used in advertising and marketing for the Broadway musical, Hair, in approximately 1969:



324.    LOVE, used as album cover for Toronto Symphony Orchestra, 1968:



6.15  *Imperial LOVE*, diptych as album cover, 1968.
Oliver Messiaen, *Turangalila-Symphonie*,
Toronto Symphony, Seiji Ozawa, conductor,
New York, RCA Victor.

325.     LOVE Ring, created in collaboration with Beautiful Bag and Box Company and marketed internationally by Charles Revson with Lauren Hutton (a ring model) without copyright notice, 1968:



6.14   *LOVE Ring*, artist in association with the Beautiful Bag and Box Company, Philadelphia, 1968. 18K gold, 1" square. Artist's collection (photo by Tad Beck).



326.    LOVE poster created as promotion for Indiana exhibition at the Stable Gallery, without copyright notice, 1966:



6.9  Poster for Robert Indiana's Stable Gallery
"*LOVE* Show," 1966. Artist's collection (photo by
Eric Pollitzer).

327.    "Love Links" LOVE/HATE cufflink set, advertised in the New York Times for Wallach's without copyright notice, 1970



328.    Carved aluminum LOVE sculpture, 12" x 12" x 6", without copyright notice, 1966:



6.10  *LOVE*, 1966. Carved aluminum, 12 x 12 x 6".
Artist's collection (photo by Eric Pollitzer).

Goodman and

329.   LOVE 3" x 3" x 1.5" paperweight, 1966, mass marketed by others in 1966:



6.16  Unauthorized *LOVE* paperweight, 1966.
Artist's collection (photo by Tad Beck).

330.    LOVE, 1972. Polychrome aluminum sculpture, 36" x 36" x 18", edition of six, which MART illicitly at some time thereafter affixed the copyright notice "© Robert Indiana-Morgan Arts Foundation/ARS, New York":



6.20   *LOVE/HATE* cufflinks. Advertisement for Wallach's, *New York Times*, 11 February 1970.

6.21   Ultima II "*LOVE* Ring" with Lauren Hutton. Advertisement for Bonwitt Teller, 18-26 September 1974 (photo by Tad Beck).

6.22   *LOVE*, 1972. Polychrome aluminum, 36 x 36 x 18", edition of six, artist's collection. © Robert Indiana-Morgan Arts Foundation/ARS, New York (photo by Prudence Cummings).

331.    There is no question that LOVE, in all its iterations, was in the public domain from the very start. Indeed, later in his life Indiana lamented, in numerous recorded and published statements, failing to protect his copyright in LOVE.

50

332.    He equally failed to adequately protect the copyright to many of his other earlier, non-LOVE artworks, including USAFun and EAT.

333.    For example, in September 2015, the Craig F. Starr Gallery hosted an exhibition of pre-1978 Indiana artworks, none of which affixed a copyright notice on the artwork:



334.    In September 2017, Sotheby's hosted an auction of Indiana works from the private collection of Herbert and Virginia Lust—all of these works were published before 1978, and none of them contained the requisite copyright notice:



335.    Yet, despite the artwork notoriously falling into the public domain, MART has illicitly attempted to recapture the lost copyright by posting copyright notices on the works after-the-fact.

336.    By example, *see* 2011 LOVE paperweight replica, 3" x 3" x 1.5", mass produced with illicit MART copyright affixed, despite the original 3" x 3" x 1.5" LOVE paperweight from 1966 (*see* Paragraph 328) being in the public domain:





337.    MART even attempted to recapture the copyright to the first 1967 LOVE image, published as a Christmas card for MoMA—an image that indisputably has fallen into public domain—the MoMA website displays the following Copyright notice under its display of the 1967 LOVE image: "© 2020 Morgan Art Foundation Ltd. / Artists Rights Society (ARS), New York" (https://www.moma.org/collection/works/68726)

**FOR A FIRST COUNTERCLAIM**
**Declaratory Judgment And Injunction In Aid of Arbitration**

338.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

339.    The Court may award declaratory relief under 28 U.S.C. §§ 2201, 2202.

340.    The Court may compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.*

341.    The Court may issue any writ necessary in aid of its jurisdiction under 28 U.S.C. § 1651, the All Writs Act.

342.    Plaintiff's claims against the Estate of Robert Indiana, Thomas, and American Image derive from supposed rights granted by the April 9, 1999 IP/License Agreement.

343.    The IP/License Agreement has an enforceable arbitration clause.

344.    Plaintiff has claims that must be decided by an arbitrator as required by the IP/License Agreement.  (*see* ECF 30-1 at 2)

345.    A justiciable controversy exists concerning the enforceability of the IP/License Agreement's arbitration clause that only the District Court may determine.

346.    Based on the foregoing, American Image is entitled to a declaratory judgment that the IP/License Agreement has an enforceable arbitration provision and that Plaintiff must arbitrate

its claims against American Image, Thomas, and James Brannan as the Personal Representative of the Estate of Robert Indiana.

