# MARKHAM READ ZERNER LLC

www.markhamreadzerner.com

| | |
|---|---|
| One Commercial Wharf West | 908 Main Street/P. O. Box 697 |
| Boston, Massachusetts 02110 | Waldoboro, Maine 04572 |
| T. (617) 523-6329 | T. (207) 790-8049 |
| F. (617) 742-8604 | F. (207) 790-8050 |

July 12, 2021

**VIA ECF**

Honorable Barbara Moses
United States District Court
Southern District of New York
New York, New York 10007

    Re:    *Morgan Art Foundation Ltd. v. McKenzie*, **18-cv-04438 (AT)**
             **Letter Motion to Compel Disclosure of Settlement Agreement**

Dear Judge Moses:

    We write on behalf of Defendant Michael McKenzie d/b/a American Image Art's (herein, "McKenzie") seeking for the Court to compel disclosure of the settlement agreement recently entered into by Morgan Art Foundation Limited ("Morgan"), Jamie Thomas, and James Brannan as Personal Representative of the Estate of Robert Indiana. Pursuant to the Court's Order (Dkt. No. 395), John Markham and Bridget Zerner for McKenzie had a telephone conference with Luke Nikas for Morgan on July 7, 2021 to meet and confer on this dispute (as well as to confer on other discovery issues and potential resolution of disputes) and were unable to resolve this matter. Thus, this letter motion is submitted pursuant to the same Court Order (Dkt. No. 395), Order (Dkt. No. 399), this Court's Individual Practices, and Rule 37(a), Fed. R. Civ. P.

    As cited by this Court on ordering the disclosure of the settlement between the Estate and Thomas (Dkt. No. 325, Order):

> We begin with the familiar standard of Fed. R. Civ. P. 26(b): "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Although Fed. R. Evid. 408(a) bars the admission of settlement communications and agreements into evidence for certain purposes, such as "to prove or disprove the validity or amount of a disputed claim," id., nothing in Rule 408 renders such materials privileged against discovery. *See, e.g., Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 71507, at *3 (S.D.N.Y. Feb. 20, 1996) (Rule 408 "accomplishes [its] purpose" of encouraging settlement "not by making the settlement information unavailable, but by limiting abusive use of positions taken during the process"); *see also Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. Aug. 20, 2018) ("Rule 408 does not apply to discovery"); *Barclay v. Gressit*, 2013 WL 3819937, at *4 (D. Me. July 24, 2013) (the Rules of Evidence "may

McKenzie Letter Motion – Case No. 18-cv-04438
July 12, 2021
Page 2

> limit the admissibility of the settlement agreement at trial, [but] this does not determine its discoverability").
>
> Because settlement agreements are not privileged, "no heightened showing of relevance need be made" to justify their disclosure. *ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698, at *1 (S.D.N.Y. Feb. 10, 2000) (collecting cases); *accord Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 394 F. Supp. 3d 461, 464 (S.D.N.Y. 2019) (citing a "slew of cases" applying the ordinary discovery standards of Rule 26 to privately-negotiated settlement agreements); *Bank Brussels Lambert*, 1996 WL 71507, at *3 (Rule 408 "does not require any special restriction on Rule 26 because the discovery rules do not affect admissibility."). . . .
>
> Nor may the parties to a settlement agreement shield it from discovery "merely because it contains a confidentiality provision, or was filed under seal." *ABF Capital Mgmt.*, 2000 WL 191698, at *2. *See also Rocky Aspen Mgmt.*, 394 F. Supp. 3d at 464 ("[C]onfidentiality provisions inserted by parties into private settlement agreements do not immunize those agreements from discovery."); *Conopco, Inc. v. Wein*, 2007 WL 1040676, at *5 (S.D.N.Y. Apr. 4, 2007) ("[T]he simple fact that the parties to the settlement agreement agreed to its confidentiality does not shield it from discovery.") (internal quotation and citation omitted); *Tribune Co. v. Purcigliotti*, 1996 WL 337277, at *3 (S.D.N.Y. June 19, 1996) ("[T]he mere fact that the settling parties agreed to maintain the confidentiality of their agreement cannot serve to shield it from discovery.").

*Id.,* Order, pp. 9-10.

Morgan's position stated during the meet-and-confer is that the settlement agreement is more the subject of the suit *Morgan v. Brannan*, No. 18-cv-08231 than this suit, there are no admissions in it that could be used in this case, and there is no relevance to this action.

McKenzie submits that he is entitled to disclosure of the settlement agreement because the agreement terms may lead to discovery of admissible evidence in this case. As to Morgan's position that the settlement involves a separate case, that is clearly not so, as the settlement encompassed the claims by Morgan against the Estate and Thomas in this case and resolved the Estate's Counterclaims in this case. The resolved claims overlap with the still pending claims. Morgan alleges that McKenzie infringed Morgan's copyrights under the supervision of Thomas and Indiana (Dkt. No. 47, Morgan First Amended Complaint, Count I), that Thomas and McKenzie interfered with Morgan's contracts with Indiana (Count V), that McKenzie and Thomas violated Indiana's rights under the Visual Artist's Rights Act that Morgan claims caused it damages (Count VI), that McKenzie and Thomas engaged in unfair competition against Morgan (Count VII), and finally, that McKenzie and Thomas made defamatory statements concerning Morgan (Count VIII). The defamation claim specifically alleges as follows:

> The false and defamatory statements of fact that Thomas and McKenzie published or caused to be published state outright and also carry the unmistakable message that

Case 1:18-cv-04438-AT-BCM   Document 401   Filed 07/12/21   Page 3 of 5

McKenzie Letter Motion – Case No. 18-cv-04438
July 12, 2021
Page 3

> Morgan Art Foundation lacks authority to authenticate Indiana's works, to represent any of Indiana's works, to create a catalogue raisonne, or to operate a Robert Indiana website. The false and defamatory statements of fact that McKenzie published or caused to be published state outright and also carry the unmistakable message that Morgan Art Foundation failed to pay Robert Indiana money that was contractually owed to him, that Morgan Art Foundation did not pay Indiana for seven years, and that Morgan Art Foundation has exploited and misused its relationship with Robert Indiana for its own financial benefit. . . .

