UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORGAN ART FOUNDATION LIMITED,

Plaintiff,

v.

MICHAEL MCKENZIE, et al.,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   12/15/2021

18-CV-4438 (AT) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court is defendant Michael McKenzie's unopposed motion to compel the testimony of non-party witness Osvaldo J. Gonzalez. (Dkt. No. 444.) For the reasons that follow, the motion will be granted.

**Background**

This action is one of several, pending in various jurisdictions, concerning the late artist Robert Indiana, the legal rights to his intellectual property and artistic legacy, and related disputes. The plaintiff here is Morgan Art Foundation Limited (MAF), an art dealer, which acquired the exclusive right to reproduce, fabricate, and market a variety of Robert Indiana artworks – including his well-known LOVE image and sculpture – through a series of agreements executed by the artist during his lifetime. MAF alleges that McKenzie, an art publisher doing business as American Image Art (AIA), infringed its intellectual property rights and committed related torts by publishing new artworks based on works protected by MAF's agreements with Indiana, including but not limited to "unauthorized reproductions of the *LOVE* image," which McKenzie "falsely claimed to be authentic Robert Indiana works[.]" *See* First Am. Compl. (Dkt. No. 47) ¶¶ 12-13. James Brannan, as personal representative of the Estate of Robert Indiana (the Estate), also alleges that McKenzie has fabricated unauthorized works and falsely claimed them to be authentic Indiana

works. Those allegations, among others, were until recently before the American Arbitration

Association (AAA) in a matter captioned *Brannan v. McKenzie*, AAA Case No. 01-19-0001-9789

(the Arbitration).[1]

Gonzalez is a disbarred criminal defense attorney and a former friend and employee of

McKenzie.[2] According to a May 21, 2021 witness statement that he submitted on McKenzie's

behalf in the Arbitration, Gonzalez began working for McKenzie in or around April 2019 to handle

"art sales," but was unable to pursue such sales because of the "accusations of forgeries and

unauthorized works" by the Estate, which "flatlined" the "Robert Indiana Brand." *See* Zerner Decl.

(Dkt. No. 446) Ex. C ¶¶ 2, 14-15.[3]

The relationship between McKenzie and Gonzalez came to an abrupt end in August 2021,

when the two men had a falling out (according to Gonzalez, the issue was what type of fuel

Gonzalez put in McKenzie's vehicle) and Gonzalez contacted MAF's counsel, as well as counsel

---

[1] The Estate was at one time a defendant in this action. *See* First Am. Compl. ¶¶ 131-35. On October 9, 2018, relying on an arbitration clause in an agreement between McKenzie and Indiana, Judge Torres granted the Estate's motion to compel arbitration of McKenzie's crossclaims against it. (Dkt. No. 94.) Thereafter, McKenzie and the Estate pursued claims against one another before the AAA until November 2019, when they mediated those claims in Portland, Maine, signed a settlement term sheet, but – in short order – disagreed as to whether the term sheet was binding. McKenzie took that dispute to the United States District Court for the District of Maine, which on October 19, 2020, sent the parties back to the AAA to determine the "gateway" question of whether the new dispute was arbitrable, as well as the dispute over whether the term sheet was binding and – if not – to resolve the underlying claims between McKenzie and the Estate. *See McKenzie v. Brannan*, 496 F. Supp. 3d 518 (D. Me. 2020). Most recently, on November 22, 2021 (after another year of proceedings before the AAA), the First Circuit vacated and remanded, holding that the district court should have decided the gateway issue itself. *See McKenzie v. Brannan*, __ F.4th __, 2021 WL 5446060, at *10 (1st Cir. Nov. 22, 2021).

[2] Gonzalez was suspended from practice in New York on October 10, 2018, *see Matter of Gonzalez*, 166 A.D.3d 85, 89, 85 N.Y.S.3d 226, 229 (2d Dep't 2018), and disbarred on March 10, 2021. *See Matter of Gonzalez*, 194 A.D.3d 35, 36, 139 N.Y.S.3d 909 (2d Dep't 2021).

