UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MORGAN ART FOUNDATION LIMITED, <br><br> Plaintiff, <br><br> -against- <br><br> MICHAEL MCKENZIE, et al. <br><br> Defendants. | Case No. 18-cv-04438-AT-BCM |

**DECLARATION OF JOHN J.E. MARKHAM, II, ESQ.**

I, John J.E. Markham, II, declare under the penalty of perjury as follows:

1.      I am a partner at the law firm Markham Read Zerner LLC ("MRZ") located in Boston, Massachusetts and Waldoboro, Maine, and I have appeared on behalf of Michael McKenzie d/b/a American Image Art ("AIA") in the above-captioned action along with my partner, Bridget Zerner, as well as in the other proceedings referred to below. The facts stated herein are based upon my own personal knowledge gained during my representation of Mr. Michael McKenzie and if called upon to do so I could and would testify competently to the statements set forth below.

**Timing and Extent of Representation**

2.      After preliminary discussions between July 2, 2020 and July 9, 2020, MRZ was formally retained to assist McKenzie and his dba, AIA, on July 9, 2020. Since then, both Zerner and I have appeared in this action. We have also appeared on behalf of McKenzie and AIA in the related pending New York arbitration between McKenzie and the Estate of Robert Indiana, now pending (but recently stayed) under the auspices of the American Arbitration Association,  and we have appeared for McKenzie and AIA in a federal case pending in the District of Maine

which McKenzie brought in July, 2020 to enforce a Binding Term Sheet that was reached between himself and the Indiana Estate after a mediation had been successfully completed in Portland, Maine on November 26, 2019, and which Term Sheet will, if it is enforced, end the costly arbitration between the Estate and McKenzie. MRZ has also prosecuted the appeal to the First Circuit from a decision of the above-referenced Maine District Court, now reversed, referring the matter of the enforceability of the Binding Term Sheet to the arbitration in New York instead of deciding that enforceability itself. That reference by the District Court to arbitration was ordered on October 19, 2020 and since then the arbitration has been extensively litigated, under McKenzie's objection that the matter of the enforceability of the Binding Term Sheet should have been decided by the Maine District Court rather than by the arbitrators in New York.

3.      All of these proceedings are overlapping factually and to a certain extent legally. What has been learned in one proceeding assists with the others. From all of the proceedings above, MRZ has immersed itself in much detail with the issues in these related litigations, making trips to visit the client in Westchester County, New York, attending many depositions and preparing for the same, speaking by telephone conference with McKenzie (and Gonzalez, see below) on many occasions and with others, briefing the frequent matters in the venues involved, including the many submissions to this Court, the arbitration panel, and to the District of Maine and the First Circuit. MRZ has also filed papers on a more limited basis and appeared in and monitored the Indiana Estate's Probate Court proceeding in Knox County, Maine which now has before it a request by the Maine Attorney General to disgorge $3.5 million in legal fees charged the Estate by the lawyers and personal representatives of the Estate. That shows just how intense this litigation has been. While all of these matters have been time consuming, most of our

time has been incurred reviewing many thousands of documents relevant to these related cases,

including documents produced by our client and by the Estate, Morgan, and others, and in

consultations about those documents with each other and Mr. McKenzie.

4.       In all, MRZ has spent at least conservatively 500 hours on these cases and as a

consequence has become immersed with and very familiar with the complex circumstances in

which Mr. McKenzie finds himself. If he does not prevail in this case, his adversaries are seeking

many millions of dollars in damages as well as future control over the valuable part of the

Indiana Artwork which McKenzie produced with Indiana for ten years during which he

advanced royalties of $10,000,000 to Indiana.  Conversely, if Mr. McKenzie does prevail in this

case and the others, his damages gained may likewise be in the millions.

5.       If MRZ is disqualified at this stage of this case it would create a serious hardship

on McKenzie both financially and tactically since he would have to start over in these

interrelated and complicated cases which are now, to say the least, well underway. Even were

MRZ only disqualified from representing McKenzie in this action, that would be a serious

hardship and come with no assurance that disqualification would not be sought in the other cases.

