UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORGAN ART FOUNDATION LIMITED,

Plaintiff,

-against-

MICHAEL MCKENZIE, et al.

Defendants.

Case No. 18-cv-04438-AT-BCM

**DECLARATION OF JOHN J.E. MARKHAM, II, ESQ.**

I, John J.E. Markham, II, declare under the penalty of perjury as follows:

1. I am a partner at the law firm Markham Read Zerner LLC located in Boston, Massachusetts and have appeared on behalf of Michael McKenzie d/b/a American Image Art in the above-captioned action along with Bridget A. Zerner; and I have appeared on behalf of McKenzie in the related pending arbitration involving the Estate of Robert Indiana (the "Estate"), the District of Maine action by which McKenzie sought to stay the arbitration and enforce a settlement agreement reached earlier (the Binding Term Sheet) and the First Circuit appeal resulting in the reversal of the decision not to stay that arbitration and the Maine District case on remand which will decide whether that Term Sheet is binding now that the First Circuit reversed the initial decision of that District Court. Through all of these actions, I have participated actively in these proceedings, and I have learned the facts stated herein based upon my own personal knowledge and if called upon to do so I could and would testify competently to the statements set forth below.

2. In December 2020, Larry Sterrs of the Star of Hope, beneficiary to the Estate, put me in touch with their counsel at that time, Donn Zaretsky of John Silberman Associates, to

investigate whether any settlement could be reached similar to the settlement reached between Star of Hope and Morgan. *See*, ECF 345, Declaration of Larry Sterrs of the Star of Hope ("SOH"), 9/21/2020, describing settlement reached between Morgan and SOH without the Estate. Star of Hope and Morgan were thus working together and in communication as of this time. Attached as **Exhibit A** is a true and accurate copy of the email chain arranging contact with Zaretsky.

3. As part of these settlement discussions, we agreed that McKenzie and Donn Zaretsky should speak directly, and could do so without my presence, and as a result they had a telephone conversation in late January or early February 2021. Attached to this Declaration as **Exhibit B** is a true and accurate copy of the email chain showing arrangement for this call. I followed up with counsel thereafter to continue these discussions including bringing in the Estate on possible settlement.

4. The settlement discussions continued with Donn Zaretsky for SOH as well as with Luke Nikas of Quinn Emanuel for Morgan. We were contemplating a buyout of the Indiana artworks possessed by McKenzie and discussed having an evaluation of this artwork to be transferred to the SOH as part of the proposed settlement where McKenzie was seeking guaranteed payments in exchange. The point of the art viewing was to evaluate it as to what would be an appropriate payment to McKenzie for it as part of these negotiations.

5. During these discussions neither Donn Zaretsky nor Luke Nikas expressed to me any surprise that McKenzie possessed Indiana artwork published by AIA.

6. On May 10, 2021, we provided McKenzie's summary inventory of artwork he held to these parties through Zaretsky as part of these discussions. *See,* attached **Exhibit C**, a true and accurate copy of the emailed inventory I sent to him.

7. On May 14, 2021, Zaretsky emailed me excerpts from McKenzie's testimony before the Probate Court – the same testimony cited by Morgan in its motion papers to claim McKenzie lied – and I explained to Zaretsky that McKenzie testified that he returned all the Indiana artwork owned by the Estate (which would be artist's proofs owned by Indiana under his contract with McKenzie) but that McKenzie contends that the other Indiana artworks he possesses are his and did not belong to the Estate. *See,* attached **Exhibit D,** a true and accurate copy of the email chain including that exchange.

8. The same day, Zaretsky emailed stating "I spoke with the folks here & we'd like to take you up on your offer to come inspect the car. [sic] I can come up to the storage facility next week (this way we'd get to meet), and I'd be accompanied by Simon, Paul, and Amelie Salama-Caro. I assume Mike would not be present." Ex. D, p. 1. Again, it was clear that Morgan was in the loop on all these conversations. This email indicated that SOH/Morgan preferred that McKenzie not be present for their visit.

