UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MORGAN ART FOUNDATION LIMITED,<br><br>PLAINTIFF,<br><br>-AGAINST-<br><br>MICHAEL MCKENZIE D/B/A AMERICAN IMAGE ART,<br><br>DEFENDANT. | Case No. 1:18-cv-04438-AT-BCM |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR TERMINATING SANCTIONS**

Dated: January 27, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Luke Nikas
Maaren A. Shah
Ryan Rakower
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
lukenikas@quinnemanuel.com
maarenshah@quinnemanuel.com
ryanrakower@quinnemanuel.com

*Attorneys for Plaintiff Morgan Art Foundation Limited*

TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................................... 1
ARGUMENT ....................................................................................................................................... 3
I. TERMINATING SANCTIONS AGAINST MCKENZIE ARE WARRANTED AND
   NECESSARY ............................................................................................................................ 3
   A. McKenzie's Misconduct Was Willful And In Bad Faith ......................................... 3
   B. McKenzie's Pattern Of Misbehavior Is Certain To Continue ................................. 6
   C. McKenzie's Discovery Misconduct Was Never Corrected ..................................... 8
   D. McKenzie's Conduct Has Caused MAF Significant Prejudice ............................... 8
   E. Lesser Sanctions Would Not Be Sufficient ............................................................. 9
II. MCKENZIE SHOULD PAY MAF'S ATTORNEYS' FEES AND COSTS ............................................ 10
CONCLUSION ................................................................................................................................ 10

**TABLE OF AUTHORITIES**

*Cases*                                                                                                   **Page**

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
　　602 F.2d 1062 (2d Cir. 1979) .................................................................................... 6

*DeCastro v. Kavadia,*
　　309 F.R.D. 167 (S.D.N.Y. 2015) ............................................................................. 10

*Design Strategy, Inc. v. Davis*,
　　469 F.3d 284 (2d Cir. 2006) ...................................................................................... 9

*Farmer v. Hyde Your Eyes Optical, Inc.*,
　　2015 WL 2250592 (S.D.N.Y. May 13, 2015) ........................................................... 6

*Ford v. Am. Broad. Co., Inc.*,
　　101 F.R.D. 664 (S.D.N.Y. 1983) ............................................................................ 6, 7

*John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*,
　　845 F.2d 1172 (2d Cir. 1988) .................................................................................. 6, 7

*JSC Foreign Econ Assoc. Tech. v. Internl. Dev.and Trade Serv.,*
　　2005 WL 1958361 (S.D.N.Y. Aug. 16, 2005) ......................................................... 10

*Lawrence v. City of N.Y.*,
　　2018 WL 3611963 (S.D.N.Y. Jul. 27, 2018) ........................................................... 10

*Masi v. Steely,*
　　242 F.R.D. 278 (S.D.N.Y. 2007) ............................................................................... 6

*McMunn v. Memorial Sloan-Kettering Cancer Center*,
　　191 F. Supp. 2d 440 (S.D.N.Y. 2002) ..................................................................... 10

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. and Rest. Emps. Int'l. Union*,
　　212 F.R.D. 178 (S.D.N.Y. 2003) ............................................................................... 7

*New York State Nat. Org. For Women v. Terry,*
　　697 F. Supp. 1324 (S.D.N.Y. 1988) .......................................................................... 6

*Nieves v. City of N.Y.*,
　　208 F.R.D. 531 (S.D.N.Y. 2002) ............................................................................ 6, 7

*Nittolo v. Brand*,
　　96 F.R.D. 672 (S.D.N.Y. 1983) ................................................................................. 6

*Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*,
　　663 F.2d 371 (2d Cir. 1981) ...................................................................................... 7

*Rammal v. Timberland Co.*,
　　1995 WL 559394 (S.D.N.Y. Sept. 20, 1995) ......................................................... 4, 6

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010) ....................................................................................... 7, 10

*Sanchez v. Litzenberger*,
    2011 WL 672413 (S.D.N.Y. Feb. 24, 2011) ..................................................................... 9

