**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7228**

WRITER'S EMAIL ADDRESS
**lukenikas@quinnemanuel.com**

February 3, 2022

**VIA ECF**
Honorable Barbara Moses
United States District Court
Southern District of New York
New York, New York 10007

Re:   *Morgan Art Foundation Ltd. v. McKenzie*, 18-cv-04438 (AT)

Dear Judge Moses,

I write on behalf of Plaintiff Morgan Art Foundation Limited ("MAF"), jointly with Defendant Michael McKenzie ("McKenzie"), in accordance with the Court's December 21, 2021 Order (ECF No. 472) to advise "the Court as to whether either or both parties wish to present live testimony at the hearing and, if so, shall identify (i) each proposed live witness, (ii) the topic(s) on which that witness is expected to testify, and (iii) the estimated time required for examination." A summary of each side's position is presented below.

**I.    MAF'S POSITION**

We have carefully reviewed the evidence submitted to the Court regarding McKenzie's misconduct to determine whether an evidentiary hearing is necessary to resolve any disputed factual issues. We respectfully submit that a hearing is neither necessary nor appropriate, because McKenzie has failed to create a material dispute of fact regarding his wrongdoing. Conducting an evidentiary hearing would therefore waste the Court's resources, waste MAF's resources, and allow McKenzie to further delay judgment day. Specifically, the evidence demonstrates, clearly and conclusively, that McKenzie has engaged in extensive discovery abuses that warrant terminating sanctions and a finding of contempt: he lied under oath about the evidence in his possession, misrepresented his discovery compliance to opposing counsel and the Court, refused to turn over relevant evidence, refused to conduct a proper search for evidence, lied about the searches and collections he performed, violated a Court order designed to ensure full discovery by actively attempting to conceal evidence, lied about his efforts to conceal that evidence, and more. For example, as set forth in MAF's motion, the following facts, among others, cannot be legitimately disputed:

- McKenzie lied under oath to the probate court about accountings, receipts, inventories, and sales records in his possession. ECF No. 393-2 at 75:3-76:22, 77:9-21.

1

- McKenzie lied under oath to the probate court about artwork in his possession. *Id.* at 63:19-25; 72:17-20, 78:18-79:10; ECF No. 482 at 4 n.2.

- McKenzie refused to sit for his deposition or produce documents at the outset of the case (ECF No. 142 at 3:16-21; ECF No. 131-6 at 1), and his counsel was chastised for this frivolous position, ECF No. 142 at 47:11-48:9.

- McKenzie was ordered (ECF No. 137 at 2-3) and agreed to produce documents responsive to MAF's requests (ECF No. 131-2), which included all the records and artwork MAF later uncovered during its visit to McKenzie's studio, ECF No. 482 at 3 n.1 & 4 n.2.

- McKenzie repeatedly represented to MAF's counsel, the probate court, and this Court that he and his employees had done a comprehensive search for documents and had produced everything in his possession. ECF No. 393-2 at 79:2-10; ECF No. 142 at 9:9-13; ECF No. 103 ¶ 11. He stated that he had already produced all sales records in his possession (ECF No. 393-1 at 5-6; ECF No. 137 at 9:9-12; ECF No. 142 at 9:9-12; ECF No. 262-2 at 2), he only keeps business records for three years (ECF No. 393-2 at 75:8-12; ECF No. 103 ¶ 10), and he only keeps handwritten notes of inventory, ECF No. 393-2 at 76:17-22, 77:9-21.

- Contrary to his statements under oath to the probate court and MAF's counsel (ECF No. 393-2 at 63:19-25; ECF No. 482 at 4 n.2), McKenzie had a significant number of artworks in his possession, ECF No. 467 Exs. 6-42, 45, 49, 50.

- Contrary to his statements under oath to the probate court, MAF's counsel, and this Court, McKenzie had thousands of responsive hardcopy documents in his possession, totaling nearly 6,000 pages, that fell squarely within MAF's document requests and the categories of documents McKenzie falsely claimed he didn't possess. ECF No. 467 ¶ 5.

