**AMERICAN ARBITRATION ASSOCIATION**
**COMMERCIAL ARBITRATION TRIBUNAL**

In the Matter of Arbitration Between

JAMES W. BRANNAN, as Personal
Representative of the Estate of Robert Indiana,

*Claimant / Counterclaim Respondent,*

-v.-

MICHAEL MCKENZIE and AMERICAN IMAGE
ART,

*Respondents / Counterclaimants.*

AAA Case Number: 01-19-0001-9789

**FINAL AWARD**

WE, THE UNDERSIGNED ARBITRATORS (the "Tribunal" or "Arbitrators"), having been designated in accordance with the arbitration agreement contained in an Agreement for Art Editions dated August 11, 2008 between Robert Indiana and Michael McKenzie/American Image (the "Agreement"), and being duly sworn, and having duly heard the proofs and allegations of the Parties, hereby render this Final Award.

I.      Agreement to Arbitrate

The agreement to arbitrate is set forth in its entirety in the final sentence of the Agreement[1], as follows:

> Any disputes will be settled by arbitration through the American Arbitration Association, governed by laws of the State of New York.

---

[1] Generally, the singular term, "Agreement," is used to refer to the initial Hope agreement (JX-1). The plural term, "Hope Agreements" is used herein to refer to the Agreement (JX-1) and subsequent written addenda (JX-2, JX-3, JX-4, and JX-5). The capitalized term, "HOPE," is generally used herein to refer to the designs and works of art that are the subject of the Hope Agreements. In summarizing Party submissions, however, the conventions used by a Party may be repeated in the summary.

FINAL AWARD
AAA Case Number 01-19-0001-9789

II.     The Parties

Claimant James W. Brannan ("Brannan" or "Claimant") is the court-appointed Personal Representative of the Estate of Robert Indiana (the "Estate"). Brannan's business address is Law Offices of James W. Brannan, 15 Limerock Street, Rockland, Maine 04841.  Robert Indiana ("Indiana") was, until his death on May 19, 2018, an individual residing in Vinalhaven, Maine, and an acclaimed painter, sculptor and visual artist associated with the American "pop art" movement.

Respondent Michael McKenzie ("McKenzie") is an individual residing in Katonah, New York, and a publisher of artwork.  McKenzie is the sole proprietor of Respondent American Image Art ("AIA").

Respondent AIA is a business alias of its sole proprietor, McKenzie. AIA is an unincorporated sole proprietorship located in Katonah, New York.

Respondents McKenzie and AIA are collectively referred to herein as "Respondents."

Claimant and Respondents are referred to herein collectively as the "Parties" and individually as a "Party."

III.    Counsel for the Parties

Claimant was represented in this arbitration from June 24, 2019, to February 15, 2022, by the law firm of Venable LLP, including Edward P. Boyle, Jessie F. Beeber, Kan W. Nawaday, Emily Seiderman West, and John C. Vazquez, Esqs. Thereafter, Claimant was represented by the law firm of Eaton Peabody, including Seth W. Brewster and Alfred J. Falzone, III, Esqs.

Respondent was represented in this arbitration from July 20, 2019, to June 8, 2020, by the law firm of Goetz Fitzpatrick LLP, including John Simoni and Becky (Hyun-Jeong) Baek, Esqs.  Thereafter, Respondent was represented by the law firm of Markham Read Zerner LLC, including Bridget A. Zerner and John J. E. Markham II, Esqs.

2

FINAL AWARD
AAA Case Number 01-19-0001-9789

IV.    Introduction[2]

This arbitration arose from a dispute between the Estate and Indiana's long-time publishers, the Respondents.  The relationship between Indiana and McKenzie began in August 2008 when they signed an agreement authorizing McKenzie to produce and sell two-and three-dimensional artworks based on Indiana's HOPE design.  A key provision of their agreement was that McKenzie agreed to pay Indiana a minimum of one million dollars ($1,000,000.00) annually, without regard to sales of artworks in any given year.  Subsequently, their written agreement was modified by a series of written amendments, and their relationship expanded in accordance with oral agreements that ended on the death of Indiana and termination by the Estate of all agreements.

After Indiana's death on May 19, 2018, Claimant sought information about the details of past sales, the inventory of Indiana Artwork, and the continued exploitation of Indiana Artwork by Respondents. Respondents did not provide the requested information and stopped paying the annual fee of $1,000,000.00. Confronted with a lack of compliance and cooperation by Respondents, Brannan sent a notice of termination of all written and oral agreements on May 9, 2019.  In addition to this arbitration, litigation ensued in multiple courts, including in the New York State Supreme Court, in the U.S. District Court for the District of Maine (the "Maine District Court"), in the U.S. Court of Appeals for the First Circuit Court (the "First Circuit"), and in the U.S. District Court for the Southern District of New York (the "SDNY") involving a non-party to this arbitration.

The Parties and a representative of the Attorney General of the State of Maine engaged in mediation in Maine on November 26 and 27, 2019 (the "Mediation") in an effort to resolve all disputes.  The Mediation resulted in a term sheet (the "Term Sheet") which, in turn, became the focus of a further dispute as to whether the

---

[2] The Introduction is provided for the convenience of the reader only. In the event of any perceived or actual inconsistency between the Introduction and subsequent paragraphs of the Final Award, including the decretal paragraphs at pages 46-49, below, the subsequent paragraphs shall govern. Defined terms that appear in the Introduction may be defined elsewhere in this Final Award.

disputes had been settled, an issue that the Maine District Court referred to this Tribunal for resolution. Following the evidentiary hearing in this arbitration, and just prior to closing arguments that had been scheduled, the First Circuit reversed the Maine District Court's decision to refer the Term Sheet dispute to this Tribunal and remanded to the Maine District Court to decide that dispute. Following discovery and a bench trial, the Maine District Court decided that the Term Sheet had settled the Parties' disputes but that the settlement was subsequently abandoned or repudiated. This arbitration resumed promptly after the Maine District Court's determination.

Although numerous claims and counterclaims have been asserted in this arbitration, the central issues were contractual in nature, including: (a) the effectiveness of Claimant's termination of the underlying agreements, (b) the amounts due to Claimant, if any, under the terms of the terminated agreements, (c) Respondents' obligations with respect to the remaining inventory of Indiana Artwork, (d) the continuing rights, if any, of Respondents to exploit Indiana's designs, and (e) the existence of any compensable damage to Respondents.

The Tribunal concludes that Claimant was justified in terminating all agreements with Respondents and awards damages to Claimant to compensate it, *inter alia*, for Respondents' unauthorized sales of Indiana Artwork after Claimant terminated all agreements. The Tribunal finds no merit in Respondents' counterclaims. The Tribunal finds no support in the record to award either side a multi-million-dollar award as each side sought in this arbitration. Claimant's recovery is limited to a small portion of its monetary claims. Respondents are entitled to no monetary recovery.

The Tribunal concludes that neither side is the prevailing party. Accordingly, the Parties shall bear their own costs and legal fees.

Finally, the Tribunal establishes in this Final Award a common-sense procedure, consistent with the Hope Agreements, to achieve an orderly unwinding of the

FINAL AWARD
AAA Case Number 01-19-0001-9789

relationship between Claimant and Respondents and the disposition of the inventory of Indiana Artwork held by Respondents.

V.      Procedural History of the Arbitration[3]

On June 24, 2019, Claimant filed its Demand for Arbitration and Statement of Claim (the "Demand") with attached exhibits related to the original Hope Agreement.[4]  The relief sought in the Demand included: (1) a declaration that, *inter alia*, the relevant agreements between the Parties had terminated, and a permanent injunction, (2) damages for breach of contract, (3) statutory remedies including treble damages, attorneys' fees and costs for unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. § 1117, (4) an accounting, treble damages and other remedies for trademark infringement pursuant to 15 U.S.C. § 1117, (5) damages for unfair competition in violation of New York law, and (6) damages for common law conversion of certain Artists' Proofs. Claimant estimated the monetary relief requested to be in the range of $1 million to $10 million.

On August 22, 2019, Respondents filed their Answer to the Demand and AIA's Counterclaims. In their Answer, the Respondents denied all material allegations and requests for relief asserted in the Demand. AIA asserted Counterclaims for: (1) breach of contract (Hope Agreements), (2) quantum meruit (HOPE Artwork), (3) breach of contract (Non-HOPE Artwork), (4) quantum meruit (Non-HOPE Artwork), (5) breach of implied duty of good faith and fair dealing (all agreements), (6) unjust enrichment (all agreements), (7) fraudulent misrepresentation / concealment), (8) prima facie tort, (9) tortious interference with prospective business relations, (10) slander of title, (11) trade libel / commercial disparagement, (12) injurious falsehood, (13) declaratory judgment, and (14) permanent injunction. AIA sought an award of monetary damages not less than $13,500,000 for

---

[3] A more detailed, 34-page summary of the procedural history of these proceedings from June 2019 to November 2021 is set forth in Procedural Order No. 11 ("PO11") issued by the Tribunal on November 29, 2021.  Although occasional references are made herein to litigation involving the Parties in Maine and New York courts, the focus of this summary, as in PO11, is on the proceedings in this arbitration.

[4] See Stipulated Facts, incorporated below *verbatim*, for a description of the HOPE Artwork.

FINAL AWARD
AAA Case Number 01-19-0001-9789

Counterclaims (1), (3), (4), (5) and (7), a monetary award in an amount to be determined for Counterclaims (8), (9), (10), (11) and (12), a monetary award not less than $2,949,984.95 for Counterclaims (2) and (6), and declaratory relief, interest, and other relief deemed just and appropriate by the Tribunal.

On September 27, 2019, Claimant filed an Amended Demand for Arbitration ("Amended Demand") including a new, seventh claim for violation of §12.01 of the New York Arts & Cultural Affairs Law (the "ACAL"). Claimant alleged, in the new Claim 7, a failure by AIA to keep separate and to manage the property of Robert Indiana as property held in trust as required by the ACAL. The relief requested consisted of an award requiring Respondents: (a) to return property to the Claimant; (b) to pay damages, surcharges, and interest in amounts to be determined at the hearing; (c) to disgorge profits and benefits received including commissions on the sale of such trust property; and (d) to pay all costs and expenses including attorneys' fees and arbitration costs.

The Tribunal was fully constituted in October 2019.

On November 6, 2019, Respondents filed a letter application for a Rule 30 postponement of the arbitration pending resolution of litigation in federal court and the conclusion of the Mediation (the "Stay Application"). Respondents also contended that a stay would minimize the risk of issuance of an arbitral award inconsistent with decisions that might issue in *Morgan Art Foundation Limited v. Michael McKenzie, American Image Art, Jamie Thomas and James Brannan, as Personal Representative of the Estate of Robert Indiana*, SDNY Case No. 18-CV-04438-AT (the "SDNY Action").

On November 27, 2019, counsel informed the Tribunal that, in the context of the Mediation, the Parties had signed the Term Sheet purportedly settling the claims and counterclaims asserted in this arbitration. The Tribunal granted an adjournment of the preliminary hearing.

6

FINAL AWARD
AAA Case Number 01-19-0001-9789

On February 25, 2020, Respondents filed a Motion to Disqualify the Tribunal under Rule 18(A).  The application was referred to the AAA Administrative Review Council (the "Council").  On March 10, 2020, the AAA advised the Tribunal and the Parties that the Council reaffirmed the Tribunal members and that the Tribunal should proceed with the arbitration.

