AMERICAN ARBITRATION ASSOCIATION

JAMES W. BRANNAN, as the Personal
Representative of the Estate of Robert Indiana,

Claimant,

- against -

MICHAEL McKENZIE and AMERICAN IMAGE
ART,

Respondents.

Case No. 01-19-0001-9789

**AMENDED DEMAND FOR ARBITRATION
AND STATEMENT OF CLAIM**

Claimant James W. Brannan, as the Personal Representative of the Estate of Robert

Indiana ("Claimant" or "the Estate"), through his attorneys Venable LLP, asserts the claims

below against Respondents Michael McKenzie ("McKenzie") and American Image Art (together

"American Image").

**INTRODUCTION**

1.      In 2008, renowned American artist Robert Indiana began a contractual relationship

with American Image, granting it exclusive authority to produce and sell a finite number of

Indiana's works of art, subject to American Image's express payment and performance obligations.

That contractual relationship has now terminated on multiple, independent grounds—including

American Image's numerous, material breaches of those payment and performance obligations.

American Image has continued to produce Indiana's works, however, without any contractual

authorization.  In the course of producing unauthorized works in Indiana's name, American Image

has produced duplicates of unique Indiana works and, upon information and belief, has passed off

these duplicates as genuine original works to unsuspecting art collectors and galleries.

1

2.      By this action, the Estate seeks a declaration that Indiana's agreements with American Image terminated without any liability to the Estate.  The Estate also seeks a permanent injunction barring American Image from continuing to produce any art work using Indiana's name and designs—including fraudulent duplicates.  The Estate also seeks to recover damages for American Image's breaches of those agreements while they were in effect, and for American Image's unlawful production and sale of works in Indiana's name that were not authorized by Indiana.  Finally, the Estate seeks return of all genuine, authorized works, as such works are the consigned property of the Estate; and turnover of any and all unauthorized or inauthentic works that American Image produced in Robert Indiana's name, so that the Estate may ensure they are destroyed.

## BACKGROUND

3.      From the 1960s until his death in 2018, Indiana was one of America's preeminent modern artists, creating many works of cultural significance.  Indiana's iconic *LOVE* work—the letters "LO" stacked above "VE" with the "O" tilted outward—has made Philadelphia's "Love Park" a landmark within the city, and tourists formed a line down the block to photograph themselves next to a version which, until recently, was displayed on Sixth Avenue in Midtown Manhattan.  Indiana also designed the famous MECCA basketball court, for which the MECCA Center (former home to the NBA's Milwaukee Bucks) was named.

4.      Another of the Indiana's widely-recognizable works is *HOPE*, a stacked-letter design with tilted "O," which was featured in Barack Obama's 2008 presidential campaign.

5.      Many of Indiana's works of art are sold as fine art "multiples."  A "multiple" is a series of copies created from a single "master," such as prints created from a single lithograph

plate.  Multiples are generally created with the input, oversight, and approval of the artist, are often individually signed by the artist, and are sold in uniquely-numbered limited-editions.

6.      Collectors pay a premium for limited-edition works because each individually-numbered work is unique, and because they are created with individual attention and creative input from the artist.  In this way, limited-editions are distinct from, and far more valuable than, "reproductions" of an artist's works such as mass-market poster prints or gift shop tchotchkes.

7.      American Image is a printer and publisher specializing in the production of fine art multiples and limited-editions.  American Image creates two-dimensional prints using a number of printing techniques, and also works with foundries, fabricators, painters and others to construct three-dimensional sculptures.

8.      In August 2008, Indiana and American Image entered into an agreement (the "HOPE Contract," and together with its amendments and addenda described below the "HOPE Agreements") granting American Image the rights to create limited-edition silkscreen prints, as well as limited-edition sculptures in certain specified sizes and materials, based on Indiana's *HOPE* design, and to consign those works for sale.

9.      The HOPE Contract created an agency/consignment relationship between Indiana and American Image, under which American Image would print or fabricate works based on Indiana's *HOPE* design, and then share with Indiana the proceeds of any works sold.

10.     Under the HOPE Contract, American Image agreed to the following:

   a.   to pay Indiana 25% of all gross sales of the sculptures in the authorized HOPE editions;

   b.   to pay Indiana 33% of all gross sales of the canvases in the authorized HOPE editions;

   c.   to register copyrights, trademarks and other intellectual property rights in each of the works in Indiana's name;

   d.   to apprise Indiana in advance of all sculpture and canvas works produced;

    e.    that Indiana would have no obligation to sign any work unless it "is of a quality acceptable to the Artist in his sole judgment and discretion";

    f.    to provide Indiana with a quarterly accounting of all sales and payments, prepared by a reputable nationwide accounting firm;

    g.    to produce one or more Artists' Proofs of each edition created, and to timely deliver those Artist's Proofs to Indiana at no expense to the artist; and

    h.    not to create "any items whatsoever utilizing the HOPE image without prior explicit written approval."

11.    The HOPE Contract did not authorize American Image to create or sell any works based on any other art created by Indiana.  An addendum to the HOPE Contract specifically provided:  "If publisher and artist agree to do any editions not related to Hope, a separate agreement will be drawn designating royalties, advances and other terms and must be signed by artist and publisher."

12.    The HOPE Contract provided for a five-year term, but provided the agreement would terminate unless (a) the required accountings were provided on a timely basis and (b) American Image paid Indiana a minimum of $1 million in royalties per year.  The payments due under the Hope Agreement were to be paid semi-annually in March and September of each calendar year.

13.    In September 2011, Indiana and American Image signed an addendum that modified the HOPE Contract to permit it to extend beyond the original five-year term and renew annually, contingent upon continued payment of the annual $1 million minimum royalty.

14.    American Image's last payment to Indiana under the HOPE Agreements was a semiannual payment made on March 28, 2018.

15.    Robert Indiana died on May 18, 2018, at age 89.

16.    An agency/consignment agreement terminates automatically upon the death of the principal, in this case, Indiana.

17.     Even if the HOPE Agreement had not terminated upon Indiana's death, the HOPE Agreements would have terminated by their own terms as of July 1, 2018, as a result of American Image's nonpayment of the required semiannual payments.  And yet, even though the HOPE Agreements have terminated, American Image has continued to produce and sell Indiana's works, without any authority whatsoever.

18.     Throughout the duration of the HOPE Agreements, American Image took advantage of Indiana.  American Image created and sold numerous works under Indiana's name without his authorization, and without compensating him.  In addition, American Image habitually ignored its contractual obligations to provide Indiana with accountings—a breach it compounded by failing to keep the records that would be necessary to prepare such accountings.  As a result, American Image made it impossible for Indiana to determine whether he was receiving the full amounts due under the HOPE Agreements.

19.     American Image further breached the HOPE Agreements by creating and selling unauthorized works under Indiana's name.  American Image created more editions and series of *HOPE* sculptures and canvas prints than were allowed under the HOPE Agreements, and consigned those works for sale to the public as if they were Indiana's artwork.  American Image also produced additional works in Indiana's name, not related to the *HOPE* design, which it consigned and sold as works of Indiana.  In some instances, Indiana was not involved in designing the work at all.  The HOPE Agreements did not authorize American Image to produce or consign any of these works; in fact, the HOPE Agreements specifically require that any such authorization would have to be in a separate written agreement, signed by both Indiana and American Image, setting forth royalty and other terms.  By producing and selling these works, American Image has

misappropriated Indiana's name and works, enriching itself to the financial and reputational detriment of Indiana and the art markets.

20.    On May 9, 2019, the Estate notified American Image that the HOPE Agreements and any other agreements it may have had with Indiana have terminated, on numerous grounds, including but not limited to Indiana's death and American Image's failure to pay the contractual renewal payments.  The Estate offered to cooperate with American Image regarding the orderly disposition of any completed works currently on consignment or any works in progress, provided that American Image ceased producing works in Indiana's name, and paid an amount equal to the pro-rated minimum annual payments due through May 9, 2019.  American Image has ignored the Estate's notice and has continued to produce unauthorized works in Indiana's name.

21.    In addition, the Estate recently learned that American Image has been engaging in art fraud, threatening the integrity of Indiana's reputation as an artist and the market for his art work. American Image has produced at least one duplicate of a uniquely numbered work in a limited edition of Indiana's painted *HOPE* sculptures.  The Estate has reason to believe that American Image has sold this duplicate, or is offering it for sale, under the false representation that it is the unique original. Specifically, American Image has produced and sold or offered for sale two separate *HOPE* sculptures, each numbered as V/VIII in the Red/Blue 36" edition.  The Estate has learned of two other instances where American Image may have produced and sold duplicates of unique Indiana works to unsuspecting buyers.  Obviously, this causes harm to the Estate, to Indiana's reputation and legacy, to the buyers of the compromised works, and to the integrity of the broader market for Indiana's art.

22.    On May 30, 2019, the Estate demanded in writing that American Image cease the production of any duplicate works and take necessary steps to prevent and/or cure harm caused by its production of duplicate works.  Again, American Image has ignored the Estate's demands.

23.    The Estate has made several attempts to resolve these issues without litigation.  In May and June 2019, the Estate's outside counsel placed at least four phone calls to American Image's outside counsel, and left messages.  None of those messages has been returned.  Accordingly, the Estate is left with no option but to redress these harms through this arbitration, assisted as appropriate by judicial action.

## THE PARTIES

24.    Claimant James W. Brannan is the court-appointed Personal Representative of the Estate of Robert Indiana, and brings this action solely in that representative capacity.  His address is Law Offices of James W. Brannan, 15 Limerock Street, Rockland, Maine 04841.

25.    Robert Indiana (born Robert Clark) was, until his death on May 19, 2018, an acclaimed painter, sculpture and visual artist associated with the American "pop art" movement.

26.    Upon information and belief, Respondent Michael McKenzie resides at 361 Third Avenue, New York, New York 10016.  McKenzie is the sole proprietor of American Image Art.

27.    Respondent American Image Art is, upon information and belief, a business alias with no legal identity apart from its sole proprietor, Michael McKenzie.  American Image Art is an unincorporated sole proprietorship with its "home office" at 361 Third Avenue, New York, New York, and a studio located at 171 Golden's Bridge Road, Katonah, NY  10536.

