UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MORGAN ART FOUNDATION LIMITED,

                    Plaintiff,

        -against-

MICHAEL MCKENZIE d/b/a AMERICAN IMAGE
ART,

                    Defendant.

Case No. 1:18-cv-04438 (JLR)
(BCM)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

The instant case arises from a long-running dispute between Morgan Art Foundation ("MAF") and Michael McKenzie d/b/a American Image Art ("McKenzie") concerning the legal rights to the intellectual property and artistic legacy of the artist Robert Indiana.  More than three years into discovery, MAF moved for terminating sanctions against McKenzie pursuant to Federal Rule of Civil Procedure ("Rule") 37 for McKenzie's repeated, intentional refusal to comply with Court-ordered discovery and his intentional concealment of evidence. Dkt. 465.  Now before the Court are McKenzie's objections to the Report and Recommendation of Magistrate Judge Moses recommending that the Court grant MAF's motion in part; impose terminating sanctions as to McKenzie's remaining counterclaims and MAF's claim for tortious interference with contract; and impose other, nonterminating sanctions.  For the reasons stated herein, the Court adopts Magistrate Judge Moses's Report and Recommendation and GRANTS in part MAF's motion for terminating sanctions and other relief.

## BACKGROUND

The Court incorporates the portion of the Report and Recommendation ("R&R") that describes the background of the case. Dkt. 560 ("R&R") at 3-31. The following summary focuses on the facts necessary to evaluate the issues presented.

### I. Factual Background and Procedural History

#### A. The Parties

In 1999, MAF, an art dealer, acquired the exclusive right to reproduce, fabricate, and market a wide variety of Robert Indiana artworks, including his well-known *LOVE* stacked-word image and sculpture, as the result of a series of written agreements. Dkt. 47 ("FAC") ¶ 8. McKenzie, an art publisher, also claims an exclusive right to create and market certain Robert Indiana artworks, including the *HOPE* stacked-word image and sculpture used in then-Senator Barack Obama's 2008 presidential campaign, which he alleges he acquired by virtue of a 2008 contract. Dkt. 91 ("Third Amended Answer" or "TAA") ¶¶ 233-234, 237.

McKenzie operates his art publishing business, American Image Art ("AIA"), out of a studio in Katonah, New York, where he also maintains his residence. R&R at 14. Until July 2021, McKenzie stored thousands of artworks, purportedly by Indiana, on the first and second floors of his studio and in the basement of his residence. *Id.* McKenzie and his staff used a computer program, the "Art Archive," to catalog and keep track of works that McKenzie produced and sold. *Id.* McKenzie and his staff had access to the Art Archive, which they began using in 2015, via a website login. *Id.* at 15. McKenzie's staff also maintained paper records of the Indiana Artwork. *Id.* Beginning at least in 2007, McKenzie did business with Gregory Allen, an art dealer who sold art for McKenzie, including the Indiana Artwork. *Id.* at 16. The two corresponded frequently by email and text. *Id.*

**B.   The Claims**

MAF filed this lawsuit on May 18, 2018.  Dkt. 1.  MAF alleges that McKenzie took advantage of Indiana in his later years and published a series of derivative artworks, supposedly by Indiana, that infringed MAF's copyright and trademark rights, violated MAF's contracts with Indiana, harmed Indiana's market, and undermined Indiana's carefully restored reputation.  FAC ¶¶ 12-17, 93.  MAF asserts claims against McKenzie for copyright and trademark infringement, tortious interference with contract, violation of the Visual Artists Rights Act (VARA) of 1990, 17 U.S.C. § 101 *et seq.*, unfair competition, and defamation. FAC ¶¶ 114, 120-21, 127-128, 140, 147-148, 151-154, 158; *see also* R&R at 6-12 (summarizing MAF's claims).  McKenzie denies all unlawful conduct and asserts counterclaims against MAF.  *See generally* TAA.  Four counterclaims remain following the Court's resolution of MAF's motion to dismiss several of McKenzie's counterclaims, *see Morgan Art Found. Ltd. v. McKenzie*, No. 18-cv-04438 (AT), 2019 WL 2725625, at *14-17, *20 (S.D.N.Y. July 1, 2019), namely, counterclaims seeking (1) a declaratory judgment that McKenzie had "full authority from Indiana to produce, market, and sell" the Indiana Artworks that he fabricated, TAA ¶ 326, and that the AIA-published Indiana Artworks "are not forgeries," *id.* ¶ 332, and (2) damages for defamation and slander of title, *id.* ¶¶ 339-345, 379-388.  *See* R&R at 13-14.

**C.   Discovery**

Discovery began in 2018.  R&R at 16.  During the discovery period, which closed on November 19, 2021, McKenzie did not produce the Art Archive, paper records related to the Indiana Artwork, or his communications with Allen.  *Id.* at 15-16, 31.

