UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORGAN ART FOUNDATION LIMITED,

                PLAINTIFF,

     -AGAINST-

MICHAEL MCKENZIE D/B/A AMERICAN IMAGE ART,

              DEFENDANT.

Case No. 1:18-cv-04438-JLR

HON. JENNIFER ROCHON

## PLAINTIFF'S MEMORANDUM OF LAW REGARDING
## WHETHER THE PUBLIC-DOMAIN DEFENSE APPLIES TO TRADEMARK CLAIMS

Dated: April 7, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Luke Nikas
Paul B. Maslo
Alex Lefkowitz
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000
lukenikas@quinnemanuel.com
paulmaslo@quinnemanuel.com
alexlefkowitz@quinnemanuel.com

*Attorneys for Plaintiff Morgan Art Foundation Limited*

Plaintiff Morgan Art Foundation Limited submits this memorandum of law, as ordered by the Court at the April 1, 2026 Final Pre-Trial Conference, regarding whether the public-domain defense applies to trademark claims.

## INTRODUCTION

This is a straightforward question with a straightforward answer: the public-domain defense does not apply in trademark law. Defendant Michael McKenzie nevertheless intends to inject it into this case—through both testimony and argument—to confuse the issues and defend against Plaintiff's trademark claim. The Court should reject McKenzie's position.

McKenzie's theory is as simple as it is wrong: because LOVE is supposedly in the public domain for copyright purposes (it's not), Plaintiff cannot enforce its trademark rights in LOVE. That is not the law. Trademark and copyright are separate and independent regimes, with different purposes, different standards, and different defenses. Whether a work is in the public domain for copyright purposes is irrelevant to whether it functions as a source identifier and, therefore, has no bearing on whether it is protectable under trademark law. The Court should bar McKenzie from introducing this legally inapplicable defense at trial.

Nor can McKenzie salvage his public-domain theory by relabeling it as "abandonment." McKenzie never pled that defense, never developed it in discovery, and cannot establish it on the merits. Calling the same incorrect argument by a different name does not change the outcome.

The Court should therefore preclude McKenzie from presenting any testimony or argument based on the public-domain defense or abandonment.

1

**ARGUMENT**

I.    THE PUBLIC DOMAIN DEFENSE APPLIES TO COPYRIGHT, BUT NOT TRADEMARK, CLAIMS

Trademark and copyright are distinct and independent regimes of intellectual property protection.  The availability—or unavailability—of protection under one does not control the other.  Each imposes different elements of proof and recognizes its own, non-overlapping defenses. While the public-domain defense may defeat a copyright claim, it does not apply in trademark law.

"The courts have generally held that . . . trademark and copyright are separate and independent forms of protection.  As a general principle, the presence or absence of one does not automatically preclude protection under another[.]"  1 McCarthy on Trademarks and Unfair Competition § 6:5 (5th ed.); *see also Frederick Warne & Co. v. Book Sales Inc.*, 481 F. Supp. 1191, 1197 (S.D.N.Y. 1979) ("Because the nature of the property right conferred by copyright is significantly different from that of trademark, trademark protection should be able to co-exist, and possibly to overlap, with copyright protection[.]").  Indeed, the doctrinal divide between copyright and trademark law is fundamental:

> A trademark is a property right which is acquired by use.  It differs substantially from a copyright, in both its legal genesis and its scope of federal protection.  The legal cornerstone for the protection of copyrights is Article I, section 8, clause 8 of the Constitution.  In the case of a copyright, an individual creates a unique design and, because the Constitutional fathers saw fit to encourage creativity, he can secure a copyright for his creation for a (limited period of time).  After the expiration of the copyright, his creation becomes part of the public domain.  In the case of a trademark, however, the process is reversed.  An individual selects a word or design that might otherwise be in the public domain to represent his business or product. If that word or design comes to symbolize his product or business in the public mind, the individual acquires a property right in the mark.  The acquisition of such a right through use represents the passage of a word or design out of the public domain into the protective ambits of trademark law.

*Frederick Warne & Co.*, 481 F. Supp. at 1196 (citation omitted).

2

Thus, "[t]he fact that a copyrightable character or design has fallen into the public domain should not preclude protection under the trademark laws so long as it is shown to have acquired independent trademark significance, identifying in some way the source or sponsorship of the goods." *Id.*; *see also United Trademark Holdings, Inc. v. Disney Enters., Inc.*, 2022 WL 558247, at *6 (Fed. Cir. Feb. 24, 2022) (same) (quoting *Frederick Warne & Co.*, 481 F. Supp. at 1196); *Team Angry Filmworks, Inc. v. Geer*, 2017 WL 1092677, at *6, *8 (W.D. Pa. Mar. 23, 2017) ("It does not appear that a finding in this court about the *copyright* . . . will affect NFT and AL's pending *trademark* litigation.  Copyright and trademark are distinct areas of the law . . . . If this court finds that the copyrights in question have entered the public domain, this determination would have no effect on the obligations defendants may or may not owe NFT and AL under *trademark* law.") (citing *Frederick Warne Co.*, 481 F. Supp. at 1196) (emphasis in original); *Universal City Studios, Inc. v. Nintendo Co.*, 578 F. Supp. 911, 919, 926 n.6 (S.D.N.Y. 1983), *aff'd*, 746 F.2d 112 (2d Cir. 1984) ("[T]he Court's finding of fact that the King Kong story was in the public domain . . . is relevant to whether a work has been copyrighted, [but] it is not dispositive of the trademark issue" because "even words that are in the public domain may possess trademark significance[.]") (citing *Frederick Warne Co.*, 481 F. Supp. at 1196); 1 McCarthy on Trademarks and Unfair Competition § 6:5 (5th ed.) ("[I]t is erroneous and a non sequitur to state that merely because a picture is out of copyright, it is therefore 'in the public domain' and may be freely copied by anyone for any purpose.  Such a picture may have achieved trademark significance by use as a symbol of origin by another.").

