USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:    04/08/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORGAN ART FOUNDATION LIMITED,

Plaintiff,

-against-

MICHAEL MCKENZIE, et al.,

Defendants.

18-CV-4438 (AT) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Defendant Michael McKenzie d/b/a/ American Image Art (McKenzie) repeatedly and willfully failed to comply with his Court-ordered discovery obligations. Plaintiff Morgan Art Foundation Ltd. (MAF) sought sanctions pursuant to Fed. R. Civ. P 37(b)(2)(A) and (C). On September 3, 2025, the district judge granted that motion. *Morgan Art Found. Ltd. v. McKenzie*, 2025 WL 2528301 (S.D.N.Y. Sept. 3, 2025), *adopting* 2025 WL 1344347 (Jan. 17, 2025), *motion to certify appeal denied*, 2026 WL 18584 (S.D.N.Y. Jan. 2, 2026). As a sanction for McKenzie's misconduct, the district judge struck his remaining counterclaims; awarded MAF a default judgment as to liability on its claim for tortious interference with contract; imposed certain evidentiary sanctions; and ordered McKenzie to pay the reasonable fees and expenses, including attorneys' fees and out-of-pocket costs, incurred by MAF after May 25, 2021, to obtain the documents and information improperly withheld by McKenzie, including expenses incurred in briefing and arguing its sanctions motion. *Morgan Art Found.*, 2025 WL 2528301, at *10.

MAF now seeks an award of $700,717.86, representing 756.70 hours of legal work at rates ranging from $1,270 per hour, for the time of a partner at Quinn Emmanuel Urquhart & Sullivan, LLP (Quinn Emmanuel), to $175 per hour, for the time of a litigation support specialist at the same firm, plus expenses. *See* Declaration of Luke Nikas (Nikas Decl.) (Dkt. 581) ¶¶ 4, 12. McKenzie accepts the firm's hourly rates, but challenges the number of hours billed and certain expenses. *See*

Def. Opp. (Dkt. 583) at 2. After carefully reviewing the parties' submissions, I conclude, for the reasons that follow, that MAF reasonably incurred **$533,014.42** in compensable fees and expenses, which McKenzie must pay within 30 days.[1]

## I.    BACKGROUND

MAF, an art dealer, brought this action on May 18, 2018, against McKenzie, an art publisher, alleging that MAF had the exclusive right to reproduce, fabricate, and market a wide variety of artworks by the late American artist Robert Indiana. *See Morgan Art Found.*, 2025 WL 1344347, at *2. MAF claimed, among other things, that McKenzie took advantage of Indiana in his twilight years and published a series of "derivative artworks, supposedly by Robert Indiana," thereby causing Indiana to breach his agreements with MAF and infringing trademarks and copyrights held by MAF. *Id*. (record citation omitted).

During the course of the litigation, defendant McKenzie repeatedly and willfully violated this Court's discovery orders. *See Morgan Art Found*., 2025 WL 1344347, at *7-15. For example: after MAF conducted an agreed-upon viewing of McKenzie's studio on May 25, 2021, it realized that he was in possession of over 1,000 purported Indiana artworks and "numerous highly relevant and responsive documents that were laying around in plain sight," which he had never produced. *Id*. at *11 (internal quotations and record citations omitted). On July 21, 2021, I issued a stipulated order governing MAF's *second* inspection of McKenzie's studio, during which McKenzie was to

---

[1] Because the district judge referred this action to me pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(a) (*see* Dkt. 587), I have the authority to determine the amount of the fee award to be assessed as a discovery sanction. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir. 1990) ("Monetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate, reviewable by the district court under the 'clearly erroneous or contrary to law' standard."); *accord Milton v. Rehman*, 2025 WL 2624533, at *4 (S.D.N.Y. Sept. 11, 2025) (Rochon, J.); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 352 (S.D.N.Y. 2023); *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 59 (S.D.N.Y. 2020).

