UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MORGAN ART FOUNDATION LIMITED,

Plaintiff,

-against-

MICHAEL MCKENZIE d/b/a AMERICAN
IMAGE ART,

Defendant.

---

Case No. 1:18-cv-04438 (JLR) (BCM)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Morgan Art Foundation Limited ("MAF" or "Plaintiff") moves for a permanent injunction following a jury verdict in its favor on claims for copyright and trademark infringement, and judgment in its favor on liability for tortious interference with contract. *See* Dkt. 632 ("Br."). Defendant Michael McKenzie d/b/a/ American Image Art ("McKenzie" or "Defendant") opposes the motion. *See* Dkt. 633 ("Opp."). For the reasons that follow, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

The Court assumes familiarity with this case's extensive history and recounts only those facts relevant to the present motion.

MAF commenced this action on May 18, 2018, bringing claims concerning the legal rights to the intellectual property and artistic legacy of Robert Indiana ("Indiana"). *See generally* Dkt. 1 ("Compl."). Specifically, it asserted claims against McKenzie for copyright and trademark infringement, tortious interference with contract, violation of the Visual Artists Rights Act ("VARA") of 1990, 17 U.S.C. § 101 *et seq.*, unfair competition, and defamation. Dkt. 47 ("FAC") ¶¶ 114, 120-21, 127-28, 140, 147-48, 151-54, 158. By the time the parties proceeded to

1

trial on April 20, 2026, the claims and issues to be decided had been narrowed.  *See* Dkt. 615. The Court conducted a four-day jury trial on liability and damages for copyright infringement of two works, liability and damages for trademark infringement of one mark, and damages for tortious interference with two contracts.  Dkt. 630 at 37.  As a result of McKenzie's discovery violations, liability on the tortious interference claim had already been resolved in MAF's favor before trial.  *Id.* at 37-38.

At trial, MAF established that, in 1999, Indiana and MAF entered into at least two written agreements: the IP/License Agreement and the Sculpture Agreement.  The former transferred to MAF trademark, copyright, and related rights in certain Indiana works and images, Tr. at 89:1-91:15; PX 1 ("IP/License Agreement"), while the latter conveyed to MAF exclusive rights to produce and sell certain Indiana sculptures, Tr. at 93:21-95:17; PX 3 ("Sculpture Agreement"). Those agreements supplied the basis for MAF's tortious interference with contract claim, for which the jury awarded MAF $89 million in damages.  Dkt. 630 at 94.

MAF's intellectual property claims were narrower.  MAF asserted trademark infringement based on its trademark of LOVE (U.S. Registration No. 4,879,320), *see* Tr. at 185:14-24; PX 61 ("Trademark"), and copyright infringement based on its copyright registrations for USA FUN and The Ninth American Dream, *see* Tr. at 181:6-182:9; PX 59 ("Ninth American Dream Registration"); PX 60 ("USA FUN Registration").  The jury found McKenzie liable for both copyright and trademark infringement.  Dkt. 630 at 91-93.  It awarded MAF $2 million for copyright infringement and $6.2 million for trademark infringement, *id.*, along with $5 million in punitive damages, *id.* at 94.

The record presented to the jury included evidence that McKenzie made works using images covered by the copyrights and trademark registration.  McKenzie admitted to making

works using a panel from The Ninth American Dream, stating, "I am proud of it.  Yes."  Tr. at 446:11-22; *see* PX 201; *see also* PX 200.  He also admitted to printing variants of USA FUN, testifying, "Yes.  I made several versions of it."  Tr. at 447:5-10; *see* PX 239.  With respect to LOVE, McKenzie admitted to creating "versions of the LOVE artwork on metal panels," including "in 2009 or 2010."  Tr. at 443:16-23, 444:16-22.  He further admitted to having used a ghostwriter (*i.e.*, a machine that can replicate signatures) to sign, as Indiana, the LOVE works he had produced.  *Id.* at 449:24-450:9.  Hundreds of said LOVE works in various color combinations were found during an inspection of McKenzie's studio.  *Id.* at 153:14-155:15.