## FOR A SECOND COUNTERCLAIM
### Declaratory Judgment

347.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

348.    Plaintiff has alleged that American Image willfully infringed Plaintiff's exclusive rights under 17 U.S.C. § 106.

349.    The Court may award declaratory relief under 28 U.S.C. §§ 2201, 2202.

350.    The Court may issue any writ necessary in aid of its jurisdiction under 28 U.S.C. § 1651, the All Writs Act.

351.    American Image had full authority from Indiana to produce, market, and sell all of the artworks at issue.

352.    American Image has not engaged in any act of copyright infringement or any infringement of Plaintiff's rights under the statute.

353.    The Court is authorized to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

354.    A justiciable controversy exists concerning the infringement of Plaintiff's alleged copyright that only the District Court may determine.

355.    If the Court finds MART's claims are not arbitrable, then American Image is entitled to a declaratory judgment that American Image has not infringed Plaintiff's alleged copyrights.

## FOR A THIRD COUNTERCLAIM
### Declaratory Judgment

356.     American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

357.     That Plaintiff's purported License/IP Agreement and Sculpture Agreement do not govern the artworks Indiana created and American Image published, and that such artworks are not forgeries.

358.     The Court may award declaratory relief under 28 U.S.C. §§ 2201, 2202.

359.     The Court may issue any writ necessary in aid of its jurisdiction under 28 U.S.C. § 1651, the All Writs Act.

360.     The Court is authorized to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

361.     A justiciable controversy exists concerning the applicability of  Plaintiff's alleged contracts to the original works published by Indiana.

362.     A justiciable controversy exists concerning the infringement of Plaintiff's alleged copyright that only the District Court may determine.

363.     If the Court finds MART's claims are not arbitrable, American Image is entitled to a declaratory judgment that the American Image published artworks are not forgeries.

## FOR A FOURTH COUNTERCLAIM
### Defamation

364.      American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

365.     Under New York CPLR § 3016, making a false statement to a third party accusing someone of a crime or dishonesty in their profession is defamation *per se*.

366.    Plaintiff made false statements to the press of and concerning McKenzie and his profession including a statements made in the Reuters Article, Portland Press Article, 8/1 NYT Article, 9/21 NYT Article.

367.    These statements accusing McKenzie in his business and profession were false when made.

368.    Under New York law, American Image is not required to plead special damages for a claim for defamation *per se*.

369.    As a direct and proximate result of the acts of Plaintiff, American Image has suffered damages in an amount to be determined at trial.

370.    Based on the foregoing, American Image is entitled to a declaration that Plaintiff's statements were false, malicious, and defamatory as well as associated damages.

### FOR A FIFTH COUNTERCLAIM
### Tortious Interference with Contract (Dismissed by Order, dated July 1, 2019)

371.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

372.    Under New York Law, to prove tortious interference with contract, a valid contract must exist between the parties; the defendant must have knowledge of the contract; the interference must have caused the breach; the interference must be intentional; and the interference caused the plaintiff to suffer damages.

373.    The HOPE Contract and addenda are valid and binding contracts between Indiana and American Image.

374.    Plaintiff knew of the HOPE Contract between Indiana and American Image.

375.    Plaintiff interfered with the contract when it made false statements to galleries and the press claiming the HOPE Contract artworks authorized by Indiana were forgeries.

376.    MART interfered with the HOPE Contract by directing Marc Salama-Caro to make false statements to Indiana suggesting that certain HOPE Artworks were unauthorized by Indiana.

377.    MART interfered with the HOPE Contract by attempting to affix a MART copyright notice to a HOPE Sculpture loaned to the Farnsworth Museum.

378.    MART told representatives of the Germany Galerie Thomas that certain HOPE Contract artworks were not part of catalogue raisonné during art fairs in Basil and Miami, including that Indiana had never heard of the HOPE Sculpture.

379.    MART told art dealers that the HOPE Sculpture was of poor quality.

380.    Plaintiff caused Indiana to breach the contract by not meeting his obligations under the HOPE Contract to maintain the exclusivity of the artwork and all intellectual property rights associated with it to the best of his ability.

381.    Plaintiff's interference with the contract was intentionally designed to disrupt the valid contract between American Image and Indiana.

382.    As a direct and proximate result of the acts of Plaintiff, American Image has suffered damages in an amount to be determined at trial.

## FOR A SIXTH COUNTERCLAIM
### Tortious Interference with Actual and Prospective Contractual Relations  (Dismissed by Order, dated July 1, 2019)

383.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

384.    Under New York law, a party may claim tortious interference with actual and prospective contractual relations when the defendant knew about plaintiff's business opportunity with another party; the defendant intentionally interfered with that opportunity; defendant used wrongful means for the sole purpose of inflicting harm; the contract or prospective business

relationship would have been entered into but for defendant's interference; and this resulted in damages.

385.     Plaintiff was aware of American Image's actual prospective business relationships with third parties, including Rosenbaum Contemporary and the buyers to which Rosenbaum Contemporary marketed Indiana artworks.