Dkt. No. 47, Morgan's Count VIII, p. 53.  Morgan's defamation allegations against McKenzie show that the statements by McKenzie about which Morgan complains track the claims made against Morgan by the Estate, now settled.  *See, e.g.*, Dkt. No. 226, Estate Second Amended Counterclaim against Morgan which alleges, in part, at paragraphs 183-184:

> Morgan and Salama-Caro fabricated and sold numerous works . . .without accounting to Indiana or the Estate at all, and without making royalty payments on those sales. . . Morgan has sold more than five million dollars' worth of Indiana's sculptures, and has not made any payment to Indiana or the Estate for these works.. . .Morgan made improper deductions from the sales proceeds it received in order to calculate Indiana's portion of the "net income," and as a result underpaid Indiana for the sales of certain works between 2012 and the present  . . .every single instance where Morgan found a buyer for an Indiana work, rather than sell the work to the buyer directly it engaged in a sham sale of the work to Salama-Caro's company, Shearbrook (US) LLC. . . .then immediately "resold" the work to the genuine buyer at a substantial markup. No proceeds were remitted to Indiana as a result of the second sale. . . . In sum ... among other things, between 2012 and the present, Morgan routinely breached its contracts with Indiana by failing to make timely payments to Indiana. When Morgan did pay Indiana, it underpaid him by hundreds of thousands—and sometimes even millions—of dollars by falsely understating the revenue and inflating the expenses on sales of Indiana's works. And, Morgan concealed its underpayments by failing to provide … accountings …

    These claims have now been settled but these issues are still involved in the pending claims against McKenzie. While any terms or payments made by Morgan to the Estate in the settlement agreement may not be offered as evidence of liability, it is relevant to McKenzie's defamation defense and may lead to discovery of admissible evidence through further questioning of Morgan's Simon Salama-Caro and Paul Salama-Caro, whose depositions have not yet occurred. Each have been identified (through initial disclosures) as persons with knowledge of the business relationship between Morgan and Indiana, of alleged defamatory statements made by McKenzie as well as the effect of McKenzie's work on Indiana's art market and legacy. The credibility of both and their allegations against McKenzie are at issue and the settlement terms are relevant to and could bear on them.

    The Estate also claimed that "Morgan has licensed, sold, or otherwise received income from the unauthorized reproductions of Indiana works that are outside the scope of any

agreement." *Id*, ¶ 231.  While Morgan is still accusing McKenzie of making unauthorized works (Dkt. No. 47, Counts I-VI, VII) and McKenzie seeks declaratory judgment that he was the one authorized to make certain works and claims damages from Morgan's defamatory statements about the works McKenzie produced for Indiana (Dkt. No. 91, McKenzie Counterclaim). Morgan's public statements have made clear that Morgan has partnered with the estate beneficiary, Star of Hope, and will jointly continue to produce and sell Indiana works in the market. This arrangement can impact McKenzie's claims and defenses regarding the works that Indiana authorized only McKenzie to produce and sell and affect McKenzie's damages claims. The terms as to art production also have relevance to the credibility of the positions Morgan has taken against McKenzie regarding authenticity of different works and the impact on the market.

As to the settlement of Morgan's claims against Jamie Thomas, disclosure is warranted on similar grounds that this Court ordered disclosure of the Estate/Thomas settlement. (Dkt. No. 325) As this Court observed:

> Thomas is undoubtedly an important witness as to Robert Indiana's state of mind in his last years. He may be the only living witness with first-hand knowledge as to whether Indiana created –or at least knowingly approved – the Dylan works, WINE, the BRAT sculpture, and other artworks that AIA marketed under the artist's name after allegedly receiving authorization through Thomas. He is also in a unique position to shed light on related fact questions, such as whether Indiana privately complained about McKenzie, as MAF alleges, see FAC ¶ 81, or privately complained about MAF, as the AIA Defendants report.

*Id*., p. 11. McKenzie is entitled to discover, before taking Thomas' deposition (still to be taken in this case) or Thomas otherwise testifies, whether this agreement will in any way impact or sway his critical testimony.

The Federal Rules provide for a very liberal range of discovery. Rule 26(b) provides parties "may obtain discovery regarding any matter not privileged, which is relevant to the subject matter involved in the pending action." Relevance in this context is broader than that required for admissibility at trial. Moore's Federal Practice ¶ 26.56[1] at 26–116 (2d ed. 1982). "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." F.R.Civ.P. 26(b).  Because of the complexity and cross-over between the pending claims and counterclaims and the now-settled claims and counterclaims, as cited above, the settlement terms reached between some of the parties falls within the broad definition of relevance during discovery. The terms may lead to the discovery of admissible evidence particularly where depositions of key witnesses with knowledge of the pending claims still need to be taken.

The agreement can be produced as "confidential" under the Protective Order (Dkt. No. 141) in place to address other confidentiality concerns unless a showing is made for an "attorney's eyes only" designation that can be considered.

McKenzie Letter Motion – Case No. 18-cv-04438
July 12, 2021
Page 5

                Respectfully submitted,

                MARKHAM READ ZERNER LLC

                */s/ Bridget A. Zerner*

cc: All Counsel of Record via ECF