[3] Gonzalez also gave a deposition in the Arbitration, at which he was represented by the same attorneys at Markham Read Zerner LLP (MRZ) who represent McKenzie in the Arbitration and in this action. *See* Zerner Decl. Ex. D.

for the Estate in the Arbitration, to provide information for use against McKenzie in both proceedings. Zerner Decl. ¶¶ 4, 12 & Ex. D; *see also* Nikas Ltr. dated Aug. 30, 2021 (Dkt. No. 417) (advising the Court that MAF's counsel "received an unsolicited communication" from Gonzalez, summarizing the information provided by Gonzalez, and seeking a pre-motion conference to address the "issues of contempt and sanctions raised by McKenzie's conduct"). On August 31, 2021, Gonzalez executed a declaration under penalty of perjury, *see* Zerner Decl. Ex. B (Gonzalez Decl.), accusing McKenzie of (among other things) "forging Robert Indiana artworks," instructing another AIA employee to do the same, removing "multiple truckloads" of Indiana artworks from his property in Katonah, New York in advance of a court-ordered inspection by MAF's attorneys in this action, and planning to "conceal the artworks through a sequence of transfers that would hide their true ownership." Gonzalez Decl. ¶¶ 10-18. Gonzalez also attests that McKenzie never intended to honor the term sheet executed with the Estate to settle the Arbitration, and that he plans to "continue selling forged Indiana artworks" regardless of the outcome of this action or the Arbitration. *Id*. ¶¶ 5-8, 17.

On September 10, 2021, the parties submitted the August 31 Gonzalez declaration in connection with their joint request for a discovery and briefing schedule to govern MAF's anticipated sanctions motion against McKenzie. (Dkt. No. 421.) After a conference on September 13, 2021, the Court extended the fact discovery deadline to November 12, 2021, authorized the parties to conduct limited sanctions-related discovery, including a deposition of Gonzalez, directed MAF to file its sanctions motion by November 16, 2021, and scheduled a sanctions hearing for January 4, 2022. (Dkt. No. 422.)

On October 1, 2021, Gonzalez appeared for deposition, without counsel, but refused to answer numerous questions, invoking his Fifth Amendment right to silence with respect to

virtually every inquiry regarding the matters discussed in his August 31 declaration. *See* Zerner Decl. ¶ 20 & Ex. A (Gonzalez Dep. Tr.). Asked about the extent of his privilege assertion, Gonzalez confirmed that he would "be asserting the Fifth Amendment to any and all questions . . . related at all to Michael McKenzie," Gonzalez Dep. Tr. at 7, including all questions concerning his recent declaration, *id.* at 11-12, 20, and all questions related to certain photographs he had sent to MAF's counsel "of artwork on the Katonah property." *Id*. at 14. Gonzales also invoked the Fifth Amendment when asked to disclose his oral communications and produce his written communications with counsel for MAF and/or the Estate, Zerner Decl. ¶ 20; Gonzalez Dep. Tr. at 29, and again when asked whether he had recently "talked to the FBI[.]" Gonzalez Dep. Tr. at 30.

On October 13, 2021, McKenzie filed his motion to compel Gonzalez to testify pursuant to Fed. R. Civ. P. 37(a), supported by the Zerner declaration and a memorandum of law (McKenzie Mem.). (Dkt. No. 445.) McKenzie argues principally that Gonzalez has knowingly waived whatever Fifth Amendment rights he may have had with respect to "all subjects discussed with counsel for [MAF] and counsel for the Estate and addressed in his sworn declaration in this case dated August 31, 2021 and all matters relevant to those subjects," as well as all matters related to the few questions he did answer at the October 1 deposition (including his recent communications with MRZ, his status with the New York bar, and his communications with auction houses, galleries, and/or the press about McKenzie. McKenzie Mem. at 8-10.