### The Involvement of Osvaldo Gonzalez

6.       In my first telephone call with Mr. McKenzie, on or around July 2, 2020, he and a

man, I later came to know by voice and image, identifying himself as Os Gonzalez, was also on

the telephone. Both he and Mr. McKenzie stated to me that Gonzalez was an assistant to

McKenzie, and he helped in-house with legal affairs and helped with sales. Gonzalez told me in

this first conversation that he had played a significant role in negotiating the Binding Term Sheet

which McKenzie sought to have MRZ enforce somehow since the Estate, they both stated, had

backed out of that agreement. Gonzalez said that he could help with this issue, the enforceability

3

of the Binding Term Sheet, because he had a lot of the conversations with the lawyers for the

Estate at the mediation and then after the Term Sheet (settling the case with the Estate) had been

signed but before the Estate repudiated it, he told me. From that first conversation forward,

Gonzalez was involved in communications as part of our representation of McKenzie and AIA,

because he was employed by AIA, acted as an assistant to McKenzie on the latter's art business,

and was needed to assist with gathering documents as well as to speak to his own knowledge of

the negotiations with the Estate during and after the Portland mediation and about his knowledge

of the Binding Term Sheet dispute between McKenzie and the Estate.

7.      The MRZ formal retainer agreement was dated July 9, 2020 and addressed to both

McKenzie and Gonzalez on behalf of AIA. MRZ was retained to represent AIA and McKenzie,

as specifically stated in the letter, not Gonzalez. As the representation progressed, Gonzalez was

involved in many conversations, mostly by telephone, and on many email communications

where his input was needed to assist with our representation of AIA and McKenzie given what

he had learned during his employment with McKenzie.

8.      MRZ did agree to represent Mr. Gonzalez for and in the run up to his

deposition noticed in the Estate arbitration. There is little or no dispute about that limited

representation involved, as Gonzalez stated at his first deposition:

> Q. [Counsel for Estate] Okay. And when did you retain Mr. Markham and Ms. Zerner as
> your attorney?
> A. I'm not actually sure. Six months ago.[1] Five or six months ago.
> Q. So you retained them for a purpose other than for preparing for this testimony today?
> A. Well, he's the attorney representing American Image Art and Michael McKenzie in
> their legal actions in Maine and the Southern District of New York.
> Q. I understand that. I'm just trying to understand when Mr. Markham and Ms. Zerner
> became your attorney.

---

[1]      Six months or anything like it is too much time. As near as I recall MRZ did not
commence discussing the depositions of either Gonzalez or McKenzie until close before they
occurred in January 2021 and that was just six months after MRZ commenced the representation.

A. Well, I -- only to the extent that I work at American Image Art.

\*         \*         \*

Q. Does Mr. Markham or Ms. Zerner represent you in any other capacity?

A. No.

Exhibit A to this Declaration, Excerpt of Gonzalez Deposition Transcript, 1/22/2021, Tr. at pp. 16, 18.

Gonzalez reaffirmed the above at his deposition on October 1, 2021

Q. [Counsel for Estate] And I believe you said before that you believe that Mr. Markham represented you during that conversation.

A. I believe he was representing AIA. I was working for AIA at the time.

Q. So you understood that he was representing you because he represented American Image and you were an employee of American Image at the time?

A. Yes.

ECF 446-1, Gonzalez Deposition Transcript, 10/1/2021, at p. 19.