9. After some back and forth on a mutually convenient date, we confirmed May 25, 2021 as the date of the artwork viewing pursuant to settlement. On May 24, 2021, Zaretsky emailed me a list of persons to be attending the evaluation of the artwork which included the Salama-Caros and Luke Nikas, counsel for Morgan. Attached as **Exhibit E** is a true and accurate copy of the email chain. I responded advising that I would not be able to attend but that our firm's associate, Tom McCarty, would be attending and that Osvaldo Gonzalez of AIA, would be attending and McKenzie would not. *Id*.

10. I did not attend this visit at the Katonah property on May 25, 2021 contrary to what Luke Nikas asserts in his declaration (at ECF 467 at ¶3). Attached as **Exhibit F** is a true and accurate copy of a Declaration of Thomas J. McCarty describing the art inspection that day

including that Gonzalez represented Mr. McKenzie during this inspection and showed the Morgan inspection team the location of artwork and gave them a tour of the studio. It was not Annette Vessecchia who we designated as being in charge that day, as Gonzalez recently claimed in his deposition. Gonzalez was supposed to show the Morgan/SOH visitors all the artwork.

11. After this inspection, the parties were unable to reach a settlement and Morgan returned to this Court claiming that during the inspection they had seen documents at McKenzie's studio that they asserted should have been produced in discovery in this case and demanded that a special master be appointed at McKenzie's expense and various other relief. ECF 393. This Court denied Morgan's demand for a special master but extended discovery deadlines and ordered the parties, as was agreed to by McKenzie's counsel at the court conference, to meet and confer regarding arranging a Rule 34 inspection of McKenzie's studio in Katonah. ECF 395, Order.

12. During discussions to reach a jointly proposed stipulation for inspection, counsel for Morgan, Luke Nikas, maintained the position that "none of the Parties may be present during the inspection" thus prohibiting McKenzie from being present. Eventually, Nikas agreed that McKenzie could be on his property and nearby for consultation as needed but maintained his position that "[o]nly the lawyers will be present in the studio while the documents are being reviewed and collected" as provided in the joint stipulation filed with the Court (at ECF 407).

13. I also questioned why Nikas included "artwork" in the draft inspection terms when the inspection had been ordered for inspection of documents seen at the May visit that Morgan asserted should have been produced in discovery. In our email exchange of revised drafts of our stipulation, I said to Nikas "This still says "artwork" and it was my impression from

our discussion the other day that you were not planning to copy artwork." *See,* ECF 467-5 at p. 2, our email exchange included as an exhibit to Morgan's motion papers. Nikas confirmed to me (in that email exchange on July 20, 2021) that:

> … I don't intend to inventory all the artwork, because that was basically done before. But I do want to keep that language because I am intending to produce some of those photos as part of the proposed production and I also don't want to be completely precluded from photographing any artwork at our inspection. As a practical matter, however, I believe most if not all of the art photography is done.

14. I discussed with McKenzie in a few telephone calls the fact that the Court had ordered an inspection at his property so that Morgan's counsel could review and copy documents observed in his studio believed to be relevant to the lawsuit. On July 18, 2021, I emailed McKenzie that there would be a "records inspection."

15. The parties reached a jointly proposed stipulation as to the inspection filed on July 20, 2021 (ECF 407) which was then entered as a Stipulation and Order by the Court on July 21, 2021. ECF 408. The Stipulation and Order required that only counsel attend and conduct the inspection and thus that only lawyers would be present in the studio and not McKenzie (unless needed to be consulted). ECF 408, Order, ¶2.

16. This second inspection by Morgan occurred on August 5, 2021 and I attended at the Katonah property that day. While McKenzie was in his home near the studio on his property, Gonzalez was again there and observed the inspection.

17. Gonzalez has been present since the beginning of my firm's representation of McKenzie starting in June, 2020. He told me at our first lengthy telephone meeting that he had been present at the mediation in Portland in where the Binding Term Sheet was negotiated and that he negotiated with the Estate lawyers for McKenzie.