*Weinstein v. Ehrenhaus*,
    119 F.R.D. 355 (S.D.N.Y. 1988) ................................................................................... 7, 9

**Rules**

Fed. R. Civ. P. 26(a) ................................................................................................... 2, 5, 8

Fed. R. Civ. P. 26(e)(1) .................................................................................................. 8, 11

## PRELIMINARY STATEMENT

Michael McKenzie's opposition is long on rhetorical denials and short on facts. It does not rebut the detailed evidence demonstrating that McKenzie concealed critical discovery for years. McKenzie also fails to rebut the conclusive evidence that he intentionally violated a court order by concealing artworks that he didn't want MAF to uncover, first, by hiding them in his basement and outdoors and, then, by secretly moving them offsite to an undisclosed location. MAF has demonstrated its entitlement to terminating sanctions.

The evidence of McKenzie's misconduct is undeniable. McKenzie does not dispute that he failed to produce thousands of relevant, responsive documents, and that he falsely testified and represented to the Court and MAF that the records did not exist. That is proven. These records exist and were fortuitously found by MAF's counsel years into this litigation. Instead, McKenzie blames his counsel and offers a "no harm, no foul" rationale that MAF's complaints are remedied because MAF ultimately discovered these records—despite McKenzie's efforts to conceal them.

McKenzie does not dispute that he failed to disclose the existence of the artworks located in his two-floor studio. That is proven. He testified under oath and represented to MAF that he had no such artworks. Instead, McKenzie claims that MAF *must* have known he had the artworks in his possession (and, apparently, that he was allowed to misrepresent otherwise and conceal the works) because the New York Supreme Court denied the Estate's application for a restraining order that would have barred McKenzie from making *one* type of artwork in the *future—HOPE*.

McKenzie does not dispute that he concealed other artworks in his basement and outdoors, and then moved them off his property after a Court order without disclosing the existence of the works to MAF. This is proven. Instead, he blames his employees who were present at the inspection, and pretends that he didn't understand his discovery obligations or the Court's order.

1

McKenzie does not dispute that he never disclosed Gregory Allen—his long time dealer of Indiana artworks—in any discovery responses, interrogatory responses, or Rule 26(a) disclosures. He does not dispute that he has never produced a single email, text, or record with or mentioning Allen, despite both him and Allen admitting they correspond by such methods frequently. He gives no excuse for this; he doesn't even address it in his opposition.

McKenzie's arguments and excuses miss the point. As does his "mistakes were made but they can still be fixed" rationale. MAF is not required to go through discovery to unravel McKenzie's lies and cure past abuses. And McKenzie misses the larger problem that his promises of *future* compliance ring hollow. McKenzie did not turn over a new leaf. He did not voluntarily come clean. Instead, he was forced into these newest admissions by a whistleblower tip arising out of a last-straw dispute he had with a long-trusted employee. Happenstance discovery through fortuity and whistleblower tips do not remedy a litigant's misconduct or offer assurance that it will stop. In fact, MAF just learned that McKenzie and Allen lied under oath about their recent art dealings, and that McKenzie violated another Court order by selling Indiana artwork *after* the Court entered an injunction prohibiting such sales. (Declaration of Luke Nikas ("Nikas Decl."), Exs. 1-3.) MAF will be making a separate contempt application regarding McKenzie's latest misconduct, but this further demonstrates the obvious: a lesser sanction will not suffice.

McKenzie's attack on Gonzalez also falls short. McKenzie tries to discredit Gonzalez by protesting that Gonzalez resents McKenzie. That may well be true, but it doesn't mean that Gonzalez's testimony is untrue. Gonzalez's testimony has been corroborated by photographic evidence, the testimony of other witnesses, and McKenzie's own forced admissions at deposition.

There could be no clearer case for terminating sanctions than this. Apparently, McKenzie believes that evidence of his *destruction* of evidence is required for terminating sanctions. Wrong.