- Contrary to his statements under oath to the probate court, MAF's counsel, and this Court that no electronic art sales or inventory records existed (ECF No. 467-1 at 102:5-104:15; ECF No. 467-2 at 139:5-140:21; ECF No. 393-2 at 76:17-22, 77:9-21; ECF No. 393-3; ECF No. 103 ¶ 10), McKenzie had a complete electronic archive in his possession detailing the Indiana works he has created and sold, in addition to the 6,000 pages of hardcopy documents, ECF. No. 467-1 at 103:2-108:9; ECF No. 467 Exs. 8-17. McKenzie and his assistants admitted that they have access to the electronic records and continuously update them. ECF No. 467-2 at 141:2-20; ECF No. 467-1 at 106:2-16.

- Contrary to his false testimony and representations (ECF No. 393-2 at 75:3-15, 77:9-17; ECF No. 103 ¶ 10; ECF No. 479-4 at 93:12-17, 95:12-23), McKenzie has detailed sales records in his possession, ECF No. 467 Exs. 7-22.

- McKenzie failed to disclose his long-time art dealer, Greg Allen, in any interrogatories, Rule 26(a) disclosures, or documents, ECF No. 131-2, even though McKenzie admitted for the first time in sanctions-related discovery (N.B. after the whistleblower) that he has been working with Allen to sell Indiana works since "day one," twenty years ago. ECF No. 467-1 at 109:9-12.

2

- McKenzie has not produced any communications between him and Greg Allen despite admitting that they communicated frequently by text and email. ECF No. 467-1 at 86:5-24; ECF No. 467-3 at 55:5-15.

- In direct contravention of the Court's order (ECF No. 264 at 2) and his promises to the Court (ECF No. 393-3), McKenzie has not searched important email addresses for relevant documents and has lied about the importance of those accounts, including, for example, McKenzie's email address pjrlicense@aol.com (ECF No. 479-7 at 197:4-23), and Annette Vessechia's email address that was used for communications that facilitated McKenzie's scheme, ECF No. 467-41.

- McKenzie was ordered by this Court to make artwork and documents in his possession available for inspection. ECF No. 408; ECF No. 395 at 1-2; ECF No. 396:19:21-22:5. Instead, McKenzie secretly moved a significant number of artworks off the property after the Court's order. ECF No. 478 at 12-13; ECF No. 479-7 at 203:9-204:6; ECF No. 467-4 at 114:25-116:22; ECF No. 467-2 at 158:18-24; ECF No. 466-4 at 109:9-110:15. He also hid a sculpture on his property underneath a tarp during the inspection (ECF No. 467-1 at 55:19-23; ECF No. 467-49) and hid from MAF the existence of a large basement storage facility on his property containing and concealing many more works, ECF No. 467-2 at 120:12-17, 123:19-24; ECF No. 467-4 27:5-21, 89:11-25.

- McKenzie, in recent depositions following the revelation of his discovery abuses, has refused to produce highly responsive documents, testify about important issues, or disclose the names of individuals relevant to his creation and sale of Indiana works. ECF No. 467-1 at 83:4-85:15, 93:4-15.

The indisputable factual record demonstrates numerous independently sanctionable and criminal actions by Michael McKenzie. There is nothing McKenzie can say or do to change these facts, and nothing more is required to hold McKenzie accountable for his repeated misconduct. In these circumstances, McKenzie's request for live testimony is unjustified: he is not entitled to a costly and time-consuming evidentiary hearing when he has failed to create a material dispute of fact regarding the evidentiary basis for MAF's motion. *See Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999) ("An evidentiary hearing serves as a forum for finding facts; as such, its need can be obviated when there is no disputed question of fact or when sanctions are based entirely on an established record."); *In re Gordon*, 577 B.R. 38, 50 (S.D.N.Y. 2017) ("[D]ue process does not require an evidentiary hearing on a sanctions motion absent disputed facts or issues of credibility."). If this were a Rule 56 motion seeking summary judgment, we wouldn't have a trial on these issues—the Court would be justified, indeed *compelled*, by Rule 56 to enter judgment against McKenzie based on this record. The result should be the same here. To the extent the Court disagrees with Morgan's position and believes certain facts are unclear or in dispute, we are prepared to call or cross-examine the witnesses that will assist the Court's determination and respectfully request the opportunity to do so. But that shouldn't be necessary.