On March 11, 2020, the Tribunal issued Procedural Order No. 1 ("PO1") denying the Stay Application and denying Claimant's request for an award of attorneys' fees expended in opposition to the Stay Application.

A Preliminary Hearing was held on April 7, 2020.

On April 9 and 27, 2020, Respondents filed papers in support of an application for an interim measure of suspension of this arbitration pursuant to Rule 37 (the "Rule 37 Application").  Respondents included in their exhibits a copy of the complaint in the SDNY Action.  Claimant filed its opposition to the Rule 37 Application on April 13, 2020.

On April 13, 2020, the Tribunal issued Procedural and Scheduling Order Following Preliminary Hearing ("PO2") setting forth, *inter alia*, a procedural schedule, including an evidentiary hearing to take place in March, 2021.

In PO2, the Tribunal confirmed that, during the April 7, 2020, conference, counsel for the Parties: (a) confirmed that the Tribunal has jurisdiction to decide all claims and defenses asserted in this arbitration; (b) agreed that Claimant and Respondents are proper parties and that no other parties need be joined to this arbitration; (c) confirmed that (i) the substantive law of New York applies to the claims and counterclaims asserted in this arbitration and any U.S. federal law claims are governed by federal law; (ii) the arbitration is governed by the Federal Arbitration Act ("FAA"); and (iii) the arbitration is properly administered under the Commercial Arbitration Rules of the American Arbitration Association and its Procedures for Large, Complex Commercial Disputes (the "Rules").

FINAL AWARD
AAA Case Number 01-19-0001-9789

On May 15, 2020, the Tribunal issued Procedural Order No. 3 ("PO3"), *inter alia*, denying the Rule 37 Application, on the grounds that the Tribunal did not perceive any material risk either of inconsistent determinations being rendered or of material avoidable costs being incurred as a result of proceeding expeditiously to an evidentiary hearing and final award in this arbitration.

On May 18, 2020, the Tribunal issued Procedural Order No. 4 ("PO4") denying an application by Claimant for sanctions against Respondents for engaging in *ex parte* communications with the Tribunal. The Tribunal stated that it expected such communications to stop forthwith, that sanctions were not necessary at that time, and that such *ex parte* communications would not be considered as part of the record.

On June 8, 2020, Respondents' law firm withdrew as counsel to Respondents effective immediately. On June 30, 2020, McKenzie addressed an e-mail to the AAA and to the Tribunal members, without copying counsel for Claimant, requesting, *inter alia,* an extension of time for the completion of discovery on the ground that he did not yet have new counsel in place. On July 1, 2020, the Tribunal reminded Respondents of the rule against *ex parte* communications.

On July 20, 2020, Respondents' current counsel appeared in this arbitration, and, on July 30, 2020, submitted a letter application seeking a stay of the arbitration pending the decision of a newly filed application in the Maine District Court to enforce the Term Sheet as a binding settlement agreement.

On August 5, 2020, the Parties submitted a joint application to suspend discovery proceedings in the arbitration until the end of October 2020.

On August 26, 2020, the Tribunal issued Procedural Order No. 5 (Modified Schedule and Procedures) ("PO5"): (a) deferring further discovery exchanges until October 27, 2020; (b) generally adjusting the deadlines for prehearing procedures; and (c) setting an evidentiary hearing to take place on March 22-26, 2021, to be followed by an exchange of post-hearing memoranda on May 7, 2021.

FINAL AWARD
AAA Case Number 01-19-0001-9789

On October 19, 2020, the Maine District Court issued an Order on Motions to Compel Arbitration and Stay Proceedings and Preliminary Injunction in *McKenzie v. Brannan*, Case No. 2:20-cv-00262-JAW (the "Maine Order"). In the Maine Order, the court, *inter alia,* granted Claimant's motion for an order compelling Respondents to arbitrate the gateway question of arbitrability of a dispute between the Parties over whether the Term Sheet was binding and enforceable and, if so, whether it was waived or abandoned (the "Gateway Question").

On November 24, 2020, Respondents filed a letter proposing a motion to disqualify all Tribunal members from deciding the Gateway Question on the grounds that their "financial interest" in that determination "unavoidably implicates the Tribunal's ability to be impartial and is further grounds for this dispute to return to the court." Claimant opposed the application on multiple grounds.

On December 2, 2020, the Tribunal issued Procedural Order No. 6 ("PO6") in which the Tribunal, *inter alia*: (a) ruled that the Gateway Question was arbitrable and would be decided on a complete evidentiary hearing record; (b) denied on several grounds Respondents leave to make a new motion to disqualify the Tribunal; and (c) maintained in force and effect the Modified Schedule.

On December 11, 2020, Respondents submitted their Supplement to Statement of Claim setting forth Respondents' position with respect to the Term Sheet (the "Supplemental Statement"). Claimant filed its Response to the Supplemental Statement on December 17, 2020.

On February 1, 2021, Respondents filed a letter seeking leave to move to add three additional counterclaims concerning artwork known as "BRAT" fabricated by Respondent AIA and installed at Johnsonville, Inc.'s sausage factory in Sheboygan Falls, Wisconsin (the "BRAT Claims"). On February 9, 2021, Claimant agreed that, "if the [BRAT Claims] are to be litigated anywhere, it should be as a part of this arbitration proceeding." On February 22, 2021, Respondents submitted a Supplemental Statement of Claim setting forth their BRAT-related Claims.

9

FINAL AWARD
AAA Case Number 01-19-0001-9789

On March 12, 2021, Claimant filed its Pre-Hearing Memorandum of Law and Amended Exhibit List, the Parties' Joint Hearing Exhibit List, and an e-mail raising questions and potential objections to Exhibit R-69.  On the same date, Respondents filed their Pre-Hearing Memorandum and Objections to Claimant's Exhibits, and the Parties provided the Tribunal with links to download hearing exhibits.

Also on March 12, 2021, counsel for Respondents filed an e-mail informing the Tribunal of an adverse development with respect to McKenzie's health, and thereafter submitted related documentation.

On March 15, 2021, the Tribunal conferred and informed the Parties of the cancellation of the March 22-26, 2021, evidentiary hearing dates.

On March 17, 2021, the Tribunal and counsel attended a telephonic status conference during which the Parties agreed to conduct the evidentiary hearing on May 17 – 21, 2021.  The Tribunal further directed the Parties to submit supplemental pre-hearing memoranda addressing their requests for relief.  The Parties filed their respective supplemental pre-hearing memoranda addressing their requests for relief on March 31, 2021.

On April 22, 2021, Respondents' counsel filed an e-mail stating that, for medical reasons, counsel for Respondents did not believe that McKenzie would be able to participate at the evidentiary hearing scheduled for May 17-21, 2021. Respondents' counsel filed related documentation on April 26, 2017 and proposed postponement of the hearing until September, 2021.  On April 27, 2021, Claimant responded that it did not oppose a short adjournment but did oppose an adjournment until September 2021, as undue delay.

On April 29, 2021, the Tribunal issued Procedural Order No. 7 ("PO7") setting forth, *inter alia*, alternative procedures for the submission of direct testimony by written witness statement and the issuance of written interrogatories at Claimant's

10

FINAL AWARD
AAA Case Number 01-19-0001-9789

option, for the purpose of reducing any stress that oral direct and cross-examination would have on McKenzie. Respondents requested reconsideration of the procedures set forth in PO7 as insufficient to assure McKenzie's health and safety. Claimant responded that the hearing procedures established in PO7 were fair and reasonable under the circumstances.

On May 6, 2021, counsel for Respondents filed an e-mail stating, *inter alia*, that McKenzie authorized counsel to inform the Tribunal that, "if [the Tribunal] puts off this arbitration until September, McKenzie agrees that the proceeding will go forward with or without him at that time and fully resolve the matter." Also on May 6, 2021, the Tribunal issued Procedural Order No. 8 ("PO8"): (a) denying Respondents' request for reconsideration of PO7; (b) clarifying the limited scope of written interrogatories allowed pursuant to PO7; and (c) stating that both sides would have an opportunity to review the written direct testimony submitted pursuant to PO7 before deciding whether to request cross-examination of any such witnesses.

Claimant and Respondents filed written witness statements on May 21, 2021. Respondents filed McKenzie's responses to interrogatories on May 28, 2021.

On June 9, 2021, Claimant filed a letter request for leave to file witness rebuttal statements from two witnesses who did not submit direct witness statements, as follows: (a) Adelina Garay, formerly employed by the Estate as a paralegal, who would testify as an eyewitness to an oral exchange between McKenzie and Kevin J. Lipson, one of the Estate's attorneys at the Mediation, and (b) Melissa Hamilton, a former employee of Indiana, who would testify in response to a statement by McKenzie that he, not Indiana, was the true author and creator of the HOPE Artwork.[5] Also on June 9, 2021, Respondents filed their letter in opposition to Claimant's application.

---

[5] The Agreement, however, expressly identified Indiana as the Artist and Respondents as the Publisher. JX-1 at 1.

FINAL AWARD
AAA Case Number 01-19-0001-9789

In June, 2021, the Parties filed reply witness statements and their respective requests for cross-examination, and the Tribunal issued PO9 denying Claimant's application for leave to submit rebuttal witness statements on the grounds that such statements were being offered to rebut testimony that was neither relevant to any genuine issue before the Tribunal nor a surprise in view of prior proceedings.

On June 18, 2021, Respondents filed a supplemental letter in support of their request for cross-examination, and Claimant submitted a supplemental filing on the New York statutes of frauds and "dead man's statute" and their potential impact on the proper scope of testimony in the arbitration. Respondents thereafter filed a letter brief and supporting authorities on these issues.

On July 9, 2021, a video conference was held on the Parties' requests for cross-examination and the Tribunal thereafter issued PO10. During the conference Claimant agreed to limit cross-examination of McKenzie to a maximum of four hours. Respondents withdrew their requests for cross-examination and sought, instead, a maximum of two hours for re-direct examination of McKenzie and permission to call a non-party witness, Jamie Thomas. The Tribunal accepted the modified requests with respect to McKenzie's testimony and inquired as to when his health would allow for such cross and redirect examination. Respondents' counsel responded that McKenzie would be able to do so as soon as the week of July 17, 2021.

The Tribunal noted that the request to call Jamie Thomas was untimely but retained discretion to allow his testimony if persuaded at the conclusion of McKenzie's testimony that Thomas was a necessary witness on a material issue. Claimant volunteered to produce, and did produce later in the day, *inter alia*, declarations of Thomas and other witnesses filed in the SDNY Action. With consent of the Parties, the Tribunal set a deadline for joint submission of a proposed procedural order regarding the conduct of a remote evidentiary hearing by videoconference.

FINAL AWARD
AAA Case Number 01-19-0001-9789

On August 4, 2021, the Parties submitted, and the Tribunal entered a Stipulation and Order Regarding Procedures for Virtual Hearing. The remote evidentiary hearing by videoconference took place, as scheduled, on August 25, 2021.

On September 10, 2021, Claimant submitted a request for emergency interim relief pursuant to Rule R-37 prohibiting Respondents, *inter alia*, from moving, transferring, or alienating title to any work of art attributed to Indiana (the "Indiana Artwork"), and ordering Respondents to allow an inspection and inventory of all such works in their possession, custody, or control.  In support of the application, Claimant submitted, *inter alia*, a declaration of Osvaldo Gonzalez.  On September 13, 2021, Claimant submitted information requested by the Tribunal including an affidavit filed by McKenzie in the SDNY Action.   Respondents submitted their opposition to Claimant's application for interim relief, including a transcript of McKenzie's deposition testimony in the SDNY Action.