## JURISDICTION AND VENUE

28.     The HOPE Contract signed by Indiana and American Image contains the following arbitration provision: "Any disputes will be settled by arbitration through the American Arbitration Association, governed by the laws of the State of New York."  (Ex. A at 6).

29.     The County of New York is the appropriate venue for the arbitration.  Upon information and belief, Respondent McKenzie resides in New York, New York.  According to its website, Respondent American Image's "home office" is 361 Third Avenue, New York, New York.

30.     Further, American Image believes that the County of New York is the proper forum for arbitration under the HOPE Contract's arbitration provision.  In July 2018, American Image commenced an arbitration in the American Arbitration Association against the Estate regarding the HOPE Contract, specifying a hearing locale of New York and describing New York as the "locale provision included in the contract."  *See* Demand for Arbitration, *American Image Art v. Brannan*, 01-18-0002-8461 (dated July 25, 2018).  That action was administratively closed on September 7, 2018 because American Image failed to cure its filing deficiencies.

## FACTS RELEVANT TO THE ESTATE'S CLAIMS

### The Relevant Agreements

31.     On or around August 11, 2008, Indiana and American Image entered into the HOPE Contract, an agreement titled "Agreement for Art Editions," which authorized American Image to produce and sell for Indiana a finite number of two- and three-dimensional works of art based on Indiana's *HOPE* work.  A true and accurate copy of the HOPE Contract is attached as **Exhibit A**.  Indiana and American Image subsequently agreed to two addenda to the HOPE Contract—dated September 28, 2010 (the "First Addendum") and September 1, 2011 (the

"Second Addendum"), respectively.  True and accurate copies of these addenda are attached as **Exhibits B** and **C**, respectively.

32.    On October 4, 2011, Indiana and American Image entered into an agreement titled "HOPE Wine," which authorized American Image to use Indiana's *HOPE* design on wine labels and in advertising for that wine (the "HOPE Wine Contract").  On March 31, 2012, the parties entered into an addendum to the HOPE Wine Contract, allowing American Image to use Indiana's *HOPE* in connection with the marketing of beverages in addition to wine ("Addendum to the HOPE Wine Contract").  True and accurate copies of the HOPE Wine Contract and Addendum to the HOPE Wine Contract are attached as **Exhibits D**, and **E**, respectively.  Neither the HOPE Wine Contract, nor the Addendum to the HOPE Wine Contract authorized American Image to create, produce or sell any works using the word "WINE."  (Collectively, the HOPE Contract, First Addendum, Second Addendum, HOPE Wine Contract, and the Addendum to the Hope Wine Contract are the "HOPE Agreements".)

33.    The HOPE Agreements authorized American Image to produce limited editions of HOPE sculptures, in specified numbers, dimensions and materials, in some instances using colors that Indiana had previously used in his *LOVE* and *AMOR* works.  The HOPE Agreements similarly authorized American Image to produce limited editions of *HOPE* prints in specified numbers, dimensions and materials.  For the three-dimensional works, the HOPE Agreements authorized American Image to produce editions in stainless steel, bronze, corten steel, aluminum, and "a single Painted Steel edition in Artist's colors".  (Ex A. at 4)  For the two-dimensional works, the HOPE Agreements authorized American Image to produce two different silk-screened editions, one with red letters, blue bottom, white top, and one with white letters, blue bottom, red

top.  "Any additional color combinations or editions may be produced only with prior written agreement of [Indiana]." (Ex. A at 5).

34.   A limited edition is a representation to the art market and general public that the artist has created only the specified number of identical works and will not create additional ones in that edition.  This representation is critical to the value of the artist's works, and the artist's reputation generally.  Each work is numbered to indicate its inclusion in the limited edition.  For example, works in a limited edition of 10 would be numbered "1 of 10," "2 of 10" and so on.  The value of each work in the series is bedrocked on its rarity—which would be compromised if additional identical works with the same numbering were created.

35.   Each two-dimensional work in the limited-edition series would be personally signed and numbered by Indiana.  For each three-dimensional work, Indiana's name and the serial number would be "embedded" in the work.  These measures would "catalogue every work produced pursuant to this agreement both as a measure of account and as protection against infringement." (Ex. A at 1).  All design elements had to be approved by Indiana, and he had sole discretion to decide whether or not to sign the works produced.

36.   The HOPE Agreements did not authorize American Image to create, produce, consign, sell, or otherwise use any Indiana artwork except the specified works using the *HOPE* design.

**American Image's Breaches of the Agreements and**
**Violations of Indiana's Intellectual Property Rights**

37.   American Image has breached its contractual obligations in numerous ways.

***American Image Has Failed to Make Required Contract Payments.***

38.   The HOPE Agreements provided that, as compensation for the exclusive rights to produce and consign the works described above, American Image would pay Indiana 25% of all

gross sales of the authorized *HOPE* sculptures, and 33% of all gross sales of the authorized canvas images.  The HOPE Agreement also specified that its five-year term would terminate unless (a) the accountings were provided on a timely basis and (b) American Image paid Indiana a minimum of $1 million in royalties per year.

39.    Payments owed under the Hope Agreements were to be paid semiannually, in March and September of each calendar year.

40.    The Second Addendum amended the five-year term, and instead allowed the Hope Agreements to be renewed on an annual basis upon payment of the $1 million annual payment minimum as set forth in the original HOPE Contract.

41.    American Image has breached these payment terms.

42.    American Image's last semi-annual payment was made in March 2018.  American Image has continued to produce, consign, and sell *HOPE* works up until the present day, but has not paid any royalties to either Indiana or the Estate for those works since its last semi-annual payment.

***American Image Has Failed to Keep or Provide Required Accountings***

43.    American Image breached its accounting obligations to Indiana.  The HOPE Agreement required American Image to provide Indiana with a quarterly accounting of all sales and payments, prepared by a reputable nationwide accounting firm.

44.    American Image never provided Indiana with the required accountings, and did not give Indiana the required advance notice of all sculpture and canvas works produced.  Further, American Image failed to maintain adequate records in order to provide the required accounting.

45.     American Image's failure to provide accounting records is not only a breach of the HOPE Agreements, it also prevents the Estate from being able to calculate the full amount owed, or to determine the extent to which American Image has unlawfully produced duplicate works.

46.     Further, to the extent American Image failed to maintain adequate records of all the works it has produced in Indiana's name, it has violated New York law.  New York's Art & Cultural Affairs laws requires a publisher who creates or sells art multiples or limited editions to keep and retain specific, detailed records of the works produced.  The statute is designed to ensure the integrity of the market for multiples, by requiring that sufficient records are kept to authenticate works, and to prevent forgeries or duplicate works.

47.     American Image's failure to keep and maintain records that are required by the HOPE Agreements and by statute is bad faith, frustrated a fundamental purpose of the agreements between American Image and Indiana, and deprived Indiana of an essential benefit of the bargain he struck with American Image.

***American Image Failed to Deliver Required Artist's Proofs***

48.     American Image also breached the HOPE Agreements by failing to produce and deliver required Artists Proofs of each edition created, as required by the HOPE Agreements.

49.     With regard to art multiples, a "Proof" is a copy that is otherwise the same as other works in a limited edition, but is not included in the count of a limited edition.  An "Artist's Proof" (or "AP") is a proof that is retained by the artist, and, by convention, not immediately offered for sale.

50.     The Hope Contract required American Image to produce and deliver to Indiana—at its own expense and with no cost to the artist—an Artist's Proof for each and every edition of *HOPE* sculptures created in sizes less than 72 inches.

51.    American Image created more than 20 separate limited editions of *HOPE* sculptures that should have included an Artist's Proof.  Yet American Image delivered only one single, isolated *HOPE* sculpture to Indiana.

52.    More egregiously, there were instances where Artist's Proofs were fabricated—but rather than deliver them to Indiana as required, American Image sold these works through its art dealer network and retained the proceeds of those sales for itself.  As a result, Indiana received neither the unique Artist's Proof he was entitled to, nor any revenue from its sale.

**American Image Has Wrongfully Deprived Indiana of His**
**Rights to Oversee the Production of Works Being Sold in His Name**

53.    American Image has deprived Indiana of his rights to notice, participation, and consent over each individual sculpture fabricated pursuant to the HOPE Agreements.

54.    The HOPE Agreements required American Image to apprise Indiana in advance "all sculpture produced whether cast or fabricated," and to notify Indiana of the dates the fabrication would commence and complete—and to do so within 10 days of commencement.  (Ex. A at 3.)

55.    Indiana was guaranteed "rights of approval over all aesthetic and production decisions relating to the works" and was not obligated to affix his signature to any work unless, in his sole judgment and discretion, it was of acceptable quality.

56.    American Art produced numerous *HOPE* sculptures without any notice to or involvement by Indiana, depriving Indiana of his rights to artistic and quality control over works produced by American Image.

**American Image Has Failed to Comply with Wind-up and Post-Termination Obligations**

57.    The HOPE Agreements contain explicit provisions intended to ensure an orderly wind-up of the consignment arrangement between the parties upon termination of the HOPE Agreements.  Any unsold artwork was to be apportioned between the parties, with 50% of all

completed unsold prints, and 30% of all such sculptures, being delivered to Indiana in good condition.  In the event that unsold artwork could not be evenly divided as required, American Image was required to make up the difference to Indiana via royalty payment.  Any artwork in progress was to be completed and apportioned as above, or terminated and destroyed.

58.   The Estate is Indiana's successor-in-interest to these post-termination rights under the HOPE Agreement.

59.   McKenzie has entirely disregarded these post-termination obligations, and has continued to create, consign and sell works without any authority or approval of the Estate.

60.   Even more egregiously, McKenzie has recently resorted to using unknown and undisclosed foundries and fabricators to produce *HOPE* sculptures, because the craftsmen who produced the prior *HOPE* sculptures have refused to work with American Image since the termination of the HOPE Agreements.  As a result, there is substantial risk that sculptures being sold as if they were identical multiples from within the same edition of works will differ in appearance, color, quality, weight, and fabrication method; and may thus vary from the designs approved by Indiana.