MAF's initial requests for production sought "all documents and communications relating to or concerning McKenzie's business dealings or projects with Robert Indiana" and

3

"documents and communications concerning the Indiana Artworks, including the artworks depicted in MAF's First Amended Complaint and the alleged infringing artworks fabricated by McKenzie." R&R at 16-17 (alterations adopted) (citation omitted). On November 6, 2018, McKenzie moved to stay the claims against him (and thus stay discovery), or to require MAF to post a bond. *Id.* at 17. In support of this motion, McKenzie submitted a declaration in which he (falsely) attested that AIA's records were kept mostly in hard copies and that AIA did not retain hard copies of business records after three years. *Id.* at 18. On November 9, 2018, McKenzie made an initial production of documents, the vast majority of which came from the internet or other publicly available sources, and did not include any records from the Art Archive or emails. *Id.* at 17; *see also* Dkt. 131 (letter from MAF regarding discovery dispute). When counsel met and conferred on November 13, 2018, McKenzie's then-counsel at Dunnington Bartholow & Miller LLP "claimed not to know whether AIA had collected emails from any of its employees, including McKenzie." Dkt. 131 at 2. When MAF made a second request for production, McKenzie refused to produce any further documents or sit for a deposition, invoking his pending stay request. R&R at 18.

MAF moved to compel on January 17, 2019. R&R at 19. At a discovery conference on January 29, 2019, McKenzie's counsel withdrew the blanket refusal to proceed with discovery. *Id.* Magistrate Judge Moses did not impose sanctions, but warned McKenzie that his conduct so far "could be ground for shifting the fees," and that this was his "one free bite" and he would "not get another one." *Id.* (citation omitted). Magistrate Judge Moses granted MAF's motion in part and directed McKenzie to produce, among other things, communications related to the artworks referenced in the parties' pleadings; to search for and produce documents and electronically stored information ("ESI") in his personal files; to make a reasonable search for documents and ESI in the physical custody of other workers

who created, sent, or received relevant documents; and to produce documents no later than February 28, 2019. *Id.*

Despite this, McKenzie did not produce any documents until April 18, 2019, when he turned over 516 pages of documents, none of which included the Art Archive or any communications from Allen. R&R at 20. McKenzie's counsel represented that twelve AIA contractors had been asked to search for responsive documents, that some had produced documents, and that McKenzie was responding to the requests on a rolling basis. *Id.*

On July 1, 2019, the Court denied McKenzie's motion for a stay and/or an order requiring MAF to post a bond. Dkt. 175. Dunnington then moved to withdraw as counsel for McKenzie due to "irreconcilable differences as to case strategy." R&R at 20 (alteration adopted) (citation omitted). The Court granted Dunnington's motion to withdraw, and on August 15, 2019, John B. Simoni, of Goetz Fitzpatrick LLP, appeared on behalf of McKenzie. *Id.* On September 27, 2019, Simoni represented that McKenzie had exercised reasonable diligence to obtain responsive ESI and had no further information or records to provide. *Id.* at 20-21.

On May 15, 2020, MAF again moved to compel, explaining that Dunnington's promises of rolling production and Simoni's subsequent representation that McKenzie had no further information to provide gave MAF reason to believe that McKenzie had not searched for or produced all responsive documents in his possession or control. R&R at 21. At a May 18, 2020 discovery conference, Simoni represented that his office was having difficulty responding to MAF's requests, in part because he had inherited the case from Dunnington and was not involved "in terms of exactly what previously took place," and that some of the information he was getting from McKenzie "seem[ed] to be a little different from the information" relayed by Dunnington in April 2019. *Id.* (citation omitted). Magistrate Judge

Moses ordered McKenzie to provide a more detailed report about his document search and compliance efforts, including which AIA email accounts were searched, what sources of ESI were not searched, what search terms were used, who conducted the searches, and what hard copy searches were used. *Id.* at 21-22. On May 16, 2020, Simoni sent MAF's counsel a letter revealing, among other things, that several AIA email accounts had never been searched; that AIA employees had searched several email accounts, computers, and hard copy documents without supervision; and that search terms were "not known and [could not] be verified" for several categories of ESI. *Id.* at 22. However, Simoni represented that "AIA and McKenzie ha[d] met their obligations concerning document discovery." *Id.* (citation omitted).

On June 8, 2020, Simoni moved to withdraw as counsel, citing irreconcilable differences. R&R at 22. The Court granted the withdrawal motion on June 19, 2020, and ordered new counsel to appear no later than July 20, 2020. *Id.*; *see* Dkt. 311. John E. Markham II and Bridget A. Zerner of Markham Read Zerner LLP appeared for McKenzie on July 16, 2020. R&R at 22-23.