Because the public-domain defense is inapplicable in the trademark context, McKenzie's proposed testimony that LOVE is in the public domain—and any related argument—should be excluded as irrelevant.

3

## II.     DEFENDANT CANNOT RECAST HIS PROPOSED PUBLIC-DOMAIN DEFENSE AS ABANDONMENT

McKenzie's attempt to repackage his public-domain arguments regarding LOVE as an abandonment defense fails.

"Abandonment is an affirmative defense[.]" *Guru Teg Holding, Inc. v. Maharaja Farmers Mkt., Inc.*, 2022 WL 3045038, at *6 (E.D.N.Y. Aug. 2, 2022) (quotation marks omitted).  Here, McKenzie waived his ability to assert an abandonment defense because he did not raise it in his answer (*see* Dkt. No. 61), and "[i]t is well established that a party that has not asserted an affirmative defense in [his] answer to a complaint has waived that defense."  *Lakah v. UBS AG*, 2013 WL 2246955, at *2 (S.D.N.Y. May 22, 2013); *see also United States Sec. & Exch. Comm'n v. Boock*, 750 F. App'x 61, 62 (2d Cir. 2019) (affirmative defense "waived if not raised in the answer to the complaint") (quotation marks omitted).

Courts rarely depart from this well-established rule.  When they do, it's only when the party opposing the affirmative defense can take discovery on the defense, can respond effectively to that defense, and has otherwise suffered no prejudice because of its late assertion.  That is not the case here: up to this point, including throughout discovery, McKenzie failed to raise the defense.  *See, e.g.*, *Leybinsky v. Millich*, 2004 WL 2202577, at *2 (W.D.N.Y. Sept. 29, 2004) ("The defendants did not raise the issue of plaintiff's failure to exhaust until after discovery had concluded and the case was ready for trial.  Under the circumstances here, the Court finds that the defendants have waived any defense of failure to exhaust administrative remedies."); *Winmar Co. v. Tchrs. Ins. & Annuity Ass'n of Am.*, 870 F. Supp. 524, 533 (S.D.N.Y. 1994) ("the Court finds that Winmar would be prejudiced if Teachers were permitted to plead a statute of limitations defense at this late stage of the proceedings" because "discovery is now closed").

4

In any event, McKenzie has not produced a shred of evidence that would justify raising this defense at trial or provide a foundation for any testimony that Plaintiff abandoned its trademark rights. "[T]he party asserting an abandonment defense bears the burden of persuasion," *Guru Teg Holding, Inc.*, 2022 WL 3045038, at \*6, and "abandonment must be proven by clear and convincing evidence," *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp. 2d 343, 349 (S.D.N.Y. 2001). "To establish the defense of abandonment, it is necessary to show either the owner's intent to abandon the mark, or a course of conduct on the part of the owner causing the mark to become generic or lose its significance as a mark." *Guru Teg Holding, Inc.*, 2022 WL 3045038, at \*6; *see also Chere Amie, Inc.*, 191 F. Supp. 2d at 349 ("defendants must show non-use and no intent to resume use of the trademark in the nearly foreseeable future by clear and convincing evidence").

Here, McKenzie has provided no evidence whatsoever to support an abandonment defense, much less clear and convincing evidence. In fact, the undisputed evidence shows the exact opposite of abandonment—Plaintiff continued to utilize the mark and filed this action to enforce its rights. *See, e.g.*, *Guru Teg Holding, Inc.*, 2022 WL 3045038, at \*6 (no abandonment where plaintiff continued to use mark); *Chere Amie, Inc.*, 191 F. Supp. 2d at 349 ("[P]laintiffs' recent sales of 'Girl Zone' clothing, and their filing of this action shortly after defendants made their allegedly infringing sales contradict any notion that plaintiffs intended to abandon the 'Girl Zone' mark. Accordingly, this Court finds the abandonment defense to be without merit.").

There is a reason McKenzie never pled abandonment, never pursued it in discovery, and cannot prove it now: his theory has always been the opposite. Specifically, his theory has been that Plaintiff's repeated enforcement of its rights regarding LOVE was improper because it is in the public domain. As demonstrated above, that is irrelevant to the trademark claim and directly

contradicts any abandonment defense.  McKenzie's last-minute realization that "public domain" is no defense to a trademark action is not a legitimate basis for flipping his testimony by 180 degrees and raising an abandonment defense for the first time only two weeks before trial.

### CONCLUSION

For the above reasons, the Court should preclude McKenzie from presenting testimony or argument about either the public-domain or abandonment defense.

Dated: April 7, 2026                    Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

BY:   */s/ Luke Nikas*
          Luke Nikas
          Paul B. Maslo
          Alex Lefkowitz
          295 Fifth Avenue
          New York, NY 10016
          (212) 849-7000
          lukenikas@quinnemanuel.com
          paulmaslo@quinnemanuel.com
          alexlefkowitz@quinnemanuel.com

          *Attorneys for Plaintiff Morgan Art*
          *Foundation Limited*

6