permit MAF's counsel to "copy, photograph, and/or video-record the Site and any documents found at the Site." Dkt. 408 ¶ 4. The term "documents" was defined broadly, to include, among other things, "books, emails, binders, *artworks*, journals, handwritten notes, and any other information that MAF believes is responsive to the document requests MAF has served in this action or is otherwise relevant to this action." *Id*. (emphasis added). However, once McKenzie was notified of the upcoming inspection, he "and his staff began moving Indiana Artwork off his property." *Morgan Art Found.*, 2025 WL 1344347, at *12. Over the next two weeks, McKenzie surreptitiously moved approximately 2,500 Indiana artworks off his property (without telling MAF or, for that matter, his own lawyers). *Id*. at *12-13, 21. When MAF returned to the studio for the second inspection on August 5, 2021, it located 5,913 pages of relevant documents that McKenzie had previously failed to produce, but "was not able to view most of the Indiana Artworks," because they had been spirited away. *Id*. at *13.

McKenzie's conduct came to light three weeks later, thanks to one of his staff members, who "reached out to counsel for both parties to apprise them of these events." *Morgan Art Found.*, 2025 WL 1344347, at *13. The Court then reopened McKenzie's deposition, and permitted MAF to take four additional depositions of McKenzie employees Annette Vessecchia, Timothy Ginexi, and Osvaldo Gonzalez, and non-party Gregory Allen. *Id*. At McKenzie's second deposition, he admitted to – but adamantly refused to provide any further information regarding – his continued attempts to sell Indiana artworks. *Id*. at *14.

In her Opinion and Order granting MAF's motion for sanctions, the district judge ruled, as relevant here, that:

> MAF is entitled to reasonable expenses, including attorneys' fees and out-of-pocket costs, incurred after May 25, 2021, to obtain the documents and information improperly withheld by McKenzie, including expenses incurred in negotiating and carrying out the August 5, 2021 inspection, conducting McKenzie's second

deposition, and briefing and arguing its sanctions motion, but not including expenses incurred in connection with the Ginexi, Vessecchia, Allen, and Gonzalez depositions.

*Morgan Art Found.*, 2025 WL 2528301, at *10.

On October 3, 2025, in support of its fee application, MAF submitted the Nikas declaration, describing the legal work for which compensation is sought, *see* Nikas Decl. ¶¶ 9-24, and attaching biographies of the Quinn Emmanuel attorneys who worked on this case during the relevant time period, *see id*. Ex. A (Dkt. 581-1), and 116 pages of invoices. *See* Nikas Decl. Ex. B (Dkt. 581-2) (Invoices).[2] MAF seeks compensation for 756.70 hours of legal work billed by three Quinn Emmanuel partners, one counsel, three associates, four law clerks, two paralegals, and three litigation support staff, for a total of $557,164.00 in fees. Nikas Decl. ¶¶ 4, 12. MAF also seeks reimbursement for $143,553.86 in expenses, for a grand total of $700,717.86. *Id*. ¶ 12.

On November 10, 2025, McKenzie submitted an opposition memorandum, which "does not challenge the reasonableness of opposing counsel's hourly rates[.]" Def. Opp. at 2. However, McKenzie argues that the Quinn Emmanuel invoices reflect "overstaffing and unnecessary work," and contain impermissibly "vague entries," "duplicative" entries, "excessive time for routine tasks," administrative work billed by attorneys, and "block billing." *Id*. at 2-6. McKenzie also objects to any reimbursement for the firm's "overhead costs[.]" *Id*. at 6-8.

## II.    ANALYSIS

I must now determine the fees and expenses reasonably incurred for legal work within the scope of the sanctions order. To do so, in this Circuit, "a district court multiplies the relevant attorneys' reasonable hours spent on compensable tasks by a reasonable hourly rate for the services

---

[2] The Invoices are redacted "to remove confidential and privileged information as well as entries pertaining to unrelated issues." Nikas Decl. ¶ 9. Expenses incurred in connection with the Vessecchia, Ginexi, Gonzalez, and Allen depositions were also excised. *Id*.

performed, so as to determine a 'presumptively reasonable fee.'" *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 2021 WL 1549916, at *2 (S.D.N.Y. Apr. 20, 2021) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)); *see also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, 2013 WL 3322249, at *4 (S.D.N.Y. July 2, 2013) ("To determine the amount of attorneys' fees to which a prevailing party in a discovery dispute is entitled, the Court must calculate the 'presumptively reasonable fee,'" which "is calculated by multiplying the reasonable number of hours that the case requires by the reasonable hourly rate.") (citations omitted), *aff'd*, 679 F. App'x 33 (2d Cir. 2017) (summary order).