The record further included evidence that McKenzie rejected MAF's contractual rights and claimed authority to make Indiana works notwithstanding them.  McKenzie testified that he did not recognize MAF's contract with Indiana as valid, *id.* at 495:17-496:6, and that he believed MAF "didn't have any rights whatsoever," so "anyone can use LOVE," *id.* at 456:4-9, 497:5.  MAF also presented evidence that McKenzie concealed documents and artworks during discovery — behavior for which this Court imposed sanctions against McKenzie.  *See generally* Dkt. 578.  In accordance with those sanctions, the Court instructed the jury that McKenzie failed to timely produce more than 5,000 documents located in his studio and removed thousands of Indiana artworks from his property before a Court-ordered inspection, without notice to MAF or McKenzie's own lawyers.  Tr. at 607:12-24; *see also* Dkt. 578 at 7-8 (discussing improper conduct); Tr. at 469:16-470:2, 473:8-25, 474:5-14 (recounting McKenzie's efforts to move approximately 2,500 artworks off his property).

Following the jury's verdict, MAF moved for a permanent injunction.  Its proposed relief is broad.  MAF asks the Court to enjoin McKenzie from "making, marketing, and selling any of the works that were the subject of MAF's claims for tortious interference, copyright

infringement, and trademark infringement at issue in this litigation," to require impoundment of works "already made in violation of MAF's rights" that are in McKenzie's possession or control, and to require turnover of the ghostwriter machine.  Br. at 19.  McKenzie opposes the grant of an injunction and, in the alternative, argues that any imposed injunction must be limited to the specific works and conduct adjudicated at trial.  Opp. at 17-19.

**LEGAL STANDARD**

The Copyright Act provides that a court "may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a); *see also* Goldstein on Copyright § 13.2.1.1 (3d ed. 2026) ("Unauthorized dissemination of a work . . . may require injunctive relief to secure the copyright owner's reputation[.]").  It also permits a court, "[a]s part of a final judgment," to "order the destruction or other reasonable disposition of" infringing copies and of articles "by means of which such copies . . . may be reproduced."  17 U.S.C. § 503(b).  The Lanham Act likewise authorizes injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation" of rights in a registered mark.  15 U.S.C. § 1116(a); *see also* 4 McCarthy on Trademarks & Unfair Competition § 30:1 (5th ed. 2026) ("A permanent injunction is the usual and normal remedy once trademark infringement has been found in a final judgment.").  And, as with the Copyright Act, the Lanham Act authorizes delivery and destruction of certain infringing articles bearing a registered mark or a "reproduction, counterfeit, copy, or colorable imitation" of that mark.  15 U.S.C. § 1118.  "An injunction, however, is not mandatory and does not automatically follow a determination that a copyright or trademark has been infringed."  *Beastie Boys v. Monster Energy Co.*, 87 F. Supp. 3d 672, 676-77 (S.D.N.Y. 2015).

Rather, a plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 322 (2d Cir. 2022) (applying *eBay* test for permanent injunction in copyright matter); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 539-40 (S.D.N.Y. 2011) (applying *eBay* test for permanent injunction in trademark matter), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) (summary order). Should the plaintiff meet its burden, the imposed injunction "must, by its very nature, be tailored to the facts of [the] particular dispute." *Joseph Scott Co. v. Scott Swimming Pools, Inc.*, 764 F.2d 62, 63 (2d Cir. 1985); *see Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 750 (2d Cir. 1994) ("[T]he Lanham Act demands that injunctive relief be no broader than necessary to cure the effects of the harm caused." (internal quotation marks and citation omitted)); *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 272 (2d Cir. 2011) ("[I]njunctive relief should be narrowly tailored to fit specific legal violations." (citation omitted)). "An injunction is overbroad when it seeks to restrain [a] defendant[] from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011).

## DISCUSSION

MAF has established entitlement to permanent injunctive relief on the copyright and trademark claims that were tried by the jury. But the injunction must be tailored to those adjudicated intellectual property rights.

5

## I. MAF Is Entitled to Permanent Injunctive Relief on Its Copyright and Trademark Claims

MAF has satisfied the four *eBay* factors as to the trademark and copyrights adjudicated at trial.