386.     MART made false statements to galleries that Indiana had disavowed American Image and no longer worked with American Image.

387.     MART made false statements to representatives of the German Galerie Thomas that certain HOPE Contract artworks were not part of Indiana's catalogue raisonné during art fairs in Basil and Miami which prevented American Image from participating in valuable exhibitions.

388.     MART made false statements to representatives of the German Galerie Thomas that Indiana had never heard of the HOPE Sculpture which prevented American Image from participating in valuable exhibitions.

389.     MART made false statements to art dealers that the HOPE Sculpture was of poor quality leading to the loss of sales and exhibition opportunities for American Image.

390.     Plaintiff knew and intentionally interfered with those actual and prospective when it made false statements to galleries and the press claiming that the works American Image produced for Indiana were forgeries.

391.     Plaintiff used wrongful means for the sole purpose of inflicting harm when it brought this lawsuit.

392.     Prospective business relationships would have been entered into but for Plaintiff's interference.

393.    As a direct and proximate result of the acts of Plaintiff, American Image has suffered damages in an amount to be determined at trial.

## FOR A SEVENTH COUNTERCLAIM
### Unfair Competition (Dismissed by Order, dated July 1, 2019)

394.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

395.    Under New York law, a claim for unfair competition is based on a bad faith misappropriation of labors and expenditures of another.

396.    Plaintiff has committed unfair and deceptive practices by falsely and in bad faith stating that American Image does not have the rights to create and produce the artworks at issue.

397.    MART made false statements in bad faith to representatives of galleries that only MART could authenticate HOPE Artworks authorized by Indiana.

398.    MART made false statements that it was head of the Star of Hope Foundation and was the only one who could authenticate Indiana artworks, including *HOPE* Artworks.

399.    MART falsely informed Sotheby's that only it had the right to authenticate Indiana artworks, including *HOPE* Artworks authorized and published by American Image.

400.    MART falsely informed a collector of a damaged HOPE Sculpture that only MART, not American Image, could authenticate the sculpture and repair it.

401.    Plaintiff's statements are likely to deceive a substantial segment of the intended audience because Indiana authorized the creation of the artworks sold by American Image.

402.    Plaintiff's deception was likely to influence purchasing decisions because collectors in the art world will likely be deterred from purchasing artworks from American Image based on Plaintiff's deceptive statements.

403.    As a direct and proximate result of the acts of Plaintiff, American Image has suffered damages in an amount to be determined at trial.

### FOR AN EIGHTH COUNTERCLAIM
### Slander Of Title (Dismissed, in part, by Order dated July 1, 2019)

404.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

405.    American Image acquired good title to the original Indiana artworks pursuant to the HOPE Contract and addenda.

406.    MART falsely told Contini Art Gallery and other art galleries that American Image was forging *HOPE* Contract artworks that Indiana authorized.

407.    MART falsely commented in the 8/1 NYT Article that Indiana did not authorize American Image's use of the Ghostwriter machine.  (Dismissed by Order, dated July 1, 2019)

408.    MART falsely commented in the 9/21 NYT Article that the BRAT sculpture was not authorized by Indiana.   (Dismissed by Order dated July 1, 2019)

409.    The statements made by MART and/or their representatives to the press and in this action claiming that McKenzie is not the true owner of the Indiana artworks were false and have cast doubt on American Image's good title.

410.    The statements made by MART and/or its representatives to the press and in this action disparaging McKenzie's title to the Indiana artworks were made under circumstances such that MART and/or its representatives reasonably could have foreseen that the actions of potential purchasers of the Artworks might be affected by their conduct.

411.    The statements made by MART and/or their representatives were made with reckless disregard of their truth or falsity, and were not covered by any applicable privilege.

412.     As a direct result of MART's false statements, American Image is virtually unable to sell the Indiana artworks for anything approaching their true value, given the legal uncertainty that now wrongfully clouds title to the Indiana artworks.

413.     As a direct and proximate result of the acts of Plaintiff, American Image has suffered damages in an amount to be determined at trial.

**FOR A NINTH COUNTERCLAIM**
**Cancellation of US Trademark Registration**

414.     American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

415.     15 U.S.C. 1119 provides: "In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby."

416.     A deliberate attempt to defraud the USPTO by an applicant by knowingly making a false, material misrepresentation in connection with the application is ample grounds for a court to cancel the contested trademark.

417.     The trademark registration application requires applicants to represent that:

The undersigned [b]elieves applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true.

418.     Upon information and belief, as part of MART's trademark application for LOVE, MART signed the above representation—that it had no such knowledge or belief that any other person, firm, corporation, or association has the right to use the mark in commerce.

419.     Yet, upon information and belief, MART knew at the time it signed the declaration that LOVE, in its many iterations, had been widely used by third-parties for decades, including AIA's Book of Love.