Gonzalez was personally served with McKenzie's motion papers on October 28, 2021 (Dkt. No. 451), making his opposition, if any, due seven days later. (*See* Dkt. No. 437.) When he failed to respond, the Court extended his time to do so, *sua sponte*, until November 19, 2021 (Dkt. No. 452.) On November 16, 2021, the parties reported that Gonzalez had contacted them and agreed to testify, and on that premise the Court extended the due date for MAF's sanctions motion to

December 10, 2021, and rescheduled the hearing on that motion to January 19, 2022. (Dkt. No. 455.) However, Gonzalez did not follow through on his agreement to testify. On November 23, 2021, the Court received a letter from Gonzalez dated November 18, 2021, reporting that McKenzie had filed a complaint against him with the Lawyers' Fund for Client Protection (Lawyers' Fund), in which he (McKenzie) indicated that he would also pursue criminal charges against Gonzalez with the Westchester County District Attorney. Gonzalez Ltr. dated Nov. 18, 2021 (Dkt. No. 457), at 1. Gonzalez requested "an extension of time to sort out [his] position with respect to these new circumstances," but assured the Court that he remained "willing to testify and not invoke the 5th Amendment on almost all the issues germane to the litigation in itself." *Id.*

The next day, the Court directed McKenzie to file a supplemental brief addressing (1) "whether and when he filed a claim against Gonzalez with the Lawyers' Fund and/or made a complaint about Gonzalez to the Westchester County District Attorney," and (2) "the impact of the claim and/or complaint on [Gonzalez's] prior waiver of his Fifth Amendment rights with respect to the matters to which he attested in his declaration," together with copies (to be filed under seal, at the "ex parte" level) of his Lawyers' Fund claim and any complaint he made about Gonzalez to the District Attorney. Order dated Nov. 24, 2021 (Dkt. No. 459), at 1-2. The Court also granted Gonzalez an additional seven days – after the supplemental materials were served on him – to file any opposition to the motion to compel. *Id.* at 2.

On December 1, 2021, McKenzie filed his supplemental brief (McKenzie Supp. Mem.) (Dkt. No. 460), together with a second Zerner declaration (Second Zerner Decl.) (Dkt. No. 461), attaching the claim that McKenzie submitted to the Lawyer's Fund and related correspondence

between MRZ and the Lawyers' Fund.[4] He also served his supplemental papers, together with the November 24 Order, on Gonzalez by email. (Dkt. No. 462.) In his supplemental brief, McKenzie argues principally that his recent claims against Gonzalez do not "change the analysis" set out in his moving brief. McKenzie Supp. Mem. at 1.

On December 7, 2021, the Court received another letter from Gonzalez, dated December 2, 2021, explaining that in his complaint to the Lawyers' Fund McKenzie sought "to be compensated $160,000 he paid for Legal Fees paid to me [sic]," on the ground that McKenzie "was unaware of my suspension from Law practice[.]" Gonzalez Ltr. dated Dec. 2, 2021 (Dkt. No. 468), at 1. In fact, according to Gonzalez, attorneys John Markham and Bridget Zerner of MRZ were aware of his bar status "from very early on," as was McKenzie's prior attorney, John Simoni. *Id.* In any event, according to Gonzalez, he worked for AIA as President of the Sales Division and as McKenzie's "personal assistant," but "did no legal work." *Id.* Gonzalez requests that MRZ "be recused from this matter" because Markham and Zerner will be "[his] witnesses at any future hearing before the Lawyers Legal Fund [sic]." *Id.* Gonzalez's December 2 letter does not otherwise address McKenzie's motion to compel. Nor, despite the several extensions granted to him, has he filed any other substantive response to the motion.

On December 3, 2021 (before Gonzalez's December 2 letter was received and docketed), MAF and McKenzie filed a stipulation and proposed order to extend the fact discovery schedule

---

[4] Although the second Zerner declaration was filed under seal, McKenzie explains, in his publicly-filed brief, that he submitted a claim to the Lawyers' Fund on September 23, 2021, and also complained to the District Attorney. McKenzie Supp. Mem. at 1. The Lawyers' Fund, established pursuant to N.Y. Jud. Law § 468-b, provides "reimbursement to law clients who have lost money or property as a result of a lawyer's dishonest conduct in the practice of law. The fund is a remedy for law clients who cannot get reimbursement from the lawyer who caused the loss, or from insurance or other sources." N.Y. State Unified Court Sys., "Complaints About Attorneys," http://ww2.nycourts.gov/attorneys/grievance/complaints.shtml (last visited Dec. 15, 2021).

until 21 days after the Court decides the motion to compel. (Dkt. No. 463.) The Court did not immediately act on that stipulation.