9.       After the falling out between Gonzalez and McKenzie this past August,

and after Gonzalez began contacting counsel for MAF and for the Estate to assist them

against McKenzie, undersigned counsel was asked by both counsel for MAF, Mr. Lucas,

and for the Estate, Mr. Boyle, if they could consult with Gonzalez and wanted to know if

I represented him.  I informed them as follows in an email to them:

I am sorry that I have taken a while to respond to your query about whether I represent Os Gonzalez. I have discussed this matter with Os, and we agree as follows:

I represented Os for the purposes of his deposition taken in the AAA case, and in relation to conversations with about that case (AAA, not Morgan) in the runup to and the immediate aftermath of his deposition in the AAA case. I have not represented him in relation to anything else whether anything in the Morgan case or otherwise. In particular, I do not represent him in any matter relating to the subject matter about which I understand he has spoken to Luke Nikas and have so informed Luke. I thus had no objection, nor could I, to Luke's conversation with Os or any other lawyer from Quinn Emanuel speaking to Os. Likewise and for the same reasons I have no objection, nor could I, to any conversations he may have with any other lawyer, including yourself or anyone from Venable, about the subject matter about which he seeks, as I understand it, to speak to you about, namely his observations about conduct engaged in by Mike McKenzie, or conversations he has had with Mike McKenzie about that

5

conduct, since the taking of Os' deposition because (1) my representation of Os
was for the limited and now concluded purpose of his deposition, (2) that
representation is now long terminated, and (3) the discussions, if they take place,
have nothing to do with my limited and now concluded representation of him.

I am copying Os Gonzalez on this e-mail and he has told me that he wishes to
speak to a representative of Venable and I do not nor can I have any objection.

ECF 446-4, Markham Email to counsel for MAF and the Estate, 8/27/2021.

10.     Gonzalez was shown this email during his October 1, 2021 deposition and
confirmed the same. *See*, ECF 446-1, pp. 26-29.

11.     As best I can recall, virtually all of the conversations I had with Gonzalez, from
the very beginning of our representation of McKenzie/AIA up until Gonzalez left McKenzie and
started working with the adverse lawyers, were in the presence of Mr. McKenzie.  I recall an
exception where Gonzalez telephoned me in or around March, 2021 to discuss a telephone
meeting's logistics and we spoke about whether he thought McKenzie should accept a settlement
that was being offered. This subject matter was not in relation to anything other than MRZ's
representation of McKenzie and AIA nor was the substance to be withheld from McKenzie.
Apart from that, my recall is that McKenzie and Gonzalez always called together and the several
meetings I had in person were with both of them. On occasion, Gonzalez would telephone me to
state that McKenzie wanted to speak later or to delay a previously set time to speak but the
conversation would not involve any legal consultation. I do not recall any other discussions with
Gonzalez except with McKenzie. Any emails which he was sent by me were copied to McKenzie
and any he sent to me were so copied or sent to McKenzie with the following two exceptions
from my emails to or from Gonzalez: (1) an email dated March 15, 2021 in which I inquired
about McKenzie's health after he had a coronary event and (2) an email Gonzalez sent to Zerner

and me dated January 30, 2021 concerning some artwork he had created or somehow catalogued.

All other emails, to or from Gonzalez, were sent to McKenzie as well concurrently.

      12.     If there was any other occasion that I or my partner spoke to Gonzalez without

McKenzie present, and I do not recall any such conversations, prior to August 19, 2021 (when

his employment by AIA terminated), it was a continued discussion of the McKenzie/AIA

litigation, and we would have discussed matters known to McKenzie or to be discussed with

McKenzie. Our firm did not represent, consult with, or advise Gonzalez personally or separately

on matters to be kept confidential from McKenzie.

      I declare under penalty of perjury that the foregoing is true to the best of my belief.

      Executed this 20th day of December, 2021 in Knox County, Maine.

                              */s/ John J.E. Markham, II*
                              John J.E. Markham, II

## Certificate of Service

      I hereby certify that this document and its exhibit filed through the CM/ECF system will be sent electronically to the registered participants as identified and paper copies will be sent to any indicated as non-registered participants on December 20, 2021.

      This filing will be served today upon non-party Osvaldo Gonzalez via his known email addresses: og@ogcool.com, og@og.cool and ogcool@icloud.com.

                              */s/ Bridget A. Zerner*
                              Bridget A. Zerner