18. A few weeks after the court-ordered inspection, there was a falling out between Gonzalez and McKenzie on August 17, 2021. Gonzalez called me that day. He was audibly upset, with his voice shaking and he was speaking very loudly. He stated to me that earlier that day he was running an errand delivering a sculpture with the McKenzie van and that he seriously cut his arm while trying to take the sculpture out of the van for delivery. He said he was angry about that. Then his voice got even more angry, still speaking loudly and also rapidly, and he told me, as best as I can recall his actual wording but this was definitely the substance of what he told me if not the exact words: "I can't take it anymore. I cut my arm badly when I was getting some artwork out of the van I was using to deliver it. Then I put gas in the diesel engine of that van and it had to be drained and I had to pay $350 dollars for it. Mike refuses to pay me back although I was driving it for him. I am done."

19. Thereafter, in a subsequent telephone conversation held very shortly after the first one, Gonzalez told me had gone to lawyer Luke Nikas for Morgan to tell them that McKenzie had been forging art and had moved it to hide it from Morgan and the Estate. He told me he was also going to speak to the lawyers for the Estate, Messrs. Vasquez and Boyle, and that Luke Nikas had arranged for him to talk to the FBI about what he said were McKenzie's crimes.

20. On August 30, 2021, my firm filed a letter on behalf of McKenzie (ECF 416) with this Court advising:

> We write on behalf of Defendant Michael McKenzie, d/b/a American Image Art, (herein, "McKenzie") to disclose a matter relating to this Court's recent, stipulated Court Order (ECF No. 408), entered on July 21, 2021. That Order directed that Michael McKenzie allow counsel for Morgan Art Foundation ("Morgan") access to McKenzie's studio at 171 Golden Bridges Road in Katonah, New York so that they could inspect its contents for documents found therein and copy those documents as desired.
>
> That inspection took place on August 5, 2021, and a great deal of copying was

> done at that time. At the instruction of Michael McKenzie, however, I am writing to inform Your Honor that not all of the artwork was available for inspection. A substantial amount of the artwork involved had been moved to a new location before the inspection. Mr. McKenzie will make this artwork available for counsel for Morgan to inspect at their reasonable convenience. Also, after such inspection Mr. McKenzie has no objection to a deposition to explain the circumstances behind the movement of that artwork out of his studio and into a new location and, in fact, he welcomes such a deposition.

*See*, ECF 416; 418, McKenzie Letters to Court on August 30, 2021.

21. On July 27, 2021, on behalf of McKenzie, our firm authorized the Estate, through its other counsel in the AAA matter, to share with Luke Nikas, now acting as Star of Hope counsel (as well as Morgan's counsel) all materials in the Arbitration that had been subject to confidentiality restrictions. On November 15, 2021, I emailed Nikas confirming that we understood that he was provided full access to all materials in the arbitration as stipulated in July. Attached as **Exhibit G** are true and accurate copies of those email chains. This issue arose based on an allegation that McKenzie had failed to produce a witness statement from the arbitration relevant to this case. We agreed to the scheduling of the deposition of that witness (Scott Hamilton) and the deposition was completed. We have not heard anything further on this matter and thus believe that Nikas, on behalf of Morgan (as well as SOH), had been provided access by the Estate to all the discovery in the arbitration produced by McKenzie as well as the Estate and thus it would not need to be reproduced again by McKenzie.

22. I have had several phone calls and emails with counsel for Morgan, Luke Nikas, since September 2021 and not once did he raise the issue of further access to the AIA Art Archive or seek to confer on the matter.

I declare under penalties of perjury that the forgoing is true and correct.

Executed this 17th day of January, 2022 in Boston, Massachusetts.

*/s/ John J.E. Markham, II*

John J.E. Markham, II (JM4744)
MARKHAM READ ZERNER LLC

**Certificate of Service**

I hereby certify that this document with exhibits filed through the CM/ECF system will be sent electronically to the registered participants as identified and paper copies will be sent to any indicated as non-registered participants on January 17, 2022.

*/s/ Bridget A. Zerner*
Bridget A. Zerner