McKenzie concealed relevant evidence for years and took steps to evade a Court order aimed at remedying those very discovery abuses. He has refused, even now in remedial depositions, to answer important questions, responding instead, "it is none of your business." He has defiantly stated, even now, that he will not produce relevant evidence about his sales of Indiana artworks. He never identified Allen, and has still not produced any documents to, from, or related to Allen. Nor has he produced his art archive; he did not even reveal its existence in depositions directed at probing his discovery efforts until MAF found a handful of unidentified pages strewn around his studio and asked, "what is this?" This critical record still has not been produced, and McKenzie's counsel now incredibly protests, "MAF has not asked for it." Wow. These records were required to be produced in response to document requests served years ago, and McKenzie lied under oath and misrepresented, through his counsel, that the documents didn't exist.

McKenzie's utter disregard for his obligations is plain, repeated, and unending. Enough is enough. Terminating sanctions are the only appropriate remedy to hold McKenzie accountable.

### ARGUMENT

**I.   TERMINATING SANCTIONS AGAINST MCKENZIE ARE WARRANTED AND NECESSARY**

    **A.   *McKenzie's Misconduct Was Willful And In Bad Faith***

McKenzie argues, relying in part on a recent statement by the Court, that he had no obligation to produce artworks in response to MAF's discovery requests and, therefore, his concealment of art from MAF's inspection is irrelevant. First of all, McKenzie *did* have an obligation to produce the artworks and all evidence related to them.[1] In any event, McKenzie

---

[1] *See* ECF No. 131-1 (MAF's First RFPs) at "Definitions" ¶ 6 (defining "document(s)" to include, "*without limitation*, any information in any *written*, recorded, electronic, or *graphic form*, including all memoranda, notes . . . working papers, drafts . . . spreadsheets, data, reports, accounts, records . . . and other data or information sources in *any written, printed or recorded matter of any character*"), and requesting at ¶ 1 "All documents and communications relating to

3

misses the point. Regardless of whether McKenzie was obligated to produce the artworks in discovery, his concealment of the artwork *after* the Court's order *and* his concealment of documents (which he admits he was required to produce) demonstrate that his misconduct was willful and deliberate. He lied under oath when he said that he did not have any Indiana works in his possession (ECF No. 393-2 at 63:19-25) and that he had given "everything" to the Estate, *id.* at 78:18-79:10.[2] And McKenzie took deliberate steps to evade the Court's inspection order by attempting to prevent the discovery of these very artworks. Evidence that McKenzie lied under oath about the artworks and relevant documents and deliberately evaded the Court's order demonstrate that his pattern of misbehavior was willful and in bad faith. *See Rammal v. Timberland Co.*, 1995 WL 559394, at *4 (S.D.N.Y. Sept. 20, 1995) (imposing sanctions after plaintiff withheld evidence and then lied to the court about why it did not produce it).

---

or concerning Your business dealings or projects with Robert Indiana or relating to any Robert Indiana Works."); *id.* ¶ 3 (requesting "All documents . . . relating to or concerning Your creation, production, distribution, promotion, or sale of Robert Indiana Works, including but not limited to . . . the Dylan Works . . . the Robert Indiana Works depicted on pages 31 through 41 of the First Amended Complaint . . . any Robert Indiana works relating to or depicting the LOVE image"); *id.* ¶ 6 (requesting "All documents and communications relating to or concerning any exhibitions, showings, or displays of Robert Indiana Works conducted by You,"); *id.* ¶ 30 (requesting "Documents sufficient to identify all Robert Indiana Works You have created, produced, promoted, or sold, to whom, and their current disposition, status, and/or whereabout").