McKenzie's position that the Court should conduct this hearing together with another hearing about McKenzie's unlawful art sales is a meritless delay tactic. On October 18, 2021, the

Court issued an order confirming an Interim Arbitration Award, which directed McKenzie not to "move, transfer, or relocate any work that is (a) by or attributed to Robert Indiana and (b) in the possession, custody or control of" McKenzie, or "sell, gift, transfer, or in any way alienate title to or ownership of any Indiana Artwork until further order or award of this Panel to the contrary." ECF No. 448. During sanctions-related discovery, MAF deposed McKenzie and Greg Allen. Allen estimated that the last time he purchased an Indiana work from McKenzie and sold it to another dealer was "the beginning of 2020." McKenzie stated that "from the beginning" of his time working with Allen, Allen had bought "six or seven HOPE paintings, maybe one or two sculptures, and possibly 10 or 12 HOPE prints." MAF learned last week, however, that Allen has still been selling artworks for McKenzie—including as recently as November 2021—in violation of this Court's injunction. I therefore asked McKenzie's counsel, Bridget Zerner, to produce McKenzie's bank records reflecting monetary transfers to or from Allen, his communications with Allen, phone records reflecting calls with Allen, invoices reflecting sales to Allen, shipping records, and other records targeted at uncovering McKenzie's dealings with Allen and unlawful sales. Many of these records should have been produced years ago in response to MAF's document requests, and MAF would have pursued this discovery at that time if McKenzie hadn't concealed his relationship with Allen. Yet Ms. Zerner refused to produce *any* of these records, claiming that no discovery on this issue is warranted and that "the parties have already given discovery that addresses this matter"—even though *none* of these records have been produced and McKenzie expressly refused in his deposition to produce these records. Notably, McKenzie argued just a few weeks ago in his opposition brief that MAF hadn't received this type of discovery simply because it hadn't asked for it. (Opp. Br. at 4-5.) Of course, that was a disingenuous position to take at that time—MAF had *repeatedly* asked for this discovery, yet, in response, McKenzie falsely claimed not to have it and then recently refused to produce it once we learned about it. But now the absurdity of McKenzie's position has risen to a new level: two weeks ago, McKenzie argued to this Court that MAF hadn't asked for the discovery and therefore hadn't received it; *now*, McKenzie falsely claims the parties have *already* done this discovery.

This is McKenzie's world—up is down, down is up. The only proper way to handle the separate contempt matter of McKenzie's unlawful sales is for MAF to make a separate application for discovery, for the Court to consider that application, and for the parties to conduct that discovery to the extent the Court permits it. Then, MAF should have the opportunity to file a motion, if it chooses to do so, and seek an appropriate remedy.[1] The Court should deny

---

[1] In response, McKenzie attaches an affirmation regarding the Estate's inspection and asserts that MAF *must* have received the affirmation because Luke Nikas was acting as the Star of Hope's counsel. We had not received this affidavit, and we have previously informed Markham's firm at least *twice* that Quinn Emanuel does not represent the Star of Hope after Markham's firm misstated that that we did. Quinn ultimately was not engaged, unexpectedly, for reasons related to certain disputes that arose about the disposition of the Estate in the probate proceeding, and does not represent the Star of Hope, as Mr. Markham was told. Regardless, McKenzie's argument that the inspection somehow proves McKenzie wasn't engaged in unlawful art sales makes no sense, given that witnesses informed us for the first time last week that Allen has recently been making sales on McKenzie's behalf, and we have not been given access to McKenzie's inventory *after* those sales so we don't have a current inventory to compare the earlier inspection to. McKenzie has also devoted significant space to further

McKenzie's attempt to circumvent that orderly process and delay judgment on the pending sanctions motion—which has gone through approximately *five* months of discovery and is fully briefed and ready for adjudication.