On September 14, 2021, the Tribunal issued an Interim Award with Injunction which provided, *inter alia*, that: (a) Respondents were enjoined from moving, transferring or relocating Indiana Artwork in the possession, custody or control of Respondents until further order or award of the Tribunal to the contrary; and (b) Respondents were required to identify all premises where Indiana Artwork was located and to permit Claimant and its counsel to inspect and conduct a physical inventory of all such artwork by September 17, 2021, or at such later time as Claimant may agree. The Interim Award with Injunction further provided for a remote hearing to be held on October 5, 2021, or at such later date as the Tribunal may direct at the request of a Party, on the question whether the Injunction should be modified or terminated (the "Injunction Hearing").

On September 24, 2021, the Parties submitted a joint letter requesting adjournment of the Injunction Hearing stating that Respondents consented to extension of the Injunction to an adjourned Injunction Hearing date. The Tribunal granted the request for adjournment and re-scheduled the Injunction Hearing for

FINAL AWARD
AAA Case Number 01-19-0001-9789

November 4, 2021. The Injunction Hearing never took place. Instead, on October 18, 2021, the court in the SDNY Action entered a Stipulation and Consent Order confirming the Interim Award with Injunction.

On September 28, 2021, an evidentiary hearing by remote video conference for the cross-examination and re-direct examination of McKenzie was conducted and completed.

On October 19, 2021, the Parties submitted a joint letter requesting a further adjournment of the Injunction Hearing. On October 20, 2021, the Tribunal adjourned the Injunction Hearing and set October 27, 2021, as the deadline for submission by the Parties of a firm date for completion of the inventory process. The deadline was thereafter extended to November 12, 2021.

On October 22, 2021, the Parties submitted their Post-Hearing Briefs. On November 15, 2021, the Parties submitted their Post-Hearing Reply Briefs.

On November 17, 2021, Claimant submitted a revised, final inventory report.

On November 22, 2021, the Tribunal confirmed December 17, 2021, as the agreed date for closing arguments. Later the same day, Respondents informed the Tribunal that the First Circuit had issued a decision: (a) reversing the order of the Maine District Court that referred the Gateway Question to the Tribunal; and (b) remanding those issues to the Maine District Court.

Thereafter, at the Tribunal's request, the Parties submitted letters addressing the implications of the First Circuit's decision on these proceedings. Claimant argued for bifurcation so that the Tribunal might issue a partial final award on those claims not related to the Term Sheet. Respondents argued for a formal suspension of the arbitral proceedings pending a decision of the Maine District Court on remand.

On November 29, 2021, the Tribunal issued PO11 in which the Tribunal exercised its discretion to defer any further consideration of the merits of the claims,

14

FINAL AWARD
AAA Case Number 01-19-0001-9789

defenses and counterclaims asserted in the arbitration until such time as the Maine District Court decided the issues presented to the court on remand.

Fourteen months later, on February 1, 2023, counsel informed the Tribunal that the Maine District Court issued its decision on that date and ruled, *inter alia*, as follows:

> Accordingly, I find that, although the 2019 Term Sheet was a binding contract, not an agreement to agree, McKenzie repudiated it. Because of that repudiation, the Estate was justified in treating the entire 2019 Term Sheet as rescinded. And, the repudiation and subsequent rescission resurrected the 2008 Agreement and its arbitration provision. Thus, McKenzie's requests for a declaratory judgment that the 2019 Term Sheet is binding and enforceable and for an order enjoining the New York Arbitration are DENIED. There being nothing left to rule on, the case is DISMISSED."

On February 27, 2023, the Tribunal requested that the Parties submit or re-submit specified documents to aid the Tribunal in organizing the remaining proceedings in the arbitration.

On March 2, 2023, the Parties informed the Tribunal, *inter alia*, of their differing positions as to whether the Tribunal should include in its final award any determination with respect to the Term Sheet.

During a status conference conducted by video conference on March 2, 2023, the Tribunal and Parties agreed on a schedule confirmed in Procedural Order No. 12 ("PO12") issued on the same date. Pursuant to PO12, on March 16, 2023, the Parties supplied the Tribunal with electronic copies of certain prior filings, the evidentiary hearing record, updated summaries of the Parties' respective contentions and requests for relief, and proposed findings of fact and conclusions of law.

A remote videoconference was held on April 5, 2023, from 11:00 a.m. to 1:00 p.m., for the Parties' presentation of closing arguments and for a question-and-answer session with the Tribunal. The session continued Friday, April 7, 2023, from 1:00 p.m.to 3:25 p.m. In attendance for both sessions were the Tribunal members, Messrs.

FINAL AWARD
AAA Case Number 01-19-0001-9789

Brewster and Falzone for Claimant, and Ms. Zerner for Respondents.  A deadline of May 5, 2023 was set for the exchange and filing of: (a) attorneys' fees and cost applications, and (b) proposed decretal paragraphs for consideration by the Tribunal for use in the award.  On May 3, 2023, at the Parties' request, the Tribunal extended the deadline for such filings to May 12, 2023.

On May 12, 2023, the Parties submitted their respective applications for an award of attorneys' fees and their proposed decretal paragraphs. Thereafter, counsel for the Parties filed letters related to Claimant's fee application, including Respondents' May 17, 2023 objections and Claimant's May 18, 2023 partial amendment to its application.

On June 12, 2023, the Tribunal closed the record of these proceedings.

VI.   Evidentiary Hearing Record

The record of the evidentiary hearing includes the following:

1.  Joint Exhibits: JX-1 through JX-25
2.  Testimony submitted by Claimant:
    a.  James W. Brannan (Personal Representative of the Estate of Robert Indiana; attorney who represented Mr. Indiana)
        i.  Written testimony submitted May 21, 2021
        ii.  Reply written testimony submitted June 6, 2021
    b.  Scott Hamilton (formerly employed by Mr. Indiana as an assistant and archivist; currently employed as a financial adviser)
        i.  Written testimony submitted May 21, 2021
    c.  Kevin J. Lipson (Attorney; Venable LLP partner; served as counsel to the Estate)
        i.  Written testimony submitted May 21, 2021
        ii.  Reply written testimony submitted June 6, 2021
    d.  Osvaldo Gonzalez (former employee of AIA)

16

FINAL AWARD
AAA Case Number 01-19-0001-9789

      i.  Written testimony submitted September 10, 2021 (in connection with Interim Award with Injunction)

    e.  Edward P. Boyle Affirmation, Seth W. Brewster Affidavit, and James W. Brannan Affidavit, all dated May 12, 2023, and Sigmund D. Schulz Affidavit, dated April 28, 2023, in support of Claimant's Application for Attorney Fees and Costs and Arbitration Fees submitted May 12, 2023

3. Claimant's Exhibits: C-1 through C-198

4. Testimony submitted by Respondents:

    a.  Michael McKenzie (Respondent, art publisher, sole proprietor of AIA)

      i.  Written testimony submitted May 21, 2021

      ii.  Interrogatory Responses submitted May 28, 2021

      iii.  Reply written testimony submitted June 11, 2021

      iv.  Live testimony (cross-examination and re-direct examination via remote videoconference) September 28, 2021

    b.  Osvaldo Gonzalez (former employee of AIA)

      i.  Written testimony submitted May 21, 2021

    c.  Bridget A. Zerner Declaration in support of Respondent McKenzie's Application for Attorneys' Fees and Costs, submitted May 12, 2023.

5. Respondents' Exhibits: R-1 through R-17, R-20, R-21, R-22, R-24 through R-28, R-30, R-31, R-32, R-34, R-35, R-36, R-46, R-52 through R-56, R-68, R-69.

VII.   Contentions of the Parties[6]

1. Claimant's Contentions

---

[6] The summary of the contentions of the parties provided herein, based on Summaries of Contentions filed by the Parties on March 16, 2023, is single-spaced and in italics to reflect that the summaries provided are descriptive and are not adopted by the Tribunal as its findings or conclusions.

FINAL AWARD
AAA Case Number 01-19-0001-9789

The ACAL governs any dealings between Indiana and McKenzie because McKenzie is an "Art Merchant" and Indiana was the "Artist," as defined by the ACAL, responsible for HOPE and other designs published by McKenzie.

The Hope Agreements terminated automatically when McKenzie failed to make the payments required by the Agreements in order to maintain them.

The Hope Agreements terminated upon Robert Indiana's death, because they amounted to an agency consignment arrangement under common law and the ACAL.

The Estate also terminated the Hope Agreements, which were fully integrated, based upon McKenzie's material breaches of the Agreements in numerous ways including 1) failing to make required payments, 2) failing to deliver Artist's Proofs of sculptures, 3) producing and selling unauthorized Indiana works, 4) failing to provide accountings to Indiana or his Estate, and 4) failing to keep sufficient records to enable to provide such accountings.

Even if there were oral agreements between Indiana and McKenzie, which there are not, those agreements have also been terminated by McKenzie's manifold breaches, including his misrepresentations and deceptive practices, among other causes.

The Estate is entitled to damages for McKenzie's failures a) to deliver the required Artist's Proofs, b) to pay royalties on HOPE prints and sculptures sold after June 2018, and c) to pay the Estate for the sale of non-HOPE works, including the BRAT sculpture.

The ACAL governs any dealings between Indiana and McKenzie because McKenzie is an "Art Merchant" and Indiana was the "Artist," as defined by the ACAL, responsible for HOPE and other designs published by McKenzie.

As an Art Merchant for the Artist Robert Indiana, McKenzie owed Indiana a fiduciary duty, as he was obligated to hold funds that he received for the sale of consigned Indiana art in trust for Indiana. McKenzie has failed to keep trust funds separate from his personal funds, has failed to maintain adequate records of trust property, and has claimed that all such funds and property are his own, treating them as such.

Under the ACAL as well as the terms of the Hope Agreements, the Estate has an interest in all consigned works that are in McKenzie's possession. Although the Estate is entitled to the return of all such works, McKenzie has refused to do so, and continues to interfere with the Estate's possessory interest in these works.