61.   Differences in appearance, quality or are likely to cause confusion as to which units within an edition are genuine, causing collectors to refrain from buying any works at all, thereby harming the market for genuine, authorized *HOPE* sculptures.

62.   Moreover, because American Image lacks sufficient records of the works it has produced, its use of unauthorized, unapproved, and unknown fabricators compounds the risk that further duplicates of already-existing edition numbers will be created, further casting the market for Indiana's works into turmoil.

63.    Even if American Image had rights to continue producing Indiana works—and it does not—its use of different, undisclosed contractors to produce works that are supposed to be uniform in quality and appearance, without any input or oversight from the Estate, is a separate and further material breach of its post-termination obligations to the Estate.

***American Image Has Failed to Register Indiana's Trademarks and Copyrights***

64.    The HOPE Agreements provided that Indiana retained all copyright rights in the images and the works.  The HOPE Agreements required American Image to register copyrights, trademarks and other intellectual property rights in Indiana's name, and to have provided Indiana with timely proof of registration.

65.    American Image has failed to register any copyrights or trademarks relating to the *HOPE* works produced under the Agreements. In order to protect Indiana's rights to his own artwork and trademarks, the Estate must now undertake the expense and burden of appropriate registration of those copyright and trademark rights—a burden that should have fallen to American Image as per the contract.

***American Image Has Produced and Sold Unauthorized Replicas and Even Forgeries***

66.    The HOPE Agreements did not authorize American Image to publish any works under Indiana's name except the *HOPE* works expressly specified.  American Image agreed that Indiana would have "sole judgment and discretion" to sign the *HOPE* works produced under the HOPE Agreements, based on his determination whether the quality was acceptable.  The HOPE Agreements did not authorize American Image to produce any works that were not related to *HOPE*; in fact, the First Addendum specifically declares that for any such works, the parties would have to enter into "a separate agreement … designating royalties, advances and other terms and must be signed by [Indiana] and [American Image]."

67.     American Image has breached these restrictions in egregious ways.

68.     <u>First</u>, American Image has produced, consigned and sold numerous *HOPE* works in Indiana's name, well beyond the limited quantity that Indiana authorized under the *HOPE* Agreements.  American Image has reproduced the *HOPE* image on objects ranging from stone benches to glass panels without Indiana's approval, and without any authorization or contractual right to do so.  American Image has also created print and sculptural editions of *HOPE* works in colors and styles that were never approved by Indiana.

69.     <u>Second</u>, American Image has produced, consigned and sold prints and reproductions of numerous genuine works by Indiana (other than *HOPE*), without the required signed agreement with Indiana governing royalties, advances, and other terms.  Among such works were a series of Indiana's paintings and prints with the addition of song lyrics by Bob Dylan, and a series of reproductions of *LOVE* on painted aluminum panels.

70.     In each of these instances, American Image failed to pay Indiana any portion of the income received from the consignment and sale of such works; American Image has kept all those profits for itself.

71.     <u>Third</u>, McKenzie conceived and created works without any involvement or knowledge by Indiana, and American Image has marketed and sold those works as if they were indeed Indiana's creations.

72.     Upon information and belief, one of the works that American Image has falsely attributed to Indiana is a stacked-letter image of the word "WINE" in a similar style to *HOPE* and *LOVE*, which was produced and sold to The Wine Enthusiast, Inc., publisher of *Wine Enthusiast* magazine.  The Estate is not aware of any written agreement between Indiana and

American Image that authorized McKenzie to produce a "WINE" stacked-word image or sculpture as if it were Indiana's artwork.

73.   McKenzie also conceived of an "Alphabet" design, displaying all of the letters of the alphabet in a typeface similar to that used in the *LOVE* image.  Indiana repeatedly rejected this concept, but McKenzie published it anyway as the purported work of Indiana's.  Upon information and belief, McKenzie used an autopen to sign these "Alphabet" prints in Indiana's name, and sold them by falsely representing them as Indiana's work, signed by Indiana's own hand.

74.   American Image has misappropriated Robert Indiana's name, signature, and reputation to market these counterfeit works.  The poor artistic quality of these works is inconsistent with Indiana's genuine *oeuvre*, and by attributing them to Indiana, American Image has harmed Indiana's reputation as an artist, confused collectors, and damaged the market for Indiana's genuine works.

***The Estate Provides Notice of Termination***

75.   By letter dated May 9, 2019 (transmitted by email the following morning), the Estate notified American Image that the HOPE Agreements and any other agreements between American Image and Indiana have terminated.  A true and accurate copy of the Estate's May 9, 2019 notice of termination letter is attached as **Exhibit F**.  The grounds for termination included that the agreements were agency/consignment agreements that terminated upon the death of Indiana, that the HOPE Agreements terminated under their own terms when American Image failed to make the required contractual renewal payment; and to the extent they had not otherwise terminated, the Estate was terminating the agreements based on American Image's material breaches of its contractual obligations.  American Image did not respond.  Since then,

the Estate has notified several of American Image's contractors that American Image is no longer authorized to produce any works of Indiana's.

***American Image Deceives Art Markets with Duplicates of Unique Original Indiana Works***

76.    Recently, the Estate has received credible information that American Image has produced at least one, and perhaps more, duplicates of unique original Indiana works, and placed them on consignment for sale as if they were originals.  Specifically, the Estate has learned from Jamie Chasse, American Image's painting contractor, that American Image recently produced a 36-inch-high, Red/Blue painted aluminum *HOPE* sculpture, marked as Edition V/VIII, meaning number five in a limited edition series of eight such works.  The Estate has further learned from Howard Rosenbaum of the Rosenbaum Fine Art Gallery, which for many years was American Image's exclusive gallery for consignment of Indiana's works, that it had sold Edition V/VIII of the exact same 36 inch, Red/Blue limited-edition series to a gallery in 2010.

77.    Production of a duplicate of a work in a limited edition series, and then offering it for sale as the original unique work, is fraud.  A limited edition is a representation to the art market and general public that the artist has created only the specified number of identical works, and will not create additional ones.  Indeed, New York's Art and Cultural Affairs Law sets strict statutory rules for what may be sold as a limited edition, and the information that must be disclosed in any such sale, in order to protect collectors from precisely such fraudulent behavior.

78.    By letter dated May 30, 2019, the Estate notified American Image that it had learned of the American Image's creation of the duplicate Edition V/VIII of the 36-inch Red/Blue *HOPE* sculpture.  A true and accurate copy of the Estate's May 30, 2019 cease-and-desist letter is attached as **Exhibit G**.  The letter further stated that the Estate had received information suggesting that American Image had created and possibly sold two additional

duplicate works.  The letter demanded that American Image preserve these works and provide

the Estate with information about them, take necessary steps to notify anyone holding these

works that they are inauthentic, begin arranging to purchase the works from any end-buyer, and

cease and desist from further efforts to produce, consign or sell these or any other duplicate

works.  The May 30 letter specifically stated: "If you believe my information regarding your

production of Duplicate Works is erroneous, or that there is any justification for your actions,

provide your explanation to me in writing promptly."

79.    American Image has not responded to the May 30 letter.  To the Estate's

knowledge, American Image has done nothing to remediate the harm caused by producing at

least one duplicate of a unique Indiana work, and possibly several more.

80.    Instead, American Image has attempted to circumvent efforts by the Estate to avoid

any further duplicate editions being created or sold.  American Image has engaged a new

foundry—that has no records of prior productions—to produce *HOPE* sculptures.  American

Image has also attempted to locate a new painter.  And, American Image has abandoned its

longtime exclusive dealer, Rosenbaum Contemporary, which has maintained records of works

previously sold, and is now attempting to sell *HOPE* sculptures through internet and discount

galleries in an effort to avoid detection by the Estate.

***American Image Has Refused to Return Authentic Works that are Property of the Estate***

81.    When an artist engages a printer, dealer, publisher, or fabricator to produce unique

or limited-edition works in that artist's name, those works become the chattel property of the

artist upon completion.  Such works are considered to be held on consignment by the printer or

publisher, and the artist retains title of ownership to such works.  Typically, the printer or

manufacturer of those works either itself offers those works for sale to the public, or delivers

them to a dealer for sale on a consignment basis. Upon sale of the work, title passes from the artist to the third-party purchaser, and an agreed-upon percentage of the sale price is remitted to the artist.

82. The contractual relationship between Indiana and American Image worked this same way. American Image was authorized to create specified works in Indiana's name, with his oversight and approval, and it then held those works on consignment and offered them for sale to third parties. When one of these works was sold, title passed from Indiana to the third-party purchaser, and American Image was required to remit a percentage of the sale proceeds to Indiana.

83. If a dealer or publisher like American Image wishes to obtain title to an original or limited-edition work being produced in an artist's name, it must enter into a separate sale transaction, under which it pays the artist consideration up front in exchange for title to the work. Under New York law, if the consideration to the artist for a work is contingent upon a later sale, the transaction is a consignment, and the dealer or publisher never takes title to the work.

84. Indeed, the HOPE Contract explicitly explains who holds title to particular works authorized by that agreement. As to *HOPE* sculptures, it states:

- "AP's [Artist's Proofs] shall remain the property of the Artist";

- "RTP's and TP's [Ready to Print's and Trial Proofs] shall remain the property of Publisher"; and

- "All other sculptures shall be subject to royalty as detailed on page 1 of this Agreement"

The "royalty as detailed on page 1" is a typical consignment arrangement, whereby the Artist receives no up-front consideration in exchange for title to the work, but instead receives a proportion of the eventual sale price once the consigned work is sold to a third party.

85.    The HOPE Contract similarly provides that title to the silk-screened canvas *HOPE* prints authorized by that agreement "shall be distributed as with Sculpture."