The parties engaged in complex, multiparty negotiations from mid-2020 to mid-2021. R&R at 23. One settlement proposal entailed an "evaluation" of the Indiana Artwork in McKenzie's possession, and the parties agreed to a viewing at McKenzie's studio on May 25, 2021. *Id.* As part of the settlement negotiations, McKenzie provided a summary inventory of the Indiana Artworks in his possession. *Id.* At the viewing, MAF's personnel were shown the first and second floors of McKenzie's studio and were told that all the Indiana Artworks in McKenzie's possession were located there, despite the fact that Indiana Artworks were also stored in the basement of McKenzie's residence. *Id.* at 24 & n.12. During the course of the viewing, MAF discovered that in addition to having roughly 1,000 artworks purportedly by Indiana, McKenzie possessed numerous highly relevant and responsive documents that had

not been produced in discovery, including inventory lists, emails, accounting documents, and invoices of sales.  *Id.*

On June 25, 2021, MAF moved to compel the production of those responsive documents, as well as others McKenzie had failed to produce, and to appoint a Special Master to oversee the process at McKenzie's expense.  R&R at 25.  On June 29, 2021, Magistrate Judge Moses ordered the parties to arrange a second inspection of McKenzie's studio, and to submit a stipulation and proposed order to govern the inspection.  *Id.*; *see* Dkt. 395.  Pursuant to the stipulation, which Judge Moses entered on July 21, 2021, the inspection was to occur no later than August 13, 2021, and MAF would be permitted to inspect both floors of the studio and storage space at McKenzie's property and could copy, photograph, and/or video record any documents (defined "as broadly as permitted" and to include artworks, books, emails, and any other information MAF believed was responsive to the document requests it had served or was otherwise relevant to the action) found at the site.  R&R at 25.

Zerner, McKenzie's then-counsel, informed McKenzie of the June 29, 2021 Order on July 1, 2021.  R&R at 25.  Three days later, on July 4, 2021, McKenzie began moving Indiana Artwork off his property to a storage unit in Middletown, New York.  R&R at 25-27. McKenzie and three staff members, Annette Vessecchia, Timothy Ginexi, and Osvaldo Gonzalez, moved the artwork over the course of two weeks.  *Id.* at 26.  McKenzie told his staff he was moving the artwork because he was concerned that conditions in the studio and basement might damage it.  *Id.* at 27.  McKenzie did not hire professional art movers.  *Id.* Instead, he, Vessecchia, Ginexi, and Gonzalez used cars, a van, and a box truck to move the artwork; stacked the artwork unprotected in the back of vehicles when transporting them; and temporarily placed many of the artworks on outdoor racks.  *Id.* at 26.  In sum, McKenzie and his staff moved approximately 2,500 Indiana Artworks — most of McKenzie's inventory —

to the Middletown storage facility. *Id.* at 27. Thus, when MAF conducted the Court-ordered inspection on August 5, 2021, it was not able to view most of the Indiana Artworks, and did not know that McKenzie had relocated them. *Id.* However, MAF was able to locate almost 6,000 pages of relevant documents that McKenzie had failed to produce and had represented to the Court and to MAF were not in his possession. *Id.*

MAF did not learn about McKenzie's efforts to relocate the Indiana Artworks until three weeks later when Gonzalez, who had by then severed his relationship with McKenzie, reported the events to counsel for both parties. R&R at 27-28; *see also id.* at 24 n.11. Gonzalez also produced photographs of the artwork relocation, Dkt. 467-45, and a declaration in which he stated that he had "observed McKenzie forging Robert Indiana artworks . . . after Indiana's death" using "stencils [that] were designed by Indiana during his lifetime," Dkt. 467-46 ¶ 10, and described the steps that McKenzie took to remove and conceal Indiana Artworks prior to the August 5, 2021 inspection, *id.* ¶¶ 13-14.

On August 30, 2021, MAF advised the Court it would seek sanctions against McKenzie. R&R at 28; Dkt. 417. MAF conducted new depositions of McKenzie's staff and took a renewed deposition of McKenzie. R&R at 28. McKenzie's staff confirmed that he continued to use Indiana's stencils to fabricate works after his death and had moved truckloads of Indiana Artworks off his premises after the Court issued its June 29, 2021 order and before the inspection took place on August 5, 2021. *Id.* at 28-29. McKenzie refused to answer questions about potential sales of Indiana Artworks and stated that he would not turn over records of the Indiana Artworks that he had been creating during the pendency of the instant litigation. *Id.* at 30-31. He did, however, testify that he was expressly informed of the second inspection by his attorneys, understood the scope, and did not tell his own lawyers that he had moved the Indiana Artworks to the storage facility. *Id.* at 29.