## A.    Hourly Rate

At the first stage of the analysis, the court must determine "the reasonable hourly rate for each timekeeper for whom fees are sought." *Karsch v. Blink Health Ltd.*, 2019 WL 6998563, at *2 (S.D.N.Y. Dec. 20, 2019). The fee applicant "bears the burden of 'produc[ing] satisfactory evidence' that its requested rates are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *4 (S.D.N.Y. Oct. 28, 2015) (alterations in original) (quoting *Pearson Educ., Inc. v. Vergara*, 2010 WL 3744033, at *6 (S.D.N.Y. Sept. 27, 2010)), *adopted sub nom. In re: Terrorist Attacks*, 2015 WL 9255560 (S.D.N.Y. Dec. 18, 2015). The court may also consider "the complexity of the case, the prevailing rates in similar cases in the district, and the quality of representation." *Pasini v. Godiva Chocolatier, Inc.*, 764 F. App'x 94, 95 (2d Cir. 2019) (summary order) (citing *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012)).

Here, as noted above, McKenzie "does not challenge the reasonableness of opposing counsel's hourly rates," Def. Opp. at 2, which – according to attorney Nikas – were actually paid by MAF and certain of its affiliates. *See* Nikas Decl. ¶ 10. I therefore assume, without further analysis, that those hourly rates were reasonable, and turn to the hours reasonably expended. *See United States v. Keshner*, 794 F.3d 232, 236 (2d Cir. 2015) (noting that "courts have recognized an 'independent obligation' to scrutinize a fee petition" only in "limited circumstances, typically in situations implicating concerns regarding the adversarial process") (collecting cases); *Cerco Bridge Loans 6 LLC v. Schenker*, 768 F. Supp. 3d 559, 590 (S.D.N.Y. 2025) ("Given that Plaintiff essentially concedes the reasonableness of the rates for Defendants' counsel, the Court assumes their rates are reasonable.").

**B.    Number of Hours Expended**

At the second stage of the analysis, the court multiplies each timekeeper's reasonable hourly rate by the reasonable number of hours expended. *Karsch*, 2019 WL 6998563, at *4 (citing *Romeo & Juliette*, 2013 WL 3322249, at *4). "Time that was not spent on compensable tasks must of course be excluded from the calculation." *Charlestown Cap. Advisors*, 2021 WL 1549916, at *5. Hours that are "excessive, redundant, or otherwise unnecessary" may also be excluded from an attorneys' fee award. *Infinity Headwear & Apparel v. Jay Franco & Sons*, 2016 WL 6962541, at *5 (S.D.N.Y. Nov. 28, 2016) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)); *see also Karsch*, 2019 WL 6998563, at *5 (discounting hours billed for tasks that would have been performed regardless of the sanctioned conduct). In such a case, the district court "may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." *McDonald ex rel Pendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (cleaned up); *accord Romeo & Juliette*, 2013 WL 3322249, at *8.

6

Here, plaintiff has limited its request for fees to time expended "in connection [with] the issues identified in the Court's [sanctions] order" for the time period since May 25, 2021. Nikas Decl. ¶ 11. McKenzie does not object to the time period covered by the fee application, but argues that "[n]umerous time entries" contain vague terms such as "'analyze,' 'review,' 'prepare,' 'miscellaneous correspondence,' or 'strategy,'" which appears to overlap with his objection that too much time was billed for "generic 'analysis,' 'review,' or 'preparation,'" leading to excessive billing for routine tasks. Def. Opp. at 3.