### A.        Irreparable Harm

MAF has established irreparable harm.  "Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer."  *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010).  Typically, in copyright and trademark cases, "proof of a likelihood of confusion establishes . . . irreparable harm."  *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004); *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 42 (2d Cir. 1986) ("[I]rreparable harm almost inevitably follows from likelihood of confusion[.]" (quotation marks omitted)); *Salinger*, 607 F.3d at 81 ("In the context of copyright infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion.").  This is such a case.

As for trademark infringement, a jury's finding of liability triggers the Lanham Act's rebuttable presumption of irreparable harm.  15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction[.]").  Here, the jury found that McKenzie infringed MAF's LOVE trademark, Dkt. 630 at 92-93, and McKenzie has not rebutted the presumption of harm.  To the contrary, the trial record supports a finding of irreparable harm.  McKenzie admitted to making and possessing LOVE works, admitted that he intended to make more LOVE works, rejected the premise that MAF has any protectable right in LOVE, and testified that he believed anyone could use LOVE.  Tr. at 443:16-

23, 444:16-22, 456:4-9, 456:23-457:3, 495:17-496:6, 497:5; *see also id.* at 153:14-155:15 (describing boxes of infringing works found in McKenzie's studio).  Those admissions and testimony establish a meaningful risk of future violations and continued market confusion.

Harm of that nature is difficult to quantify.  MAF presented evidence that McKenzie's unauthorized works caused confusion in the marketplace for Indiana's works.  Emeline Salama-Caro testified that collectors, auction houses, and galleries contacted MAF with questions about works appearing in the marketplace that bore Indiana images but had characteristics atypical of known Indiana works.  *Id.* at 393:18-395:9.  The record further reflects that MAF lost customers because of the unauthorized works entering the market, and that the uncertainty surrounding those works threatened MAF's business and reputation.  *Id.* at 134:24-135:9, 375:11-377:8, 418:25-421:24.  "Irreparable harm exists in a trademark case [such as this,] when the party seeking the injunction shows that it will lose control over the reputation of its trademark[,] because loss of control over one's reputation is neither calculable nor precisely compensable."  *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011) (internal quotation marks and citation omitted), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) (summary order); *accord Mintable Pte. Ltd. v. Mintology Inc.*, No. 23-cv-08215 (LJL), 2024 WL 3454825, at *10 (S.D.N.Y. July 18, 2024).

As for copyright infringement, while MAF is not entitled to a presumption of irreparable harm, *see Salinger*, 607 F.3d at 82, it has nevertheless established such harm.  The jury found that McKenzie infringed MAF's copyrights in USA FUN and The Ninth American Dream.  Dkt. 630 at 91.  Indeed, McKenzie himself admitted to making works using those copyrighted images.  Tr. at 446:11-22, 447:5-7; *see also* PX 201; PX 239.  He also testified that he rejects

MAF's rights and believes his conduct was justified.  Tr. at 456:4-9, 456:16-17, 495:17-496:6.  That evidence supports a finding that, absent an injunction, infringement is likely to continue.

The harm to MAF given such continued infringement is not limited to lost sales.  A copyright grants the owner the right to control reproduction, distribution, and derivative uses of the protected work.  17 U.S.C. § 106; *see also Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) ("The owner of a copyright has the exclusive right to — or to license others to — reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work.").  "In many instances, injunctive relief may be the best or only way to preserve the [copyright's] exclusivity[.]" *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004).  Where, as here, an infringer has repeatedly copied works, maintains an inventory of infringing works, has shown no recognition of the owner's rights, and has concealed relevant works during litigation, monetary damages for past infringements do not adequately protect the copyright owner's continuing right to control future use of its copyright.  *See Salinger*, 607 F.3d at 81 ("'[T]he loss of First Amendment freedoms,' and hence infringement of the right *not* to speak, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))); *Silverstein* 368 F.3d at 84 ("In the copyright realm, it has been said that an injunction should be granted if denial would amount to a forced license to use the creative work of another.").  An injunction is therefore necessary to prevent McKenzie from continuing to use MAF's protected works without MAF's permission.