420.     In fact, even as it applied for trademark protection for LOVE, MART improperly authorized the Artists Rights Society to license AIA's Book of Love without AIA's knowledge:



## DACS

### Copyright Licensing and Image Hire Statement for Distribution: April to June 2015

| User | Country | Usage | Artwork | Reference | Licence Fee £ | Admin Cost £ | Net Royalty £ | WHT £ |
|------|---------|-------|---------|-----------|---------------|--------------|---------------|-------|
| **Copyright Licensing** | | | | | | | | |
| **Indiana Robert** | | | | | | | | |
| Tate Enterprises Ltd | United Kingdom | Short term merchandise | Eternal Hexagon, 1964. | LR15-00118 | 89.25 | 22.31 | 66.94 | 0.00 |
| Imperial College Healthcare Charity | United Kingdom | Book publishing | Garden of Love ROSES (1982) | LR14-02672 | 16.09 | 4.02 | 12.07 | 0.00 |
| Tate Gallery | United Kingdom | Web | Not Specified | LR15-00817 - 1182/15 | 4.00 | 1.00 | 3.00 | 0.00 |
| Phillips Auctioneers Ltd | United Kingdom | Brochures & Leaflets with e-version | Book of Love, 1996 | LR15-01239 | 565.00 | 141.25 | 423.75 | 0.00 |
| Phillips Auctioneers Ltd | United Kingdom | Auction House | Book of Love, 1996 | LR15-01280 | 362.00 | 90.50 | 271.50 | 0.00 |
| | | | | **Sub total** | 1,036.34 | 259.08 | 777.26 | 0.00 |
| | | | | **Grand Total** | 1,036.34 | 259.08 | 777.26 | 0.00 |

421.     Upon information and belief, MART's intent in filing the trademark application for LOVE was to illicitly attempt to recapture exclusive rights to create and market LOVE—rights

that had long since lapsed due to Robert Indiana's failure to protect the copyright to LOVE—as an end-run around the fact that LOVE is in the public domain.

422.   Based on the foregoing, American Image is entitled to an order directing the USPTO to cancel MART's trademark to LOVE, Registration Nos. 4879320, 5094914.

## FOR A TENTH COUNTERCLAIM
### Declaratory Judgment

423.   American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

424.   Plaintiff has alleged that American Image willfully infringed Plaintiff's exclusive rights under 17 U.S.C. § 106.

425.   The Court may award declaratory relief under 28 U.S.C. §§ 2201, 2202.

426.   The Court may issue any writ necessary in aid of its jurisdiction under 28 U.S.C. § 1651, the All Writs Act.

427.   Works created before 1979 are governed by the 1909 Copyright Act.

428.   The 1909 Copyright Act requires registrants to affix a copyright notice on the works in order to enjoy copyright protection.

429.   Upon information and belief, Robert Indiana failed to affix copyright notices on many (if not all) of his earlier, pre-1979 artworks, including LOVE and USA FUN.

430.   Indiana's failure to affix a copyright notice on the works resulted in those works falling into the public domain.

431.   If the Court determines that LOVE and USA FUN is in the public domain, American Image is entitled to a declaration that American Image has not infringed Plaintiff's alleged copyrights, which cannot be retroactively recaptured by Plaintiff after lapsing.

## FOR AN ELEVENTH COUNTERCLAIM
### Civil Liability for False or Fraudulent Registration

432.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

433.    15 U.S.C. §1120 provides that, "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

434.    Upon information and belief, and actual study of MART's fraudulent trademark applications, MART falsely registered LOVE as a protectable mark, and promoted LOVE in direct competition with HOPE thereby impermissibly diminishing HOPE's market value as second to LOVE, based on a fraudulently gained exclusivity.

435.    Upon information and belief, MART intentionally promoted the fraudulent copyright and trademark to LOVE, thus improperly inflating the value of LOVE as it competes openly with HOPE for both art sales and licensing putting HOPE in second choice position which would not have happened if the marketing of LOVE was fairly and accurately stated as public domain.

436.    Based on the foregoing, American Image is entitled to damages in an amount to be determined and awarded at trial.

## FOR A FIRST CROSSCLAIM
### Declaratory Judgment (Stayed pending arbitration by Order, dated October 9, 2018)
*Against James Brannan as The Personal Representative of The Estate of Robert Indiana*

437.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

438.    The Court may award declaratory relief under 28 U.S.C. §§ 2201, 2202.

439.    The Court may issue any writ necessary in aid of its jurisdiction under 28 U.S.C. § 1651, the All Writs Act.

440.    The Court is authorized to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

441.    A justiciable controversy exists concerning the enforceability of the contract Indiana signed with American Image.

442.    Based on the foregoing, American Image is entitled to a declaratory judgment that the HOPE Contract and addenda bind the Estate and the Personal Representative because American Image has paid Indiana millions of dollars in royalty payments pursuant to those agreements and American Image is entitled to a declaration to this effect.

### FOR A SECOND CROSSCLAIM
### Injunction in Aid of Arbitration Under the Federal Arbitration Act  (Stayed pending arbitration by Order, dated October 9, 2018)

*Against James Brannan as The Personal Representative of The Estate of Robert Indiana*

443.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

444.    Indiana entered into the HOPE Contract with American Image that governs the duties of American Image and Indiana and the authenticity of the Indiana artworks published by American Image.