On December 10, 2021, MAF filed its sanctions motion against McKenzie, relying in part on the Gonzalez declaration. MAF seeks sanctions "including but not limited to terminating sanctions, adverse inferences, and contempt." (Dkt. No. 465.)

## Legal Standards

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. This protection also extends to civil litigation with respect to both testimony and document production. Because a deponent need not "answer official questions put to him in any [civil] proceeding . . . where the answers might incriminate him," *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973), he "may legitimately use the Fifth Amendment to avoid having to answer inquiries during any phase of the discovery process." *United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 82 (2d Cir. 1995) (citing 8 Wright, Miller & Marcus, *Fed. Prac. & Proc.* § 2018, at 273 (2d ed. 1994)). Similarly, "[a]lthough the contents of a document may not be privileged, the act of producing the document may be" under the Fifth Amendment. *In re DG Acq. Corp.*, 151 F.3d 75, 79 (2d Cir. 1998) (alteration in original); *see also Fed. Prac. & Proc.* § 2018, at 273 ("Courts have repeatedly held that the privilege against self-incrimination justifie[s] a person in refusing to . . . produce documents.").

However, the Fifth Amendment privilege against self-incrimination "is not self-executing," *In re DG Acq. Corp.*, 151 F.3d at 80, and may be waived if not invoked. *Id.* As relevant here, where a witness "testifies voluntarily, and therefore controls the extent of disclosure, the privilege is waived for the matters to which the witness testifies, and the scope of the waiver is determined

by the scope of relevant cross-examination." *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 262 F.

Supp. 2d 302, 307-08 (S.D.N.Y. 2003) (internal quotation marks and alteration omitted); *see also*

*Mitchell v. United States*, 526 U.S. 314, 321 (1999) ("It is well established that a witness, in a

single proceeding, may not testify voluntarily about a subject and then invoke the privilege against

self-incrimination when questioned about the details.").

The two-pronged test in this Circuit to infer a testimonial waiver turns on (1) whether "the

witness' prior statements have created a significant likelihood that the finder of fact will be left

with and prone to rely on a distorted view of the truth," and (2) whether "the witness had reason

to know that his prior statements would be interpreted as a waiver of the fifth amendment's

privilege against self-incrimination." *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981). Under the

first prong, "[t]he key question is 'whether the witness' prior testimony has created a significant

danger of distortion.'" *OSRecovery*, 262 F. Supp. 2d at 308 (quoting *Klein*, 667 F.2d at 288). The

second prong is satisfied where the witness's prior statements were "testimonial," meaning that

"they were voluntarily made under oath in the context of the same judicial proceeding," and

"incriminating," meaning that "they did not merely deal with matters collateral to the events

surrounding the commission of the crime, but directly inculpated the witness on the charges at

issue." *Id.* at 309 (quoting *Klein*, 667 F.2d at 288) (internal quotation marks omitted).

Waiver of the Fifth Amendment privilege "is not lightly to be inferred," *In re DG Acq.*

*Corp.*, 151 F.3d at 80, and "courts must indulge every reasonable presumption against waiver[.]"

*OSRecovery, Inc.*, 262 F. Supp. 2d at 308 (quoting *Emspak v. United States*, 349 U.S. 190, 198

(1955)) (internal quotation marks omitted). Courts must also be mindful, however, of the policy

underlying the waiver doctrine: to prevent witnesses from "us[ing] the Fifth Amendment as both

a shield and a sword, answering some questions related to a particular topic in a given proceeding and avoiding others, as dictated by whim or self-interest." *OSRecovery*, 262 F. Supp. 2d at 307.[5]

### Analysis

The Court concludes that, to the extent Gonzalez had a valid Fifth Amendment privilege to remain silent as to the matters discussed in his August 31 declaration,[6] he has waived it. The same is true as to the matters he chose to testify about during his October 1 deposition, including his conversations with attorney Markham and whether he had recently contacted any auction houses, galleries, or reporters about McKenzie. *See* Gonzalez Dep. Tr. at 29-30.