[2]  McKenzie's after-the-fact distinction between Indiana artworks that the Estate owned versus those he thought he owned is belied by the plain testimony and by the fact that the Estate further pressed McKenzie that it considered *any* Indiana-authorized works to be property of the Estate. *See* ECF No. 393-2 at 70:8-16. McKenzie responded that all of the works he had created were authorized. *Id.* 72:17-20. McKenzie's testimony that he searched his entire property and turned over everything related to Indiana, though he may have inadvertently missed a postage stamp with *LOVE* on it, *id.* 79:2-10, also makes it clear that he was claiming to have searched for and turned over *everything* related to Indiana. Obviously, the Estate wouldn't have owned a postage stamp. Moreover, the inferences that McKenzie draws from his slander of title claim (which does not reveal he continues to possess artworks) and random filings from a confidential arbitration with the Estate (to which MAF did not have access and which also do not expressly reveal he continues to possess artworks) are hardly sufficient to put MAF "on notice" that McKenzie's explicit, under-oath statements were false. MAF was permitted to rely on McKenzie's testimony and his representations through counsel that he had no additional relevant discovery to produce.

4

The long history of McKenzie's discovery abuses is recounted in detail in MAF's opening brief and indicates by its very frequency that the behavior was willful. For example, even a small slice of the facts demonstrates the severity of McKenzie's bad faith.

- McKenzie stated under oath and to MAF and this Court that he did not keep sales records (ECF No. 103 ¶ 10; ECF No. 479-4 at 93:12-17, 95:12-23), he had already produced all sales records in his possession (ECF No. 393-1 at 5-6; ECF No. 137 at 9:9-12; ECF No. 142 at 9:9-12; ECF No. 262-2 at 2), he only keeps business records for three years (ECF No. 393-2 at 75:8-12; ECF No. 103 ¶ 10), and he only keeps handwritten notes of inventory, ECF No. 393-2 at 76:17-22; 77:9-21. His statements were false. He now admits that he maintains a complete electronic archive of every Indiana artwork he has produced and sold. ECF. No. 467-1 at 103:13-108:9; ECF No. 467 Exs. 8-17. He and his assistants have access to the records and continuously update them. ECF No. 467-2 at 141:2-20; ECF No. 467-1 at 106:2-16. And we also uncovered nearly 6,000 pages of additional records at his studio.

- McKenzie sat for depositions where he was questioned about his document search and production efforts, and he also testified about these efforts before the Maine probate court. ECF No. 393-2 at 75:3-15, 77:9-17. In those depositions and testimony, he never revealed the existence of the art archive and in fact had expressly denied the existence of such a record. ECF No. 103 ¶ 10; ECF No. 393-2 at 76:17-22; 77:9-21. He did not reveal its existence until MAF's counsel showed him a piece of printout paper fortuitously recovered from his studio and pressed him, point blank and unavoidably: "can you tell me what this is?" The answer— that it is "one of the things that is from the - - what we call the art archive," was shocking and long overdue. ECF No. 467-1 at 102:5-8.

- McKenzie moved thousands of artworks off his property immediately after the Court's inspection order, and witnesses testified that this was done in a rush and that McKenzie was visibly angry about the Court's order. ECF No. 479-7 at 203:9-204:6; ECF No. 467-4 at 116:16-22. McKenzie's excuse after being caught is implausible on its face and alone demonstrates *scienter*. Mot. 12 (citing ECF No. 467-1 at 34:9-37:4); Opp. 12.

- McKenzie has been working with Greg Allen to sell Indiana works since "day one," twenty years ago. ECF No. 467-1 at 109:9-12. They correspond frequently by email and text, and maintain records. ECF No. 467-1 at 86:5-20; ECF No. 467-3 at 55:5-15. Yet McKenzie did not disclose Greg Allen's identity or existence—or any of the correspondence or records between them—in response to any discovery request, interrogatory, or Rule 26(a) requirement. Not a single piece of paper mentioning Greg Allen has yet been produced in this case, despite his importance to McKenzie's operation.

- McKenzie did not reveal any of this newly discovered evidence voluntarily. It was only discovered as a result of MAF's fortuitous discovery, whistleblower testimony, and court-ordered additional depositions and inspections.

- McKenzie still defiantly refuses to answer deposition questions or produce responsive records of his sales of Indiana artworks. ECF No. 467-1 at 85:4-14; 93:4-15.