## II. MCKENZIE'S POSITION

In light of the new allegations and if a second motion is to be filed, both should be consolidated and heard together as they involve the same witnesses and overlapping issues related to allegations of misconduct. McKenzie thus requests that a briefing schedule be set on the second motion and that the March 1, 2022 hearing be continued to a date after the briefing when the Court will have sufficient time to hear live testimony, which McKenzie believes is needed for these motions involving serious allegations and calling for the most extreme remedies. McKenzie's opposition has indeed raised material disputes of fact as to MAF's allegations of misconduct (which we will not repeat here) and MAF raised new issues on reply.

MAF's demand for another round of discovery is not warranted. MAF had a full opportunity to question McKenzie and Allen about their art sales at the depositions this past fall and chose not to pursue topics and details which they could have and now want a re-do with the added costs and time as part of a second sanctions round without consolidation. Notably, this Court ordered that McKenzie's deposition could be taken again by MAF after the completion of the Osvaldo Gonzalez deposition just last month, and MAF chose not to do so. *See,* Order at ECF 469.[2] Even though MAF now claims that the Gonzalez deposition revealed things that were not

---

arguments as to why he has not engaged in unlawful art sales, including, once again, the false statement that "MAF did not pursue this sales discovery when they were given the opportunity to do so just recently and did not follow the procedures available to obtain it." McKenzie also includes new arguments, which are often rambling and difficult to fully understand, that seem to be related to McKenzie's new and prior counsel, and conversations that did or didn't happen (as if we are required to go back and re-check the veracity of all of McKenzie's lawyers' representations and his under-oath testimony every time he finds new counsel). MAF will not consume this joint letter trying to decipher these arguments or point out their obvious flaws. McKenzie's assertions are mostly just distractions from MAF's fully briefed and meritorious sanctions motion. The Court has no pending application about the unlawful sales, which will be the subject of a distinct request. McKenzie's proposed testimony from Greg Allen related to these issues is, therefore, premature, and McKenzie's proposed testimony from himself and other witnesses about the pending motion is inappropriate because he has utterly failed to create any material disputes of the facts on which MAF's sanctions motion is based.

[2] MAF claims that the Gonzalez Deposition "revealed" (ECF 482, MAF Reply, fn. 6) that McKenzie gave 20 portfolios to Allen on July 22, 2021, containing up to 80 Indiana works – which they argue shows Allen or McKenzie lied in their estimates of art transactions. Gonzalez's testimony is nothing but speculation - he was shown an email from McKenzie to his employees from July 21, 2021 when the artwork was being moved into the new storage facility that said only "Truck is at studio. I need to bring down another 20 portfolios before we leave for storage." *See,* ECF 479-7, Gonzalez Dep., pp. 200-201 (Dep. Ex. 35). Even though the email itself indicates the portfolios are to be brought down to move the artwork to storage (as confirmed by

5

known before. Only after receiving McKenzie's opposition to their first sanctions motion, has MAF come up with new declarations with vague allegations of art sales that MAF has interpreted to be violations of a Court Order without a real showing that such a violation has occurred.

The specific issue now raised by MAF is whether McKenzie violated the Order (ECF 448) entered in this case, by stipulation, on October 18, 2021 as cited above. As part of the related arbitration between the Estate of Robert Indiana and McKenzie which first issued the above order, McKenzie made his Middletown storage facility and his Katonah property available for a full inspection and inventory of all Indiana artwork by Estate counsel and art handlers (who are now cooperating together with MAF pursuant to the Estate/MAF settlement) on the following dates: October 20, 21, 22, November 1, 2, 3, and 8, 2021. See attached Affirmation of Kyle Ishman, an attorney for the Estate. The Estate produced their inventory list which MAF no doubt received including because last summer, McKenzie agreed that Luke Nikas, counsel for MAF who was also then acting as counsel for the Estate beneficiary, Star of Hope (all parties that have settled their disputes and are working together), could access the materials in the arbitration proceeding.[3] McKenzie's inventory, which he maintains in storage as ordered, is thus well documented (by the Estate and by MAF's own May '21 inventory) and if any piece had since been sold as MAF claims, MAF could easily make such a showing. Tellingly, MAF says it needs more discovery to prove it.