Claimant is entitled to an award allocating to McKenzie all costs of the arbitration because McKenzie (a) has refused to contribute to the costs and fees of the AAA, (b) has engaged in discovery misconduct, (c) has attempted to shelter

18

FINAL AWARD
AAA Case Number 01-19-0001-9789

*property of the Estate from a potential award, and (d) sold Estate property during the pendency of the arbitration.*

*Respondents cannot prevail on the claim that Indiana or the Estate have breached the Hope Agreements because McKenzie failed to perform his obligations under those Agreements. Respondents adduced no evidence to support claims that Indiana failed to comply with his duties under the Hope Agreements or claims that Indiana attempted to delegitimize his own work.*

*The Estate has not committed any breach for seeking to enforce its interpretation of the relevant agreements or by selling any artwork in its possession and has made no actionable statements regarding the authenticity of McKenzie's fabrications.*

*Respondents cannot recover for breach of the implied duty of good faith and fair dealing in that they have failed to demonstrate any exercise of a contractual right to realize gains implicitly denied by the Hope Agreement or to deprive McKenzie of what he was owed. Similarly, there is no evidence that the Estate has breached any alleged agreements relating to non-HOPE works. McKenzie's testimony regarding oral agreements is precluded by the statute of frauds and by the written terms of the HOPE Agreements. Even if oral testimony were to be considered, McKenzie's testimony was not credible and failed to establish a breach of any oral agreements.*

*McKenzie cannot recover under quasi-contract theories of unjust enrichment or quantum meruit because (a) his assertion that royalty payments were "advance royalties" contradicts the clear language of the Agreements; (b) McKenzie cannot recover Indiana's gain under an unjust enrichment theory because Indiana was entitled to annual minimum royalties and so his gain from non-HOPE sales was zero; and (c) McKenzie's unclean hands bar any recovery based on equitable principles.*

*Finally, Claimant contends that McKenzie failed to establish that any oral agreements were subject to a fixed and definite duration and therefore, under New York law, any such agreements were terminable at will and the Estate has duly terminated all agreements.*

*Claimant concludes, for the foregoing reasons, that Respondents are entitled to no declaratory, injunctive, or other relief.*

2. Claimant's Requests for Relief

Claimant sought the following affirmative relief:

   a. A declaration that the Hope Agreements have terminated and an order permanently enjoining Respondents from any further production or reproduction of Indiana Artwork

19

FINAL AWARD
AAA Case Number 01-19-0001-9789

    b. A monetary award equal to the market value of undelivered Artist's Proofs ("APs") estimated at $8,315,000.00, as expectation damages

    c. A monetary award of $3,333,333.00 as damages for continuing sales of Indiana Artwork, based on the contractual minimum royalty rate, from March 2018 (the date of the last minimum royalty payment) to September 14, 2021 (the date of the Interim Award with Injunction) or, in the alternative, in the amount of $3,889,033.00, based on the assumption that sales had continued at the 2017 (pre-litigation) rate during the relevant period

    d. A monetary award in the amount of $731,800.00 for unauthorized sales of non-HOPE prints and sculptures

    e. A monetary award in the amount of $2,529,375.00 for restitution and disgorgement of profits from the wrongful sale of the BRAT sculpture

    f. An order compelling McKenzie to reimburse Claimant for all legal fees and expenses incurred in connection with this arbitration and the Maine District Court litigation

    g. An award allocating all costs and fees of the arbitration to be paid by McKenzie.

3. Respondents' Contentions

*The Hope Agreement is an advanced royalties contract by its clear terms. McKenzie and Indiana agreed to a five-year term during which an advance royalty payment of $1,000,000 made each year, but they agreed the contract would renew thereafter upon the annual payment to Indiana, his heirs, estate or assigns.*

*McKenzie performed under the contract. He diligently worked with Indiana to create sculptures, prints and silk-screened canvas images of the HOPE artwork in accordance with Indiana's approval. He made advanced royalty payments and kept accountings as required. He did not make advanced royalty payments since 2018 due to the conduct and breach of Indiana and the Estate.*

*The Hope Agreement is not a consignment agreement. ACAL does not apply to the agreements between McKenzie and Robert Indiana. McKenzie is not subject to the fiduciary duties imposed by ACAL. The Hope Agreement did not terminate with Indiana's death either by its terms, under general agency principles, or under ACAL.*

*Claimant breached the Hope Agreement, inter alia, when (a) Indiana's agent told potential buyers of the McKenzie-produced HOPE artwork that HOPE would not be included in Indiana's catalogue raisonne; (b) Indiana failed to participate in reasonable promotional activities; (c) giving away or underselling and devaluing artwork; (d) asserting termination of the relationship with McKenzie; (e) refusing to repay royalties that were advanced but not earned; and (f) falsely stating that McKenzie has produced unauthorized Indiana works.*

*McKenzie is owed at least $2 million per year since 2018 for interference with his sales and the market. McKenzie has 400 paintings that were valued at $150,000*

FINAL AWARD
AAA Case Number 01-19-0001-9789

*each. The Estate's underselling has reduced the total worth from $60,000,000 to $4,000,000. Sales from the prior five years for Indiana artwork averaged around $2,900,000 in annual sales. Since the Estate's interference and false allegations, there have been losses. McKenzie is entitled to at least $10,000,000 in damages from the Estate for this loss, the harm to his reputation, and the cost to repair this damage.*

*If the wrongful conduct of Indiana and the Estate does not constitute a breach of contract, it constitutes a breach of the implied duties under the contract.*

*Indiana and McKenzie agreed to oral modifications to the Hope Agreement as allowed by law and such modifications are enforceable. including with respect to The Alphabet, WINE, the Dylan Series, WORD, SOUL, BODY, EAT, ART, HE/SHE, and BRAT. Documentation, including emails and documents from Indiana's own personal files, confirm the oral modifications he agreed to with McKenzie.*

*Indiana's agents and the Estate breached the implied obligations that (a) non-HOPE works authorized by Indiana should be acknowledged in Indiana's catalogue raisonne, (b) Indiana's agents should not interfere with McKenzie's production of non-HOPE works nor question or raise doubt as to their authenticity. McKenzie is entitled to at least $10,000,000 in damages from the Estate for lost sales, the harm to McKenzie's reputation, and the cost to repair such damage.*

*Indiana was unjustly enriched by McKenzie's advanced royalty payments, and it would be contrary to equitable principles for the Estate to retain $5,115,984.95 in unearned royalties.*

*Alternatively, McKenzie is entitled to recover in quantum meruit for performing in good faith by expending time, costs, and resources to produce works for which McKenzie advanced royalties and incurred expenses for which McKenzie reasonably expected compensation. The reasonable value of services would be $5,115,984.95, the same amount as the unearned royalties.*

*The Hope Agreement did not terminate for failure by McKenzie to renew by paying royalties. McKenzie was excused from making further royalty payments because the Estate was in breach of contract before McKenzie stopped making such payments. The Estate was in breach by (a) taking the position that the contract terminated upon Indiana's death, (b) denying that Indiana authorized the artwork produced by McKenzie under the contract, (c) making public allegations of fraud and forgery, and (d) refusing to pay back unearned advanced royalties. By the end of 2018, the Estate had anticipatorily breached contractual obligations to McKenzie.*

*The oral agreements modifying the Hope Agreement fall under its duration and are not terminable at will. Alternatively, the Tribunal should allow reasonable time for McKenzie to sell non-HOPE works before termination in consideration of the litigation and circumstances here that disrupted production under the agreements after McKenzie expended time, resources, and costs on production of these works.*

FINAL AWARD
AAA Case Number 01-19-0001-9789

*Written communications between McKenzie and Indiana and their conduct, including as evidenced in photographs and videos showing Indiana signing works made pursuant to oral modifications of the Hope Agreement, support the oral modifications to which McKenzie has testified.*

*Claimant has failed to establish that Respondents have withheld documentation or made any sales as to which royalties are owed. The testimony on which Claimant relies only establishes that McKenzie has continued to produce artwork as allowed by the New York Supreme Court order declining to issue an injunction.*

*Respondents owe the Estate nothing for failure to deliver APs to Indiana. The Estate has not discredited McKenzie's testimony that he delivered 200 original works designated as APs to Indiana and that Indiana authorized sale of other APs and accepted payment for them. The Estate offers no evidence that Indiana complained about or rejected payment for the APs sold. Rather, Indiana's conduct showed that he waived or modified the terms that required delivering all APs to him.*

*The Estate has failed to discredit McKenzie's testimony, supported by photographs and videos in the record, that Indiana authorized McKenzie's practices with respect to reproducing Indiana's signature on sculptures and canvas.*

*The Estate has not shown that McKenzie breached his accounting obligations. Rather, the record establishes that, through Indiana's conduct and interaction with McKenzie, for ten years Indiana waived the required quarterly accounts by an accounting firm thus modifying the contract and/or ratified McKenzie's method of accounting under the contract by accepting the accountings in the form provided.*

*The Estate has failed to prove entitlement to an award of damages on any of its claims. The Estate disregarded evidence of payments for sold APs and otherwise failed to prove entitlement to damages for failure to deliver APs. Similarly, the Estate has failed to show actual sales at a level that would justify disgorgement of $3,333,333 for unpaid royalties on HOPE prints and sculptures. The Estate cannot recover damages for non-HOPE sales, including BRAT, because it has failed to show that those sales were not authorized or that Indiana was not compensated for them through advanced royalties. Moreover, McKenzie is entitled to equitable deduction for production costs and any claim for payment would be offset by the unearned royalties owed to McKenzie.*

*The Estate has not proven its conversion claim. To the extent the claim is based on a consignment theory, the theory is inapplicable. Moreover, McKenzie has not "refused to comply" with the Hope Agreement wind-up provision because the Hope Agreement has not terminated. Nor would the Estate be entitled to all of the non-HOPE works because those works were made under the Hope Agreement as modified orally and, upon termination, the non-HOPE works would be apportioned according to the split in the contract. Alternatively, if the Hope Agreement terminated, all the Indiana works should be apportioned according to the Hope Agreement's terms. The*

22

FINAL AWARD
AAA Case Number 01-19-0001-9789

*termination provision of the Hope Agreement should be enforced which provides that, upon termination, 30% of the sculptures go to Indiana while 70% remains with McKenzie and all canvas is divided 50/50. The Estate is not entitled to everything which would be an inappropriate windfall.*

*The Estate is not entitled to an allocation of all fees and costs against McKenzie because the Estate should not prevail on their claims and because McKenzie did not willfully refuse to pay required deposits and fees. Rather, following initial deposits McKenzie was not able to pay the fees due to the detrimental impact all the lawsuits and claims made against him had on the market and McKenzie's ability to sell artwork. Moreover, the Estate has made no showing of a significant burden on the Estate to advance the fees, and both sides pursued claims that later were withdrawn.*

4. Respondents' Requests for Relief

Respondents sought the following affirmative relief:

  a. A declaration that Indiana and/or the Estate materially breached the Hope Agreement
  b. A permanent injunction enjoining the Estate from interfering with McKenzie's continued creation, production, development, and sales of Indiana Artwork
  c. A declaration that Indiana and/or the Estate materially breached agreements unrelated to HOPE works
  d. A permanent injunction enjoining the Estate from interfering with McKenzie's continued creation, production, development, and sale of Indiana Artwork unrelated to the HOPE works
  e. A monetary award in the amount of $5,115,984.95 for the repayment of unearned royalties advanced by McKenzie to Indiana
  f. A monetary award in the amount of $10,000,000 in lost sales and damages ($2,000,000 a year from 2018 through 2022) resulting from Indiana's and/or the Estate's breach of contract and harm to McKenzie's reputation and the Indiana brand caused by the Estate's conduct, including but not limited to false public allegations against McKenzie and underselling and devaluation of Indiana Artwork; and
  g. An order that the Estate reimburse McKenzie for all legal fees and expenses incurred in connection with this arbitration.

FINAL AWARD
AAA Case Number 01-19-0001-9789

VIII.   Facts[7]

### 1. Stipulated Facts

The Parties entered a Joint Stipulation of Facts dated May 21,2021, setting forth the following undisputed facts which the Tribunal adopts in their entirety including the Parties' original paragraph numbering.

1.      Robert Indiana was a painter, sculptor, and visual artist who died on May 19, 2018.

2.      Prior to his death, Robert Indiana resided on the island of Vinalhaven, Maine.

3.      James Brannan is an attorney licensed to practice in the State of Maine. His principal place of business is in Rockland, Maine.

4.      On May 7, 2016, Robert Indiana executed a Last Will and Testament that had been prepared by James Brannan at Indiana's direction.

5.      Robert Indiana's Last Will and Testament named Star of Hope Foundation Inc. as the sole beneficiary of Indiana's estate.  Star of Hope Foundation Inc. is a Maine charitable corporation formed at Indiana's direction during his lifetime.  Its stated mission includes the promotion of Indiana's artistic legacy.