86.    Additionally, the HOPE Contract contains a wind-up provision that dictates what happens to works held on consignment and works in progress upon termination of the agreement:

> If, upon termination of this agreement, unsold artwork is in the possession of control of Publisher that had been created pursuant to this agreement, all such artwork shall be divided and delivered to the artist in good condition as follows: Sculpture 30% to Artist 70% to Publisher, Canvas 50% to Artist 50% to Publisher. In the event of an uneven split, Publisher shall make up the difference by royalty payment. Any artwork in progress at such time shall either be finished and so delivered and terminated and destroyed, upon mutual agreement of the parties or subject to arbitration.

87.    After receiving the Estate's notice of termination, American Image breached this provision by refusing to engage in this wind-up procedure, and it has even refused to provide the Estate with any information about the works held on consignment and unfinished works that would be subject to this provision.  Instead, as indicated above, American Image has continued to produce and consign *HOPE* works, in further breach of the now-terminated HOPE Agreements.

## FIRST CAUSE OF ACTION
### Declaratory Relief and Permanent Injunction

88.    The Estate repeats and re-alleges each and every allegation contained in the paragraphs above.

89.    The HOPE Agreements have terminated, on multiple grounds.

90.    <u>First</u>, the HOPE Agreements were personal-services agreements, agency agreements, and/or consignment agreements, which automatically terminated on May 19, 2018, when Indiana died.

91.    <u>Second,</u> even if the HOPE Agreements survived Indiana's death, they have terminated under their own terms.  The HOPE Agreements required American Image to pay a $1 million annual minimum royalty payments, in semiannual instalments every March and September, or the agreements would terminate.  American Image paid the renewal fee through June 30, 2018.  As a result, the HOPE Agreements terminated as of July 1, 2018.

92.    <u>Third</u>, by notice dated May 9, 2019, the Estate notified American Image that, to the extent not otherwise terminated, the HOPE Agreements and any other agreements that may exist between Indiana and American Image were now terminated based on American Image's substantial breaches of its contractual obligations. Those breaches include but are not limited to:

a)   failure to pay required amounts for any works created or sold after March 30, 2018;

b)   production of numerous *HOPE* and non-*HOPE* works that were not authorized under any agreement with Indiana;

c)   failure to register copyrights, trademarks and other intellectual property rights in each of the works in Indiana's name;

d)   failure to apprise Indiana in advance of all sculpture and canvas works produced;

e)   failure to provide Indiana with a quarterly accounting of all sales and payments, prepared by a reputable nationwide accounting firm;

f)   failure to maintain records of productions, consignments and sales that would be sufficient to support the required accounting;

g)   failure to comply with statutory record-keeping requirements;

h)   failure to provide required Artist's Proofs from each edition of *HOPE* works;

i)   failure to comply with the HOPE Contract's provisions regarding the disposition of unsold and unfinished works upon termination of the HOPE Contract; and

j)   continued production of *HOPE* works without express consent of the Estate.

93.   The termination of these agreements was lawful, and does not constitute a breach of any contractual obligations by the Estate or otherwise subject the Estate to any liability for damages.

94.   Because these agreements have terminated, Michael McKenzie, American Image Art, and any related persons or entities, are prohibited from continuing to produce, reproduce, promote, consign or sell works in Indiana's name, including but not limited to works based on Indiana's *HOPE* design, and/or from taking other actions pursuant to contractual authority from Indiana.

95.   American Image has refused to acknowledge that these agreements have terminated, and is unlawfully acting as if it has the contractual authority to produce and consign Indiana's works for sale.

96.   A justiciable controversy exists concerning whether the HOPE Agreements and any other agreements between Indiana and American Image have terminated without any breach of contract by Indiana or the Estate, and whether American Image's continuing production, promotion and sale of works in Indiana's name, and other activities pursuant to purported authorization from Indiana, is unlawful.

97.     The Estate is entitled to a declaratory judgment that the HOPE Agreements and any other agreements between Indiana and American Image terminated without any breach of contract by the Estate, and American Image may not continue to reproduce, promote or sell works using Indiana's art or in Indiana's name.

98.     The Estate is entitled to a permanent injunction against American Image barring American Image, and any related persons or entities, from producing, marketing, consigning, or selling works using Indiana's art or in Indiana's name, or taking other actions pursuant to supposed authorization by Indiana.

**SECOND CAUSE OF ACTION**
**<u>Breach of Contract</u>**

99.     The Estate repeats and re-alleges each and every allegation contained in the paragraphs above.

100.   Until their termination, the HOPE Agreements were valid and enforceable agreements between Indiana and American Image.

101.   The Estate is successor to Indiana's rights under the HOPE Agreements.

102.   Until their termination, Indiana and the Estate fully performed their obligations under the HOPE Agreements.

103.   American Image has breached the HOPE Agreements in the following ways:

    a)   failure to pay required amounts for any works created or sold after March 30, 2018;

    b)   production of numerous *HOPE* and non-*HOPE* works that were not authorized under any agreement with Indiana;

    c)   failure to register copyrights, trademarks and other intellectual property rights in each of the works in Indiana's name;

d)  failure to apprise Indiana in advance of all sculpture and canvas works produced;

e)  failure to provide Indiana with a quarterly accounting of all sales and payments, prepared by a reputable nationwide accounting firm;

f)  failure to maintain records of productions, consignments and sales that would be sufficient to support the required accounting;

g)  failure to comply with statutory record-keeping requirements;

h)  failure to provide required Artist's Proofs from each edition of HOPE works;

i)  failure to comply with the HOPE Contract's provisions regarding the disposition of unsold and unfinished works upon termination of the HOPE Contract; and

j)  continued production of HOPE works without express consent of the Estate.

104.  These breaches have caused harm to Indiana and the Estate.

105.  As a result, the Estate is entitled to an award of damages against American Image in an amount to be determined at trial, but no less than the full amount of unpaid royalties that were due to Indiana.

106.  The Estate is also entitled to an accounting of all sales and payments related to American Image's production, consignment and sale of works under Indiana's name.

107.  The Estate is also entitled to specific performance of American Image's contractual obligations regarding the disposition of unsold and unfinished works produced under the HOPE Agreements.

108.  The Estate is also entitled to an injunction barring American Image from any further production, consignment or sale of works under Indiana's name.

## THIRD CAUSE OF ACTION
### Unfair Competition under Section 43(a) of the Lanham Act

109.   The Estate repeats and re-alleges each and every allegation contained in the paragraphs above.

110.   American Image has made material false and misleading representations of fact in interstate commerce, by attributing to Indiana works and reproductions that were not, in fact, created or authorized by Indiana or the Estate.

111.   American Image has made material false and misleading representation of fact, in interstate commerce, that are likely to cause confusion as to the affiliation, connection, or association between Indiana and the works or reproductions that he did not create or authorize.

112.   By falsely attributing unauthorized works to Indiana, American Image has deceived consumers in the art market as to the source and origin of those works.

113.   American Image's conduct has harmed Indiana and the Estate.

114.   Upon information and belief, these violations are continuing and are likely to cause continuing harm to the Estate.

115.   As a result, the Estate is entitled to damages including, but not limited to:

    a)  all revenues received by American Image from the sale of unauthorized works;

    b)  all damages Indiana and/or the Estate has sustained as a result of American Image' sale of unauthorized works; and

    c)  treble damages pursuant to 15 U.S.C. § 1117.

116.   The Estate is also entitled to an accounting of all unauthorized works created by American Image, and all sales and payments related to such works.

117.   The Estate is also entitled to an award of attorneys' fees and costs of suit.

118.   The Estate is also entitled to an injunction barring American Image from any further production, consignment or sale of works under Indiana's name.

**FOURTH CAUSE OF ACTION**
**<u>Trademark Infringement</u>**

119.   The Estate repeats and re-alleges each and every allegation contained in the paragraphs above.

120.   The name "Robert Indiana" is distinctive and is used to identify Indiana's art and commercial activities.  Robert Indiana's birth name was Robert Clark, and since at least 1958, Indiana has used the name "Robert Indiana" to identify his art and commercial reproductions of his works.  Robert Indiana was widely recognized as an artist under the name "Robert Indiana."

121.   Robert Indiana's signature is a distinctive mark that Indiana used in commerce to identify his art and to sponsor and endorse activities.  Since at least 1958, Robert Indiana has been using his signature in commerce, and it is widely recognized mark used to identify Indiana's art.

122.   The Estate is the successor-in-interest to Robert Indiana and the owner of the marks "Robert Indiana" and Robert Indiana's signature.

123.   American Image has willfully and knowingly used the name "Robert Indiana" and/or Robert Indiana's signature on unauthorized works that did not originate with Robert Indiana or the Estate.

124.   American Image's unauthorized use of the name "Robert Indiana" and/or Robert Indiana's signature deceived consumers in the art market as to the source and origin of works created and sold by American Image.

125.   American Image's conduct has harmed Indiana and the Estate.

126.   Upon information and belief, these violations are continuing and are likely to cause continuing harm to the Estate.

127.   As a result, the Estate is entitled to damages including, but not limited to:

    a)  all revenues received by American Image from the sale of unauthorized works;

    b)  all damages Indiana and/or the Estate has sustained as a result of American Image'

        sale of unauthorized works; and

    c)  treble damages pursuant to 15 U.S.C. § 1117.

128.   The Estate is also entitled to an accounting of all unauthorized works created by American Image, and all sales and payments related to such works.

129.   The Estate is also entitled to an award of attorneys' fees and costs of suit.

130.   The Estate is also entitled to an injunction barring American Image from any further production, consignment or sale of works in Robert Indiana's name and/or bearing Robert Indiana's signature.

## FIFTH CAUSE OF ACTION
## <u>Unfair Competition under New York Law</u>

131.   The Estate repeats and re-alleges each and every allegation contained in the paragraphs above.

132.   American Image has willfully and knowingly used Robert Indiana's name and signature to sell works that were not created or authorized by Robert Indiana, and has falsely identified Robert Indiana as the artist responsible for those works.

133.   American Image's conduct is likely to confusion among consumers as to the source, origin, and/or approval of works sold by American Image.

134.   American Image has misappropriated the goodwill and reputation that Indiana cultivated over a lifetime as an artist.