Fact discovery closed on November 19, 2021.  R&R at 31.  MAF moved for terminating sanctions on December 10, 2021.  Dkt. 465.  Following briefing by the parties, *see* Dkts. 466, 478, 482, Magistrate Judge Moses heard oral argument on the motion for sanctions on March 1, 2022, Dkt. 488; Dkt. 490 (Tr.").  On March 18, 2022, McKenzie produced what he terms a "raft of evidence" to MAF, including emails between McKenzie and Allen, reports from the Art Archive, and documents produced from an arbitration between McKenzie and Indiana's estate.  R&R at 34-35.

McKenzie's third counsel, Markham Read Zerner LLP, moved to withdraw on August 6, 2024, in light of the fact that the firm was winding down its practice.  R&R at 37; *see* Dkt. 546, 552.  The Court granted the motion, and permitted McKenzie until November 29, 2024, to retain new counsel.  Dkt. 556.  Nicole Brenecki, of Jodré Brenecki, LLP, filed a notice of appearance on December 10, 2024.  Dkt. 558.[1]

On January 17, 2025, Magistrate Judge Moses issued the instant R&R, in which she recommended granting MAF's motion in part.  *See generally* R&R.  McKenzie timely filed objections to the R&R, Dkt. 566 ("Obj."),[2] and those objections are fully briefed, *see* Dkt. 570 ("Resp.").

## II.    The R&R

Magistrate Judge Moses recommended that the motion for discovery sanctions be granted in part.  R&R at 2-3.  Magistrate Judge Moses first addressed whether to impose case dispositive, terminating sanctions.  She applied the *Agiwal* factors, which courts in this Circuit

---

[1] McKenzie correctly points out that the R&R overlooked this notice of appearance and mistakenly stated that McKenzie had not "retained new counsel nor filed a notice of pro se appearance" as of the date of the R&R.  Dkt. 566 ("Obj.") at 7-8; *see* R&R at 37.

[2] McKenzie did not number the pages of his submission.  *See generally* Obj.  For ease of reference, the Court will use the ECF-stamped page numbers.

use in determining whether discovery misconduct merits dismissal. *Id.* at 41. In *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298 (2d Cir. 2009), the Second Circuit explained that useful factors include "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Id.* at 302 (omission in original) (citation omitted). Magistrate Judge Moses determined that McKenzie's conduct merited dismissal, since the record indicated that McKenzie was willfully noncompliant with the Court's discovery orders, he had been noncompliant for a period of more than three years, lesser sanctions would be unproductive, and McKenzie had been warned about the consequences of noncompliance. *Id.* at 40-43. She recommended striking McKenzie's remaining counterclaims and granting MAF default judgment on its claim for tortious interference with contract. *Id.* at 43-45.

Next, Magistrate Judge Moses considered whether to impose dispositive sanctions with respect to MAF's claims for copyright infringement, trademark infringement, violations of the VARA, unfair competition, and defamation. R&R at 46. She reasoned that entry of a default judgment as to these claims would overpenalize McKenzie and thus recommended nondispositive sanctions, namely, (1) precluding McKenzie from making "any affirmative use" of documents produced after oral argument on the sanctions motion, "introducing, testifying about, or otherwise affirmatively relying on the contents of the documents located in his studio and collected by MAF in the summer of 2021," or calling Allen as a witness; (2) permitting MAF to present evidence to the jury concerning McKenzie's failure to timely disclose or produce the Art Archive, communications with Allen, the documents ultimately located in and collected from his studio, and McKenzie's removal of the Indiana Artwork from his property, as well as permitting the jury to consider that evidence in evaluating

credibility and in factfinding; and (3) imposing monetary sanctions for the fees and expenses MAF reasonably expended in obtaining discovery.  *Id.* at 46-50.

## LEGAL STANDARDS

### I.    Review of a Report and Recommendation

With respect to dispositive motions, such as a motion for terminating sanctions, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(3).  A district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 180 (S.D.N.Y. 2014) (explaining that the court can adopt a recommended dispositive sanction only after *de novo* review).  "To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error."  *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order).  "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a 'meaningless dress rehearsal.' . . . 'The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge.'"  *Hobbs v. Knight-Swift Transp. Holdings, Inc.*, No. 21-cv-01421 (JLR), 2025 WL 1577271, at *5 (S.D.N.Y. June 4, 2025) (omission in original) (quoting *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018)).  "In addition, new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not

be deemed objections at all." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (internal quotation marks and citation omitted).