The examples that McKenzie cites in this regard are unpersuasive. For example, he notes that on November 15, 2021, then-associate Ryan Rakower recorded 5.90 hours for, among other things, "[p]repar[ing] sanctions brief." Def. Opp. at 4. In this context, the use of the word "prepare" is hardly vague. Likewise, McKenzie highlights partner Nikas's November 19, 2021 entry for 7.20 hours spent "[r]eview[ing] revised brief" and "email[ing] with team re: brief and additional factual research," as not including a "detailed description of work." *Id*. This Court does not find the entry to be insufficiently detailed. Where a lawyer is working on a specific written work product – in this case, a brief – the courts generally do not expect that lawyer to further detail his time, for example, by recording how many minutes or hours he spent on each page or topic. Unsurprisingly, McKenzie cites no caselaw to the contrary.

McKenzie is on firmer ground when he argues that certain invoiced tasks are duplicative of work performed by others or, more generally, that too many lawyers billed time for the same task. *See* Def. Opp at 5. For example, on November 11-16, 2021, five timekeepers billed a total of 34.9 hours for tasks that involved, at least in part, reviewing and revising MAF's motion for sanctions. *See* Invoices at ECF pp. 66-67 (listing 9.4 hours for partner Nikas, 8.0 hours for partner Maaren Shah, 7.0 hours for associate Rakower, 7.0 hours for associate Haley Banks, and 3.5 hours

for law clerk Dustin Fire).[3] Lukas devoted another 7.2 hours to reviewing the "revised brief" on November 19, 2021. *See id.* at ECF p. 68. Some of these entries also reflect "block billing" covering multiple tasks – with some of the task descriptions redacted, presumably because they are not compensable pursuant to Rule 37(b)(2)(C) and the district judge's sanctions order. This makes it difficult for the Court to parse the reasonableness of the hours billed to any one task, or to compensable tasks as a whole. *See Diligent Enter. Mgmt., LLC v. AML Glob. Eclipse, LLC*, 2026 WL 591743, at *7 (S.D.N.Y. Mar. 3, 2026) ("Block billing is not in and of itself improper, but may require reductions if it 'impedes a court's ability to assess whether the time expended on any given task was reasonable,' *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015), or to assess how much time was spent on compensable as opposed to un-compensable tasks."). Consequently, I have exercised my discretion, *see McDonald*, 450 F.3d at 96, to apply a 20% reduction to the total fees requested in the three invoices that contain duplicative billing and block billing: No. 101-0000127611 (dated December 16, 2021), *see* Invoices at ECF pp. 63-73; No. 101-0000130081 (dated February 14, 2022), *see id*. at ECF pp. 87-95; and No. 101-0000131933 (dated March 17, 2022). *See id.* at ECF pp. 96-101.

Additionally, defendant claims that certain Quinn Emmanuel attorneys billed their time at attorney rates for clerical and administrative work that could and should have been performed by non-lawyers at lower hourly rates. *See* Def. Opp. at 5. On review of the billing records, I find that to the extent any such clerical work was performed by attorneys or law clerks, it was in most instances minimal or completed alongside other substantial attorney work. However, on February 24, 2022, law clerk Amanda Adian "[p]repared hard copy binders," "coordinate[d] printing," and

---

[3] This was after Fire and Rakower spent 36.8 hours preparing the moving brief on November 5-10, 2021. *See* Invoices at ECF pp. 65-66.

performed other work that appears to be clerical in nature for a total of at least 4.60 hours, at a rate of $470 per hour. *See* Invoices at ECF pp. 100-01. I have therefore reduced the hours for this single entry by 60%, which brings that entry from a total of $2,162 (4.60 hours at a rate of $470 per hour) to $864.80 (1.84 hours at a rate of $ 470 per hour).[4] The invoice dated March 17, 2022, previously reduced by 20% (to $73,882.40) due to duplicative work and block billing, is thus further reduced to $72,585.20. In total, the three affected invoices are reduced as follows:

| Invoice Date | Invoice Number | Fees Requested | Fees Awarded |
|---|---|---|---|
| December 16, 2021 | 101-0000127611 | $    94,524.00 | $    75,619.20 |
| February 14, 2022 | 101-0000130081 | 87,308.50 | 69,846.80 |
| March 17, 2022 | 101-0000131933 | 92,353.00 | 72,585.20 |