In its opposition brief, McKenzie argues that MAF delayed too long in seeking an injunction, and that the delay defeats any showing of irreparable harm.  Opp. at 14-16.  His argument is unavailing.  Delay can, but does not necessarily, undercut a claim of irreparable harm on a motion for *preliminary* injunctive relief.  *See Rosenberg v. Avery*, No. 25-cv-00222

(ALC), 2025 WL 2879605, at \*17 (S.D.N.Y. Oct. 9, 2025) ("Underscoring the inherent nature of a *preliminary* injunction, 'months-long delays in seeking preliminary injunctions have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompanying a motion for preliminary relief.'" (emphasis added) (quoting *Council for Responsible Nutrition v. James*, No. 24-cv-01881 (ALC), 2024 WL 1700036, at \*9 (S.D.N.Y. Apr. 19, 2024))); *Habitat for Horses v. Salazar*, 745 F. Supp. 2d 438, 449 (S.D.N.Y. 2010) ("Delay in seeking *preliminary* injunctive relief alone can justify denial of a preliminary injunction because 'the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for *preliminary* relief and suggests that there is, in fact, no irreparable injury.'" (emphasis added) (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995))); *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011) (finding that "delay alone" does not "require[] denial of a *preliminary* injunction motion" (emphasis added)); *Diner, Inc. v. Dream Kitchen, Inc.,* No. 95-cv-04130 (LMM), 1995 WL 438627, at \*9 (S.D.N.Y. July 24, 1995) (same).  But this is a motion for a *permanent* injunction after trial and success on the merits.  The operative question is thus whether prospective equitable relief is necessary to prevent future harm.  *See Boisson v. Banian Ltd.*, 280 F. Supp. 2d 10, 15 (E.D.N.Y. 2003) ("Permanent injunctions are appropriate only where infringement has been found and there is a substantial likelihood of future infringements."); *see also Tough Traveler, Ltd.*, 60 F.3d at 968 (clarifying that "delay[] either in bringing suit or in moving for preliminary injunctive relief" "may not warrant the denial of ultimate relief" even if it may "preclude the granting of preliminary injunctive relief" (citation omitted)).  The record supports that it is.  McKenzie's own testimony indicates that he continues to deny MAF's rights and would continue the relevant conduct absent judicial restraint.  *See* Tr. at 456:4-9; 497:24-498:1.  His concealment of artworks and documents during litigation further

supports the conclusion that litigation itself has not deterred him. *Id.* at 469:16-470:2, 607:12-24. Accordingly, any lapse in time between McKenzie's initial infringing act and MAF's commencement of this action does not undermine the continuing risk of infringement and, consequently, MAF's showing of irreparable harm.

### B.    Inadequacy of Legal Remedies

Legal remedies are inadequate to redress MAF's prospective injury. At the conclusion of trial, the jury awarded MAF a total of $8.2 million in damages for copyright and trademark infringement. Dkt. 360 at 91-93. Though McKenzie argues that such damages are sufficient to remedy MAF's injuries, Opp. at 10-13, those damages only compensate past harm, *see* Tr. at 616:3-618:5. They do not prevent future infringement. And while the jury also awarded forward-looking punitive damages, Dkt. 630 at 94; *see Daniels v. Kostreva*, No. 15-cv-03141 (ARR) (LB), 2017 WL 823583, at *13 (E.D.N.Y. Jan. 12, 2017) (noting that punitive damages "deter [defendants] . . . from intentional conduct in the future" (quoting *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996)), *report and recommendation adopted*, 2017 WL 519227 (E.D.N.Y. Feb. 8, 2017), the existing infringing works remain in McKenzie's control — leaving open the potential for future violations and reputational harm to MAF, *see Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*, 933 F. Supp. 2d 655, 664 (S.D.N.Y. 2013) ("There is simply no way to know what the precise effects of these Lanham Act violations were, nor precisely what harm future violations would cause."); *U.S. Polo Ass'n, Inc.*, 800 F. Supp. 2d at 541 ("Because the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable, remedies at law cannot adequately compensate [p]laintiff for its injuries."). Under these circumstances, monetary damages are unlikely to provide an adequate remedy. *See, e.g.*, *Hilton v. Int'l Perfume Palace, Inc.*, No. 12-cv-05074 (JFB) (GRB), 2013 WL 5676582, at *13 (E.D.N.Y. Oct. 17, 2013) (finding second factor met where, "[a]bsent a [c]ourt directive to cease