445.    American Image has fully performed pursuant to the HOPE Contract.

446.    If the claims of MART against Defendants are true, then Indiana breached the HOPE Contract and subsequent addenda by authorizing American Image to publish artworks that Indiana did not possess the rights to.

447.    The HOPE Contract contractually binds American Image and Indiana and their respective heirs, administrators, successors and permitted assigns to arbitrate disputes.  The Personal Representative is the Administrator of the Estate of Robert Indiana.

448.    The Estate of Robert Indiana has actual knowledge that American Image has pursued arbitration with the Estate of Robert Indiana, which is unlikely to resolve prior to this action.

449.    American Image has no adequate remedy at law.

450.    Because the Estate continues to have actual notice of American Image's rights, the balance of equities tips in favor of American Image.

451.    The public interest would not be disserved by issuing injunctive relief in favor of American Image.

452.    The FAA, 9 U.S.C. §§ 1 et seq., requires that courts enforce privately negotiated agreements to arbitrate in accordance with their terms.  The Second Circuit has recognized that a court's power to compel arbitration is meaningless without the power to also issue injunctive relief when necessary to maintain the status quo during arbitration.

453.    Based on the foregoing, American Image is entitled to enjoin this action until its arbitral claims are determined by an arbitrator.

### FOR A THIRD CROSSCLAIM
### Injunction in Aid of Arbitration Under the Federal Arbitration Act  (Stayed pending arbitration by Order, dated October 9, 2018)

*Against James Brannan as The Personal Representative of The Estate of Robert Indiana*

454.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

455.    Indiana entered into the HOPE Contract with American Image that governs the duties of American Image and Indiana and the authenticity of the Indiana artworks published by American Image.

456.    The HOPE Contract contractually binds American Image and Indiana and their respective heirs, administrators, successors and permitted assigns to arbitrate disputes.  The Personal Representative is the Administrator of the Estate of Robert Indiana.

457.    Jamie Thomas was Indiana's power of attorney from 2016 until Indiana's death and had actual knowledge of American Image's contracts with Indiana.

458.    The Estate of Robert Indiana has actual knowledge that American Image believes the Estate is in breach of the HOPE Contract by filing a petition in Maine Probate Court.

459.    However, as set forth above, the Estate of Robert Indiana has demanded American Image produce documents and appear at a probate proceeding in Maine to determine claims governed by the HOPE Contract's arbitration clause, causing irreparable harm to American Image.

460.    American Image has pursued arbitration with the Estate of Robert Indiana, which is unlikely to resolve prior to the Maine Probate proceeding.

461.    American Image has no adequate remedy at law.

462.    Because the Estate continues to have actual notice of American Image's rights, the balance of equities tips in favor of American Image.

463.    The public interest would not be disserved by issuing injunctive relief in favor of American Image.

464.    The FAA, 9 U.S.C. §§ 1 et seq., requires that courts enforce privately negotiated agreements to arbitrate in accordance with their terms.  The Second Circuit has recognized that a

court's power to compel arbitration is meaningless without the power to also issue injunctive relief when necessary to maintain the status quo during arbitration.

465.   Based on the foregoing, American Image is entitled to enjoin the Maine Probate Proceeding until its arbitral claims are determined by an arbitrator.

## FOR A FOURTH CROSSCLAIM
### Breach of Contract (As to the Estate, stayed pending arbitration by Order, dated October 9, 2018; As to Thomas, Dismissed by Order dated July 1, 2019)

*Against James Brannan as The Personal Representative of The Estate of Robert Indiana and Jamie Thomas*

466.   American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

467.   Under New York law, a contract is breached when a valid contract exists between the parties, one of the parties performs under the contract, the other party fails to perform under the contract, and damages result from such failure to perform.

468.   American Image and Indiana agreed to the HOPE Contract and multiple addenda.

469.   American Image fully performed under the contract as directed by Indiana and Thomas.

470.   The HOPE Contract was based on Indiana's representations and warranties that Indiana had the right to enter into the contract and grant American Image a license to create, market, and sell the artworks at issue.

471.   From May 7, 2016 to May 19, 2018, Thomas was attorney in fact for Indiana under a duly executed instrument.

472.   The HOPE Contract obligated Thomas, as attorney in fact, to fulfill the duties and responsibilities set forth in this contract.

473.    MART's purported IP Agreement and Sculpture Agreement—if enforceable—placed limits on the artworks Indiana could produce.  As attorney in fact for Indiana, Thomas was obligated to fulfill these agreements.

474.    Thomas had actual knowledge of the HOPE Contract and MART agreements.

475.    If Plaintiff has rights in artworks published by American Image, then Indiana breached the contract when neither Indiana nor Thomas disclosed Plaintiff's rights to American Image.

476.    American Image has suffered damages due to Indiana's breach of the contract.  If the Court finds the HOPE Contract does not have a binding arbitration provision, then American Image is entitled to a judgment of damages in an amount to be determined at trial.