The first *Klein* prong – whether Gonzalez's prior statements would leave the finder of fact with a "distorted view of the truth," *see OSRecovery, Inc.*, 262 F. Supp. 2d at 308 – is satisfied because his declaration contains detailed information about McKenzie's asserted misconduct

---

[5] *Brown v. United States*, 356 U.S. 148, 154-55 (1958), illustrates this principle. Brown testified voluntarily on her own behalf during a denaturalization proceeding but refused to answer related questions on cross-examination, arguing that she was entitled to invoke the privilege because she had not actually incriminated herself on direct. The Supreme Court upheld Brown's resulting criminal contempt conviction, reasoning that giving a witness "immunity from cross-examination on the matters he has himself put in dispute" would make of the Fifth Amendment "a positive invitation to mutilate the truth a party offers to tell." *Id.* at 156.

[6] A witness may invoke the Fifth Amendment to decline to answer a deposition question only when he "has reasonable cause to apprehend that answering the question will provide the government with evidence to fuel a criminal prosecution." *OSRecovery*, 262 F. Supp. 2d at 306; *see also Hoffman v. United States*, 341 U.S. 479, 486 (1951) (the privilege may be invoked "whenever a witness reasonably believes that his testimony could furnish a link in the chain of evidence needed to prosecute him for a crime"). The witness claiming the privilege has the burden of demonstrating that he is "confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *United States v. Apfelbaum*, 445 U.S. 115, 128 (1980). During his deposition in this action, Gonzalez stated that attorney Markham "informed me that I might need a lawyer on all questions related to American Image Art," Gonzalez Dep. Tr. at 5, but has not otherwise explained the basis on which he believed (or if he believed) that his testimony could be used to prosecute him. When expressly asked for "the reason you're taking the Fifth Amendment today," he replied, "I'll take the Fifth Amendment on that question." Gonzalez Dep. Tr. at 16-17. In his motion to compel, however, McKenzie focuses his argument on the waiver issue rather than discussing whether Gonzalez ever had any grounds for invoking the Fifth Amendment.

which, "if allowed to stand without cross-examination," would "prejudice a party to the litigation," namely, McKenzie himself. *Id.* at 308-09 (quoting *Klein*, 667 F.2d at 288) (internal quotation marks omitted).[7] Assuming (without deciding) that Gonzalez faced genuine "hazards of incrimination" if he testified about the matters covered by his August 31 declaration or his October 1 deposition testimony, *Apfelbaum*, 445 U.S. at 128, he had the right to remain silent about those matters in this civil proceeding. *See Lefkowitz*, 414 U.S. at 77; *Certain Real Prop.*, 55 F.3d at 82. However, "[t]he time for a witness to protect himself is when the decision is first presented to him[.]" *OSRecovery, Inc.*, 262 F. Supp. 2d at 308 (quoting *Klein*, 667 F.2d at 288). Once a witness opens the door by testifying voluntarily, "[t]he privilege is waived for the matters to which the witness testifies[.]" *Id.* (quoting *Mitchell*, 526 U.S. at 321) (alteration in original). To hold otherwise would be "highly prejudicial" to the parties here. *Id.* at 309.

The second *Klein* prong – whether Gonzalez had "reason to know that his prior statements would be interpreted as a [Fifth Amendment] waiver," *OSRecovery*, 262 F. Supp. 2d at 308 (quoting *Klein*, 667 F.2d at 287) – is also satisfied, because Gonzalez's statements in his declaration and at his deposition were clearly "testimonial" and just as clearly "voluntarily made under oath in the context of the same judicial proceeding[.]" *Knopf v. Esposito*, 2021 WL 276539, at *1 (S.D.N.Y. Jan. 27, 2021) (quoting *Klein*, 667 F.2d at 288).[8] Moreover, although a witness need not understand the nuances of Fifth Amendment jurisprudence to waive his rights thereunder, Gonzalez, who had a long career as a criminal defense attorney, undoubtedly understood that his

---

[7] Gonzalez's refusal to answer questions at his deposition may also prejudice MAF in this action and the Estate in the Arbitration.