5

McKenzie cannot blame counsel for his failure to produce 5,913 pages of records that MAF found in his studio, his art archive, and records related to Greg Allen. Opp. 5-7. McKenzie has had *three* law firms represent him, each of whom were alerted by MAF of suspected discovery deficiencies, and each of whom represented that an adequate search had been conducted. The probability that all three neglected their duties through no fault of McKenzie's defies the odds.[3] Further, there's *no* evidence that McKenzie's attorneys helped him conceal artworks after the Court's inspection order or knew McKenzie had done it. ECF No. 416; ECF No. 418. In any event, the law is not on McKenzie's side even were this excuse believable. The decision in *Ford v. Am. Broad. Co., Inc.*, which McKenzie cites, held a *party*, and not its counsel, responsible for discovery violations. 101 F.R.D. 664, 667 (S.D.N.Y. 1983). So do countless others.[4]

The indisputable evidence points to one conclusion: McKenzie's behavior was willful. *Rammal* 1995 WL 559394, at *4; *John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988); *Ford*, 101 F.R.D. at 667. McKenzie won't admit that. But the evidence speaks for him. *See Nittolo v. Brand*, 96 F.R.D. 672 (S.D.N.Y. 1983) (red flags, like party's possession of evidence "coupled with the false and incredible explanations offered in support thereof, permit the inference that plaintiff was seeking to conceal or destroy material evidence").

### B. *McKenzie's Pattern Of Misbehavior Is Certain To Continue*

This is not an instance of an overlooked document subsequently produced. A slew of damning, sanctionable conduct has amassed over three years of protracted discovery, proving a

---

[3] "Parties are charged with a duty to monitor the progress of their cases and to ascertain the terms of any order entered against them. . . [A]ctual notice of the terms of an order is not required to bind the parties[.]" *New York State Nat. Org. For Women v. Terry*, 697 F. Supp. 1324, 1326-1332 & n.9 (S.D.N.Y. 1988) (holding party in contempt who violated court order).

[4] *E.g., Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979); *Masi v. Steely*, 242 F.R.D. 278, 286 (S.D.N.Y. 2007); *Farmer v. Hyde Your Eyes Optical, Inc.*, 2015 WL 2250592, at *11 (S.D.N.Y. May 13, 2015).

6

troublesome pattern certain to continue. *See, e.g.,* Mot. 4-8; *Nieves v. City of N.Y.*, 208 F.R.D. 531, 536 (S.D.N.Y. 2002) (two-year failure to respond to discovery merited dismissal). McKenzie's unlawful discovery tactics have taken place with every lawyer he has engaged, in every year of the litigation, because he, and not his legal team, is the problem. He most recently hid art despite court orders and his own joint stipulation, and in his most recent deposition, he swore that he would continue to withhold documents from MAF. ECF No. 467-1 at 85:7, 93:4-15. He openly admits that he won't produce records unless it "makes sense" to him. ECF No. 467-1 at 93:12-15. And MAF just learned that McKenzie is *also* violating this Court's injunction prohibiting his sale of Indiana art—a fact he and Allen lied about at their depositions. (Nikas Decl., Exs. 1-3) McKenzie's repeated abuses, which began at the outset of this litigation, prove he will never engage in fair litigation. Mot. 22-24. So does the fact that he has never voluntarily disclosed what has been uncovered through MAF's unrelenting diligence and fortuitous discovery.

McKenzie's pattern of abuses and likelihood of continued abuse warrant sanctions, and he fails to distinguish the cases in which sanctions were imposed in similar circumstances. *See* Mot. 21-22 (citing *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010) (imposing sanctions because party lied to the court and refused to produce records);[5] *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. and Rest. Emps. Intern.*, 212 F.R.D. 178, 224 (S.D.N.Y. 2003) (imposing sanctions after defendants made disjointed searches or failed to make searches and "stated that no responsive documents existed when that representation was demonstrably false . . . suggesting a callous disregard for their obligations"); *Nieves*, 208 F.R.D. at 536 (two years of

---

[5] That McKenzie wasn't caught destroying evidence is irrelevant. Opp. 22. Destruction of evidence is not a prerequisite for sanctions. *See Penthouse Int'l*, 663 F.2d at 391; *Ford* 101 F.R.D. 664; *John B. Hull,* 845 F.2d at, 1176-77; *Weinstein v. Ehrenhaus*, 119 F.R.D. 355, 358-59 (S.D.N.Y. 1988). Regardless, McKenzie concealed and fabricated evidence. *E.g.,* ECF No. 479-4 at 164:9-167:22. In these circumstances, there's no reason to think he didn't also destroy records.