MAF's three declarations are not grounds to reopen discovery. The first declaration of Fred R. Daniello (ECF 483-1) attaches three invoices for artwork purchases, two of which by their own dates were well before any court order (*see*, ECF 483-1, p. 6 dated 05/27/21 and p. 8 dated 10/20/20). The third invoice has a date of 11/8/21 but was sold, according to the declarant, by Greg Allen and not by McKenzie. While the Daniello imprecisely asserts that Allen told him the artwork was "coming from Michael McKenzie," there is no proof other than this vague statement that the pieces were sold at that time for McKenzie rather than pieces purchased by Allen before the October 18th Order and then resold by Allen who is not subject to the Order. Ken Hendel states he last dealt with artwork owned by McKenzie and offered for sale by Allen in September 2021, again, before the October 18th Order. ECF 483-2. No actual sale occurred but Allen and Hendel apparently got into an argument that required a call to the police establishing Hendel's bias. Finally, Eric Hornak-Spoutz, who works for the first declarant, Daniello, asserts that "within the last few months, Gregory Allen has sold and is currently attempting to sell a significant number of artworks published by McKenzie." ECF 483-3. It is odd that MAF counsel did not get any specific

---

Tim Ginexi at ECF 467-4, Dep., pp. 113-114), Gonzalez repeatedly guesses that he thinks those were for Allen with no basis for saying so and no other details. *See,* ECF 479-7, Gonzalez Dep., p. 200 ("he's telling Tim to bring down 20 portfolios that I guess he's going to give to Greg Allen); p. 201 ("so I guess Greg Allen could come pick it up from the first floor"); p. 202 ("I think if I had to guess, I would say he would give them to Greg Allen")  Even if such portfolios were given to Allen at that time, it does not show wrongdoing or false testimony including because this does not prove Allen sold all these works and because the October 18th Order was not in place then.

[3]    *See,* ECF 480-7, p. 2, Email from Ed Boyle, Estate counsel, stating "SOH has retained Luke Nikas at Quinn Emanuel and Donn Zaretsky at Silberman Zaretsky to advise SOH regarding the arbitration" and McKenzie response agreeing to access to the arbitration materials.

dates from a friendly witness which only leads to the inference that any actual sales by or on behalf of McKenzie were before the October 18th Order. And it is not even clear he is referring to Indiana artworks (at ¶ 5) as McKenzie sells other artists' works as well.

MAF stated that Allen gave "false" testimony (ECF 482, Reply, p. 9 fn. 6), cited again above, when Allen said the last time he purchased Indiana artwork from McKenzie and sold it to another dealer was "beginning of 2020." MAF left out Allen's preceding statement that "I can only take a wild guess." ECF 467-3, p. 74. This does not pin down that date and the rest of Allen's testimony shows there were sales and sale proposals since 2020 into 2021 and Allen could not confirm from memory the exact number of pieces purchased. *Id*., at pp. 16-30, 98. On September 10, 2021, McKenzie testified that he continued to work with Allen on art sales as of that time including for Indiana artwork and that he had been selling artwork during litigation. ECF 467-1, McKenzie Dep., pp. 72-77, 91-92. At that point in September, there was no court order preventing any sales nor had the arbitration panel entered any order but rather McKenzie was free to sell his AIA artwork. *See*, ECF 448, Order entered on October 18, 2021 then prohibiting sales and citing to AAA Panel Interim Award ordering the same on September 14, 2021) and *see*, ECF 479-5, Order of New York Supreme Court denying injunction to prevent sales and thus allowing McKenzie to continue to sell Indiana artwork. None of this has proven false testimony about art sales or art sales in violation of the Court's Order as MAF claims.