6.      Simultaneous with the execution of his Last Will and Testament on May 7, 2016, Robert Indiana executed a document authorizing Jaime Thomas, a local Vinalhaven resident and longtime friend of Indiana to act as power of attorney on Robert Indiana's behalf.

---

[7] The Tribunal has considered the entire factual record submitted by the Parties, including the testimony submitted in connection with the evidentiary hearing. In the interests of efficiency and cost-effectiveness, however, only those facts that are stipulated or material to the analysis and decision are addressed herein. Express reference to specific documents or testimony may be omitted for one or more reasons, including relevance, materiality, weight, credibility, cumulative nature, or some combination thereof.

FINAL AWARD
AAA Case Number 01-19-0001-9789

7.      On May 25, 2018, the Probate Court for Knox County, Maine appointed James Brannan as the Personal Representative of Robert Indiana's estate.

8.      Michael McKenzie is an art publisher who does business as American Image Art.

9.      Michael McKenzie's residence and principal place of business is in Katonah, New York.

10.     American Image Art is [a] sole proprietorship and does not have any corporate form.

11.     On or about August 11, 2008, McKenzie, and Indiana both signed an agreement titled "Agreement for Art Editions." Robert Indiana was advised by an attorney in connection with the drafting of the Agreement for Art Editions. JX-1 is a true and correct copy of that agreement.

12.     JX-1, in part, granted McKenzie the right to produce and sell certain two- and three-dimensional artworks based upon the HOPE design, in colors, media, sizes, and editions specified by Indiana. An example of the HOPE design, as silkscreen printed on canvas by McKenzie, is depicted below.



FINAL AWARD
AAA Case Number 01-19-0001-9789

13.    On or about September 28, 2010, McKenzie and Indiana both signed an agreement titled "Robert Indiana/American Image: Addendum to Hope Contract." JX-2 is a true and correct copy of that agreement.

14.    On or about September 1, 2011, McKenzie and Indiana both signed an agreement titled "Addendum to Hope Contract." JX-3 is a true and correct copy of that agreement.

15.    On or about October 4, 2011, McKenzie and Indiana both signed an agreement titled "Hope Wine." JX-4 is a true and correct copy of that agreement.

16.    On or about March 31, 2012, McKenzie and Indiana both [signed] an agreement titled "Addendum to Agreement."  JX-5 is a true and correct copy of that agreement.

17.    Except for the agreements identified as JX-1 though JX-5, there were no signed, written agreements between Indiana and McKenzie from August 11, 2008, to Indiana's death on May 19, 2018.

18.    The following chart accurately summarizes all of the payments made by Michael McKenzie to Robert Indiana between May 1, 2011, and March 9, 2021. Each payment summarized below was made by way of a check signed by Michael McKenzie, and each such check was deposited in a bank account belonging to Robert Indiana.

| Check Date | Check No. | Amount |
|---|---|---|
| May 29, 2011 | 5447 | $400,000 |
| October 5, 2011 | 7014 | $600.000 |
| April 5, 2013 | 7315 | $1,000,000 |
| October 29, 2013 | 7551 | $1,000,000 |
| October 5, 2014 | 7935 | $1,047,000 |
| June 24, 2015 | 8244 | $395,100.00 |
| September 29, 2015 | 8377 | $604,900.00 |

FINAL AWARD
AAA Case Number 01-19-0001-9789

| | | |
|---|---|---|
| September 7, 2016 | 8847 | $1,000,000 |
| May 23, 2017 | 9311 | $853,035.00 |
| November 2, 2017 | 9615 | $153,965.00 |
| November 7, 2017 | 9627 | $313,625.00 |
| March 28, 2018 | 9857 | $500,000.00 |

19.     Editions of HOPE sculptures fabricated by McKenzie are identified by finish or material, by size, and by color (listed in order of primary color/secondary color/tertiary color, where applicable). By way of example, "18" Red/Blue" indicates a sculpture eighteen inches in height, constructed of aluminum and painted red on its primary surfaces and blue on its secondary surfaces; and "36" Cor-Ten Steel" indicates a sculpture 36 inches in height constructed of  Cor-Ten Steel, which is a steel treated by a process to give it a rusted or oxidized appearance.

20.     McKenzie has fabricated at least one HOPE sculpture in each of the following editions:

> 18" Blue/Green
> 18" Blue/Red
> 18" Blue/White
> 18" Blue/Violet
> 18" Bronze
> 18" Eternal Green
> 18" Eternal Red
> 18" Gold
> 36" Gold
> 18" Gold/Blue
> 18" Gold/Red
> 36" Gold/Red
> 18" Red
> 36" Red
> 12" Red/Blue
> 18" Red/Blue
> 36" Red/Blue

FINAL AWARD
AAA Case Number 01-19-0001-9789

> 72" Red/Blue
> 18" Red/Blue/Green
> 36" Red/Blue/Green
> 72" Red/Blue/Green
> 18" Red/Blue/White
> 36" Red/Blue/White
> 18" Red/Gold
> 36" Red/Gold
> 18" Red/Light Blue
> 36" Red/Light Blue
> 18" Red/Silver
> 18" Red/White
> 12" Red/White/Blue
> 18" Red/Violet
> 18" Red/Yellow
> 18" White/Black
> 18" White/Red/Blue
> 18" Violet/Red
> 18" Polished Stainless Steel
> 18" Brushed Stainless Steel

21.    McKenzie delivered the following HOPE sculptures to Indiana: (i) a 36-inch Cor-Ten Steel, inscribed as edition number AP 1/1; and (ii) an 18-inch Polished Stainless Steel. McKenzie did not deliver any other HOPE sculptures to Indiana.

22.    Rosenbaum Contemporary is an art gallery operating in Boca Raton Florida, through which McKenzie sold Indiana artworks between 2008 and 2018.

23.    Through Rosenbaum Contemporary, McKenzie sold the following HOPE sculptures that were inscribed and designated as Artist's Proofs, and received from Rosenbaum Contemporary the following amounts in consideration for those sales:

> 18" Bronze - $75,000
> 18" Red - $60,000
> 18" Red/Blue/White - $75,000
> 18" Red/Blue/Green - $65,000
> 18" Red/Gold - $75,000
> 18" Red/Light Blue - $75,000

28

FINAL AWARD
AAA Case Number 01-19-0001-9789

> 18" Red/Violet - $75,000
> 18" Red/White - $75,000
> 18" Red/Yellow - $75,000
> 18" Brushed Stainless Steel - $65,000
> 18" White/Red/Blue - $60,000

24.　On May 9, 2019, Brannan sent by email, and McKenzie received, a notice of termination letter stating that all agreements between Indiana and McKenzie had been terminated. C-191 is a true and correct copy of that letter.

25.　Brannan (in his capacity as Personal Representative of Indiana's Estate), Jamie Thomas, and McKenzie were all defendants in an action pending in the U.S. District Court for the Southern District of New York., which was filed by Morgan on April 23, 2020, McKenzie sought leave from the Court to file crossclaims against the Estate relating to the BRAT sculpture. C-193 is a true and correct copy of the April 23, 2020 letter filed with court on behalf of McKenzie seeking leave to assert those claims.

26.　C-034 is a written agreement entitled "Art Commission Agreement" and dated May 1, 2017. This agreement was signed by Shelly Steyer as "owner" on behalf of Johnsonville Holdings, Inc.  This agreement was signed by McKenzie as "owner" on behalf of American Image Art.  This agreement was signed a second time by McKenzie as "publisher" on behalf of "American Image Art f/s/o Robert Indiana."

27.　C-034 states that Johnsonville Holdings Inc., as the "Buyer," will pay $2,850,000 as purchase price for a sculpture titled BRAT.

28.　By April 2020, Johnsonville Holdings Inc. had tendered to McKenzie the entire $2,850,000 purchase price for the BRAT work set forth in C-034.  The payments tendered to McKenzie from Johnsonville were in part used by McKenzie to pay the fabricators, engineers, painters, transporters, and others involved with the construction and installation of the BRAT work.  No money was paid by Johnsonville

FINAL AWARD
AAA Case Number 01-19-0001-9789

directly to Indiana.  $353,035 of the $853,035 payment made by McKenzie to Indiana on May 23, 2017 was designated as payment for BRAT.

29.    On November 25th and 26th, 2019 McKenzie and Brannan attended a mediation conducted by Patrick Coughlin in Portland, Maine.  Also present and participating in this mediation were personnel and legal counsel representing Jaime Thomas, Morgan, Star of Hope Foundation Inc., and the Attorney General of the State of Maine.

30.    On November 26, 2019, near the conclusion of the mediation session in Portland, Maine, Brannan and McKenzie signed an agreement titled "Confidential and Binding Term Sheet Between Michael McKenzie, individually, and as agent of American Image Art (together "AIA") and the Estate of Robert Indiana (the "Estate")." JX-18 is a true and correct copy of that agreement.

31.    There are no signed, written agreements between Indiana and McKenzie that were signed on Indiana's behalf by Jamie Thomas.

2.    Additional Facts Found by the Tribunal

The Agreement established a five-year duration, but further provided that the Agreement would "forthwith terminate unless . . . minimum royalty payments are made in each annual period of the agreement" in the amount of $1,000,000 per annum. JX-1 at 3.

When the Parties amended the term of the Agreement in an Addendum dated September 1, 2011, the language they used was crystal clear: "[g]oing forward from calendar year 2010, the contract . . . will renew upon an annual payment of $1,000,000 to artist, his heirs, estate or assigns . . . ." JX-3.

McKenzie acknowledged that his obligation to pay annual royalties in the amount of $1,000,000 was not dependent on sales or revenue from sales, and that

FINAL AWARD
AAA Case Number 01-19-0001-9789

McKenzie could have ended the contractual relationship with Indiana by ceasing to make these annual payments. See JX-25 ¶¶ 33, 47; C-84; C-197 at 216.

The last payment McKenzie made to Indiana was $500,000 in March 2018. (Joint Stip. ¶18; Brannan Stmt. ¶29).

The Agreement required Respondents to make quarterly accountings to Indiana of the sales and payments received for Indiana Artwork. JX-1 at 1.

The Agreement made clear that Indiana's obligation was to grant Respondents the right to create artworks using the HOPE image and that Respondents' obligation was to manufacture and sell artwork using that image. JX-1 at 1. There was no provision in the Agreement requiring Indiana to deliver any artwork to Respondents.

The Estate did not anticipatorily breach any of the terms of the Hope Agreements or of any other agreements between Indiana and Respondents.

The lack of any evidence that Indiana objected to Respondents' failure to deliver APs to Indiana's premises over the course of his long relationship with Respondents is telling. The only reasonable inference to be drawn from this silence is that Indiana decided not to take delivery of all APs at Indiana's premises in Maine, a mere change in logistics. In view of the requirement that modifications to the Agreement be in writing (JX 1 at 6), however, it cannot be inferred from Indiana's silence that the artist relieved Respondents of any material contractual obligation, including, for example, the obligations to produce APs and to treat them as the property of Indiana.

The Hope Agreements did not automatically terminate on the death of Indiana. Rather, the provision that the Hope Agreements would bind successors and assigns clearly expressed the Parties' intention that the Hope Agreements would survive Indiana's death, subject to the terms of those agreements. JX-1 at 2, JX-2 at 2, JX-3, JX-5 at 2.