135.   This conduct has caused harm to Indiana and the Estate.

136.   As a result, the Estate is entitled to an award of damages against American Image in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### Conversion

137.   The Estate repeats and re-alleges each and every allegation contained in the paragraphs above.

138.   Pursuant to the HOPE Agreements, American Image was required to create and deliver to Indiana, at no expense to Indiana, an Artist's Proof from each sculptural edition of HOPE works created. The Hope Agreements provide that all Artist's Proofs "shall remain the property of the Artist."

139.   Artists Proofs were created for certain of *HOPE* sculpture editions, including, but not limited to:

     a)  18" Aluminum Red/Yellow edition

     b)  18" Aluminum Red/Blue/White edition

     c)  18" Aluminum Red/White edition; and

     d)  18" Aluminum Red/Light Blue edition

140.   With the exception of certain specific *HOPE* sculpture and print editions that were designated as "RTP" or "TP" editions, or that would be granted to American Image upon termination of the HOPE Contract pursuant to its terms, all other unique or limited edition Robert Indiana sculptures and prints produced by American Image are the chattel property of the Estate held by American Image on consignment.

141.   American Image interfered with Indiana's ownership and possessory rights to these Artists Proofs and the consigned works by failing to deliver them to Indiana and/or the Estate as

required by contract, by failing to return the works upon request, by placing or consigning them for sale without authority, and by retaining all proceeds of such sales.

142.   The Estate is entitled to an award directing American Image to return to the Estate all property of the Estate in American Image's possession or control.

143.   The Estate is entitled to a permanent injunction barring American Image from any further sale of works of fine art belonging to Robert Indiana, including but not limited to any limited-edition prints, paintings, or sculptures based upon Indiana's designs.

144.   The Estate is also entitled to an award of damages against American Image in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### New York Arts & Cultural Affairs Law § 12.01

145.   The Estate repeats and re-alleges each and every allegation contained in the paragraphs above.

146.   Until his death, Robert Indiana was a visual artist.  The Estate is Robert Indiana's successor-in-interest.

147.   Robert Indiana delivered or caused to be delivered to American Image works of fine art, including print, craft, and sculptural editions based upon Indiana's designs, for the purpose of exhibition and/or sale on a commission or percentage fee basis.

148.   All such works of fine art were property held by American Image in trust for the benefit of Robert Indiana, and now the Estate.  Any proceeds from the sale of such work are funds held by American Image in trust for the benefit of Robert Indiana, and now the Estate.

149.   American Image has failed to treat the trust property and trust funds it holds for the benefit of Robert Indiana and the Estate in accordance with its fiduciary duties.

150.   American Image has failed to keep separate all property and funds held as fiduciary for Robert Indiana and the Estate.

151.   The Estate is entitled to an award directing American Image to return to the Estate all property of the Estate in American Image's possession or control.

152.   The Estate is also entitled to an award of damages against American Image in an amount to be determined at trial.

153.   The Estate is also entitled to an award of surcharges and prejudgment interest in amounts to be determined at trial.

154.   The Estate is also entitled to an award disgorging from American Image all profits and benefits received, including any percentages or commissions on sales of Indiana works, while American Image was in breach of its fiduciary duties.

155.   The Estate is also entitled to an award of all cost and expenses, including attorney's fees and arbitration costs, incurred in connection with this arbitration.

## PRAYER FOR RELIEF

WHEREFORE, the Estate respectfully requests the following relief:

(a)   a declaration that the HOPE Agreements and any other agreements between Indiana and American Image have been terminated, without any liability to the Estate;

(b)   a permanent injunction enjoining American Image, together with all employees, representatives, agents and other persons under their control or otherwise acting pursuant to their authorization, from producing or consigning for sale any further works based on Indiana's art and designs or under Indiana's name, and enjoining American Image from taking other actions inconsistent with termination of the

HOPE Agreements and any other agreements between Indiana and American Image;

(c) an award compelling American Image to comply with the HOPE Contract's provisions concerning the disposition upon termination of unsold and unfinished works produced under the HOPE Agreements;

(d) an award compelling American Image to tender to the Estate all other property of the Estate within American Image's possession or control, including but not limited to all Robert Indiana prints or sculptures held on consignment from Robert Indiana or the Estate by American Image;

(e) an award compelling American Image to either deliver to the Estate or destroy at its own expense and in the physical presence of the Estate's representatives (a) all *HOPE* prints or sculptures that were in progress but not yet complete as of the date of the termination of the HOPE Agreements; (b) all *HOPE* prints or sculptures the production of which began after the date of termination of the HOPE Agreements, and (c) all unauthorized works that American Image produced as works of Robert Indiana;.

(f) an award of damages against American Image, in an amount to be determined at trial, including:

    i. the amount of the annual renewal fee that would be due up through the last day that American Image continued to produce works under the HOPE Agreements;

ii.   the amount of royalties due to Indiana and the Estate for the authorized *HOPE* Works produced, consigned or sold by American Image pursuant to the Agreements;

iii.   the proceeds of all sales of unauthorized works sold using Indiana's name or signature;

iv.   losses incurred by Indiana and the Estate as a result of American Image's production, consignment and sale of unauthorized works and the unauthorized use of Indiana's name and signature;

v.   damages to the goodwill and reputation of Indiana as result of American Image's unauthorized use of Robert Indiana's name and signature; and

vi.   treble damages pursuant to 15 U.S.C. § 1117.

(g)   disgorgement of American Image's gains from the production, consignment and sale of unauthorized *HOPE* and non-*HOPE* works under Indiana's name,

(h)   accounting of all works produced, consigned and/or sold by American Image using Indiana's art and designs or under Indiana's name, and all payments made to and by American Image with respect to those works;

(i)   an award of prejudgment interest and surcharge on all funds and property held by American Image in trust for Robert Indiana and/or the Estate;

(j)   an award of reasonable attorneys' fees and costs, including arbitration fees; and

(k)   such other and further relief as the Panel deems just and proper.

Dated: New York, New York
      September 27, 2019

**VENABLE LLP**

By: _____
    Edward P. Boyle
    Jessie F. Beeber
    Kan M. Nawaday
    John C. Vazquez
1270 Avenue of The Americas
New York, NY 10020
Telephone: 212-307-5500
epboyle@venable.com
jbeeber@venable.com
kmnawaday@venable.com
jcvazquez@venable.com

*Attorneys for Claimant James W. Brannan,*
*as Personal Representative of the Estate of*
*Robert Indiana*

# EXHIBIT A

# AGREEMENT FOR ART EDITIONS
### ver 5.0

This Agreement made this **11** day of August 2008 is between ROBERT INDIANA [The Artist] , residing at the Star of Hope, Vinalhaven, Maine, 04863 and Michael McKenzie/ American Image [The 'Publisher'] d/b/a 361 Third Avenue, New York 10016 and 171 Golden's Bridge Road Bedford, New York 10536 for the purpose of creating two and three dimensional works utilizing HOPE [the "artwork"] hand signed and numbered by the Artist as to two dimensional artworks, and with Artist's name embedded with serial numbers as to three dimensional artworks.

RECITALS

The Publisher wishes to have certain exclusive rights to create works based on the artwork HOPE and avers that it has the manufacturing, financial and distribution capabilities in place to make a success of the artwork in a fine art context, and the Artist wishes to have this artwork succeed in a fine art context through the Publisher's efforts.

DUTIES & RESPONSIBILITIES

For its part, Publisher will pay the sum of $ 100,000 to the Artist upon signing and an additional $400,000 as an advance against royalties on or before September 30, 2008. Both such payments shall be nonrefundable. Publisher will release the first for sale edition on or before December 2008. The works created pursuant to this agreement shall, unless otherwise agreed as to any special edition(s), be rendered in color combinations which mirror the combinations which the artist has approved for use in renderings of his LOVE and/or AMOR image. Notwithstanding anything to the contrary herein, the Artist shall have the right to approve all images created hereunder.  In connection with the promotion and sale of the artwork, Publisher will retain the services of a first class public relations firm (such as Rubenstein & Rubenstein). Marketing efforts for this project shall include full page advertising each year in major fine art magazines including Art in America.

Except as otherwise provided herein, Publisher will pay a 25% royalty on all gross sales of the sculptures, and a 33% royalty on gross sales of canvas images, payable to Artist and/or his assigns. An accounting of such sales and payment will be delivered on a quarterly basis, commencing with the period beginning October 1st 2008. Payment shall be made by check payable to the Artist or by wire to his account. Accountings will be provided by a reputable nationwide accounting firm such as Ernst & Young or the like.

Artist for his part hereby grants to Publisher the exclusive right during the term of this agreement to create artworks based on the image HOPE, solely as described on the Schedule incorporated herein on pages 4 and 5, and upon the signing of this agreement has provided the Publisher with the approved rendering of HOPE, acceptable to

Page l of  6        RI        MM

Publisher, in an 18" x 18" x 9" model which will be used as the matrix for all works to follow. Any three dimensional works shall follow the artist's traditional 2 to 1 relationship between height/width and depth (with the 0 tilted to the right at a 45 degree angle and with dimensions in the manner of the artist's LOVE image). As to two dimensional works, the Artist will personally sign and number each image in keeping with other two dimensional works which he has created and signed in the past. As to three dimensional works the artist's name will be embedded in the same manner as his LOVE sculpture and a serial number shall be embedded in order to catalogue every work produced pursuant to this agreement both as a measure of account and as protection against infringement.  During the term of this agreement neither Artist nor Publisher shall create or cause to be created any items whatsoever utilizing the HOPE image without prior explicit written approval by both parties to this agreement.

All of the above notwithstanding. The Artist shall have without limitation the right to use his artistic talent to produce and sell unique (i.e. non-editioned) original works containing the two-dimensional image HOPE on paper, canvas and other mediums of his choosing.

The artwork may be reproduced by Publisher, its agents and/or assigns for publicity purposes and advertising directly tied to sale and promotion of the work as fine art. Artist agrees to cooperate with reasonable demands upon his time and availability for publicity purposes which shall be limited to phone and e-mail correspondence unless the Artist decides otherwise.