By contrast, a magistrate judge's ruling on a nondispositive matter, including sanctions for discovery violations other than terminating sanctions, are "reviewable by the district court under the 'clearly erroneous or contrary to law' standard." *Joint Stock Co. "Channel One Russ. Worldwide" Inc. v. Infomir LLC*, No. 16-cv-01318 (GBD) (BCM), 2020 WL 1480465, at *3 (S.D.N.Y. Mar. 26, 2020) (citation omitted); *see* Fed. R. Civ. P. 72(a); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (holding that "[m]onetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate [judge], reviewable by the district court under the 'clearly erroneous or contrary to law' standard"); *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 16 n.1 (S.D.N.Y.) (explaining that "the Second Circuit has established that a magistrate judge may decide a motion for sanctions for discovery violations under the Federal Rules of Civil Procedure by memorandum and order, rather than by report and recommendation, at least insofar as the magistrate judge's order does not impose terminating sanctions"), *report and recommendation adopted*, 271 F.R.D. 55 (S.D.N.Y. 2010); *accord Humphreys v. N.Y.C. Health & Hosps. Corp.*, No. 16-cv-09707 (VSB), 2023 WL 155446, at *2-3 (S.D.N.Y. Jan. 11, 2023).

## II.    Rule 37 Sanctions

Rule 37 provides that if a party "fails to obey an order to provide or permit discovery," "the court where the action is pending may issue further just orders," including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," "rendering a default judgment against the disobedient party," Fed. R. Civ. P. 37(b)(2)(A), and "order[ing] payment of the reasonable

expenses, including attorney's fees, caused by the failure," *id.* 37(b)(2)(C). In addition, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." *Id.* 37(c)(1). A court may also "order payment of the reasonable expenses, including attorney's fees, caused by the failure," "inform the jury of the party's failure," and "impose other appropriate sanctions," including those listed in Rule 37(b)(2)(A)(i) to (vi). *Id.*

"Discovery sanctions under [Rule] 37 are deterrents (specific and general) meant to punish a recalcitrant or evasive party." *In re Gravel*, 6 F.4th 503, 515 (2d Cir. 2021). "In imposing Rule 37 sanctions, . . . courts properly consider various factors, including '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance.'" *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017) (alteration adopted) (quoting *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)); *accord Agiwal*, 555 F.3d at 302 (2d Cir. 2009) (terminating sanctions); *J.C. v. Zimmerman*, No. 22-cv-00323 (KPF), 2023 WL 6308493, at *7 (S.D.N.Y. Sept. 28, 2023), *aff'd*, --- F.4th ---, 2025 WL 2325898 (2d Cir. Aug. 13, 2025). "[T]hese factors are not exclusive and they need not each be resolved against the sanctioned party." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 354 (S.D.N.Y. 2023) (alteration in original) (quoting *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 120 (S.D.N.Y. 2018)). Although a court has "wide discretion" in imposing discovery sanctions under Rule 37, *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007), that discretion is cabined by two basic limitations: first, "the sanctions must be 'just,'" and second, the sanctions "must relate to

the particular claim to which the discovery order was addressed," *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991).

## DISCUSSION

While McKenzie asks the Court to reject the R&R "in its entirety," Obj. at 5, he does not raise specific objections to the imposition of the nonterminating sanctions. The Court has reviewed Magistrate Judge Moses's analysis of the appropriateness of nonterminating sanctions under the "clearly erroneous or contrary to law" standard and adopts her findings and recommendations.

As to the terminating sanctions, McKenzie does not specifically object to the R&R's analysis of most of the *Agiwal* factors. Instead, McKenzie objects to the R&R's conclusion that his discovery conduct constituted willful misconduct justifying terminating sanctions and its purported failure to consider McKenzie's correction of discovery deficiencies. *See* Obj. at 6-15. He also argues that his failure to produce the Art Archive was substantially justified. *Id.* at 10-11. Though these objections largely repeat the arguments made in McKenzie's opposition to the motion for sanctions, *see generally* Dkt. 478, in an abundance of caution, the Court has reviewed his objections *de novo*. For the reasons that follow, the Court overrules each of McKenzie's objections.

## I.    Willfulness of McKenzie's Conduct

McKenzie principally objects to the imposition of terminating sanctions on the ground that his noncompliance was not willful. *See* Obj. at 8-11, 14-15. The Court does not agree.

Magistrate Judge Moses correctly concluded that McKenzie's noncompliance was willful. "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *Lewis v. Marlow*, No. 17-cv-08101 (KMK),