## C.    Costs

The district judge's sanctions order permits plaintiff to recover both its reasonable attorneys' fees and its reasonable out-of-pocket costs, if incurred after May 25, 2021, "to obtain the documents and information improperly withheld by McKenzie." *Morgan Art Found.*, 2025 WL 2528301, at *10. To recover such costs as a discovery sanction, however, they must be "documented and, more importantly, . . . fairly traceable" to the sanctionable conduct. *Carrington v. Graden*, 2020 WL 5758916, at *17 (S.D.N.Y. Sept. 28, 2020); *see also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (party seeking fees and costs "must submit adequate documentation supporting the requested . . . costs"); *Joint Stock Co. "Channel One Russia Worldwide" v. Russian TV Co. Inc.*, 714 F. Supp. 3d 294, 309 (S.D.N.Y. 2024) (awarding fees but denying costs to prevailing plaintiff because it failed to provide "extrinsic proof" of any of the

---

[4] The effect on the Court's overall fee award is of course the same as reducing the law clerk's hourly rate by 60%, which would bring the entry to $864.80 (4.6 hours at a rate of $188 per hour).

9

expenses listed on its counsel's invoices), *adopted sub nom. Joint Stock Co. "Channel One Russia Worldwide" v. Russian TV Co.*, 2024 WL 870813 (S.D.N.Y. Feb. 29, 2024).

Additionally, "recovery is not permitted for those expenditures associated with 'routine office overhead,'" *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, 549 F. Supp. 2d 274, 287 (E.D.N.Y. 2008) (citation omitted), which "must be absorbed within the attorney's hourly rate." *Fink v. City of New York*, 154 F. Supp. 2d 403, 415 (E.D.N.Y. 2001) (quoting *Kuzma v. Internal Revenue Service,* 821 F.2d 930, 933–34 (2d Cir. 1987)); *accord Robinson v. New York City Transit Auth.*, 2024 WL 4150818, at *17 (S.D.N.Y. Aug. 16, 2024), *adopted,* 2024 WL 4150102 (S.D.N.Y. Sept. 11, 2024); *Torcivia v. Suffolk City.*, 437 F. Supp. 3d 239, 257 (E.D.N.Y. 2020); *Molefi v. Oppenheimer Tr.*, 2007 WL 538547, at *8 (E.D.N.Y. Feb. 15, 2007).

Here, MAF seeks reimbursement for expenses totaling $143,553.86. *See* Nikas Decl. ¶ 12. Of that sum, $15,615.00 is described as related to Invoice No. 101-0000137700 (dated July 19, 2022) and incurred in connection with "Correspondence with Court." *Id*. However, Invoice No. 101-0000137700 does not list any expenses or costs. *See* Invoices at ECF pp. 111-16. Nor did MAF provide any other documentation of these expenses. Therefore, MAF cannot recover this $15,615.00 in expenses.

Although the other Quinn Emmanuel invoices list the expenses incurred in the relevant month, no underlying bills or receipts are provided, and – as McKenzie points out, Def. Opp. at 7 – most of the expenses appear to correspond to overhead costs that show little variation month to month. *See, e.g.*, Invoices at ECF pp. 4, 12, 26, 33, 50, 70, and 76 (listing "Hosting per GB," resulting in steady charges of between $11,880 and $12,320 per month, and "Viewpoint user fees" of between $450 and $600 per month). Moreover, *all* of the expenses appear on invoices that also include attorney time that was redacted because it was associated with un-compensable work. *See,*