10

the infringing activities, plaintiffs would be forced to remedy each new infringement through a separate, fullblown lawsuit for monetary damages"); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-cv-00946 (JS) (AKT), 2015 WL 1299259, at *17 (E.D.N.Y. Mar. 23, 2015) (finding, "where there are no assurances in the record against [d]efendant's continued infringement," that "monetary damages are unlikely to present an adequate remedy"); *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) (finding that because "[defendant]'s past behavior suggests that [it] might continue to engage in infringing activities and counterfeiting unless enjoined by the [c]ourt," "monetary damages will fail to fully provide [plaintiff] with relief").

### C.    Balance of Hardships

The balance of hardships favors injunctive relief with respect to the rights adjudicated at trial.  MAF faces continued loss of control over its copyrighted works and LOVE trademark if McKenzie remains free to make, sell, or distribute works using those protected rights.  By contrast, McKenzie has no legitimate interest in continuing to infringe MAF's copyrights or trademark.  *See WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) ("[I]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product." (quoting *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011))); *N. Atl. Operating Co., Inc. v. Evergreen Distribs., LLC*, No. 13-cv-04974 (ERK) (VMS), 2013 WL 5603810, at *5 (E.D.N.Y. Sept. 30, 2013) ("Where 'the only hardship to [d]efendant from an injunction would be to prevent him from engaging in further illegal activity, the balance clearly weighs in [p]laintiffs' favor.'" (alterations adopted) (quoting *DISH Network L.L.C. v. DelVecchio*, 831 F.Supp.2d 595, 601-02 (W.D.N.Y. 2011))), *report and recommendation adopted*, 2013 WL 5603596 (E.D.N.Y. Oct. 11, 2013).

The inquiry does not, however, stop there, as this factor also informs the scope of relief that the Court will grant. McKenzie argues that an injunction requiring turnover of all Indiana works in his possession or control would sweep too broadly. Opp. at 17-19. He is correct. The jury did not determine, nor does this Court find, that every Indiana-related work in McKenzie's possession infringes MAF's rights under the USA FUN and The Ninth American Dream copyrights and the LOVE trademark. Thus, the balance of hardships favors an injunction that prevents unlawful activity or further infringement of only the adjudicated intellectual-property rights under the USA FUN and The Ninth American Dream copyrights and the LOVE trademark.

## D.     Public Interest

The public interest favors such a narrowly tailored injunction. The public has an interest in the enforcement of copyright and trademark rights, in avoiding marketplace confusion, and in preventing the circulation of unauthorized works that are falsely associated with protected intellectual property. *See N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) ("[T]he public has an interest in not being deceived — in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."); *Greetings Tour, Inc. v. NY & Co Ecomm LLC*, No. 23-cv-04848 (AKH), 2023 WL 8235948, at *2 (S.D.N.Y. Nov. 28, 2023) ("[T]he public interest favors issuance of an injunction because halting the unlawful reproduction of copyrighted material serves the public interest."). The record reflects that the market for Indiana works has been affected by confusion concerning unauthorized works. Tr. at 393:18-395:9. A limited injunction will therefore serve the public interest by preventing the unlawful activity of future infringement and confusion.

## II.    MAF's Tortious Interference Claim Does Not Independently Support Prospective Equitable Relief

MAF relies on its tortious interference claim as a basis for broader injunctive relief.  The Court, however, declines to grant prospective relief for that claim.

A tortious interference claim requires conduct directed at a third party that improperly interferes with that third party's contractual performance.  *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 448 (N.Y. 1980) (defining tortious interference with contract claim to cover "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between [plaintiff] and a third person by inducing or otherwise causing the third person not to perform the contract" (citation omitted)); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) ("Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996))); *accord White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 867 N.E.2d 381, 383 (N.Y. 2007).  MAF's tortious interference claim here concerned McKenzie's alleged influence over Indiana and Indiana's resultant breach of his and MAF's contracts.  *See* FAC ¶¶ 137-40.  The jury granted MAF damages for this claim at trial.  Dkt. 630 at 94.  However, given that Indiana is deceased, Tr. at 81:6-7, McKenzie can no longer tortiously interfere with the MAF and Indiana contracts by causing Indiana to breach them.  Thus, there is no live prospective harm from tortious interference with contract for an injunction to remedy, and no injunction shall be granted on this claim.