## FOR A FIFTH CROSSCLAIM
### Contractual Indemnification (As to the Estate, stayed pending arbitration by Order, dated October 9, 2018; As to Thomas, Dismissed by Order dated July 1, 2019)

*Against James Brannan as The Personal Representative of The Estate of Robert Indiana and Jamie Thomas*

477.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

478.    In the HOPE Contract and subsequent addenda, Indiana indemnified American Image and its agents for the damages sought against them by Plaintiff.

479.    From May 7, 2016 to May 19, 2018, Thomas was attorney in fact for Indiana under a duly executed instrument.

480.    The HOPE Contract obligated Thomas, as attorney in fact, to indemnify American Image.

481.    American Image has committed none of the wrongful acts asserted by Plaintiff because Indiana created all the original artworks and he and his power of attorney Thomas

70

authorized the production of the artworks as detailed in the HOPE Contract, addenda, and various communications.

482.    Indiana and Thomas are at fault for any of the wrongful acts asserted against American Image because Indiana and Thomas allegedly breached the so-called License/IP Agreement and Sculpture Agreement.

483.    Indiana and Thomas sent cease-and-desist letter to various auction houses and MART entities that caused MART to sue American Image and forcing American Image to defend itself in this action.

484.    The Estate of Robert Indiana refused to indemnify American Image though American Image requested indemnification.

485.    Based on the foregoing, if it is determined that American Image is liable to Plaintiff in any respect on account of Indiana and Thomas' material breaches of the HOPE Contract and addenda, then American Image is entitled to contractual indemnification, including attorneys' fees, costs and disbursements.

## FOR A SIXTH CROSSCLAIM
### Common Law Indemnification (As to the Estate, stayed pending arbitration by Order, dated October 9, 2018; As to Thomas, Dismissed by Order dated July 1, 2019)

*Against James Brannan as The Personal Representative of The Estate of Robert Indiana and Jamie Thomas*

486.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

487.    American Image has committed none of the wrongful acts asserted by Plaintiff because Indiana created all the original artworks and he and his power of attorney Thomas authorized the production of the artworks by American Image.

488.    Indiana and Thomas are at fault for any of the wrongful acts asserted against American Image because Indiana and Thomas allegedly breached the so-called License/IP Agreement and Sculpture Agreement.

489.    Indiana and Thomas sent cease-and-desist letter to various auction houses and MART entities that caused MART to sue American Image.

490.    The Estate of Robert Indiana refused to indemnify American Image though American Image requested indemnification.

491.    Thomas had actual knowledge of the HOPE Contract and so-called License/IP Agreement and Sculpture Agreement.

492.    If Indiana or Thomas authorized American Image to publish artworks that infringed the License/IP Agreement and Sculpture Agreement, then Indiana and later Thomas as Indiana's attorney in fact were negligent.

493.    It would be unfair to hold American Image liable for Indiana and Thomas' breach of the so-called License/IP Agreement and Sculpture Agreement and for causing American Image to defend itself in this action.

494.    Based on the foregoing, if it is determined that American Image is liable to Plaintiff in any respect, the Estate of Robert Indiana and Thomas must indemnify American Image for any damages, including costs and attorneys' fees, awarded against it and in favor of Plaintiff.

### FOR A SEVENTH CROSSCLAIM
**Unjust Enrichment  (As to the Estate, stayed pending arbitration by Order, dated October 9, 2018; As to Thomas, Dismissed by Order dated July 1, 2019)**

*Against James Brannan as The Personal Representative of The Estate of Robert Indiana and Jamie Thomas*

495.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

72

496.     Indiana, by entering into a contract with American Image for American Image to create, produce, and market the artworks at issue, received a benefit in the form of royalty payments and continued artistic success.

497.     Once Thomas became Indiana's power of attorney he conveyed Indiana's approval of projects published by American Image.

498.     Indiana and Thomas had an appreciation of said benefit and received millions of dollars pursuant to that HOPE Contract and addenda.

499.     If the sale of original Indiana artworks violated the terms of the License/IP Agreement and Sculpture Agreement, then Indiana's Estate and Thomas have been unjustly enriched.

500.     During his tenure as attorney in fact, Thomas authorized the payment of $190,000 to James Maine, LLC for work performed by Thomas.

501.     Thomas authorized payments of $490,000 to himself from Indiana's accounts between April 2016 and May 2018.

502.     During his two years as power of attorney, Thomas made $615,000 in withdrawals from accounts controlled by Indiana.

503.     It would be unjust for Indiana's Estate and Thomas to retain the benefit without compensating American Image.

504.     If Thomas misappropriated royalty payments intended for Indiana, then he caused American Image to breach the HOPE Contract.

505.     As a direct and proximate result of the acts of Plaintiff, American Image has suffered damages in an amount to be determined at trial.

506.     If the Court finds the HOPE Contract does not have a binding arbitration provision,

American Image is entitled to a judgment of damages in an amount to be determined at trial.