[8] The May 21, 2021 witness statement that Gonzalez executed in the Arbitration, standing alone, did not constitute a waiver of any applicable Fifth Amendment rights in this proceeding, because "[a] waiver of the privilege in one proceeding does not affect a witness' rights in another proceeding." *Knopf*, 2021 WL 276539, at *1 (quoting *United States v. James*, 609 F.2d 36, 45 (2d Cir. 1979)).

voluntary statements "would be interpreted as a [Fifth Amendment] waiver[.]" *OSRecovery, Inc.*, 262 F. Supp. 2d at 308 (quoting *Klein*, 667 F.2d at 287).

What is less obvious is whether Gonzalez's prior statements "directly inculpated [him] on the charges at issue," *OSRecovery*, 262 F. Supp. 2d at 309 (quoting *Klein*, 667 F.2d at 288), particularly since neither Gonzalez nor McKenzie has identified any "charges at issue." However, as Judge Kaplan explained in *OSRecovery*, "the pivotal attribute of 'incriminating' testimony, as *Klein* used the word, is the witness's ability to have invoked the privilege, not whether the testimony given actually harmed the witness." *Id.* at 310. Any other rule would "disallow" a finding of waiver "precisely where it is most justified – i.e., where the witness has *exculpated* him- or herself and then used the privilege to avoid cross-examination or other efforts to test the witness's assertions." *Id.* at 309 (emphasis added);[9] *see also Textron Fin. Corp. v. Eddy's Trailer Sales Inc.*, 2010 WL 1270182, at *11 (E.D.N.Y. Mar. 31, 2010) (finding privilege waived where civil defendant made statements at prior deposition session under circumstances in which he "had the right to invoke the privilege and refuse to answer the questions"). Here, as in *OSRecovery*, whatever right Gonzalez had to remain silent about the subjects discussed in his August 31 declaration was waived when he voluntarily signed that document. Similarly, whatever right he had to remain silent about his communications with attorney Markham and with auction houses,

---

[9] *OSRecovery* was a civil action in which plaintiffs claimed that Johnson defrauded investors in a "guaranteed high yield investment program." 262 F. Supp. 2d at 303. In an affidavit submitted prior to his deposition, Johnson denied that he was an employee, officer, director, or shareholder of various entities through which the fraudulent scheme was allegedly carried out. *Id.* at 307. At deposition, however, Johnson refused to answer questions about his relationship with those entities. *Id.* at 304 n.8. The court held that Johnson's pre-deposition affidavit satisfied both *Klein* prongs, even though it "merely disavow[ed] any present connection" with the entities at issue, *id.* at 309, because in that affidavit he "gave information which could not have been compelled over his privilege against self-incrimination. That is all that is required for a finding of waiver by the making of a voluntary statement under oath." *Id.* at 310. Consequently, Johnson was required to appear again for deposition and testify "with regard to matters relevant to his affidavit." *Id.*

galleries, and reporters was waived when he answered questions on those topics during his October 1 deposition.

That McKenzie filed a civil claim against Gonzalez with the Lawyers' Fund after Gonzalez signed his August 31 declaration does not alter the Court's analysis. *First*, insofar as can be determined from Gonzalez's letters to this Court, the issues before the Lawyers' Fund are whether Gonzalez performed "legal work" for McKenzie while suspended and/or disbarred, and if so whether McKenzie was aware that he was prohibited from doing so. *See* Gonzalez Ltr. dated Dec. 2, 2021, at 1-2. These issues are largely distinct from the claims that Gonzalez makes in his declaration concerning art forgery, discovery misconduct, and possible concealment of assets by McKenzie. *Second*, Gonzalez addresses his working relationship with McKenzie in the August 31 declaration, attesting (among other things) that he "worked for [McKenzie] in various capacities," accompanied him to the mediation in Portland, Maine, discussed the resulting settlement term sheet with him, advised him that the proposed settlement "was a good deal for him," further advised him to stop sending emails about the term sheet, and told him not to hide evidence in this action. Gonzalez Decl. ¶¶ 2, 4, 6-9, 15; *see also* Gonzalez Ltr. dated Dec. 2, 2021, at 1-2 (asserting that Gonzalez "did no legal work" for McKenzie and attended the mediation "as his Assistant"). Thus, Gonzalez has also waived whatever right he had to remain silent as to the nature of the work that he performed for McKenzie while prohibited from practicing law. *See OSRecovery*, 262 F. Supp. 2d at 308-10. *Third*, the filing of the Lawyers' Fund claim cannot have provided Gonzalez with "new grounds for apprehension," *Knopf*, 2021 WL 276539, at *1 (quoting *United States v. Miranti*, 253 F.2d 135, 140 (2d Cir. 1958)), because he was necessarily aware, throughout his employment