7

inadequate discovery responses warranted case-terminating sanctions); *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 390 (2d Cir. 1981) (sanctions imposed after plaintiff repeatedly lied to the court about existence of business records)).

      **C.**     *McKenzie's Discovery Misconduct Was Never Corrected*

McKenzie concedes he has not corrected his discovery misconduct. Opp. 8, 21 (listing documents still not produced). Instead, he inaccurately accuses MAF of failing to request documents it has *repeatedly* requested (*id.*), *e.g., supra*, at n.1, and which McKenzie has falsely *denied* having, Opp. 5. Regardless, McKenzie is obligated to produce newly found documents. "A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response." Fed. R. Civ. P. 26(e)(1). McKenzie has not provided the information, such as the art archive or documents related to Allen, despite his supposed "sudden" awareness of what was not produced. His lawyer's promise that McKenzie will somehow "cure" these deficiencies in the future (Opp. 19-20) rings hollow—especially when McKenzie *himself* has testified that he won't.

      **D.**     *McKenzie's Conduct Has Caused MAF Significant Prejudice*

McKenzie cannot excuse the gravity of his misconduct by arguing that it is "easy to cure" because we are not literally on the eve of trial. *Id*. The damage is done, and the prejudice to MAF is significant, has not been cured, and should no longer be tolerated. McKenzie does not dispute that his withheld discovery—*thousands* of documents—is crucial to MAF's case. Mot. 20. MAF lacked the benefit of reviewing this information when pursuing third-party discovery and when it deposed fact witnesses. While McKenzie claims no prejudice because MAF recently deposed Allen (Opp. 21), the still-to-be-produced records, which MAF only partially uncovered, and the breaking discovery of McKenzie's *additional* acts of contempt reveal novel details about Allen's

8

role.[6] Further, had MAF possessed the archive, it would have conducted depositions differently and sought substantial discovery about the transactions and the works, including but not limited to McKenzie's conversations with Allen, communications with other yet-to-be identified individuals with whom McKenzie also transacted, information about the works that were created, and more.[7] McKenzie does not dispute MAF's argument (Mot. 21) that the need to reopen (or re-do) substantial discovery is evidence of prejudice, as would be MAF's momentous task of preparing to conduct all this discovery. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006). Nor has McKenzie disputed that his "continued obstreperous conduct" and the "expense to the litigants and the court system" prove prejudice. *Weinstein*, 119 F.R.D. at 359. This discovery dispute has imposed immense costs, and McKenzie's obfuscation shows no signs of stopping. That discovery could theoretically be reopened (again), more documents reviewed (again), more individuals deposed (again), depositions retaken (again), new witnesses subpoenaed (again), and trial pushed further still—after years of litigation, significant costs, and discovery orders—is not a panacea. McKenzie's essential argument, "we should just keep doing this until we get it right and you catch all my shenanigans," is not the proper way to address egregious, repeat offenders.

    **E.**     ***Lesser Sanctions Would Not Be Sufficient***

---

[6] For example, Gonzalez's deposition revealed that McKenzie gave 20 portfolios to Allen on July 22, 2021, containing up to *80* Indiana works. ECF No. 479-7 at 200:13-202:15. By contrast, McKenzie testified that "from the beginning," Allen had only bought "six or seven HOPE paintings, maybe one or two sculptures, and possibly 10 or 12 HOPE prints," (ECF No. 467-1 at 87:8-13), and Allen testified that he had only sold "three or four" works for McKenzie within the past year and only received works from McKenzie after he had already lined up a sale (ECF No. 467-3, at 10:1-13:25, 17:7-9). Allen also testified that he hadn't sold Indiana works to an art dealer since "the beginning of 2020." ECF No. 467-3 at 74:21-25. Their testimony was false. *See* Nikas Decl., Exs. 1-3. McKenzie and Allen are still concealing the scope of their scheme.