As to discovery, in light of the above, if MAF counsel had sought to confer with McKenzie's counsel when they learned of the single art sale by Allen they claim occurred after October 18, 2021, this might have been resolved with documentation that Allen purchased artwork from McKenzie before the October 18th Order and that artwork was later sold by Allen who is not subject to the Order. But MAF did not do that. Instead, MAF obtained declarations and filed a reply on their first motion, when McKenzie had no automatic chance to respond, making the unequivocal assertion on the public record that "McKenzie and Allen lied under oath about their recent art dealings" and "McKenzie violated another Court order by selling Indiana artwork after the Court entered an injunction prohibiting such sales" supporting this with a declaration of Luke Nikas and the three declarants described above that in no way establish that McKenzie and Allen lied or violated the court order. After this ambush with unproven public assertions of wrongdoing, MAF sought in our meet and confer that McKenzie "participate in any discovery related to art sales that would violate the Court's injunction" (when there have been no such violations) (see attached email correspondence) and proposed on the meet and confer call a few more months of discovery and additional depositions with the associated costs for which they undoubtedly will seek for McKenzie to pay while also seeking to go forward trying to obtain case-ending sanctions in the meantime.

MAF did not pursue this sales discovery when they were given the opportunity to do so just recently and did not follow the procedures available to obtain it. They do not get to skip the rules on new matters because they claim these are bad guys. They served a subpoena on Greg Allen this past fall that requested documents. Attorney John Markham, counsel for McKenzie who also appeared for Allen at his deposition, conferred with Allen several times before the deposition seeking responsive documents and Allen advised he had no responsive documents as he understood the requests. ECF 467-3, Allen Dep., pp. 110-111, 128-131, 134-135. At his deposition taken on November 5, 2021, for most of MAF's requests, Allen confirmed again he had no

7

responsive documents. *Id.*, pp. 59, 60, 61, 62-64, 67, 68. He testified that he had some sales records or receipts and emails for the limited sales of Indiana artwork he made connected to McKenzie and objected to disclosing his client information to competitors as proprietary and confidential (just as MAF has done). *Id.*, pp. 18-21, 23, 61-65, 129. MAF made a reservation of rights to file a motion to compel and reopen the deposition and then chose not to do so in the remaining two weeks of discovery after the deposition nor did they follow-up with counsel to request a production without a motion, nor did they make demand for McKenzie to produce records with Allen at that time. *See*, Order at ECF 450 extending discovery until November 19, 2021. (ECF 450) They abandoned the issue and now want to blame McKenzie for that choice. *See, McKay v. Triborough Bridge & Tunnel Auth.*, 2007 WL 3275918, at *2 (S.D.N.Y. Nov. 5, 2007) ("To the extent that Defendants made any previous requests for documents covered by the subpoena ... during the discovery period with which Plaintiff did not comply, the appropriate response would have been to make a motion to compel at that time.")(Sullivan, J.) MAF's dealings with prior counsel and prior motion should not suffice where discovery was re-opened, MAF learned of additional documents through testimony from a new non-party witness not subject to the prior motion, and then did not take the steps to obtain them with new counsel.

Additionally, Allen is an independent sales representative with his own company, Spirit Art Group. ECF 467-3, Allen Dep., p. 8 ("I am a sales representative, independent, and I have in the past worked alongside of him [McKenzie] in several capacities…. [and being a sales representative] …entails he [McKenzie] has something that I have an interest in, and I try to acquire it.") Allen is not under McKenzie's control and McKenzie does not have access to Allen's records and should not be sanctioned for any failure of Allen to produce records, particularly where MAF chose to not even confer on a proposed motion to compel to resolve the issue at the time it arose. *See, e.g., Alexander Interactive, Inc. v. Adorama, Inc.,* No. 12 CIV. 6608 PKC JCF, 2014 WL 61472, at *3–4 (S.D.N.Y. Jan. 6, 2014) (Francis, MJ) (finding no control over non-party's documents where companies enjoyed "a consistent working relationship," but remained separate entities with "no written agreements ... that would provide a basis for document production"); *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007)("a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents.")