31

FINAL AWARD
AAA Case Number 01-19-0001-9789

Respondents did not provide accountings for any sales of Indiana Artwork after 2017. Respondents reported gross sales of Indiana Artwork for 2017 of $1,312,000.  JX-25 at AIA004726.

## IX.    Analysis[8]

### 1.  The Claims

#### a.  Termination by the Estate for Respondents' Failure to Make Minimum Payments

The Agreement expressly provided, *inter alia*, that "this agreement shall forthwith terminate unless (a) the required accountings are rendered on a timely basis, and (b) the following minimum royalty payments are made in each annual period of the agreement … Year 1 through 5: $1,000,000 (one million US Dollars) per annum, with payments to be made semi-annually in March and September of each calendar year." JX-1 at 3.

The term "minimum royalty payments" appears in sharp contrast to the term "advance against royalties" used to characterize a single $400,000 payment due on or before September 30, 2008.  The phrase "advance against royalties" also was not used in connection with a $100,000 payment to Indiana on signing the Agreement. JX-1 at 1.

The plain language of the Agreement is clear, therefore, that the $1,000,000 annual payments due from Respondents in installments in March and September of each year, were just that, minimum annual payments, not advances subject to any clawback based on actual sales performance.

The language of the Addendum dated September 1, 2011 (JX-3), reinforces this interpretation. JX-3 provides, in relevant part, that, "[g]oing

---

[8] The Tribunal has considered all arguments advanced by the Parties.  If an argument is not expressly addressed in this section, the Tribunal considers the argument to be impliedly addressed or mooted or to be immaterial to the analysis under the governing law applied to the facts as the Tribunal has found them.

FINAL AWARD
AAA Case Number 01-19-0001-9789

forward from calendar year 2010, the contract between artist and publisher will renew upon an annual payment of $1,000,000 to artist, his heirs, estate or assigns, and shall be binding upon them."

In other words, any failure or refusal by Respondents to pay Indiana or his Estate the full annual $1,000,000 minimum royalty payment required to renew the Hope Agreements would result in the termination of the Hope Agreements.

McKenzie acknowledged his obligation to pay an annual $1,000,000 royalty in sworn testimony and contemporaneous correspondence. See JX-25 ¶¶ 33,47; C-84; and C-197 at 216.

Respondents' argument that an anticipatory breach by the Estate relieved them of any obligation to pay minimum annual royalties is without basis in fact. The personal interactions between McKenzie and the Estate, a newcomer to a longstanding personal and professional relationship between Indiana and McKenzie, no doubt differed in tone from McKenzie's interactions with Indiana as their relationship evolved over the years. Frustrating as this may have been for McKenzie, Respondents failed to prove any material breach by the Estate of any of the terms of the agreements between the Parties.

For these reasons, Respondents' decision not to make semi-annual minimum royalty payments after the March 2018 payment resulted in termination of the Hope Agreements. Respondents' choice to stop making minimum royalty payments fully justified the Notice of Termination. C-191.

b. Termination by the Estate for Respondents' Failure to Provide Accountings or Information to Perform an Accounting

The Agreement expressly imposed the following accounting obligations on Respondents:

33

FINAL AWARD
AAA Case Number 01-19-0001-9789

> An accounting of such sales and payment will be delivered on a quarterly basis …. Accountings will be provided by a reputable nationwide accounting firm such as Ernst & Young or the like.
>
> \*\*\*      \*\*\*      \*\*\*      \*\*\*
>
> The term of this agreement is five years …. However, this agreement shall forthwith terminate unless (a) the required accountings are rendered on a timely basis, and (b) … minimum royalty payments are made in each annual period …

JX-1 at 1, 3.

Respondents did not provide Indiana or the Estate with the required accountings.

McKenzie attributed his inability to account for sales, at least in part, on a lack of cooperation from Rosenbaum Contemporary, Respondents' sales arm. See McKenzie Tr. 75, 95. It was, however, Respondents' responsibility to maintain and provide the information needed for the required accounting. Respondents did not free themselves of this obligation by delegating sales to a third party.

The language of the Agreement makes clear that receipt of the required accounting was a high priority for Indiana and that transparency was an integral part of Indiana's deal with Respondents. No documents in the record support Respondents' claim that Indiana waived his right to receive quarterly accountings.

Accordingly, the Estate rightly terminated the Hope Agreements based on Respondents' failure to provide quarterly accountings. C-191.

### c. Statutory Duties and Relief Sought under ACAL

The ACAL, by its terms, applies when an artist:

> …delivers or causes to be delivered a work of fine art, a craft or a print of such artist's . . . own creation to an art merchant for the purpose of exhibition and/or sale on a commission, fee or other basis of compensation, the delivery to and acceptance thereof by the art merchant establishes a consignor/consignee relationship as between such artist . . . and such art merchant with respect to the said work.

34

FINAL AWARD
AAA Case Number 01-19-0001-9789

ACAL § 12.01(1)(a) (emphasis provided). The Tribunal concludes that the ACAL does not apply here.

The relationship between Indiana and Respondents did not involve the delivery of artwork by an artist to an art merchant as contemplated by the statute. Although Indiana retained intellectual property rights to his artwork and he designed artwork using HOPE, ART, BRAT, and other images, he did not produce the artwork for delivery to Respondents. Respondents, not Indiana, assumed the role of publisher and manufacturer of Indiana Artwork. Stipulated Facts ¶¶19-21. McKenzie paid for and supervised the production of Indiana Artwork. Although Indiana selected the colors and finishes of the sculptures, he was otherwise not directly involved in their production. C-195 at 52; McKenzie Stmt. ¶59. McKenzie supervised the production of silk screen multiples that were signed by Indiana after they were produced. R-69, McKenzie Tr. 133. As the publisher and manufacturer of such works, McKenzie had an ownership interest in specific works of art not contemplated by the ACAL. JX-1 at 1; JX-3. See *Morgan Art Found. Ltd. v. Brannan*, No. 18 Civ. 8231 (AT) (BCM), 2020 WL 469982, at *13 (S.D.N.Y. Jan. 28, 2020) (ACAL § 12.01(1) does not apply because Indiana never "deliver[ed] or cause[d] to be delivered" any actual work of art or "print of [his] own creation" for sale, as required to create a consignment relationship under that statute. Instead, Indiana assigned, transferred, and/or granted intellectual property rights necessary to manufacture and sell reproductions of works that the artist had previously created.)

Indiana did not deliver artwork to Respondents, retain ownership of artwork, or set the sales price for the artwork produced by Respondents. Cf. *Gem Diamond Co. of New York v. Klein*, 92 CIV. 2503 (KMW), 1995 WL 72382, at *3 (S.D.N.Y. Feb. 21, 1995); *Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 296 F. Supp. 3d 627, 631, 642 (S.D.N.Y. 2017); *United States v. Nektalov*, 440 F. Supp. 2d 287, 298 (S.D.N.Y. 2006). Indiana also did not produce artwork commissioned by Respondents. Cf. *Wesselmann v. Int'l Images, Inc.*, 657 N.Y.S.2d 284 (Sup. Ct. N.Y. County 1996). The relationship more closely resembled a license agreement than a

35

FINAL AWARD
AAA Case Number 01-19-0001-9789

consignment or other agency arrangement.

Accordingly, Respondents are not subject to the fiduciary duties imposed by the ACAL on an art merchant in relationships governed by the ACAL, and Claimant is not entitled to any remedies under the statute. The relationship between Respondents and Indiana was at arm's length and contractual in nature, reached by sophisticated commercial actors. The rights, obligations, and remedies of the Parties, therefore, are governed purely by the terms of the agreements between the Parties and by New York contract law.

### d. Written agreements as alleged personal services contracts

The Hope Agreements did not constitute, as Claimant has contended, personal services agreements that automatically terminated by operation of law on the death of Indiana. On the contrary, as expressly set forth in the September 1, 2011 Addendum (JX-3), if McKenzie had continued to make timely annual renewal payments of $1,000,000 to "the artist, his heirs, estate or assigns," and assuming McKenzie was not otherwise in material breach, the Hope Agreements would have renewed and remained binding on the Estate. This provision in JX-3, including the handwritten insertion of the phrase, "and shall be binding upon them" initialed by Indiana and McKenzie, made clear that the commercial relationship would not automatically terminate on the death of Indiana. See also JX-1 at 2, JX-2 at 2, JX-5 at 2. See *Morgan Art Found. Ltd. v. Brannan, supra* at \*14 (a contract expressly binding upon the parties' successors and assigns is inconsistent with a personal services theory.) Cf. *United States v. Nektalov*, 440 F. Supp. 2d at 298.

### e. Automatic Termination of Oral Agreements on the Death of Indiana

The law leads to a different conclusion, however, with respect to alleged oral agreements. Assuming for the sake of argument the truth of Respondents' assertion that Indiana orally authorized McKenzie to create and sell prints and sculptures beyond those authorized in the Hope Agreements (see McKenzie Stmt. ¶12), any such undocumented agreements were terminable at will upon the death of Indiana. Under New York law, an oral agreement of indefinite duration is terminable at will

36

unless the agreement provided expressly and unequivocally that the contracting parties intend to be perpetually bound. *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co*., 976 F.3d 239, 245 (2d Cir. 2020); *Liberty Imports, Inc. v. Bourguet*, 146 A.D.2d 535, 536 (1st Dep't. 1989); 22A N.Y. Jur. 2d Contracts § 489. There was no evidence that McKenzie and Indiana agreed to a definite time limitation for non-HOPE activities or that they agreed to be perpetually bound by their oral arrangements. Accordingly, the Estate's Notice to Respondents dated May 9, 2019 (C-191) that "any and all agreements … have been terminated …" effectively terminated all oral agreements or arrangements with respect to Indiana Artwork.

### f. Artists' Proofs (APs)

The record made with respect to APs is less than clear and certainly insufficient to warrant an award of millions of dollars in damages to Claimant.

On September 14, 2021, the Tribunal issued an Interim Award with Injunction which provided, *inter alia*, that Respondents were enjoined from moving, transferring or relocating any Indiana Artwork, and that Respondents were required to identify all premises where Indiana Artwork was located and to permit Claimant and its counsel to inspect and conduct an inventory of all such artwork. Claimant thereafter conducted a physical inventory that resulted in an inventory report. C-131. Although it is not disputed that the practice was to physically mark APs as such, the inventory report neither listed APs found in Respondents' possession nor indicated that no APs were found in the inventory. C-131.

The initial burden to keep adequate records was on Respondents (JX-1), and they failed to do so. See, e.g., McKenzie Tr. 74-75. Once the Tribunal granted Claimant the opportunity to conduct an inventory of the Indiana Artwork in Respondents' possession, the burden shifted to Claimant to identify APs found in Respondents' inventory or otherwise to rebut McKenzie's testimony that he delivered everything designated as APs to the Estate (C-195 at 64, 78), including APs that Claimant has valued at $8,315,000.00 (McKenzie Tr. 130-131). Claimant did not do so. Instead, Claimant: (a) maintained silence as to whether, and if so, what APs were

FINAL AWARD
AAA Case Number 01-19-0001-9789

found in the inventory; (b) asserted its entitlement to the entire inventory; and (c) sought recovery of $8,315,000.00 based on unstated assumptions, such as the assumptions that no APs were found in inventory and that Respondents sold them and kept the proceeds for themselves.