The duties and responsibilities set forth in this agreement and the benefits thereof shall be borne by and inure to the benefit of the parties hereto and their respective heirs, administrators, successors and permitted assigns.

SPECIFIC DUTIES OF THE PUBLISHER

In the context of its business activities pursuant to this agreement, which shall include the creation of sculptures, prints and silk-screened canvas images of the HOPE artwork in accordance with the Schedules incorporated herein on Pages 4 and 5. Publisher shall use its best efforts to secure usage of the artwork for the benefit of the Presidential campaign of Barack Obama as a means of introducing the artwork to the public view in a positive and constructive manner. In addition, Publisher shall also create a hard cover book to contain photographs of celebrities posed in front of the artwork with interviews of them on the subject of hope to further promote the artwork, provided the Artist shall have approval of all aspects of such book and subject to the parties' agreement to an appropriate licensing fee and/or royalty to the Artist.  Publisher resolves to work with the Artist in close and frequent consultation to realize these objectives and conclude mutually satisfying usages of the artwork.

Page 2 of  6                                                                          MM

## TERM AND PERFORMANCE GUARANTEES

The term of this agreement is five years from the date first set forth above. However, this agreement shall forthwith terminate unless (a) the required accountings are rendered on a timely basis, and (b) the following minimum royalty payments are made in each annual period of the agreement according to Publisher's 25% royalty requirement for sculpture, and 33% royalty requirement for canvas images as set forth above:

Year 1 through Year 5: $1,000,000 (one million US Dollars) per annum, with payments to be made semi-annually in March and September of each calendar year.

If, upon termination of this agreement, unsold artwork is in the possession or control of Publisher that had been created pursuant to this agreement, all such artwork shall be divided and delivered to the Artist in good condition as follows: Sculpture 30% to Artist 70% to Publisher, Canvas 50% to Artist 50% to Publisher. In the event of an uneven split, Publisher shall make up the difference by royalty payment. Any artwork in progress at such time shall either be finished and so delivered or terminated and destroyed, upon mutual agreement of the parties or subject to arbitration.

Publisher will apprise Artist of all sculpture produced whether cast or fabricated prior to its production and inform artist of the dates of production within ten days of production commencement and production fulfillment. At no time will fabricated production of any given size exceed 2 pieces unless such pieces have been sold prior to fabrication. For casting purposed no more than ten (10) pieces shall be cast at a time unless the pieces have already been sold prior to casting. The limitation of production described herein shall be for all material variations added together as one component, NOT a per material restriction. Publisher will also apprise Artist of all canvas production on a similar timely basis. All costs of production and distribution will be paid entirely by Publisher. The Artist will not be responsible for any cost related to the creation, production, promotion, or distribution of the works. The Artist will have the right of approval over all aesthetic and production decisions relating to the works. Publisher recognizes and agrees that the Artist will not be obligated to sign work unless such work is of a quality acceptable to the Artist in his sole judgment and discretion.

## COPYRIGHTS

The Artist expressly reserves all copyright rights in and to the images and the works created hereunder. This agreement is not intended to transfer such rights to Publisher. Publisher will register any and all copyrights, trademarks and other intellectual property rights in each of the works in the name of the Artist, and shall provide timely proof of such registration to the Artist. Artist, for his part, will cooperate with the Publisher in maintaining, for both Artist's and Publisher's benefit, the exclusivity of the artwork and all intellectual property rights associated with it to the best of his ability.

Page 3 of 6          RI          MM

SCHEDULE OF SCULPTURE PRODUCTION

| Suggested Retail | Height dimension | Edition size | AP's | RTP | TP | MP |
|---|---|---|---|---|---|---|
| $12 -15,000 | 12" | 150 | 3 | 1 | 2 | 3 |
| $60,000 | 18" | 21 | 3 | 1 | 2 | 3 |
| $150,000 | 36" | 9 | 1 | 1 | 1 | 1 |
| $200,000 | 48" | 8 | 1 | 1 | 1 | 0 |
| $650,000 | 72" | 6 | 1 | 1** | 1 | 1 |
| $1,000,000 | 96" | 5 | 0 | 0 | 0 | 0 |
| $1,500,000 | 120" | 4 | 0 | 0 | 0 | 0 |
| $2,250,000 | 144" | 3 | 0 | 0 | 0 | 0 |
| $5,000,000 | 240" | 2 | 0 | 0 | 0 | 0 |

All MP's shall be donated to major museums or institutions with tax exempt status and these donations shall be agreed upon by both Artist and Publisher. AP's shall remain the property of the Artist. Publisher shall be responsible for foundry costs of AP's in all editions of 12", 18" and 36", and Stainless Steel edition only of 48", and 72". If the Artist, in his sole discretion, elects to fabricate 48" and 72" AP's in other editions he will be responsible for the foundry cost associated therewith. AP's shall be transported at Publisher's expense to Artist at Vinalhaven, Maine, in a timely manner. RTP's and TP's shall remain the property of Publisher. All other sculpture shall be subject to royalty as detailed on page 1 of this Agreement.

Sculpture Editions:  Stainless Steel, Bronze, Corten Steel, Aluminum, a single Painted Steel edition in Artist's colors (see Term and Performance Guarantee Section on Page 3).

SCHEDULE OF SILK-SCREENED CANVAS PRODUCTION:

| Height dimension | Edition | AP | RTP | TP | PP | MP |
|---|---|---|---|---|---|---|
| 12' | 2 | 1 | 1 | 1 | 0 | 0 |
| 10' | 3 | 1 | 1 | 1 | 0 | 1 |
| 8' | 4 | 1 | 1 | 1 | 0 | 1 |
| 6' | 5 | 1 | 1 | 1 | 1 | 1 |
| 3' | 7 | 2 | 1 | 2 | 1 | 2 |
| 2' * | 9 | 2 | 1 | 2 | 1 | 2 |

All AP's, RTP's, TP's & MP's shall be distributed as with Sculpture. PP's will be given to the Master Printer and will not be subject to royalty. All AP's shall be stretched and mounted on frames in a professional manner by Publisher.  All AP's shall be transported at Publisher's expense to Artist at Vinalhaven, Maine, in a timely manner. * Artist and Publisher agree that production referred to in Schedule above as 2' may be rendered in dimensions less than 2' however in no event shall the total number of images produced exceed the agreed edition size.

Silk-Screened Canvas Editions: Publisher and Artist agree that there will be two editions, described as follows in terms of color composition;
-    Red Letters, Blue Bottom, White Top
-    White Letters, Blue Bottom, Red Top

Page 4 of  6          RI          MM

Any additional color combinations or editions may be produced only with prior written agreement of the Artist.

SCHEDULE OF PRINT PRODUCTION
Dimensions: Paper 20" x 22", image 18" x 18"
Material: Coventry or suitable substitute
Edition size: 200 prints

Prints are for use by Obama Campaign, to be hand signed by the Artist, plus 25 AP's, 1 RTP, 10 PP's, 10 TP's, and 10 MP's exclusively for donation to museums and institutions with tax exempt status. Other editions may be created by mutual written agreement of the Artist and Publisher.

NOTE ON ROYALTIES PER ABOVE PRINT PRODUCTION SCHEDULE
It is agreed between Publisher and Artist that 200 Prints shall be donated without charge to the Obama Campaign and will therefore involve no royalty payments. No royalties shall be payable to the Artist on account of RTP's, PP's, TP's or MP's. AP's shall remain the property of the Artist. RTP's and TP's shall remain the property of Publisher. PP's will be given to the Master Printer and will also not be subject to royalty.

OBAMA CAMPAIGN
Artist hereby authorizes construction and delivery by Michael McKenzie/American Image to the site of the Democratic National Convention in Denver Colorado on or before August 23, 2008 one (1) sculptural version of the artwork HOPE in dimensions of approximately h-6',w-6',d-3' fabricated in stainless steel and weighing approximately 3,500 lbs, (together with the accompanying display base which is an integral element to the sculpture) which shall be displayed prominently at the entrance to the site or other location immediately outside the convention site. Such sculptural version shall be the 72" RTP referred to in Schedule on page 4 of this agreement.

**Should the RTP referenced in the paragraph above be sold by the Publisher, it is hereby agreed that the Artist shall be entitled to a royalty on this piece as if the sculpture were a scheduled edition work.

The parties further agree the HOPE image rendered in silk-screened canvas may be displayed at the Democratic National Convention as follows; a single (1) 12' x 12' canvas HOPE, consisting of four 6' x 6' panels, four (4) 6' x 6' canvas HOPE images, four (4) 2' x 2' canvas HOPE images . The 12' canvas shall be an RTP, the four 6' canvas shall be the RTP and TP of each color combination, and the four 2' x 2' canvas shall consist of RTP's and TP's referred to in Schedule included herein on page 4.

Page 5 of 6          RI          MM

Michael McKenzie/American Image hereby assumes full responsibility for the timely construction, transportation and installation and removal of the sculpture and silk-screened canvas images. All expenses associated with the construction, transportation, storage and display of such sculpture and silk-screened canvas images will be borne by American Image.  Michael McKenzie/American Image is further authorized to create an unveiling ceremony for the sculpture to be held in the hours immediately preceding the opening gavel of the Democratic National Convention.

It is further agreed that the artwork HOPE by Robert Indiana may be used by the Obama Campaign on T-shirts, buttons, lapel pins, bumper stickers, posters (not to exceed as to any reproduction of the artwork a dimension of 48") and kiosks until November 10, 2008

NO ASSIGNMENT
Except as otherwise stated herein, all rights and obligations pertaining to this agreement shall inure exclusively to the Artist and Publisher. In accordance therewith, no part of this agreement may be assigned by either party to any third party.

AGREED AS WRITTEN
Neither the Publisher nor the Artist has been induced into this agreement and both wish to see it succeed as defined herein. This agreement contains the entire agreement of the parties concerning the subject matter hereof and supersedes any other agreement whether written or oral and any modifications must be made in writing and initialed or signed by both parties.

It is further agreed that any liability of the Artist under this agreement shall be limited to an amount no greater than the amount of funds received by the Artist under this agreement. Any disputes will be settled by arbitration through the American Arbitration Association, governed by laws of the State of New York.