2021 WL 2269553, at *6 (S.D.N.Y. June 3, 2021) (quoting *Thompson v. Jam. Hosp. Med. Ctr.*, No. 13-cv-01896 (RWS), 2015 WL 7430806, at *3 (S.D.N.Y. Nov. 20, 2015)). "Willful non-compliance is routinely found, for instance, where a party has repeatedly failed to produce documents in violation of the district court's orders." *Id.* (quoting *Farmer v. Hyde Your Eyes Optical, Inc.*, No. 13-cv-06653 (GBD) (JLC), 2015 WL 2250592, at *7 (S.D.N.Y. May 13, 2015)). Here, the Court's January 29, 2019 Order directed McKenzie to produce, among other things, "communications relating to or concerning . . . the artworks referenced in the parties' pleadings." Dkt. 137 at 3. As the R&R explained, this Order required McKenzie to produce "the Art Archive, his communications with Allen, and other records concerning the Indiana Artwork in his possession," which he failed to do before the close of discovery. R&R at 42 & n.21. He also misled the Court and MAF about his compliance with the Court's discovery orders. *See* R&R at 20-22, 42-43. Finally, even if McKenzie somehow did not understand the Court's earlier Order, McKenzie also willfully (and flagrantly) failed to comply with the Court's discovery orders by removing the Indiana Artwork from his property after the Court's June 29, 2021 Order. That Order directed the parties to arrange an inspection of McKenzie's studio by MAF's counsel. Dkt. 395 at 1. McKenzie's counsel informed him of that inspection on July 1, 2021, R&R at 29, and McKenzie demonstrated his understanding of the order by telling Ginexi that MAF "had a court order to come in and, you know, go through his art," *id.* (citation omitted).[3] McKenzie's protestation that he moved the artwork to

---

[3] While McKenzie now asserts that he did not violate the July 2021 order because the stipulation was still being negotiated at the time he started moving the Indiana Artwork off his property, Obj. at 14, this is a red herring. A review of the record reflects that the July 2021 Order clearly directed the parties to schedule an inspection of the property, Dkt. 395 at 1, and that the parties' subsequent negotiations over the stipulation concerned issues such as who would be present for the inspection, not whether it would happen at all, *see* Dkts. 403, 403-1, 403-2, 403-3.

permit easier inspection at the storage facility, *id.* at 27; *see also* Obj. at 15, is plainly contradicted by the fact that he never told MAF or his own counsel that he had moved the artwork before the inspection, and did not permit MAF to inspect the works in the storage facility until Gonzalez revealed their relocation weeks after the Court-ordered inspection, *see* R&R at 29. Moreover, by the time that McKenzie removed thousands of Indiana Artworks from his studio, he had already disobeyed the Court's discovery orders numerous times. Thus, the R&R properly found that this factor weighed in favor of terminating sanctions.

McKenzie objects to the R&R's conclusion that he willfully failed to produce the Art Archive, and argues that his previous attorneys are to blame. Obj. at 8-10. As an initial matter, and as the R&R properly noted, "[a] litigant chooses counsel at his peril." R&R at 32 (alteration in original) (quoting *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979)). "[H]ere, as in countless other contexts, counsel's disregard of his professional responsibilities can lead to extinction of his client's claim." *Am. Cash Card Corp. v. AT&T Corp.*, 210 F.3d 354, 2000 WL 357670, at *5 (2d Cir. 2000) (summary order) (quoting *Cine Forty-Second St. Theatre Corp.*, 602 F.2d at 1068). Thus, even if McKenzie's failure to produce the Art Archive and other documents can be attributed to the failings of his past counsel, he is still bound by his counsel's acts and can be sanctioned for them. *See Laboy v. Quality Auto Servs., Inc.*, No. 21-cv-02501 (NRM) (RML), 2024 WL 3665771, at *3 (E.D.N.Y. Aug. 6, 2024) (rejecting objection that party should not be liable for his former attorney's conduct because he provided "all the records possible" to his counsel, explaining that "in 'our system of representative litigation, . . . each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney'" and adopting report and recommendation recommending default judgment "(quoting *Link v. Wabash R.R. Co.*, 370 U.S. 26, 633-34 (1962))); *Icon Int'l,*

*Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 288-89 (S.D.N.Y. 2024) (explaining that the relative role of the attorney as compared to the client is relevant to fashioning appropriate sanctions, not whether the *Agiwal* factors are met).

McKenzie next objects to the R&R's conclusion that he willfully disobeyed the Court's discovery orders by relocating the Indiana Artwork before the August 5, 2021 inspection. *See* Obj. at 12-15. Specifically, he argues that the R&R erred in relying on Gonzalez's incredible testimony and selective quotations from the depositions of McKenzie's other employees, and that the record demonstrates that he moved the Indiana Artwork to make MAF's inspection easier. *Id.* Both arguments are unpersuasive. As to the first, the R&R acknowledged that "Gonzalez undoubtedly had mixed motives for divulging the facts set forth in his declaration," but emphasized that the salient facts in Gonzalez's declaration were confirmed by the deposition testimony of McKenzie's employees, Ginexi and Vessecchia. R&R at 28-29. And while McKenzie argues that their deposition testimony was "taken out of context," Obj. at 13, he never points the Court to any "context" supporting his version of events.[4] Having reviewed Ginexi and Vessecchia's deposition testimony, the Court is satisfied that the R&R properly relied on that testimony to find willfulness. Second, Magistrate Judge Moses properly rejected McKenzie's suggestion that he had an innocent explanation for his removal of the Indiana Artwork. McKenzie's initial explanation, that he