10

*e.g.*, Invoices at ECF pp. 2-4 (seeking reimbursement for $39 in "[w]ord processing" fees, $11,880 in "Hosting per GB" fees, and $450 in "Viewpoint User Fees" on an invoice where all of the attorney work has been redacted – presumably as outside of the scope of compensable work pursuant the sanctions order – except for six minutes of "internal correspondence" related to the inspection of McKenzie's studio). I therefore conclude that most of the requested costs are not "fairly traceable" to the conduct for which sanctions were awarded. *Carrington*, 2020 WL 5758916, at *11. Rather than go through them line by line, I will exercise my discretion to award MAF 25% of its requested expenses (for the months in which the firm's invoices actually list such expenses), as follows:

| Date of Invoice | Invoice Number | Expenses Sought | Expenses Awarded |
|---|---|---|---|
| June 15, 2021 | 101-0000118860 | $ 12,369.00 | $ 3,092.25 |
| July 17, 2021 | 101-0000120515 | 13,232.96 | 3,308.24 |
| August 20, 2021 | 101-0000122170 | 12,682.87 | 3,170.72 |
| September 21, 2021 | 101-0000123650 | 14,792.70 | 3,698.18 |
| October 19, 2021 | 101-0000124987 | 18,189.20 | 4,547.30 |
| December 16, 2021 | 101-0000127611 | 32,142.09 | 8,035.52 |
| January 13, 2022 | 101-0000128528 | 13,055.13 | 3,263.78 |
| January 13, 2022 | 101-0000128529 | 4,435.90 | 1,108.98 |
| February 14, 2022 | 101-0000130081 | 2,749.80 | 687.45 |
| March 17, 2022 | 101-0000131933 | 1,123.60 | 280.90 |
| April 19, 2022 | 101-0000133523 | 3,165.61 | 791.40 |
| July 19, 2022 | 101-0000137700 | 15,615.00 | 0 |
| **TOTAL:** | | $ 143,553.86 | $ 31,984.72 |

## III.    CONCLUSION

Applying the various reductions discussed above produces the sum of $533,014.42, as shown in the following chart:

| Invoice Number | Fees Sought | Fees Awarded | Expenses Sought | Expenses Awarded | Total Awarded |
|---|---|---|---|---|---|
| 101-0000118860 | $     42.50 | $     42.50 | $ 12,369.00 | $  3,092.25 | $      3,134.75 |
| 101-0000120515 | 37,359.00 | 37,359.00 | 13,232.96 | 3,308.24 | 40,667.24 |
| 101-0000120516 | 20,121.50 | 20,121.50 | 0.00 | 0.00 | 20,121.50 |
| 101-0000122170 | 10,912.50 | 10,912.50 | 12,682.87 | 3,170.72 | 14,083.22 |
| 101-0000123650 | 37,416.00 | 37,416.00 | 14,792.70 | 3,698.18 | 41,114.18 |
| 101-0000123651 | 17,192.00 | 17,192.00 | 0.00 | 0.00 | 17,192.00 |
| 101-0000124987 | 77,055.50 | 77,055.50 | 18,189.20 | 4,547.30 | 81,602.80 |
| 101-0000126003 | 13,332.50 | 13,332.50 | 0.00 | 0.00 | 13,332.50 |
| 101-0000127611 | 94,524.00 | 75,619.20 | 32,142.09 | 8,035.52 | 83,654.72 |
| 101-0000128528 | 13,594.50 | 13,594.50 | 13,055.13 | 3,263.78 | 16,858.28 |
| 101-0000128529 | 26,379.50 | 26,379.50 | 4,435.90 | 1,108.98 | 27,488.48 |
| 101-0000130081 | 87,308.50 | 69,846.80 | 2,749.80 | 687.45 | 70,534.25 |
| 101-0000131933 | 92,353.00 | 72,585.20 | 1,123.60 | 280.90 | 72,866.10 |
| 101-0000133523 | 20,216.00 | 20,216.00 | 3,165.61 | 791.40 | 21,007.40 |
| 101-0000137700 | 9,357.00 | 9,357.00 | 15,615.00 | 0.00 | 9,357.00 |
| **Grand Total** | | | | | **$ 533,014.42** |

Consequently, it is hereby ORDERED that defendant shall pay plaintiff the sum of $533,014.42 within 30 days of the date of this Memorandum and Order.

Dated: New York, New York
        April 8, 2026                                   SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

12