### III.    MAF's Requested Injunctive Relief Must Be Narrowed

"A district court must ensure that a permanent injunction is 'narrowly tailored to fit specific legal violations' and does not 'impose unnecessary burdens on lawful activity.'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 637 (S.D.N.Y. 2018) (quoting *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299 (2d Cir. 1999)). To that end, "an injunction should not go 'beyond the scope of the issues tried in the case.'" *Hachette Book Grp., Inc. v. Internet Archive*, No. 20-cv-04160 (JGK), 2023 WL 5207596, at *1 (S.D.N.Y. Aug. 11, 2023) (quoting *Starter Corp.*, 170 F.3d at 300); *see, e.g.*, *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785-86 (2d Cir. 1994) (vacating injunction that went beyond the scope of tried issues). Applying those principles here, the Court narrows the scope of MAF's requested relief.

### A.    The Injunction Will Not Require Turnover of the Ghostwriter Machine

MAF asks the Court to require McKenzie to turn over his ghostwriter machine. Br. at 18-19. That request is denied. At trial, MAF presented evidence that McKenzie used the ghostwriter to replicate Indiana's signature. Tr. at 176:17-22, 179:4-14, 180:20-24; *see also* PX 110. That showing supports restrictions on how the machine may be used. But possession of the machine, standing alone, infringes neither MAF's copyrights in USA FUN and The Ninth American Dream nor its LOVE trademark. Indeed, the trial record leaves open the possibility of lawful uses of a ghostwriter. The Court will therefore limit the injunction to prohibiting McKenzie from using the ghostwriter to affix Indiana's signature to any unauthorized work that reproduces or incorporates the USA FUN or The Ninth American Dream copyrights or LOVE trademark. Such relief is directly tied to the rights adjudicated at trial and to the risk of future confusion and infringement reflected in the record.

**B.    Delivery, Inventory, and Disposition of Infringing Works Will Be Limited to Those at Issue**

MAF also seeks an order requiring McKenzie "to turn over . . . all Indiana works in his possession or control." Br. at 18. That relief is granted only as to works that reproduce, copy, display, or incorporate the copyrights and trademark at issue in this litigation.

As noted, Section 503(b) of the Copyright Act permits the Court, "[a]s part of a final judgment," to "order the destruction or other reasonable disposition of all copies . . . found to have been made or used in violation of a copyright owner's exclusive rights." 17 U.S.C. § 503(b). And Section 1118 of the Lanham Act likewise authorizes the Court to require that certain articles bearing an infringing registered mark or "any reproduction, counterfeit, copy, or colorable imitation thereof . . . be delivered up and destroyed." 15 U.S.C. § 1118. Those remedies are appropriate here, but only as to the adjudicated rights. McKenzie admitted to making works using USA FUN and The Ninth American Dream. Tr. at 446:11-22, 447:5-10. He further admitted making LOVE works and intending to make more. *Id.* at 443:16-23, 444:16-22, 456:23-457:3. Hundreds of LOVE works were discovered in his studio. *Id.* at 153:14-155:15. And he moved thousands of works from his studio before a Court-ordered inspection. *Id.* at 469:16-470:2, 473:8-25, 474:5-14; 607:12-24; *see also* Dkt. 578 at 7-8. Those facts justify an order requiring inventory, preservation, and delivery or other reasonable disposition of infringing works. They do not, however, support the turnover of "all Indiana works in [McKenzie's] possession or control," Br. at 18 — a formulation that is untethered to the jury's copyright and trademark findings. Indeed, it was expressly acknowledged at trial that McKenzie had valid rights to some Indiana works, and that some Indiana works were outside the scope of this litigation. *See* Tr. at 268:8-22 (testimony from Simon Salama-Caro acknowledging that "Mr. McKenzie did a legitimate project" with Indiana, entitled "[t]he Book of LOVE"); *id.* at