## FOR AN EIGHTH CROSSCLAIM
### Slander of Title

*Against James Brannan, as Personal Representative of the Estate of Robert Indiana*

507.     American Image re-alleges each and every allegation of the foregoing paragraphs

as if fully set forth herein.

508.     The claim herein is not subject to any agreement to arbitrate.

509.     Robert Indiana authorized American Image to fabricate and assemble BRAT as

commissioned by the Johnsonville Inc. in the style of LOVE for display in front of Johnsonville's

corporate headquarters in Sheboygan Falls, Wisconsin.

510.     Unique in its conception, Indiana elected not to tilt the upper right hand letter (like

LOVE) but was pleased to use his signatory RED/BLUE/GREEN color combination which

launched LOVE and has also been popular for HOPE. Standing at 20' x 20' x 10', BRAT is

Indiana's largest four-letter word creation.

511.     The BRAT sculpture was signed and numbered by incision as Edition I/I.

512.     Thus, not only was the BRAT sculpture authentic, Indiana himself actively

approved of the final version of the BRAT sculpture.

513.     Beyond this, Indiana was paid $320,625.00 as a royalty upon completion of the

BRAT artwork—this payment is well documented and there can be no doubt the Estate was well

aware of it.

514.     However, upon information and belief, Brannan, either directly or by Kevin Lipson

as his spokesperson, falsely told Johnsonville Inc. that the Estate was not sure the BRAT sculpture

Case 1:18-cv-04438-AT-BCM   Document 251   Filed 04/27/20   Page 75 of 81

was authentic Indiana art, thus purposely creating the air of forgery in BRAT and in other published works by AIA.

515.   The statements made by Brannan and/or his representatives to Johnsonville and in this action claiming that BRAT is not an authentic Indiana artwork was and is false and have cast doubt on American Image's good title.

516.   The statements made by Brannan and/or his representatives were made with reckless disregard of their truth or falsity, and were not covered by any applicable privilege.

517.   As a direct result of Brannan's false statements, American Image's reputation has been damaged. This damage caused American Image to lose contracts with other important artists who American Image had work with before, given substantial money to and now will not return any calls from American Image.

518.   As a direct and proximate result of the acts of Plaintiff, American Image has suffered damages in an amount to be determined at trial

## FOR A NINTH CROSSCLAIM
## Tortious Interference with Contract

*Against James Brannan, as Personal Representative of the Estate of Robert Indiana*

519.   American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

520.   The claim herein is not subject to an agreement to arbitrate.

521.   Under New York Law, to prove tortious interference with contract, a valid contract must exist between the parties; the defendant must have knowledge of the contract; the interference must have caused the breach; the interference must be intentional; and the interference caused the plaintiff to suffer damages.

522.     American Image entered into an agreement with Johnsonville for the fabrication of Indiana's BRAT, for display in front of Johnsonville's corporate headquarters in Sheboygan Falls, Wisconsin ("BRAT Agreement").

523.     The BRAT Agreement is a valid and binding contract between Johnsonville and American Image.

524.     The Estate knew of the BRAT Agreement between Johnsonville and American Image.

525.     The Estate tortiously interfered with the BRAT Agreement when it made false statements casting doubt on the authenticity of the BRAT sculpture, even though it knew that Indiana was paid $320,625.00   for completion of Indiana's design drawings for the BRAT Monumental Sculpture artwork, and that Indiana took an active role in approving the final version of the artwork.

526.     The Estate's false statements caused Johnsonville to breach its obligations under the BRAT Agreement. Johnsonville refused to release the final payment to American Image until it received authentication of BRAT from the Estate, which the Estate withheld for no reason.

527.     Johnsonville ultimately did release the final payment, but only after American Image expended significant sums in attorneys' fees and costs to allay Johnsonville's authentication concerns, which concerns had been caused by Brannan.

528.     The Estate's interference with the BRAT Agreement was intentionally designed to disrupt the valid contract between American Image and Johnsonville, and to impair American Image's ability to market and sell Indiana artworks, generally.

529.     As a direct and proximate result of the acts of the Estate, American Image has suffered damages in an amount to be determined at trial

## FOR A TENTH CROSSCLAIM
### Prima Facie Tort

*Against James Brannan, as Personal Representative of the Estate of Robert Indiana*

530.    American Image re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

531.    The claim herein is not subject to an agreement to arbitrate.

532.    American Image can seek a claim under prima facie tort where the cross-claim defendant intentionally injured the cross-claimant; the conduct was otherwise lawful; the conduct does not give rise to another tort; there is no justification or excuse for the conduct; and special damages are suffered.

533.    The Estate refused to authenticate the BRAT sculpture even though there was ample evidence that: (1) Robert Indiana authorized BRAT's creation; (2) Indiana had an active role in designing BRAT for Johnsonville, even electing not to tilt the 'R' in the same way as LOVE and HOPE had its second letter tilted; and (3) was paid a substantial sum in connection therewith, in the amount of $320,625.00.