with McKenzie, not only that he was prohibited from practicing law,[10] but also that noncompliance with that directive could be prosecuted as a crime. *See* N.Y. Jud. Law §§ 485, 485-a, 486.

"If the privilege is waived [as] to testimonial admissions, it is waived as to documentary admissions on the same subject matter as well." *In re Donald Sheldon & Co., Inc.*, 93 F. Supp. 2d 503, 505 (S.D.N.Y. 2000). In this case, however, it is not clear whether the deposition subpoena that McKenzie served upon Gonzalez included a request for the documents that McKenzie now seeks: "his communications with [MAF's] counsel and with the Estate's counsel as well as the native photographs that he provided to these attorneys and any other documents he provided to them or that are related to these disclosures to [MAF] and the Estate." McKenzie Mem. at 10; *see* Zerner Decl. ¶ 19 ("I then arranged for a rush service of a subpoena for deposition testimony on Gonzalez[.]"). If the Gonzalez subpoena expressly requested production of these documents, Gonzalez must produce them. Alternatively, McKenzie may obtain them from MAF's attorneys, upon whom he has also, apparently, served a subpoena. Zerner Decl. ¶ 24.[11]

## Conclusion

For the foregoing reasons, McKenzie's motion to compel (Dkt. No. 444) is GRANTED.

It is hereby ORDERED that Gonzalez reappear for deposition, on or before **January 7, 2022**, and answer the questions put to him with regard to all "matters relevant to" his August 31

---

[10] The Appellate Division ordered Gonzalez to "desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law[.]" *Matter of Gonzalez,* 166 A.D.3d at 90, 85 N.Y.S.3d at 230.

[11] A number of photographs and emails sent by Gonzalez to MAF's counsel have now been submitted to the Court in connection with MAF's sanctions motion against McKenzie. *See* Nikas Decl. (Dkt. No. 467) Exs. 45, 47-50. Fairness demands, however, that McKenzie see all of them.

declaration and October 1 deposition testimony. *OSRecovery*, 262 F. Supp. 2d at 310. McKenzie

shall appear for his continued deposition on or before **January 14, 2022**.

It is further ORDERED that McKenzie serve a copy of this Order on Gonzalez by email

and file proof of such service on the docket.

It is further ORDERED that the Court will hold a telephonic conference on **December 21,**

**2021, at 10 a.m.** At that time, the parties are directed to call (888) 557-8511 and enter the access

code 7746387#. Counsel should be prepared to discuss the following issues (which they may also

address, if they wish, in a joint letter filed no later than **12:00 noon on December 20, 2021**):

(a)     What changes should be made to the schedule for McKenzie's opposition and reply

papers and for the hearing with respect to the sanctions motion.

(b)     Whether the second Zerner declaration and its attachments should (i) remain under

electronic seal but be made available to MAF as well as to McKenzie and the Court;

or (ii) be unsealed; and

(c)     Whether MRZ should be disqualified from representing McKenzie in this action in

light of its previous representation of Gonzalez as a witness in the Arbitration.[12]

Dated: December 15, 2021
       New York, New York                          **SO ORDERED.**

                                                   **BARBARA MOSES**
                                                   **United States Magistrate Judge**

---

[12] Gonzalez's contention that MRZ attorneys will be witnesses at a future hearing before the Lawyers' Fund, *see* Gonzalez Ltr. dated Dec. 2, 2021, at 1, is not grounds for disqualifying them in this action. *See* N.Y. Rules of Prof'l Conduct, Rule 3.7(a) ("A lawyer shall not act as advocate before a tribunal *in a matter in which* the lawyer is likely to be a witness on a significant issue of fact[.]") (emphasis added).