[7] McKenzie cites *Sanchez v. Litzenberger* for the proposition that "[t]he necessity of conducting additional depositions, without more, does not constitute prejudice." 2011 WL 672413, at *7 (S.D.N.Y. Feb. 24, 2011). But McKenzie has an extensive history of discovery abuse, whereas Sanchez "engaged in [no] other misconduct" besides giving a fake name. *Id.*

9

This case is the poster-child for terminating sanctions. McKenzie has engaged in virtually every type of discovery misconduct there is. The Court told McKenzie three years ago that he already received his one free bite at the apple (ECF No. 142) and, even after that, has given McKenzie multiple opportunities to fix these issues. But McKenzie has demonstrated, repeatedly, that he has no respect for this Court or his discovery obligations. His misconduct has compromised the integrity of this proceeding and obstructed the truth-finding process—all at significant expense.

McKenzie has no answer. He discusses numerous cases cited in MAF's motion, but is unable to muster a single argument distinguishing their facts.[8] Opp. 22-23.

## II. MCKENZIE SHOULD PAY MAF'S ATTORNEYS' FEES AND COSTS

McKenzie should pay MAF's attorneys' fees and costs related to his discovery misconduct. McKenzie repeatedly violated the Court's orders and his discovery obligations, which resulted in significant expense to MAF. None of the authorities he cites support his position. *E.g.,* Opp. 22.[9]

## CONCLUSION

The Court should grant MAF's motion for sanctions.

---

[8] McKenzie explains that in *S. New England*, default judgment was entered where the defendant willfully failed to turn over records and deleted data. Opp. 22 (citing 624 F.3d 123). McKenzie has willfully hid art after the Court's order and failed to turn over records. McKenzie describes *Lawrence v. City of N.Y.* as a case where the plaintiff lied, got caught, and lied again during discovery. *Id.* 22-23 (citing 2018 WL 3611963 (S.D.N.Y. July 27, 2018)). McKenzie has told a number of lies about his discovery efforts and why he failed to produce documents. Finally, McKenzie describes *McMunn v. Memorial Sloan-Kettering Cancer Center* as justifying dismissal because the plaintiff repeatedly lied, even in the face of strong evidence otherwise, and concealed financial records. *Id.* 23 (citing 191 F. Supp. 2d 440 (S.D.N.Y. 2002)). Directly analogous are McKenzie's lies about producing documents and his concealment of material financial records.

[9] McKenzie notes DeCastro lied and willfully withheld documents and sales records. 309 F.R.D. 167, 184 (S.D.N.Y. 2015). McKenzie lied and withheld documents, such as sales records, his email accounts (ECF No. 137 at 2; ECF No. 479-7 at 197:4-23), and his communications about sales, ECF No. 467-1 at 86:5-20; ECF No. 467-3 at 55:5-15. McKenzie notes that the defendant in *JSC* lied about producing documents to delay discovery and then never produced the documents. 2005 WL 1958361, at *16 (S.D.N.Y. Aug. 16, 2005). McKenzie did the same here.

Dated: January 27, 2022

        Respectfully submitted,

        QUINN EMANUEL URQUHART & SULLIVAN, LLP

        By: /s/ Luke Nikas
            Luke Nikas
            Maaren A. Shah
            Ryan Rakower
            51 Madison Avenue, 22nd Floor
            New York, NY 10010
            (212) 849-7000
            lukenikas@quinnemanuel.com
            maarenshah@quinnemanuel.com
            ryanrakower@quinnemanuel.com

            *Attorneys for Plaintiff Morgan Art Foundation Limited*