When McKenzie was questioned about having records of sales involving Allen, he answered "Possibly. I would have to look." ECF 467-1, McKenzie Dep., p. 86. McKenzie said that he has "not yet" produced sales records, and admitted he has "absolutely not" turned over all the sales records, he also said "Maybe when something comes that makes sense, I can show it, but right now, it doesn't make sense." *Id.*, pp. 92-93. His testimony was not the blanket refusal that MAF has made it out to be and McKenzie has previously made objections to disclosing proprietary, confidential client information (as MAF has done). After the September deposition, MAF did not seek to confer on this matter either with undersigned counsel, again, relying on their efforts with prior counsel well before this testimony and choosing instead to pursue their argument for case-ending sanctions as the record stood. If MAF can even prove liability as to their claims of infringement, breach of contract, tortious interference, and unfair competition related to the artworks, these sales records go to damages, as there is no dispute over what artwork McKenzie has been publishing but rather the dispute is over whether the works were authorized and whether they interfere with MAF's rights. These limited records alone are not grounds for case-ending

sanctions. Moreover, MAF is now demanding that this Court impose case-ending sanctions in part for failure to produce sales records (arguing that McKenzie should not be permitted to address or cure remaining deficiencies now narrowed) while at the same time, demanding to reopen discovery for such records to use them not for a trial on the merits but hoping for an add-on of sanctions and contempt (while also gaining access to proprietary client lists and information of a competitor which MAF has already shown they will use to contact buyers).

While it would be most efficient to consolidate these matters for hearing, a hearing with live testimony should be held either way, including because McKenzie has presented a defense to these serious allegations and MAF raised new matters in their reply cited again herein to which McKenzie should have the opportunity to respond. McKenzie would seek to present live testimony from the following witnesses:

**Michael McKenzie** (Estimated Time for Direct: 1 hour) Topics: he did not lie or conceal his possession of and continued publishing of Indiana artwork (not owned by the Estate), document production efforts with prior attorneys, his legitimate reasons for moving the artwork to a new storage unit, reasons for tarping a large outdoor sculpture, compliance with the October 18th Order, that he has not concealed or forged or attempted to hide Indiana artwork (in trusts or otherwise), the circumstances of MAF's first visit to the Katonah studio and authorization to show all artwork, his understanding that the court-ordered inspection was to inspect documents (as MAF counsel stated) and cooperation with inspection, the circumstances of Gonzalez leaving AIA including that he had been improperly acting as a legal advisor and other wrongdoing and his retaliation and false allegations against McKenzie relied on by MAF for sanctions, explanation of sales and maintaining of sales records, his proprietary rights to client lists and concerns of MAF as a competitor/adversary.

**Greg Allen** (30 minutes) Topics: his sale of Indiana artwork including recent efforts to sell pieces he previously purchased from McKenzie prior to the October 18th order, that various allegations made by Gonzalez referencing him are lies including the allegation of attempting to help McKenzie conceal Indiana artwork in trusts or otherwise, that there has been no effort with McKenzie to conceal, hide, or otherwise improperly sell off Indiana artwork.

**Tim Ginexi** (30 minutes) and **Annette Vessecchia** (30 minutes) Topics for both: reasons for movement of the artwork to the new unit, efforts to produce documents for discovery as requested by McKenzie's three sets of counsel and no efforts at AIA to conceal documents or artwork during litigation or the visits to Katonah, lack of credibility of Gonzalez and specific lies told by Gonzalez which are relied on by MAF, Indiana's authorization of artworks.

                      Respectfully submitted,

                      /s/ *Luke Nikas*
                      Luke Nikas
                      QUINN EMANUEL URQUHART & SULLIVAN, LLP
                      *Attorney for Morgan Art Foundation*

                      and

*/s / Bridget A. Zerner*
Bridget A. Zerner
MARKHAM READ ZERNER
*Attorneys for Michael McKenzie*

10