Claimant has not established a basis to award it monetary damages for failure to deliver APs to Indiana or to the Estate. Claimant's silence as to whether APs were found in Respondents' inventory leaves the Tribunal to speculate as to whether any monetary recovery for APs would be appropriate. The Tribunal does not accept this invitation to speculate. Rather, on this record, except for one category of AP sales discussed below, the Tribunal finds that the prompt release to Claimant of any artwork designated as APs in Respondent's inventory will adequately compensate Claimant for any withholding of APs by Respondents.[9]

The exception relates to the proceeds of AP sales that Respondents conceded in Stipulated Facts ¶23. McKenzie testified that he sold APs with Indiana's authorization and paid Indiana royalties on those AP sales. McKenzie Stmt. ¶62. Under the contractual provision that "AP's shall remain the property of the Artist," (JX-1), Indiana was entitled not merely to royalties on AP sales but to the entire proceeds of such sales. Giving McKenzie full credit for his alleged payment of a 25% royalty on these sales, Respondents owe Claimant $581,250.00, the full remaining proceeds of sale of APs listed in Stipulated Facts ¶23.[10]

### g.  Damages Claimed for Post-Termination Sales of Indiana Artwork

Respondents admittedly continued to sell Indiana Artwork after receipt of the Notice of Termination (C-191) until September 14, 2021, when the Tribunal entered

---

[9] Claimant's argument that Respondents' inventory constitutes goods on consignment to Respondents is both counter-factual and legally untenable given the inapplicability of the ACAL in this case. Consequently, disgorgement of any APs in inventory represents valuable compensation for any losses due to failure to deliver APs.

[10] This amount is calculated as follows: $775,000.00 in sales minus $193,750.00 in royalties paid equals $581,250.00. It was Respondents' burden to establish any right to a credit for sales commissions. Respondents failed to do so.

FINAL AWARD
AAA Case Number 01-19-0001-9789

the Interim Award with Injunction. See McKenzie Tr. 96-98, 100-01; McKenzie Stmt. ¶64. Thereafter, presumably, sales stopped. Respondents have not provided any evidence of the amount of their sales of Indiana Artwork during the period from May 9, 2019 through September 14, 2021.

Claimant has presented two alternative theories for calculation of the unpaid royalties on Respondents' sales during this period. One theory claimed damages of $3,333,333.00 based on Claimant's calculation of the minimum royalties which would have been due from Respondents to Claimant at the rate of $1,000,000.00 per year if the Hope Agreements had remained in place. Claimant's alternative theory was that damages for unpaid royalties for this period should be based on annual sales made by Respondents in 2017, the last year in which Respondents provided sales data. JX-25 at AIA 004726. Based on this theory, Claimant has sought $3,889,033 in damages for the relevant period.

The Tribunal has considered both of Claimant's damages theories and concludes that they are speculative and would result in an unjustified windfall to Claimant. Respondents have asserted plausibly, in view of the litigation that ensued following the death of Indiana, that Indiana Artwork sales declined after 2018 (See McKenzie Interrog. Answers ¶ 142). Claimant made no effort to obtain from Rosenbaum Contemporary or other sources of evidence to rebut Respondents' contention. Nor has it otherwise established that sales in the relevant period continued at 2017 levels.

The Tribunal also concludes that Respondents should not evade responsibility for post-2018 sales of Indiana Artwork considering that Respondents admitted selling Indiana Artwork after termination of all agreements and failed to produce sales data for the post-termination period.

Accordingly, the Tribunal awards Claimant the sum of $443,892.00 for Respondents' sales for the period from May 9, 2019, through September 14, 2021. The relevant period for post-termination sales consists of the 28 months from June 2019 through September 2021. Based on admitted sales of Indiana Artwork for the year 2017, average monthly sales would be $109,333.00. For the 28-month period, this calculation

39

would result in total sales of $3,061,324.00 (28 x $109,333.00). However, considering the disruption to the market for HOPE-related Indiana Artwork caused by litigation following the death of Indiana (see McKenzie Interrog. Ans. ¶142, not contradicted by Claimant), the Tribunal concludes that this amount should be discounted by 50%, resulting in adjusted total sales of $1,530,662.00.

Under the Agreement, the royalty due to Indiana for sculptures is 25% and the royalty due to Indiana for canvas images is 33%. JX-1 at 1. The blended rate for royalties is 29%. Using this blended rate, royalties due to Claimant for sales of Indiana Artwork from May 9, 2019, through September 14, 2021, amount to $443,892.00.

### h. Damages Claimed for the Sale of Non-HOPE Indiana Artwork

The Parties' dispute concerning the production and sale of Indiana Artwork not governed by the Hope Agreements relates to alleged oral agreements between Indiana and McKenzie. The Tribunal has not had the benefit of hearing Indiana tell his side of the story. The Tribunal did hear and read McKenzie's testimony with care. The Tribunal has concluded, however, that McKenzie was not a credible witness on this subject matter. Accordingly, McKenzie's testimony related to oral agreements has been given no weight except to the extent that support for such testimony could be found in contemporaneous documents.

For reasons discussed below, the Tribunal has concluded that Indiana consented to the production and sale of the BRAT sculpture, but that Respondents did not fully compensate Indiana for the royalties due to Indiana for that transaction. With respect to other non-HOPE Indiana Artwork, the Tribunal has concluded that there is no basis for Claimant's contention that Respondents produced or sold such artwork without Indiana's authorization and that Claimant has not been damaged as a result of such activities.

### i. BRAT

The Parties stipulated that, by April 2020, Johnsonville Holdings Inc. had paid McKenzie the $2,850,000.00 purchase price for the BRAT sculpture shown in

FINAL AWARD
AAA Case Number 01-19-0001-9789

C-34. Stipulated Facts ¶¶27-28. This total amount was paid to McKenzie in two installments: a down payment of $1,282,500.00, and a later payment of the balance due. JX-21 at AIA001485. The Parties agreed that Respondents paid Indiana the sum of $353,035.00 when they received the down payment. Stipulated Facts ¶28.[11] Moreover, on November 7, 2017, Indiana received from McKenzie a royalty report for the period September 14, 2016, to May 23, 2017, and a cover letter. See JX-21. There is no record, however, of a payment of royalties to Indiana when Johnsonville paid McKenzie the remaining balance due for BRAT.

Claimant is entitled to receive the balance of the 25% royalty due on the sale of the BRAT sculpture. The full 25% royalty is $712,500.00 (25% of $2,850,000.00). The amount previously paid to Indiana, as stipulated by the Parties, was $353,035.00. The balance that is owed to Claimant, therefore, is $359,465.00.

j.   Other Non-HOPE Artwork

The documentary record establishes that Indiana agreed to and accepted royalty payments for McKenzie's production and sale of a number of non-HOPE works in addition to the BRAT sculpture, including ART (JX-20 at AIA001478, JX-21 at AIA001485), Alphabet (R-5, JX-20 at AIA001477, JX-21 at AIA001483, JX-22 at AIA001492), Body/Soul (JX-22 at AIA001492), EAT (JX-21 at AIA001484), Four Seasons (JX-21 at AIA001485), and Like A Rolling Stone (R-7, JX-21 at AIA001485).

The documentary record does not support Claimant's assertion that McKenzie produced or sold Indiana Artwork during the artist's lifetime without Indiana's authorization. On the contrary, the documents reflect collaboration between Indiana and McKenzie to produce non-HOPE as well as HOPE artwork. The fact that Indiana

---

[11] The Tribunal is mindful of the disparity between the amount the Parties have stipulated was paid by McKenzie to Indiana and the amount set forth on the royalty report provided to Indiana (JX-21 at AIA001485-AIA001486). The stipulated amount is $353,035.00. The amount set forth in the royalty report is $320,625.00, which represents 25% of the partial payment made by Johnsonville to McKenzie of $1,282,500.00 on May 16, 2017. Considering the Parties' Stipulation, the Tribunal uses the stipulated amount of $353,035.00 in this Award.

FINAL AWARD
AAA Case Number 01-19-0001-9789

and McKenzie did not reduce certain non-HOPE arrangements to formal agreements caused those informal arrangements to be terminable, as a matter of law, upon the death of Indiana. See discussion at pp. 36-37, above. The informality of these dealings casts no shadow, however, on the legitimacy of the non-HOPE artwork produced by McKenzie during his working relationship with Indiana.

Accordingly, the Tribunal concludes that there is no basis for an award of damages to Claimant for Respondents' production and sale of non-HOPE artwork other than the balance due for royalties on the BRAT sculpture discussed above.

### k.  Respondents' Failure to Account

There is no competent or credible evidence in the record to support McKenzie's contention that he provided the accountings required under the Hope Agreements or that Indiana agreed to any modification of this requirement.

The Agreement provided that "modifications must be made in writing and initialed or signed by both parties." JX-1 at 6. Moreover, McKenzie admitted on cross-examination that he did not maintain or have access to the information needed to produce such accounting reports. See, e.g., McKenzie Tr. 74-75.

McKenzie's failure to maintain sales records or to provide the contractually required accounting constituted a material breach of the Hope Agreements and an independent ground for termination. See pp. 33-34, above. There is no basis in the record, however, to quantify damages for this failure to account.

### l.  Relief Sought against Rosenbaum Contemporary

Claimant has not established any basis for this Tribunal to award relief against a third party, Rosenbaum Contemporary, for the possession or sale of Indiana Artwork.

Claimant did not seek to involve Rosenbaum Contemporary as a party to this arbitration on any of the recognized theories available under the law to arbitrate with non-signatories to an arbitration agreement. Nor did Claimant try to summon

FINAL AWARD
AAA Case Number 01-19-0001-9789

Rosenbaum Contemporary to provide evidence in this arbitration.

Instead, Claimant relied on the legal argument that Indiana Artwork and any funds from the sale of such artwork constitute trust property of Claimant pursuant to the ACAL. As previously determined, however, the ACAL does not apply in this case. See pp. 34-36, above.

The Tribunal has no jurisdiction over Rosenbaum Contemporary or over any property in its possession. Any remedies Claimant may possess against Rosenbaum Contemporary must be pursued elsewhere than in this arbitration.

m. Relief Sought Directly in Favor of Star of Hope, Inc.

Claimant in its proposed decretal paragraphs sought relief in favor of Star of Hope, Inc. as "sole beneficiary" of the Estate.

Any relief granted herein for the benefit of the Estate is granted to Claimant. If there is any question as to the interest of Star of Hope, Inc. in such relief, that question is to be decided by a court of competent jurisdiction, not by this Tribunal.

2. The Counterclaims

The Counterclaims asserted in this arbitration generally are based on the testimony of McKenzie. The Tribunal carefully considered McKenzie's sworn statements in this arbitration and in the related court proceedings and had the benefit of his testimony in the evidentiary hearing phase of the arbitration. The Tribunal has concluded that McKenzie's testimony did not support the allegations he has made in this proceeding, and that his testimony is trustworthy only to the extent that it contains admissions or finds reliable support elsewhere in the record. The record, however, provides no support for any of the Counterclaims.

The plain text of the Hope Agreements directly contradicted McKenzie's claim to a credit or refund of "unearned royalties" in the amount of $5,115,984.95 allegedly advanced against royalties to be earned as a percentage of sales. See pp. 32-33, above. Respondents' other Counterclaims, including: (a) a claim for relief for

FINAL AWARD
AAA Case Number 01-19-0001-9789

Indiana's alleged failure to cooperate with publicity, (b) a claim for $2 million per year since 2018 for the Estate's allegedly interference in Respondents' sales and the market for Indiana Artwork by underselling or devaluing that artwork, and (c) a claim for damages for the Estate's allegedly harmful statements, found no documentary or other reliable support in the record.