Agreed to this __Ἀl__ day of August, 2008

Michael McKenzie, Publisher

Robert Indiana, Artist

Page 6 of  6

# EXHIBIT B

## ROBERT INDIANA/AMERICAN IMAGE: ADDENDUM TO HOPE CONTRACT

### 1. Edition Numbers for Hope Sculpture.

18" sculpture editions currently slated for editions of 21 will be reduced to 9. All ancillary 'proofs' will be limited to editions of I/I

36" sculpture editions currently slated for editions of 9 will be reduced to 8. All ancillary 'proofs' will be limited to I/I.

48" sculpture will be an edition of 7. All ancillary proofs will be limited to I/I.

All other editions and royalties will remain the same as agreed.

### 2. Edition Numbers for Hope Canvas Editions.

2' Editions shall be limited to Editions of V, consecutively Roman numeraled.

3' Editions shall be limited to V, consecutively Roman numeraled

All other editions will remain the same as originally agreed. All royalties shall accrue as originally agreed in the original contract.

### 3. Additional Hope Canvas Editions.

All additional canvas editions will be in keeping with the new edition sizes as indicated in section 2 above. All color combinations will be approved in a step by   step process as follows:

   I. Publisher shall discuss with artist colors and get an oral approval for   a color combination.

   II. Publisher shall confirm via e-mail that he will be going forward in creating the color combination the artist has orally approved.

   III. Publisher shall create at his own expense trial proofs of the new edition color[s] on canvas for approval by artist.

   IV. Publisher shall make arrangements to get trial proofs to artist whether in person or by some means of   transport.

   V. Artist shall either approve or disapprove of the trial proof, solely at his discretion. If the artist disapproves, the trial proofs shall be   destroyed or entered as a "T.P." {trial proof}at artist's discretion. Artist shall direct publisher to correct colors or abandon the color combination totally.

   VI. Should the artist approve the trial proof he shall designate the image R.T.P and the publisher shall then create the edition in accordance with the contract and get the finished works to the artist

for signing expeditiously.

VII. By mutual consent, artist and publisher may elect to produce a series of unique color combination works on canvas aimed at elevating the market.

VIII. Royalties will accrue on all canvas editions, including Obama edition and uniques, if any, as according to original agreement.

### 4. Other Hope  Editions.

Any  works agreed to,   produced and signed by the artist on paper shall be subject to a 30% royalty base.

Works in cloisinette, metal, wool or silk if agreed, produced and signed by artist shall be subject to a 25% royalty base.

Any other Hope editions not listed herein, such as limited edition books, will be summarized in a one page agreement should artist and publisher decide to create any hope related work not included herein.

### 5. Other Editions.

If publisher and artist agree to do any editions not related to Hope, a separate agreement will be drawn designating royalties, advances and other terms and must be signed by artist and publisher.

Publisher and artist agree to the terms herein and this addendum is added to the contract previously signed by publisher and artist as if part of the original contract. This agreement supercedes any other agreements for Hope whether verbal or written and is binding on both parties, their heirs, successors, assigns, estates and foundations and no transfer of this Agreement shall effect its terms.

Signed this ___ 28 ___ day of ___ Sept ___ 2010

Robert Indiana, Artist

Michael McKenzie, American Image.

(Print Name: *WEBSTER ROBINSON*    Witness

# EXHIBIT C

**Addendum to Hope Contract**

This addendum is between American Image, the publisher, and Robert Indiana, the artist, for the contract for HOPE artworks in all mediums and shall be incorporated as part of original agreement dated 2008, overriding any previous documents or language.

Going forward from calendar year 2010, the contract between artist and publisher will renew upon an *—And shall be binding upon them.* annual payment of $1,000,000 to artist, his heirs, estate or assigns. The Hope artworks will be controlled by publisher and no other entity can assign, sell, license or otherwise use the hope images without permission from the publisher and publisher will collect on artist's behalf and pay artist as is included in original contract.

All other aspects of the Hope contract and previous addendum will remain unchanged.

Signed this 1ST day of Sept 2011 by

_Michael McKenzie_

Michael McKenzie, American Image[Publisher]

Signed this 1st day of Sept 2011 by

_Robert Indiana_

Robert Indiana, Artist

By
[Print] HOWARD ROSENBAUM Signed _____

Witness   Date 1st day of Sept 2011

# EXHIBIT D

HOPE WINE

Michael McKenzie, American Image his/their heirs, estate and assigns ["The Producer"]  will pay Robert Indiana/~~Robert Clark~~ his heirs, estate and assigns a royalty of 30% of all monies received by The Producer annually for the exclusive rights to HOPE Wine, water & Spirits, this in addition to the one million dollars annually for the exclusive rights HOPE in all languages.  Distribution shall be through Empire Liquor Distributors and its affiliates, a well known and respected company.

Signed _____ 4, OCT _____ 2011

_____

Michael McKenzie/American Image

_____

Robert Indiana, Artist

Witness [Print Name _____ Margaret Malone. _____ ]

# EXHIBIT E

# Addendum to Agreement

## dated March 3̲1̲, 2012

Robert Indiana ("Artist") and Michael McKenzie/American Image ("McKenzie" or "Licensee") have entered into an Agreement for Art Editions, dated August 11, 2008 (as amended, the "Existing Agreement"), by which Artist has granted McKenzie certain exclusive rights to create two and three dimensional works based on the Artist's HOPE artwork in all languages ("Artwork"); On October 4, 2011, the parties amended the Existing Agreement to permit use of the Artwork on or in connection with wine, water and spirits. It was later determined that the name and signature ROBERT INDIANA should also be licensed by McKenzie, and to cover all alcoholic and non alcoholic beverages ("Beverages").

The parties, for consideration amend the Existing Agreement and any addenda as follows in this Addendum to Agreement dated March 3̲1̲, 2012 ("Amendment"):

1.     Artist grants McKenzie the right and license to use, the Artwork, the "ROBERT INDIANA" name and the "ROBERT INDIANA" signature (collectively "Property") exclusively and worldwide in connection with the manufacture, marketing, distribution, promotion advertising and sale of Beverages.

2.     Artist shall have the right of approval for the general design of the Property on Beverages.  Once approved by Artist, the Property may be used as part of the label and in any advertising and promotional materials in any color and proportionally in any size.  The HOPE Artwork on Schedule A and the "ROBERT INDIANA" name and signature on Schedule A to this Amendment are approved by Artist.

3.     McKenzie shall pay Artist a royalty equal to 30% of gross proceeds actually received by McKenzie for Beverages bearing the Property sold by the exclusive distributor Chatham Imports, Inc. ("Chatham") or its successors or assigns.  McKenzie shall pay Artist a royalty equal to 30% of gross proceeds actually received by McKenzie for Beverages bearing the Artwork and the mark TIKVA or TIKVAH sold by the exclusive distributor Chatham or its successors or assigns.  If no sales of any Beverages are made within 24 months after signing this Amendment, Artist may terminate this Amendment.

4.     Royalty payments shall be made quarterly to Artist's address in Vinalhaven, Maine, within 30 days of the close of each quarter.  Royalty payments shall be accompanied by a report on sales of the Beverages specified in 3 above.  McKenzie shall maintain, for a period of three years books and records from which the royalty payments may be verified.  Such records shall be open to the inspection of the Artist or his authorized representatives, during normal business hours, to verify royalty payments.

5.     McKenzie may prepare copyright registration applications for the Property for deposit with the United States Copyright Office.  McKenzie shall have the right to file, prosecute, and maintain, in his name, at his expense and in his name, trademark applications and registrations for the "ROBERT INDIANA" name and "ROBERT INDIANA" signature for use

4829-2571-7518.3

in connection with Beverages, including design marks and logos.  Each party shall promptly give notice to the other party of any infringement claim or any unauthorized use of the Artwork or the Property of which such party becomes aware.

6.    McKenzie shall promote the products bearing the Property at museums, galleries, shows, and events where Artist's work, including, but not limited to, the Artwork (including as shown on Beverages) is displayed.

7.    This Amendment shall be binding upon, and shall inure to the benefit of, Artist, Michael McKenzie/American Image, their respective heirs, legatees, administrators, executors, representatives, successors, and assigns.  McKenzie assigns and transfers his rights and duties under this Amendment to Chatham Imports, the national and international distributor.

8.    This Amendment supersedes all prior negotiations, understandings, and agreements between the Artist and McKenzie with respect to Beverages and shall be modified only in writing and governed by and jurisdiction shall be in the State of New York.  All other terms of the Existing Agreement remain in force.

AGREED.

Dated this 31 day
March, 2012

ROBERT INDIANA

By
Name: Robert Indiana
Title: Artist

Dated this 31 day
March, 2012

MICHAEL MCKENZIE/AMERICAN IMAGE

By:
Name: Michael McKenzie
Title: Publisher

4829-2571-7518.3

# EXHIBIT F

# James W. Brannan
### Attorney at Law

15 Limerock Street
P.O. Box 1021
Rockland, ME  04841

Tel: (207) 596-0554
Fax: (207) 596-0555
E-mail: jwb@brannanlaw.net

May 9, 2019

**By EMAIL AND FIRST-CLASS MAIL**

Michael McKenzie
Principal
American Image Art
171 Goldens Bridge Road
Katonah, NY  10536
*mm2uwords@gmail.com*

   **Re:** **Notice of Termination of Agreements; Cease and Desist Demand**

Dear Mr. McKenzie:

   I have been appointed as Personal Representative for the Estate of Robert Indiana (the "Artist"), who died on May 19, 2018.  I am writing to you in your personal capacity and in your capacity as Principal of American Image Art (McKenzie and American Image Art together, "You").

   Please take notice that, for reasons set forth below, any and all agreements between the Artist and You (together, the "Agreements") have been terminated since at least July 1, 2018, if not earlier, and are no longer in effect.  As a result, since at least July 1, 2018, You have had no authority to produce any works based on the Artist's HOPE design.  You must immediately cease and desist from any further production of works under the Artist's name.