---

[4] McKenzie also asserts, without citation, that the R&R should not have relied on the evidence of these employees because they had not "been cross-examined at trial to clarify their statements nor to determine their own credibility." Obj. at 13. However, the Second Circuit has held that a district court may impose case-terminating sanctions "premised on a party's fraud on the court or discovery misconduct under Rule 37" without a jury trial, and that "a motion for sanctions does not automatically require an evidentiary hearing at all." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 138 (2d Cir. 2023). As such, the R&R did not err by resolving the motion for terminating sanctions without either an evidentiary hearing or a jury trial.

moved the Indiana Art because he was concerned about conditions in the studio and the basement, R&R at 27, is called into question by the carelessness with which he and his staff relocated the art. In addition, his later assertion that he moved the art so that it could be more easily viewed in the storage facility is belied by the fact that he never informed MAF or his counsel that it had been moved so that they could view it in this purportedly more convenient location, and did not offer to let MAF inspect the works in the storage facility until after Gonzalez informed MAF that the artworks had been removed, weeks after the Court-ordered inspection. *See* R&R at 29. The Court's own review of the record reflects that, after storing artwork on his property for years, McKenzie began a haphazard effort to relocate the Indiana Artwork to an off-site storage facility immediately after the Court issued its order directing a second inspection of the Artwork, without notifying his counsel or MAF. *See supra* p. 7. Despite his purported interest in better conditions at the storage facility, McKenzie left artwork outside, stacked artworks on top of each other, and did not hire professional art movers. *Id.* These actions support the R&R's conclusion that McKenzie intended to conceal the artworks and willfully disobeyed the Court's orders in doing so.

As such, Magistrate Judge Moses properly found that McKenzie's discovery misconduct was egregious and warranted terminating sanctions.[5]

---

[5] McKenzie cites the wrong rule in arguing that the R&R erred by imposing sanctions without finding that "the party to be sanctioned acted with an 'intent to deprive,'" Obj. at 15 (quoting *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 60 (S.D.N.Y. 2020)). That requirement applies to sanctions for spoliation of ESI, not sanctions for discovery misconduct in general. *See* Fed. R. Civ. P. 37(e)(2) (court may impose sanctions including adverse inferences or dismissal "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation" when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it"); *Charlestown Cap.*, 337 F.R.D. at 59-60 (discussing Rule 37(e)(2)'s requirements for "sanctions for failure to preserve ESI"). While McKenzie engaged in a wide range of discovery misconduct, there is no suggestion that

**II.    Correction of Discovery Deficiencies**

Next, McKenzie argues that the R&R erred in imposing terminating sanctions because Magistrate Judge Moses did not review the evidence submitted by McKenzie on March 18, 2022, after the sanctions motion was filed and argued.  Obj. at 11-12; *see* R&R at 47. McKenzie argues that this production corrected prior shortcomings and showed future misconduct was unlikely, which he contends are among "the most salient requirements for imposing termination sanctions."  Obj. at 12.  This objection is unpersuasive for several reasons.

First, McKenzie cites no case indicating that a party's production of responsive documents after three years of willful noncompliance necessarily precludes terminating sanctions, nor that Magistrate Judge Moses needed to review the latest production before imposing sanctions.  The only authority that McKenzie cites, *Munn v. Memorial Sloan-Kettering Cancer Center*, 191 F. Supp. 2d 440 (S.D.N.Y. 2002), does not support his argument, and instead treats the factors of "whether and when the misconduct was corrected" and "whether further misconduct is likely to continue in the future" as among the factors to consider in imposing discovery sanctions.  *Id.* at 461; *see id.* at 461-62.  Moreover, that decision predates the Second Circuit's decision in *Agiwal*, which sets forth the factors that courts in this Circuit consider in imposing terminating sanctions and which do not include either of the factors that McKenzie highlights.  *See* 555 F.3d at 302.  Thus, Magistrate Judge

_____

he failed to preserve ESI and, as such, Magistrate Judge Moses had no need to address Rule 37(e)(2)'s intent-to-deprive requirement.

Moses did not err as a matter of law by imposing terminating sanctions before reviewing McKenzie's belated document production.[6]

Second, the fact that McKenzie finally produced some responsive documents more than three years after the Court's January 2019 discovery order does not rescue him from terminating sanctions. As Magistrate Judge Moses explained, "[c]ourts have repeatedly found that noncompliance for a period as short as three or four months 'warrants the harshest of sanctions, including dismissal or default.'" R&R at 42 n.21 (quoting *Icon Int'l*, 347 F.R.D. at 289). Here, McKenzie's delays in producing responsive documents prejudiced MAF by forcing it to expend a tremendous amount of time and effort both in trying to obtain McKenzie's compliance with discovery orders and in litigating this case. *See* R&R at 35. Moreover, McKenzie's production does not resolve the Court's continued concerns about the likelihood of future discovery misconduct. Not only did McKenzie flout the Court's discovery orders for years, but he has also continued to exhibit willful disregard for his discovery obligations: even after MAF announced its intent to move for sanctions, McKenzie stated in his deposition that he would not produce records of Indiana Artworks created during the litigation. *See id.* at 42.