272:16-21 (same); *id.* at 507:3-4 (noting that Indiana work "'HOPE' is not part of this case"); *cf.* *id.* at 316:19-23, 317:4-13 (Plaintiff acknowledging that it "ha[s] no rights to HOPE [and] didn't plead that [it] ha[s] rights to HOPE" in the context of excising portions of a video exhibit that concerned HOPE). Accordingly, the order will apply only to the following categories: unauthorized works in McKenzie's possession, custody, or control that reproduce, copy, or incorporate (1) the USA FUN copyright; (2) The Ninth American Dream copyright; or (3) the LOVE trademark.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for a permanent injunction barring future infringing conduct by Defendant. Specifically, it is hereby ORDERED that:

1. **Enjoined Persons.** This Order binds Defendant Michael McKenzie d/b/a American Image Art; his "officers, agents, servants, employees, and attorneys"; and all "other persons who are in active concert or participation with" any of them and who receive actual notice of this Order by personal service or otherwise. Fed. R. Civ. P. 65(d)(2).

2. **Protected Copyrighted Works.** For purposes of this Order, "Protected Copyrighted Works" means USA FUN and The Ninth American Dream, including protectable elements thereof and unauthorized copies or derivatives thereof.

3. **Protected Mark.** For purposes of this Order, "Protected Mark" means MAF's LOVE trademark, U.S. Registration No. 4,879,320, and any reproduction, counterfeit, copy, or colorable imitation thereof.

4. **Prohibited Conduct.** McKenzie and all persons bound by this Order are permanently enjoined from directly or indirectly:

a. reproducing, copying, manufacturing, fabricating, printing, publishing, distributing, selling, offering for sale, consigning, transferring, licensing, advertising, promoting, displaying for sale, or otherwise commercially exploiting any unauthorized work that reproduces, copies, displays, or incorporates any Protected Copyrighted Work;

b. using, reproducing, copying, manufacturing, fabricating, printing, publishing, distributing, selling, offering for sale, consigning, transferring, licensing, advertising, promoting, displaying for sale, or otherwise commercially exploiting any unauthorized work, good, or material bearing the Protected Mark;

c. representing or suggesting that any unauthorized work reproducing, copying, displaying, or incorporating any Protected Copyrighted Work or the Protected Mark was created, authorized, approved, licensed, signed, or endorsed by Robert Indiana or MAF;

d. affixing, causing to be affixed, or assisting in affixing Robert Indiana's signature, a facsimile of Robert Indiana's signature, or any simulation of Robert Indiana's signature to any unauthorized work that reproduces, copies, displays, or incorporates any Protected Copyrighted Work or the Protected Mark; and

e. using the ghostwriter machine, or any other machine, device, stencil, stamp, plate, digital process, manual process, or other means, to affix or simulate Robert Indiana's signature on any unauthorized work that reproduces, copies, displays, or incorporates any Protected Copyrighted Work or the Protected Mark.

5. **Inventory and Preservation.** Within thirty days of service of this Order, McKenzie shall serve on MAF and file under oath a written inventory identifying all items in his

17

possession, custody, or control that reproduce, copy, display, or incorporate any Protected Copyrighted Work or the Protected Mark. The inventory shall identify, to the extent known, the location, quantity, medium, dimensions, date of creation, title or description, and present custodian of each item. McKenzie shall preserve all such items pending delivery or further order of the Court.

6. **Delivery and Disposal.** Within sixty days of service of this Order, McKenzie shall deliver to MAF, or to a neutral custodian agreed upon by the parties, all unauthorized works in his possession, custody, or control that reproduce, copy, display, or incorporate any Protected Copyrighted Work or the Protected Mark. Those items shall be destroyed or otherwise reasonably disposed of pursuant to 17 U.S.C. § 503(b) and 15 U.S.C. § 1118.

7. **Continuing Jurisdiction.** The Court retains jurisdiction to enforce, modify, or clarify this injunction and to resolve disputes concerning the inventory, delivery, destruction, or other reasonable disposition of covered items.

Dated: July 10, 2026
New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge

18