534.    As a result, the Estate intentionally kept a cloud of title on BRAT, in an attempt to discredit American Image and sully its reputation. AIA has, therefore, been unable to capitalize on its endeavors in the Indiana art market, at a loss to itself and resulting in special damages being incurred.

535.    As a result of the forgoing, AIA is entitled to recover for all loss, cost, damage and expense thereby suffered or incurred to date and hereafter, including without limit all actual damages, compensatory damages, special damages, consequential damages, punitive damages, lost profits, and prejudgment interest, all in an amount to be determined at trial.

## ADDITIONAL COUNTERCLAIMS AND CROSS-CLAIMS

536.   American Image reserves the right to supplement or amend this answer, including through the addition of further counterclaims and cross-claims, based upon the course of discovery and pleadings in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendants/Counterclaim Plaintiffs/Crossclaim Plaintiffs American Image Art and Michael McKenzie respectfully request that the Court:

### 1. Against Morgan Art Foundation Limited

A.   compel Plaintiff to arbitrate its dispute with the Estate of Robert Indiana;

B.   enter an order dismissing Plaintiff's Complaint and each and every count therein relating to American Image with prejudice;

C.   enter judgment in favor of American Image on Plaintiff's Complaint and each and every count therein relating to American Image;

D.   in the alternative, declare American Image did not violate Plaintiff's copyright of Indiana's *Ninth American Dream* as it is a transformative work;

E.   in the alternative, declare the License/IP Agreement and Sculpture Agreement, if enforceable, do not concern the original artworks Indiana created and American Image produced;

F.   enjoin Plaintiff from falsely claiming American Image has forged Indiana artworks;

G.   find Plaintiff has defamed American Image;

H.   find Plaintiff has interfered with American Image's contract with Indiana;

I.   find Plaintiff has tortiously interfered with prospective business relations of American Image;

J.   find Plaintiff has tortiously engaged in unfair competition against American Image;

K.   find Plaintiff has slandered the title of artworks owned by American Image;

L.   declare that Plaintiff fraudulently procured trademark protection for LOVE, and direct the USPTO to cancel Trademark Registration Nos. 4879320, 5094914;

M.   find that LOVE, in all its iterations, and USA FUN are in the public for Indiana's failure to protect his copyrights, and cannot be retroactively recaptured by Plaintiff;

N.   find that Plaintiff's fraudulent registration of LOVE has harmed American Image by diminishing the market value of HOPE;

**2. Against Jamie Thomas and James Brannan as the Personal Representative of the Estate of Robert Indiana**

A.   declare the HOPE Contract and addenda are binding on the Estate of Robert Indiana and the Personal Representative;

B.   enjoin in aid of the arbitration the crossclaims of American Image against James Brannan as the Personal Representative of the Estate of Robert Indiana;

C.   enjoin in aid of the arbitration the Maine Probate proceeding brought by James Brannan as the Personal Representative of the Estate of Robert Indiana;

D.   order Jamie Thomas and James Brannan as the Personal Representative of the Estate of Robert Indiana to indemnify American Image for any damages to Plaintiff caused by the actions of Indiana or his power of attorney, Thomas;

E.   order Jamie Thomas and James Brannan as the Personal Representative of the Estate of Robert Indiana to indemnify American Image for any fees and costs paid to defend this action;

F.   in the alternative, find that Jamie Thomas and James Brannan as the Personal Representative of the Estate of Robert Indiana breached the HOPE Contract;

G.  in the alternative, find that Jamie Thomas and James Brannan as the Personal Representative of the Estate of Robert Indiana have been unjustly enriched by the royalty payments made by American Image to Indiana;

H.  find that Brannan has slandered the title of the BRAT sculpture created by American Image as authorized by Indiana;

I.  find that Brannan has interfered with American Image's contract with Johnsonville Inc.;

J.  find that Brannan has engaged in conduct to intentionally discredit and harm American Image's reputation and business interest;

**3. Against Morgan Art Foundation Limited, Jamie Thomas, and James Brannan as The Personal Representative of The Estate of Robert Indiana**

A.  award American Image general and/or compensatory damages in an amount to be determined at trial for all injuries suffered as a result of Plaintiff's wrongdoing;

B.  award American Image general and/or compensatory damages in an amount to be determined at trial for all injuries suffered as a result of Indiana's Estate's and Thomas' wrongdoing;

C.  award American Image nominal damages;

D.  award American Image punitive damages;

E.  award American Image pre-judgment and post-judgment interest at the maximum rate allowable by law;

F.  award American Image the costs of defending the suit as incurred in this action and attorney's fees; and

G.  all other just and proper relief

Dated: New York, New York
       April 27, 2020

                                    GOETZ FITZPATRICK LLP,


                                    By: _____
                                          John B. Simoni, Jr., Esq.

                                    One Penn Plaza, Suite 3100
                                    New York, NY 10119
                                    (212) 695-8100
                                    E-mail: jsimoni@goetzfitz.com
                                    *Attorneys for Michael McKenzie and
                                    American Image Art*