Respondents did establish a pattern of dealing informally with Indiana concerning non-HOPE artwork. Following the death of Indiana, however, Respondents had no continuing rights based on such informal arrangements. See pp. 36-37, above. Moreover, the Tribunal has found no support in the record for the non-contractual theories Respondents advanced to support monetary recoveries or injunctive or declaratory relief, such as alleged breaches of covenants implied in law or claims of unjust enrichment.

In sum, the Counterclaims have no merit and merely served to complicate and prolong these proceedings.

3.  Interest on the Award

It is long-established New York law that whether, and if so, at what rate interest should be added to awarded amounts of damages is within the broad discretion of the Arbitrators. See *Penco Fabrics, Inc. v. Bogopulsky, Inc.*, 146 N.Y.S.2d 514 (1st Dep't 1955); *Silverman v. Benmor Coats, Inc.*, 61 N.Y.2d 299, 308 (1984); *Levin & Glasser, P.C. v. Kenmore Property, LLC*, 896 N.Y.S.2d 311 (1st Dep't 2010). Accord: Rule R-47(d)(i).

The Tribunal has determined not to award interest on the monetary amounts awarded to Claimant because, by pursuing much larger amounts to which it was not entitled, Claimant materially contributed to delaying its receipt of the amounts awarded herein.

4.  Applications for the Award of Fees and Costs

FINAL AWARD
AAA Case Number 01-19-0001-9789

Rule R-47(d)(ii) confers on the Tribunal the authority to award attorneys' fees and expenses, in the Tribunal's discretion, because both sides have submitted applications for such relief.

The Tribunal has determined that neither side should be deemed to be the prevailing party in this arbitration and, therefore, neither side should recover any of its attorneys' fees or expenses from the other.

Claimant initially filed claims for injunctive and declaratory relief and for a monetary recovery in the range of $1 million to $10 million. By the conclusion of the hearing, Claimant's request for monetary relief had grown to approximately $15 million. Claimant's monetary recovery, pursuant to this Award, is limited to a small fraction of the monetary relief requested. Although Claimant is granted limited declaratory or injunctive relief herein, much of the relief requested is denied. Claimant's aggressive pursuit of claims that it could not substantiate served to complicate and prolong these proceedings.

Respondents, for their part, filed Counterclaims for injunctive and declaratory relief and for a monetary recovery in the approximate amount of $16 million. Respondents are not awarded any monetary recovery. Moreover, the declaratory relief granted for Respondents' benefit is limited to ensuring that Respondents are allocated a portion of the Indiana Artwork in a manner consistent with the terminated agreements between the Parties. Respondents' aggressive pursuit of remedies that are denied herein, and their repeated, unsuccessful attempts to obtain interlocutory relief during the arbitration, served to complicate, prolong and render the arbitration expensive to an even greater extent than Claimant's pursuit of excessive monetary claims.

The Tribunal concludes that each side shall bear its own attorneys' fees and expenses as incurred. Accordingly, each side is directed, below, to bear fifty (50) percent of total arbitrator compensation and administrative fees of the arbitration.

FINAL AWARD
AAA Case Number 01-19-0001-9789

## FINAL AWARD

For the foregoing reasons, the undersigned Tribunal hereby awards, as its
FINAL AWARD, as follows:

1. It is declared that the following agreements were effectively terminated in their
   entirety as of May 19, 2018:  (a) Agreement for Art Editions (dated August 11,
   2008) (JX-1); (b) Addendum to Hope Contract (dated September 28, 2010) (JX-
   2); (c) Addendum to Hope Contract (dated September 1, 2011) (JX-3); (d) Hope
   Wine (dated October 4, 2011) (JX-4); and (e) Addendum to Agreement (dated
   March 31, 2012) (JX-5).

2. It is declared that any and all oral agreements or understandings between the late
   artist, Robert Indiana ("Indiana") and Michael McKenzie (McKenzie") and/or
   between Indiana and McKenzie doing business as American Image Art, were
   effectively terminated in their entirety as of May 19, 2018.

3. Respondents shall pay to Claimant, as proceeds due to the Estate on the sale of
   Artist's Proofs, the sum of $581,250.00.

4. Respondents shall pay to Claimant, for the sale of HOPE Artwork after the
   Estate's termination of all agreements, the sum of $443,892.00.

5. Respondents shall pay to Claimant, in satisfaction of royalties due on the sale of
   the BRAT sculpture to Johnsonville Holdings, Inc, the sum of $359,465.00.

6. It is ordered that, within thirty (30) days of the date of this Award, McKenzie
   and American Image Art shall release for delivery to UOVO Rockland County -
   Blauvelt, 100 Bradley Hill Road, Blauvelt, NY 10913 ("UOVO"), all Indiana
   Artwork subject to the Interim Award with Injunction entered in this arbitration
   on September 14, 2021. Claimant shall be responsible for one hundred (100)
   percent of charges incurred in connection with (a) the transfer of the Indiana

46

FINAL AWARD
AAA Case Number 01-19-0001-9789

Artwork to UOVO and (b) all UOVO storage and related charges incurred in accordance with this Award.

7. The fair market value of the Indiana Artwork delivered to UOVO in accordance with this Award shall be determined by one of the following three appraisers, selected by the Estate pursuant to the following order of priority:

    a. Sharon Chrust & Associates, LLC, 107 Saddle Rock Road, Stamford, CT ("Chrust"). If Chrust does not accept the appointment or does not commit in writing to perform in a timely manner and for a reasonable fee all services prescribed in this Award for performance by an appraiser, then:

    b. Deborah G. Spanierman, DGS Fine Art Consultants and Appraisal Services, Pleasantville, NY. ("Spanierman"). If Spanierman does not accept the appointment or does not commit in writing to perform in a timely manner and for a reasonable fee all services prescribed in this Award for performance by an appraiser, then:

    c. Helen D. Lally, Helen D. Lally Fine Ats, Ltd. New York, NY.

Subject to the lien set forth in paragraph 10, below, the appraiser selected by the Estate in accordance with this paragraph (the "Appraiser"), in addition to performing a market appraisal of all Indiana Artwork, shall divide the Indiana Artwork between Claimant and Respondents based on the appraised market value of such work of art, as follows: (i) for all artwork marked as Artist's Proofs, one hundred (100) percent to Claimant; (ii) for all other sculptures, thirty (30) percent allocated to Claimant and seventy (70) percent allocated to Respondents; (iii) for all other artwork in any medium other than sculpture, fifty (50) percent allocated to Claimant and fifty (50) percent allocated to Respondents.

FINAL AWARD
AAA Case Number 01-19-0001-9789

8. The Appraiser shall have broad discretion in the performance of the Appraiser's duties set forth in this Award in accordance with industry practice. The Appraiser's discretion shall extend to selling a limited number of Indiana Artworks within each category (sculpture and non-sculpture) and distributing the proceeds of sale to the Parties, as the Appraiser may reasonably deem necessary to achieve, after the payment of standard sales commissions (if any), a distribution of value between Claimant and Respondents according to this Final Award.

9. Claimant and Respondents are hereby declared to be jointly and severally liable to indemnify the Appraiser for any and all legal expenses including counsel fees, damages, or other liability or expenses arising from or relating to the performance of the Appraiser's duties as set forth in this Award.

10. It is declared that: (a) Claimant has a lien interest in the Indiana Artwork allocated to Respondents by the Appraiser, and (b) the Appraiser shall retain and hold the Indiana Artwork allocated to Respondents until Respondents pay to Claimant the sum of $1,384,607.00 (the "Monetary Award"), and the Appraiser receives written confirmation from Claimant of its receipt of such payment in full. If Respondent fails to pay the Monetary Award within 60 days of this Award, thereafter the Appraiser shall cause to be delivered to Claimant, from Indiana Artwork that the Appraiser otherwise would allocate to Respondents, Indiana Artwork that corresponds in appraised value to $1,500,000.00 minus any partial payments received by Claimants from Respondents on account of the Monetary Award.

11. UOVO shall release the Indiana Artwork in accordance with the written instructions of the Appraiser.

12. It is declared that, henceforth and in perpetuity, McKenzie and American Image Art shall have no right in law or in equity to produce, manufacture, or create any Indiana Artwork.

48

FINAL AWARD
AAA Case Number 01-19-0001-9789

13. It is declared that, on or after the date of this Award, McKenzie and American Image Art shall not sell, gift, transfer, or in any way deal in any Indiana Artwork, with the exception of: (a) Indiana Artwork released to Respondents pursuant to the Appraiser's instructions and this Award, and (b) Indiana Artwork documented as having been purchased by Respondents in arm's length transactions completed prior to the death of Indiana.

14. It is declared that neither Claimant nor Respondents have substantially prevailed in their respective claims, defenses, or counterclaims, and that each Party shall be responsible for its attorneys' fees and expenses as incurred.

15. The administrative fees of the American Arbitration Association totaling $47,570.00 and the compensation of the Arbitrators totaling $547,915.75 shall be borne fifty (50) percent by Claimant and fifty (50) percent by Respondents. Therefore, Respondents shall reimburse Claimant the sum of $283,097.88.

16. This Award is in full settlement of all remaining claims and counterclaims submitted in this arbitration. All claims or counterclaims not expressly granted herein are denied.

17. This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

New York, New York

FINAL AWARD
AAA Case Number 01-19-0001-9789


July 14, 2023                          _____
Date                                   Peter Brown


July 14, 2023                          _____
Date                                   John M. Delehanty


July 14, 2023                          _____
Date                                   Richard L. Mattiaccio, Chair


I, Peter Brown, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.


July 14, 2023                          _____
Date                                   Peter Brown


I, John M. Delehanty, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.


July 14, 2023                          _____
Date                                   John M. Delehanty


I, Richard L. Mattiaccio, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.


July 14, 2023                          _____
Date                                   Richard L. Mattiaccio, Chair

FINAL AWARD
AAA Case Number 01-19-0001-9789


July 14, 2023
Date

_____
Peter Brown


July 14, 2023
Date

_____
John M. Delehanty


July 14, 2023
Date

_____
Richard L. Mattiaccio, Chair


I, Peter Brown, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.


July 14, 2023
Date

_____
Peter Brown


I, John M. Delehanty, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.


July 14, 2023
Date

_____
John M. Delehanty


I, Richard L. Mattiaccio, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.


July 14, 2023
Date

_____
Richard L. Mattiaccio, Chair

FINAL AWARD
AAA Case Number 01-19-0001-9789


July 14, 2023
Date

Peter Brown


July 14, 2023
Date

John M. Delehanty


July 14, 2023
Date

Richard L. Mattiaccio, Chair


I, Peter Brown, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.


July 14, 2023
Date

Peter Brown


I, John M. Delehanty, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.


July 14, 2023
Date

John M. Delehanty


I, Richard L. Mattiaccio, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.


July 14, 2023
Date

Richard L. Mattiaccio, Chair

50

FINAL AWARD
AAA Case Number 01-19-0001-9789

July 14, 2023                                    _Peter Brown_
Date                                             Peter Brown

July 14, 2023                                    _____
Date                                             John M. Delehanty

July 14, 2023                                    _____
Date                                             Richard L. Mattiaccio, Chair


I, Peter Brown, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

July 14, 2023                                    _Peter Brown_
Date                                             Peter Brown


I, John M. Delehanty, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.


July 14, 2023                                    _____
Date                                             John M. Delehanty


I, Richard L. Mattiaccio, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.


July 14, 2023                                    _____
Date                                             Richard L. Mattiaccio, Chair