   For the avoidance of doubt, the Agreements include but are not limited to the following:

- Agreement for Art Editions dated August 11, 2008 ("HOPE Contract")
- Robert Indiana/American Image:  Addendum to HOPE Contract, dated September 28, 2010 ("First Addendum")
- Addendum to HOPE Contract, dated September, 1, 2011 ("Second Addendum")
- HOPE Wine Contract, dated October 4, 2011 ("HOPE Wine Contract")
- Addendum to Agreement, dated March 31, 2012 ("HOPE Wine Addendum")

   There are numerous reasons why the Agreements are terminated.

   <u>First</u>, You have failed to pay the contractual renewal fee and provide the Artist with the required quarterly accountings, and thus the Agreements have terminated under their own terms.

Michael McKenzie
American Image Art
May 9, 2019
Page 2

The HOPE Contract granted You an exclusive license to use the Artist's HOPE design to produce a finite number of limited editions of two- and three-dimensional works, in specified numbers, materials, and dimensions. You agreed to pay the Artist 33% of gross proceeds from sales of two-dimensional works, and 25% of gross proceeds from sales of three-dimensional works. The HOPE Contract provided for a five-year term, which would have ended August 11, 2013. The HOPE Contract provided that it would terminate sooner if You failed to pay the Artist a minimum annual royalty of $1 million, or if You failed to provide quarterly accountings prepared by a nationally-recognized accounting firm. On September 1, 2011, You and the Artist entered into the Second Addendum, which modified Your payment requirements for renewal of the HOPE Contract as follows: "Going forward from calendar year 2010, the contract between artist and publisher will renew upon an annual payment of $1,000,000 to artist, his heirs, estate or assigns ..." In addition to the renewal fee, the Second Addendum provides that You would "collect on artist's behalf and pay artist as is included in the original contract" – referring to the schedule of royalty payments in the HOPE Contract. The rights granted under the HOPE Wine Contract and HOPE Wine Addendum were dependent upon Your rights to use the HOPE design under the HOPE Contract, and would terminate at the same time as the HOPE Contract.

You have failed to make the required payments to renew the Agreements. Your last renewal payment was a $500,000 "semi-annual" payment, made on or about March 28, 2018. You did not pay the remaining $500,000 to renew for the second half of 2018, and have not made any renewal payments since. Accordingly, the Agreements terminated on July 1, 2018.

Further, my review of information indicates that You never provided the required quarterly accountings. Under the HOPE Contract's express terms, the Agreements terminated when You first breached this obligation.

Second, even if the Agreements had not terminated under their own terms, they are personal services contracts and/or agency/consignment agreements by nature, which therefore terminated on May 19, 2018, when the Artist died.

Third, to the extent any Agreements between You and the Artist had not otherwise terminated, the Estate hereby terminates them on the grounds of Your multiple material breaches, which include but are not limited to the following:

- You have failed to pay all amounts due to the Artist under the Agreements;
- You have produced HOPE and non-HOPE works in the Artist's name that were not authorized under the Agreements;
- You have consigned and/or sold unauthorized works as if they were works of the Artist;
- You have failed to provide the Artist with the required quarterly accountings;
- You have failed to provide the Artist with the required advance notice of all sculpture and canvas works produced;

Michael McKenzie
American Image Art
May 9, 2019
Page 3

- You have failed to register copyrights and trademarks in the Artist's name for all
  works produced on behalf of the Artist, as was required; and
- Your failure to comply with applicable state laws regarding certificates of
  authenticity and consumer protection.

Your material breaches have caused harm to the Artist and the Estate, and have damaged the
Artist's reputation and the marketplace for his works.

Accordingly, the Estate demands that You cease and desist immediately from any further
production of HOPE-related works or other works in the Artist's name, including any works in
progress.

The Estate is willing to work with You towards an orderly wind-down of Your operations
with respect to the production of any works in Indiana's name, provided that you cooperate in
return. To ensure a smooth wind-down, please promptly confirm the following in writing:

(1) You have ceased any further production of HOPE-related works or other works in the
Artist's name, including any works in progress, and will not continue any such
production without written authorization from the Estate.

(2) You will provide me, within seven business days, lists describing: (a) all works in the
Artist's name that You currently have on consignment to any third party, along with the
name of the consignee and any pricing information; (b) all other completed works in the
Artist's name that are in Your possession, custody or control; and (c) all incomplete
works of the Artist that You are producing. The lists should identify the location of each
work.

(3) You will immediately notify in writing all fabricators, foundries, and other contractors
with which You have contracts to produce the Artist's works—including but not limited
to KC Fabrications and Polich Tallix—that: (a) You no longer are authorized to produce
works in the Artist's name; (b) they should immediately cease work on any works in the
Artist's name; (c) they should hold, and not deliver, all completed and incomplete works
of the Artist, until receiving further joint instructions from You and me; and (d) they
should promptly provide me a list of all completed and unfinished works of the Artist in
their possession, along with the dates they were completed if applicable, and a
description of remaining work needed to complete the unfinished works. You will copy
me on these written notifications.

(4) You will immediately notify all museums, galleries, dealers, and others with which
You have contracts to produce or consign the Artist's works—including but not limited
to Rosenbaum Fine Art and Gallery Art—that: (a) You no longer are authorized to
produce any works in the Artist's name; (b) they should refrain from selling any further
works of the Artist on consignment from You until they receive a joint instruction from
You and me; and (c) they should provide me with a list of all works of the Artist that they

Michael McKenzie
American Image Art
May 9, 2019
Page 4

currently have on consignment from You, along with the asking price.  You will copy me
on these written notifications.

(5) You will immediately identify for me any agreements or other ongoing business
dealings You have with any third parties relating to your rights under the HOPE Wine
Contract and/or HOPE Wine Addendum.

If You cooperate along these lines, we may then proceed with a post-termination
accounting and division of the works, consistent with the HOPE Contract's post-termination
provisions.  We can also discuss any other issues arising from the termination of these
Agreements.

Please further note that the termination of the Agreements does not relieve You of
contractual payment and performance obligations that You would otherwise have, including but
not limited to Your obligation to pay the Estate for sales of works covered by the Agreements,
and Your obligation to provide the Estate with accountings relating to all past sales.

Nothing in this letter waives and rights or remedies of the Estate with respect to these or
other matters, all of which are expressly reserved.

Very truly yours,

James W. Brannan

cc.  Raymond J. Dowd, Esq.

# EXHIBIT G

# James W. Brannan

## Attorney at Law

15 Limerock Street
P.O. Box 1021
Rockland, ME  04841

Tel: (207) 596-0554
Fax: (207) 596-0555
E-mail: jwb@brannanlaw.net

May 30, 2019

## BY EMAIL AND FIRST-CLASS MAIL

Michael McKenzie
American Image Art
171 Goldens Bridge Road
Katonah, NY  10536
*mm2uwords@aol.com*

### Re: Illegal Production of Duplicate Limited Edition HOPE Works

Dear Mr. McKenzie:

I am the court-appointed Personal Representative of the Estate of Robert Indiana (the "Artist"), who died on May 19, 2018.  The Estate has received reliable and corroborated evidence that you have recently produced, and possibly sold, a 36" painted aluminum Red/Blue HOPE sculpture, numbered edition V of VIII, that is a duplicate of an already-existing, uniquely-numbered, limited edition of the Artist's HOPE sculpture.  If this is true, you are using the Artist's works and name in an unauthorized manner, committing fraud, and damaging the Artist's legacy and the market for his works.  As you know, Robert Indiana never authorized you to use his name or artwork to produce duplicates of any uniquely-numbered works in any limited-edition series (a "Duplicate Work").  Producing and consigning any such work is a fraud on the purchaser of the Duplicate Work, as well as the purchasers of the original.

In addition to the duplicate work described above, the Estate has received information suggesting that you have created, and possibly sold, additional Duplicate Works, including a 36" painted aluminum Red/Blue HOPE numbered edition IV of VIII and a 36" painted aluminum Gold/Blue HOPE numbered edition II of VIII.

I demand that you immediately provide me with information relating to the three aforementioned works, as well as any other Duplicate Works you have produced, and take the remedial steps described below.  If you want to avoid litigation, you must immediately:

- Cease production or sale of any Duplicate Works, and confirm to me in writing that you have done so.

- Preserve, and do not transport or destroy, any Duplicate Works in your possession, and confirm to me in writing that you have done so.
- Notify all fabricators, foundries, painters, contractors, transportation services and other third-parties who have possession or custody of Duplicate Works that they are inauthentic and should be returned to you immediately, at your expense. Copy me on all correspondence.
- Notify all consignors who possess Duplicate Works that they are inauthentic and should be returned to you immediately, at your expense. Copy me on all correspondence.
- Notify all consignors who have sold Duplicate Works that they are inauthentic and request the names of the end-purchasers of those works. Offer that you will refund the price paid by the end-purchaser in exchange for return of the Duplicate Work. Copy me on all correspondence.
- Provide me with a list of all Duplicate Works, their current or last-known location, and the current or last-known owner.
- Provide me with any Certificate of Authenticity issued for the Duplicate Works.

In addition, you must agree to take the following steps going forward:

- As you learn the identity and contact information for end-purchasers of Duplicate Works, inform them immediately that the Duplicate Work they purchased is inauthentic and offer to refund the purchase price in exchange for return of the Duplicate Work. Offer to pay all expenses associated with delivery of the Duplicate Work to you. Copy me on all correspondence.
- Allow the Estate and its counsel to inspect any Duplicate Works in your possession.

I note that you are already required to cease production of any works in the Artist's name because your agreements with the Artist have terminated, as set forth in my May 9, 2019 letter.

If you believe my information regarding your production of Duplicate Works is erroneous, or that there is any justification for your actions, provide your explanation to me in writing promptly.

Be advised that failure to comply with these demands will lead to legal action.

The Estate reserves all its rights and remedies with respect to the foregoing.

Very truly yours,

James W. Brannan

cc.     Edward P. Boyle, Esq. (by email only: *epboyle@venable.com*)
        Raymond J. Dowd, Esq. (by email only: *rdowd@dunnington.com*)