Thus, even if McKenzie has now corrected some previous deficiencies in production, terminating sanctions are still appropriate given the length of his noncompliance, his willfulness, the likelihood that lesser sanctions would be ineffective, and the fact that McKenzie had been warned previously about the consequences of noncompliance.

---

[6] Notably, while McKenzie informed the Court that he had produced a "raft" of evidence and asserts that it is favorable to him, he has never presented that evidence to the Court for its review. R&R at 47.

**III.    Substantial Justification**

Similarly, the Court is not convinced that McKenzie's failure to provide complete production of the Art Archive was somehow "substantially justified," as he briefly argues, *see* Obj. at 11.  First, this argument was not raised before Magistrate Judge Moses, and McKenzie has thus waived it.  *See Yunus v. Robinson*, No. 17-cv-05839 (AJN), 2019 WL 168544, at *7 (S.D.N.Y. Jan. 11, 2019) ("[A]s a general matter, arguments made for the first time in objection are waived.") (collecting cases); *see generally* Obj.  Second, and in any event, McKenzie's discovery delays were not "substantially justified."  "'Substantial justification' may be demonstrated where 'there is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request" or "if there exists a genuine dispute concerning compliance."'"  *Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012) (citation omitted).  "The burden of proving substantial justification rests with the party which has failed to disclose information."  *Kunstler v. City of New York*, 242 F.R.D. 261, 265 (S.D.N.Y. 2007).  Courts have found substantial justification based on "[a] responding party's refusal to produce documents on the basis that they are irrelevant," *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013), based on "a privilege invocation," *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011), or based on "equitable reasons" (such as the death of a critical expert witness), *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-01570 (GBD) (SN), 2023 WL 2366854, at *5 (S.D.N.Y. Mar. 6, 2023).  McKenzie contends that his three-year delay in production of the Art Archive was "substantially justified" by the fact that the Art Archive was either "inaccurate" (in McKenzie's words) or "pretty close" to accurate (in Vessecchia's words), *see* Obj. at 10, or by the fact that MAF would have made additional, assertedly

overbroad discovery demands if McKenzie produced the Art Archive, *id.* at 11.  Neither of McKenzie's proffered explanations amounts to "substantial justification," and McKenzie does not cite any cases suggesting that a party may refuse to produce documents based on self-serving testimony about accuracy concerns or the likelihood of future discovery requests.  As such, McKenzie's conduct was not substantially justified, and Magistrate Judge Moses did not err in imposing terminating sanctions.

## CONCLUSION

In light of the foregoing, McKenzie's objections to the R&R are overruled, and the Court adopts the R&R in full.  MAF is granted the following relief:

1. McKenzie's Second, Third, Fourth, and Eighth Counterclaims are stricken in their entirety.

2. MAF is awarded a default judgment as to liability on its claim for tortious interference with contract against McKenzie (Count V).

3. McKenzie is precluded from making any affirmative use, whether at trial or in motion practice, of the Art Archive, his communications with Gregory Allen, or any of the documents that MAF located in and collected from McKenzie's studio in 2021.

4. McKenzie is precluded from calling Allen as a witness or submitting any affidavit or declaration from him.

5. MAF may introduce evidence to the jury concerning (i) McKenzie's failure to timely disclose or produce the Art Archive; (ii) his failure to timely disclose Allen's role or produce communications with Allen; (iii) his failure to timely produce more than 5,000 documents ultimately located in and collected from his studio; and (iv) his removal of the Indiana Artwork in advance of the August 5, 2021 inspection, without notice to MAF or his own lawyers.  The jury may consider that evidence along with all the other evidence in the case.

6. MAF is entitled to reasonable expenses, including attorneys' fees and out-of-pocket costs, incurred after May 25, 2021, to obtain the documents and information improperly withheld by McKenzie, including expenses incurred in negotiating and carrying out the August 5, 2021 inspection, conducting McKenzie's second deposition, and briefing and arguing its sanctions motion, but not including expenses incurred in connection with the Ginexi, Vessecchia, Allen, and Gonzalez depositions.

MAF shall file an affidavit of its reasonable expenses, including attorney's fees, incurred in making the motion to compel, within **thirty (30) days of the date of this Order**.  McKenzie shall file his response, limited to the amount of fees and expenses to be awarded, **thirty (30) days thereafter**.  The Court will then determine MAF's reasonable expenses and the appropriate sanction amount.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 465.

Dated:  September 3, 2025
        New York, New York

                                        SO ORDERED.

                                        _Jennifer Rochon_
                                        JENNIFER L. ROCHON
                                        United States District Judge